# EXHIBIT 11

# Docket Report

**Case Description**

**Case ID:** 170300712
**Case Caption:** B. ETAL VS ROOSEVELT INN LLC ETAL
**Filing Date:** Friday , March 10th, 2017
**Location:** CH - City Hall
**Case Type:** 2O - PERSONAL INJURY - OTHER
**Status:** CLDBR - DEFERRED - BANKRUPTCY

| | | | |
|---|---|---|---|
| 02-JUN-2021 02:14 PM | MTLIM - MOTION IN LIMINE | WAGNER, THOMAS P | 02-JUN-2021 02:15 PM |

**Documents:** MB - Alpha MIL to Preclude Use of Word Rape.PDF
Motion CoverSheet Form

**Docket Entry:** 03-21060403 MOTION IN LIMINE DEFENDANT'S MOTION TO PRECLUDE USE OF THE WORD "RAPE" (FILED ON BEHALF OF ALPHA-CENTURION SECURITY INC)

| | | | |
|---|---|---|---|
| 02-JUN-2021 07:20 PM | MTLIM - MOTION IN LIMINE | EDDY, KEVIN M | 03-JUN-2021 09:16 AM |

**Documents:** Motion in Limine to Exclude FBI Materials (redacted).pdf
Exhibits to Motion in Limine to Exclude FBI Materials (redacted).pdf
Motion in Limine to Exclude FBI Materials (confidential unredacted).pdf
Exhibits to Motion in Limine to Exclude FBI Materials (confidential unredacted).pdf
Motion CoverSheet Form
Confidential Document Form

**Docket Entry:** 32-21060532 MOTION IN LIMINE TO EXCLUDE FBI MATERIALS (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC)

| | | | |
|---|---|---|---|
| 02-JUN-2021 04:38 PM | MTLIM - MOTION IN LIMINE | BYERS MS., JUSTINA L | 02-JUN-2021 04:43 PM |

**Documents:** Motion in Limine to Exclude January 2, 2015 Video.pdf
Roosevelt - Exhibit to Motion in Limine to Exclude 1-2-15 Video - Unredacted.pdf
Roosevelt - Exhibit to Motion in Limine to Exclude 1-2-15 Video - Redacted.pdf
Motion CoverSheet Form
Confidential Document Form

**Docket Entry:** 90-21060490 MOTION IN LIMINE MOTION IN LIMINE TO EXCLUDE 01/02/15 VIDEO (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC)

| | | | |
|---|---|---|---|
| 02-JUN-2021 06:30 PM | MTLIM - MOTION IN LIMINE | EDDY, KEVIN M | 03-JUN-2021 09:09 AM |

**Documents:** Motion in Limine to Exclude News Reports, Online Reviews.pdf
Exhibits to Motion in Limine to Exclude News Reports, Online Reviews.pdf
Motion CoverSheet Form

| | | | |
|---|---|---|---|
| **Docket Entry:** | 28-21060528 MOTION IN LIMINE TO EXCLUDE NEWS REPORTS, ONLINE REVIEWS (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC) | | |
| 02-JUN-2021 04:53 PM | MTLIM - MOTION IN LIMINE | BYERS MS., JUSTINA L | 02-JUN-2021 04:58 PM |
| **Documents:** | Motion in Limine to Exclude Other Crimes at the Roosevelt Inn.pdf Motion CoverSheet Form | | |
| **Docket Entry:** | 98-21060498 MOTION IN LIMINE (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC) | | |
| 02-JUN-2021 04:46 PM | MTLIM - MOTION IN LIMINE | BYERS MS., JUSTINA L | 02-JUN-2021 04:54 PM |
| **Documents:** | Motion in Limine to Exclude Reference to Before-After Relevant Time Period.pdf Exhibit to Motion in limine to exclude reference to before_after relevant time period.pdf Motion CoverSheet Form | | |
| **Docket Entry:** | 93-21060493 MOTION IN LIMINE (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC) | | |
| 02-JUN-2021 04:41 PM | MTLIM - MOTION IN LIMINE | BYERS MS., JUSTINA L | 02-JUN-2021 04:44 PM |
| **Documents:** | Motion in Limine to Exclude Statements-Reference to Other Traffickers.pdf Roosevelt - Exhibits to Motion in limine to exclude statements reference to other traffickers.pdf Motion CoverSheet Form | | |
| **Docket Entry:** | 91-21060491 MOTION IN LIMINE (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC) | | |
| 02-JUN-2021 04:49 PM | MTLIM - MOTION IN LIMINE | BYERS MS., JUSTINA L | 02-JUN-2021 04:56 PM |
| **Documents:** | Motion in Limine to Exclude Staub.pdf Roosevelt - Exhibit to Motion in Limine to Exclude Staub - Unredacted.pdf Roosevelt - Exhibit to Motion in Limine to Exclude Staub - Redacted.pdf Motion CoverSheet Form Confidential Document Form | | |
| **Docket Entry:** | 95-21060495 MOTION IN LIMINE MOTION IN LIMINE TO EXCLUDE STAUB (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC) | | |
| 02-JUN-2021 06:14 PM | MTLIM - MOTION IN LIMINE | EDDY, KEVIN M | 03-JUN-2021 09:07 AM |
| **Documents:** | Motion in Limine to Exclude Testimony of Incompetent Witness - Redacted.pdf Roosevelt - Exhibit to Motion in Limine to Exclude Testimony of incompetent witness - Redacted.pdf Motion in Limine to Exclude Testimony of Incompetent Witness - Unredacted.pdf Roosevelt - Exhibit to Motion in Limine to Exclude Testimony of incompetent witness - Unredacted.pdf Motion CoverSheet Form Confidential Document Form | | |

| | |
|---|---|
| **Docket Entry:** | 26-21060526 MOTION IN LIMINE TO EXCLUDE TESTIMONY OF INCOMPETENT WITNESS (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC) |

| | | | |
|---|---|---|---|
| 02-JUN-2021 06:05 PM | MTLIM - MOTION IN LIMINE | EDDY, KEVIN M | 03-JUN-2021 09:05 AM |

**Documents:** Motion to Exclude Guelbart Report and Guelbart Testimony.pdf
Roosevelt - Exhibits to Motion to exclude Guelbart Report and Guelbart testimony - Redacted.pdf
Roosevelt - Exhibits to Motion to exclude Guelbart Report and Guelbart testimony - Unredacted.pdf
Motion CoverSheet Form
Confidential Document Form

| | |
|---|---|
| **Docket Entry:** | 25-21060525 MOTION IN LIMINE TO EXCLUDE GUELBART REPORT AND GUELBART TESTIMONY (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC) |

| | | | |
|---|---|---|---|
| 02-JUN-2021 05:40 PM | MTLIM - MOTION IN LIMINE | EDDY, KEVIN M | 03-JUN-2021 09:00 AM |

**Documents:** Motion to Exclude Hudak Report and Hudak Testimony.pdf
Roosevelt - Exhibits to Motion to Exclude Hudak Report and Hudak Testimony - Redacted.pdf
Roosevelt - Exhibits to Motion to Exclude Hudak Report and Hudak Testimony - Unredacted.pdf
Motion CoverSheet Form
Confidential Document Form

| | |
|---|---|
| **Docket Entry:** | 22-21060522 MOTION IN LIMINE TO EXCLUDE HUDAK REPORT AND HUDAK TESTIMONY (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC) |

| | | | |
|---|---|---|---|
| 02-JUN-2021 05:53 PM | MTLIM - MOTION IN LIMINE | EDDY, KEVIN M | 03-JUN-2021 09:04 AM |

**Documents:** Motion to Exclude Stone Report and Stone Testimony.pdf
Roosevelt - Exhibit to Motion to Exclude Stone Report and Stone testimony - Redacted.pdf
Roosevelt - Exhibit to Motion to Exclude Stone Report and Stone testimony - Unredacted.pdf
Motion CoverSheet Form
Confidential Document Form

| | |
|---|---|
| **Docket Entry:** | 24-21060524 MOTION IN LIMINE TO EXCLUDE STONE REPORT AND STONE TESTIMONY (FILED ON BEHALF OF YAGNA PATEL, UFVS MANAGEMENT COMPANY LLC, ROOSEVELT MOTOR INN INC AND ROOSEVELT INN LLC) |

| | | | |
|---|---|---|---|
| 02-JUN-2021 06:41 PM | MTLIM - MOTION IN LIMINE | NOCHO, KYLE B | 03-JUN-2021 09:14 AM |

**Documents:** Exhibit - MIL refrence to Unnamed Fortune 100 Company (Francis).pdf
REDACTED Pltf MIL Reference to Unnamed Fortune 100 Company (Francis).pdf
UNREDACTED Pltf MIL Reference to Unnamed Fortune 100 Company (Francis).pdf
Motion CoverSheet Form
Confidential Document Form

| | |
|---|---|
| **Docket Entry:** | 30-21060530 MOTION IN LIMINE (FILED ON BEHALF OF WILLIAM A CALANDRA AND M. B.) |

| 02-JUN-2021<br>02:18 PM | MTLIM - MOTION IN LIMINE | NOCHO, KYLE B | 02-JUN-2021<br>02:23 PM |

**Documents:** Exhibit - Preclude Cumulative Opinions of Bates and Mehlman-Orozco.pdf
REDACTED Pltf MIL to Preclude Cumulative Opinions of Bates and Mehlman-Orozco.pdf
UNREDACTED Pltf MIL to Preclude Cumulative Opinions of Bates and Mehlman-Orozco.pdf
Motion CoverSheet Form
Confidential Document Form

**Docket Entry:** 04-21060404 MOTION IN LIMINE (FILED ON BEHALF OF WILLIAM A CALANDRA AND M. B.)

| | | |
|---|---|---|
| M.B. | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | MARCH TERM, 2017 |
| ROOSEVELT INN LLC | : | |
| *d/b/a ROOSEVELT INN* and | : | |
| *ROOSEVELT INN CAFE* and | : | |
| ROOSEVELT MOTOR INN | : | |
| *d/b/a ROOSEVELT MOTOR INN* and | : | NO. 00712 |
| UFVS MANAGEMENT COMPANY, LLC | : | |
| and YAGNA PATEL and | : | |
| ALPHA-CENTURION SECURITY, INC. | : | |
| | : | |
| Defendants | : | <u>JURY TRIAL DEMANDED</u> |

## <u>ORDER</u>

**AND NOW**, this _____day of _____, 2021, upon

consideration of the Motion *in Limine* of Defendant Alpha-Centurion Security, Inc. to Preclude

use of the word "Rape" at Trial, and any Response thereto, it is hereby **ORDERED** and

**DECREED** that Defendant's Motion is **GRANTED.**

Plaintiff is hereby **PRECLUDED** from using the word "Rape" at Trial.

**BY THE COURT:**

_____

**J.**

Case ID: 170300712
Control No.: 21060403

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**
BY:    Thomas P. Wagner, Esquire
Identification No.:    27145
BY:    Robert W. Stanko, Esquire
Identification No.    208830
BY:    Melanie J. Foreman, Esquire
Identification No.:    317951
2000 Market Street, Suite 2300
Philadelphia PA  19103
(215) 575-2600

Attorneys for Defendant,
Alpha-Centurion Security, Inc.

| | |
|---|---|
| M.B. | : PHILADELPHIA COUNTY |
| | : COURT OF COMMON PLEAS |
| Plaintiff | : |
| | : |
| v. | : |
| | : MARCH TERM, 2017 |
| ROOSEVELT INN LLC | : |
| *d/b/a ROOSEVELT INN and* | : |
| *ROOSEVELT INN CAFE* and | : |
| ROOSEVELT MOTOR INN | : |
| *d/b/a ROOSEVELT MOTOR INN* and | : NO. 00712 |
| UFVS MANAGEMENT COMPANY, LLC | : |
| and YAGNA PATEL and | : |
| ALPHA-CENTURION SECURITY, INC. | : |
| | : |
| Defendants | : <u>JURY TRIAL DEMANDED</u> |

## <u>MOTION *IN LIMINE* OF DEFENDANT ALPHA-CENTURION SECURITY, INC. TO PRECLUDE REFERENCE TO THE WORD "RAPE" AT TRIAL</u>

Defendant Alpha-Centurion Security, Inc., by and through its counsel, Marshall Dennehey Warner Coleman & Goggin, hereby moves this Honorable Court to Preclude the use of the word "rape" at trial, and, in support thereof, aver as follows:

1.    Plaintiff M.B. alleges she was the victim of human trafficking at the Roosevelt Inn from the beginning of April to early June 2014.

Case ID: 170300712
Control No.: 21060403

2. Those who trafficked Plaintiff were criminally prosecuted in the Eastern District of Pennsylvania and pled guilty to sex trafficking.

3. Plaintiff has alleged claims of negligence against Defendants. Plaintiff has not made any allegations of rape in this proceeding or her criminal proceeding.

4. Nevertheless, Moving Defendant anticipates that Plaintiff's counsel intends to utilize the word during the court of Trial.

5. Plaintiff's counsel should be precluded from using the word "rape" at Trial, as the phrase is inherently inflammatory and would serve no purpose other than to incite a jury and prejudice Moving Defendant.

6. Plaintiff's claims in the instant case against Moving Defendant relate to whether Moving Defendant was negligent in providing limited security services at the subject hotel.

7. In discharging such services, Moving Defendant was not permitted to view security monitors or enter any of the rooms at the hotel.

8. Plaintiff testified that all of the commercial sex activity occurred in rooms behind closed doors, in areas Moving Defendant was not permitted to enter.

9. Plaintiff herself acknowledges that she had only one, limited interaction with a man she *believes* was a security guard in a stairwell.

10. She did not complaint to him – in fact, she said nothing to him whatsoever.

11. To allow Plaintiff to now come to Trial and argue that Moving Defendant is liable for "rape" is nothing more than an attempt by Plaintiff to anger the jury and confuse the issues before them.

12. Defendants do not dispute that Plaintiff was the victim of sex trafficking.

13. Her traffickers were prosecuted and pled guilty to the crime.

Case ID: 170300712
Control No.: 21060403

14.     What is very much in dispute is whether the trafficking occurred at the hotel, and, if so, whether Moving Defendant should be held liable for it despite Moving Defendant's limited presence and responsibilities on the property.

15.     This case involves sensitive issues, but that does not grant Plaintiff the license to unreasonably expand the issues using inherently inflammatory language.

16.     This case should be litigated based upon relevant evidence at Trial and not inciting language intended to manipulate and anger the jury.

17.     The fundamental consideration in determining the admissibility of evidence is whether the evidence is relevant to a fact to be proved. *See* Pa.R.Evid. 401, 402.

18.     Here, the word "rape" has no relevance to the case at bar; it has never been used to describe Plaintiff's claims at any previous time throughout the lengthy course of this litigation.

19.     Plaintiff can capably present her case with the words she has used to describe her claims up until this point.

20.     The use of the word "rape" – when it has never been used to describe Plaintiff's claims before in this lawsuit – should be precluded.

Case ID: 170300712
Control No.: 21060403

WHEREFORE, for the foregoing reasons, and for the reasons more fully set forth in the accompanying Memorandum of Law, Defendant Alpha-Centurion Security, Inc. respectfully requests that any and all references to the word "rape" be precluded at the time of Trial.

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

BY:_____
Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Attorneys for Defendant,
Alpha-Centurion Security, Inc.

Dated: June 2, 2021

4

Case ID: 170300712
Control No.: 21060403

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**
BY:    Thomas P. Wagner, Esquire
Identification No.:    27145
BY:    Robert W. Stanko, Esquire          Attorneys for Defendant,
Identification No.    208830              Alpha-Centurion Security, Inc.
BY:    Melanie J. Foreman, Esquire
Identification No.:    317951
2000 Market Street, Suite 2300
Philadelphia PA  19103
(215) 575-2600

| | |
|---|---|
| M.B. | : PHILADELPHIA COUNTY |
| | : COURT OF COMMON PLEAS |
| Plaintiff | : |
| | : |
| v. | : |
| | : MARCH TERM, 2017 |
| ROOSEVELT INN LLC | : |
| *d/b/a ROOSEVELT INN* and | : |
| *ROOSEVELT INN CAFE* and | : |
| ROOSEVELT MOTOR INN | : |
| *d/b/a ROOSEVELT MOTOR INN* and | : NO. 00712 |
| UFVS MANAGEMENT COMPANY, LLC | : |
| and YAGNA PATEL and | : |
| ALPHA-CENTURION SECURITY, INC. | : |
| | : |
| Defendants | : JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* OF DEFENDANT ALPHA-CENTURION SECURITY, INC.  TO PRECLUDE REFERENCE TO THE WORD "RAPE" AT TRIAL**

## I.    MATTER BEFORE THE COURT

Motion *in Limine* of Defendant Alpha-Centurion Security, Inc. ("Moving Defendant") to preclude reference to the word "rape" at trial.

## II.    QUESTION PRESENTED

Whether Plaintiff should be precluded from referencing the word "rape" at trial, where Plaintiff's claims relate to commercial sexual acts and the term would do nothing more than inflame a jury.

Case ID: 170300712
Control No.: 21060403

*Suggested Answer:*　　　　**YES.**

### III.　FACTS

Plaintiff M.B. alleges she was the victim of human trafficking at the Roosevelt Inn from the beginning of April to early June 2014. Those who trafficked Plaintiff were criminally prosecuted in the Eastern District of Pennsylvania and pled guilty to sex trafficking.

Plaintiff has alleged claims of negligence against Defendants. Plaintiff has not made any allegations of rape in this proceeding or her criminal proceeding. Nevertheless, Moving Defendant anticipates that Plaintiff's counsel intends to utilize the word during the court of Trial. Plaintiff's counsel should be precluded from using the word "rape" at Trial, as the phrase is inherently inflammatory and would serve no purpose other than to incite a jury and prejudice Moving Defendant.

### IV.　ARGUMENT

Plaintiff's claims in the instant case against Moving Defendant relate to whether Moving Defendant was negligent in providing limited security services at the subject hotel. In discharging such services, Moving Defendant was not permitted to view security monitors or enter any of the rooms at the hotel.

Plaintiff testified that all of the commercial sex activity occurred in rooms behind closed doors, in areas Moving Defendant was not permitted to enter. Plaintiff herself acknowledges that she had only one, limited interaction with a man she *believes* was a security guard in a stairwell. She did not complaint to him – in fact, she said nothing to him whatsoever. To allow Plaintiff to now come to Trial and argue that Moving Defendant is liable for "rape" is nothing more than an attempt by Plaintiff to anger the jury and confuse the issues before them.

Case ID: 170300712
Control No.: 21060403

Defendants do not dispute that Plaintiff was the victim of sex trafficking. Her traffickers were prosecuted and pled guilty to the crime. What is very much in dispute is whether the trafficking occurred at the hotel, and, if so, whether Moving Defendant should be held liable for it despite Moving Defendant's limited presence and responsibilities on the property. This case involves sensitive issues, but that does not grant Plaintiff the license to unreasonably expand the issues using inherently inflammatory language.

This case should be litigated based upon relevant evidence at Trial and not inciting language intended to manipulate and anger the jury. The fundamental consideration in determining the admissibility of evidence is whether the evidence is relevant to a fact to be proved. See Pa.R.Evid. 401, 402. Here, the word "rape" has no relevance to the case at bar; it has never been used to describe Plaintiff's claims at any previous time throughout the lengthy course of this litigation.

Plaintiff can capably present her case with the words she has used to describe her claims up until this point. The use of the word "rape" – when it has never been used to describe Plaintiff's claims before in this lawsuit – should be precluded. Accordingly, this Honorable Court should preclude Plaintiff from referencing the word "rape" at trial.

Case ID: 170300712
Control No.: 21060403

## V.   <u>REQUESTED RELIEF</u>

For the foregoing reasons, Defendant Alpha-Centurion Security, Inc. respectfully requests that this Honorable Court grant its Motion *in Limine*, thereby precluding any reference to the word "rape" at the time of Trial.

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY:_____
       Thomas P. Wagner, Esquire
       Robert W. Stanko, Esquire
       Melanie J. Foreman, Esquire
       Attorneys for Defendant,
       Alpha-Centurion Security, Inc.

Dated: <u>June 2, 2021</u>

Case ID: 170300712
Control No.: 21060403

## CERTIFICATE OF SERVICE

I, Thomas P. Wagner, hereby certify that a true and correct copy of the Motion in Limine of Defendant Alpha-Centurion Security, Inc. was served by electronic filing to all parties listed below on the date set forth below:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19101
***Attorneys for minor-Plaintiff***

Charles S. Marion, Esquire
Kevin M. Eddy, Esquire
Justina L. Byers, Esquire
Blank Rome, LLP
130 North 18th Street
Philadelphia, PA 19103
***Attorneys for Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel***

The following parties were served via First Class Mail via the date set forth below:

Daiquan Davis
USP Terre Haute
U.S. Penitentiary
P. O. Box 33
Terre Haute, IN 47808

Abdul Lopez
USP Tucson
U.S. Penitentiary
P. O. Box 24550
Tucson, AZ 85734

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY: _____
Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Attorneys for Defendant,
Alpha-Centurion Security, Inc.

Dated: June 2, 2021

|  |  |
|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire,<br><br>     Plaintiff,<br><br>   v.<br><br>ROOSEVELT INN LLC<br>d/b/a ROOSEVELT INN and<br>ROOSEVELT INN CAFÉ, *et al*.,<br><br>     Defendants.<br><br>   v.<br><br>DAIQUAN DAVIS AND ABDUL LOPEZ,<br><br>     Additional Defendants. | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL ACTION – LAW<br><br>MARCH TERM, 2017<br>Civil Action No.:  00712 |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2021, upon consideration of

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor

Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's

Motion to Preclude and Exclude FBI Materials and any response thereto, it is hereby ORDERED

that said Motion is GRANTED.

  At the trial in this matter, the parties shall be precluded from introducing into evidence

any and all records, documents or materials produced by the U.S. Attorney's Office for the

Eastern District of Pennsylvania on behalf of the Federal Bureau of Investigation referring or

relating to the Roosevelt Inn or the Roosevelt Defendants.

        **BY THE COURT:**

                   _____

                          J.

Case ID: 170300712
Control No.: 21060532

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
         keddy@blankrome.com
         byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

|  |  |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | |
| v. | MARCH TERM, 2017 NO.:  00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | JURY TRIAL DEMANDED |
| Defendants, | |
| v. | |
| DAIQUAN DAVIS and ABDUL LOPEZ | |
| Additional Defendants. | |

## <u>MOTION TO PRECLUDE AND EXCLUDE FBI MATERIALS</u>

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt

Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

(hereinafter collectively "the Roosevelt Defendants"), by and through their undersigned attorneys, hereby move the Court to enter an Order precluding any reference at trial to the investigative file of the Federal Bureau of Investigation ("FBI") produced by the United States Attorneys' Office of the Eastern District of Pennsylvania because the documents, from which all names, locations, dates and all other identifying information have been redacted, are inadmissible hearsay (and double hearsay), incomplete, untrustworthy and unfairly prejudicial. In support of this motion, the Roosevelt Defendants aver as follows:

1.     Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc.  Plaintiff amended her Complaint multiple times. Her most recent Amended Complaint is based solely on claims of common law negligence and narrows the time period of her alleged trafficking to several months in 2014.

2.     During the course of discovery, Plaintiff identified two who she alleges acted as her traffickers during the relevant time period.  The Roosevelt Defendants joined the two men, Daiquan Davis ("Davis") and Abdul Lopez ("Lopez"), as Additional Defendants to this action. Both Davis and Lopez are in federal prison, serving sentences for sex trafficking.

3.     In February 2019, Plaintiff served a Notice of Intent to serve a subpoena upon the FBI for "all non-grand jury material related to all investigations of human trafficking that occurred at the Roosevelt Inn."  *See* Exhibit A, subpoena to FBI.

4.     On August 6, 2019, United States Attorney William McSwain wrote to the parties in this litigation and denied the production of any records by the Department of Justice, citing certain statutory authority that prohibited production.  Exhibit B.  U.S. Attorney McSwain noted that some portion of the records sought by Plaintiff could be obtained through publicly available

2

Case ID: 170300712
Control No.: 21060532

sources and/or from the criminal defense attorneys for Daiquan Davis and Abdul Lopez, the traffickers Plaintiff identified, subject to protective orders. *Id.*

5. Accordingly, Plaintiff served subpoenas on criminal defense attorneys for Davis and Lopez, the parties signed federal protective orders and the respective attorneys produced the requested records.

6. On June 18, 2020, the USAO wrote again to Plaintiff's counsel regarding requests made directly to the FBI and a "separate request" for information relating to [REDACTED]. *See* Exhibit C. The USAO objected to the request as "overly broad and unduly burdensome" noting that the FBI would have to search the entirety of its criminal investigative files for potentially responsive information. The USAO also criticized the request because it implicated the review of a significant number of files that might make only tangential reference to the hotels at issue. However, the USAO advised that the FBI had identified certain documents that it believed [REDACTED]." *See* Exhibit C, June 18, 2020 correspondence.

7. The conditions imposed by the USAO were that Plaintiff obtain a protective order from this Court and in the United States District Court for the Eastern District of Pennsylvania. *Id.*

8. On November 11, 2020, counsel for the Roosevelt Defendants wrote to the USAO objecting to the USAO and FBI's production of select documents, based on its subjective modification of Plaintiff's request. *See* Exhibit D. The bases for the Roosevelt Defendants objections were:

> ● The multiple state civil actions brought by Plaintiff's counsel involve numerous hotels and other defendants. It is arbitrary and imprudent for the Department of Justice, after initially claiming the records were protected, to agree to release records pertaining to one, but not all of the hotels and defendants;

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

- The FBI's agreement to produce partial records based on the FBI's modification of Plaintiff's request, limited to the Roosevelt Inn, will lead to a selective, incomplete and misleading production of information;

- The FBI's limited search and limited selection of documents, and resulting production of records, are highly and unfairly prejudicial to the Roosevelt Defendants.

9. The USAO responded that [REDACTED]. Exhibit E, December 10, 2020 letter for USAO.

10. Plaintiff's counsel produced FBI materials to the Roosevelt Defendants on March 19, 2021. The production confirmed the concerns that the Roosevelt Defendants' counsel expressed in its November 11, 2020 letter, *i.e.*, as predicted, the FBI materials included a select and incomplete portion of the FBI files relating to the Roosevelt Inn.

11. By way of example, the records indicate that [REDACTED] (an investigation that post-dates the time when Plaintiff was allegedly trafficked at the Roosevelt Inn). The production includes notes of the FBI personnel participating in the investigation. Blanche Bersch, trustee of a trust that is a part owner of the limited liability company that owns the Roosevelt Inn, testified in this case she learned that the FBI [REDACTED]. Bersch directly contacted an FBI agent who was involved in the investigation. According to Bersch, the agent (whose last name Bersch did not recall) informed her that [REDACTED]. Bersch pledged the Roosevelt Inn's and her cooperation in the investigation. *See* Exhibit F, Bersch transcript at 38-39, 43-44. The records produced by the USAO do not include any notes or other reference to the communication between the FBI and Bersch. This omission illustrates the selectiveness and incompleteness of the USAO's production.

4

Case ID: 170300712
Control No.: 21060532

12. Additionally, the FBI documents indicate the investigation was conducted between [REDACTED]. The materials do not include any reference to the completion or suspension of the investigation or the outcome of the investigation. The USAO did not charge the Roosevelt Defendants as a result of the investigation, but the selective document production includes no reference to a decision not to charge or the bases for that decision.[1]

13. After amending her Complaint four times, Plaintiff now alleges that her alleged trafficking at the Roosevelt Inn took place over a couple of months in 2014 and with only the "constructive knowledge" of the Roosevelt Defendants. Plaintiffs' latest version of the alleged "facts" is refuted by evidence that shows that the Plaintiff was in other locations during the time she claims she was being held at the Roosevelt Inn. In fact, to date, Plaintiff has failed to identify a single calendar day that she was at the Roosevelt Inn. It can be verified, however, that [REDACTED]. As noted, the FBI's investigation [REDACTED], a few weeks after the relevant time period of Plaintiff's claims. None of the documents in the USAO production are dated during the time period Plaintiff alleges she was trafficked at the Roosevelt Inn.

14. Nearly the entirety of the USAO's production constitutes inadmissible hearsay and in many cases, double hearsay. The FBI notes allegedly report conversations with unnamed persons and observations by unnamed agents. In most of the documents, the FBI personnel involved in the reports are not named. Even if the documents included names, the notes are hearsay statements recorded by the notes' authors, rather than statements of fact or personal knowledge.

15. The FBI records produced by the USAO are heavily redacted. All names and identifying information, most addresses and many dates are redacted. The removal of

---

[1] Given the sensitive nature of the FBI records and the protective orders governing their production, the Roosevelt Inn will produce those records *in camera*.

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

identifying information renders the remaining information not only inherently unreliable but also highly prejudicial. According to the records, the FBI [REDACTED]. Not only do the documents constitute hearsay, since all identifying information has been removed, the statements in the documents cannot be investigated or verified. For example, one note states, [REDACTED]. Another note states, [REDACTED]. The documents as they exist are inflammatory and sensational but lack any reliable or verifiable information. They cannot be properly admitted as evidence.

16.     Plaintiff has produced and intends to offer into evidence a supplemental expert report by Plaintiff's liability expert Richard Hudak relating to the FBI production.[2] Given the completely unreliable and unverifiable nature of the documents provided by the USAO, and the fact that they contain layers of inadmissible hearsay, the Roosevelt Defendants will challenge any report purporting to analyze incomplete, redacted, inherently unreliable hearsay statements.

17.     Plaintiff's case has been riddled with inconsistent "facts" regarding her actions and whereabouts during the relevant time period. Instead of evidence based on facts, Plaintiff continues to proffer sensationalistic and prejudicial, but inherently unreliable, documents such as the USAO production. The documents do not offer facts that assists the jury, but rather salacious content – not based in fact -- to inflame the jury. Such evidence is not admissible in this Court.

## LEGAL ARGUMENT

## I.     THE FBI DOCUMENTS ARE INADMISSIBLE HEARSAY, ARE INCOMPLETE AND UNRELIABLE AND ARE UNFAIRLY PREJUDICIAL

### A.     The FBI Documents Contain Inadmissible Hearsay and Double Hearsay

---

[2] The Roosevelt Defendants have moved separately for the exclusion of Richard Hudak's initial expert report, which clearly does not meet the standards of admissibility pursuant to Pa. R. E. 702.

Case ID: 170300712
Control No.: 21060532

18.     Most of the FBI documents produced by the USAO contain nothing but hearsay and double hearsay.  The notes, many prepared by unidentified personnel, report conversations the FBI personnel had with third parties.  The third parties – the declarants – are not identified and in many cases, the declarants are repeating statements told to them by other identified persons.  "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement."  *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R. E. 801.  A hearsay statement is inadmissible unless it falls into one of the enumerated exceptions set forth in the Pennsylvania Rules of Evidence.  See Pa. R. E. 802.  None of the exceptions set forth in Pa. R. E. 803 applies to unauthenticated statements made by unidentified, absent persons.

**B.      Exceptions to the Hearsay Rule Will Not Apply to Render the Documents Admissible**

19.     The FBI records cannot be offered under Rule 803(6), pertaining to business records.  Even if a witness appears to testify that the records are those of the type kept in the normal course of business of the FBI, the documents are inherently untrustworthy since all identifying information is redacted or deleted.  Pa. R. E. 803(6)(E) (business records is not exception to the hearsay rule when "the sources of information or other circumstances indicate lack of trustworthiness."); *Commonwealth v. Zimmerman*, 571 A.2d 1062, 1068 (Pa. Super. 1990) (holding that court may exclude an untrustworthy business record), *app. denied*, 600 A2d 953 (Pa. 1991). See also *Liles v. Balmer*, 567 A.2d 691, 693 (Pa. Super. 1989) (citing *Ganster v. Western Pennsylvania Water Co*., 504 A.2d 186, 189-190 (Pa. Super. 1985)):

> To satisfy the requirements of the Uniform Business Records in Evidence, Act, 42 Pa.C.S. § 6108(b), a report must: (1) have been made at or near the time of the events it purports to relate; (2) be generated as a regular practice of the business; and (3) be trustworthy as to the source of information or the method or circumstances of preparation.

7

Case ID: 170300712
Control No.: 21060532

See also *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 401 (Pa. Super. 2015) (holding untrustworthy and incomplete records sought to be admitted as business records were properly excluded as hearsay).

20.     In addition, if the records were admitted as business records pursuant to Rule 803(6), the hearsay statements attributed to others within the documents are double hearsay and still inadmissible. *Commonwealth v. Laich*, 777 A.2d 1057, 1060 (Pa. 2001). "Where a hearsay document contains additional hearsay within it (often referred to as "double hearsay"), each level of hearsay must satisfy an exception to the rule prohibiting the admission of hearsay evidence." *In re A.J.R.-H*, 188 A.3d 1157, 1169-1170 (Pa. 2018) (citing *Commonwealth v. Ogrod*, 839 A.2d 294, 327 n.23 (Pa. 2003)). "In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established." *Commonwealth v. Laich*, 777 A.2d at 1060 (quoting *Commonwealth v. Chmiel*, 738 A.2d 406, 414 (Pa. 1999), *cert. denied*, 528 U.S. 1131 (2000)); *Commonwealth v. May*, 898 A.2d 559, 565-566 (Pa. 2006), *cert. denied*, 568 U.S. 854 (2012) (holding hearsay statements in police investigative report were double hearsay and properly excluded). Therefore, while part of the document might be admitted, statements in the documents attributed to others must still be excluded.

21.     Further, only factual information from the business records is admissible. If the FBI records were admitted as business records pursuant to Rule 803(6), opinions in the records are not admissible. *In re A.J.R.-H,* 188 A.3d 1157, 1169 (Pa. 2018); *Williams v. McClain*, 520 A.2d 1374, 1376-77 (Pa. 1987); *Commonwealth v. DiGiacomo*, 345 A.2d 605, 608 (Pa. 1975).

22.     Plaintiff has indicated her intent to examine at trial FBI personnel regarding the FBI documents. Offering an FBI agent to testify about these documents is not sufficient to overcome the evidentiary obstacles to the admission of the documents. Regardless of the

Case ID: 170300712
Control No.: 21060532

testimony, the records are incomplete, contain hearsays statements and are inherently untrustworthy. Rule 602 requires a witness to have personal knowledge of the matter about which the witness is testifying. Pa. R. E. 602; *Bayview Loan Servicing LLC v. Wicker*, 206 A.3d 474, 482 (Pa. 2019). An FBI agent testifying about the documents would be limited to his or her personal knowledge. For example, an FBI agent cannot testify as to activities or observations of his co-workers as recorded in the documents. He or she certainly cannot testify regarding hearsay or double hearsay statements contained in the documents.

### C.     The Documents Are Not Complete

23.     Even if Plaintiff could overcome the hearsay rule, the FBI documents are incomplete, running afoul of Pa. R. E. 106. Rule 106 provides that "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part-or any other writing or recorded statement-that in fairness ought to be considered at the same time." The FBI redacted to remove *all* identifying information--names, addresses, dates and other types of information were redacted, rendering the documents incomplete. Defendants cannot challenge or even understand the documents without the redacted information. "The rule's primary purpose is to correct misleading or impartial [sic] evidence." *Commonwealth v. Bryant*, 57 A.3d 191, 195 (Pa. Super. 2012) (citing *Commonwealth v. Passmore*, 857 A.2d 697, 712 (Pa. Super. 2004)). See also *Commonwealth v. McClure,* 144 A.3d 970, 976-977 (Pa. Super. 2016) (holding it was error for trial court to admit redacted and incomplete writing). In their current, redacted, incomplete condition, the documents are clearly misleading and are not impartial. They provide no valid evidentiary value but would be highly and unfairly prejudicial to Defendants.

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

24.     The documents are incomplete in a second respect as well.  As discussed above, the production of FBI materials only contains a select subset of the documents that were responsive to Plaintiff's subpoena.  Noticeably absent from the file of FBI notes is a document recording the unsolicited call from Roosevelt Inn owner Blanche Bersch, who spoke to an FBI agent about the ongoing investigation of hotels in Northeast Philadelphia and pledged her support to the investigation.  There was no basis to withhold this information from the production and its absence demonstrates that the production was incomplete.  Defendants are unfairly prejudiced by the absence of this information in the USAO's production and by their inability to know what other information was withheld.

25.     The fairness standard of Rule 106 aligns with the untrustworthiness standard of Rules 803(6) and 803(8), exceptions to the business and public record exceptions to the hearsay rule.  By any possible measure, even aside from hearsay, the FBI documents are incomplete and entirely untrustworthy.

26.     The untrustworthiness and incompleteness of the documents warrant their exclusion pursuant to Pa. R. E. 403 as well.  Rule 403 permits a court to exclude relevant evidence where "its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  In deciding an evidentiary issue, courts balance the probative value of the evidence with the prejudicial impact the evidence could have on the party against whom it is offered.  *See* Pa. R. E. 403; *see also Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).

27.     As discussed above, because the FBI documents are incomplete, untrustworthy and containing layers of hearsay, they are not property admitted evidence.  Unreliable and

10

Case ID: 170300712
Control No.: 21060532

unverifiable hearsay remarks of [REDACTED] provide salacious material for Plaintiff to make sensational claims that will catch a jury's attention. But the rules of this court require evidence to be not only legitimate and relevant, but also fairly admitted. The probative versus prejudicial analysis tips strongly in favor of excluding the FBI documents.

28. The FBI documents are subject to exclusion pursuant to Pa. R. E. 404 as well. Unsubstantiated and unreliable comments from unrelated persons concerning the Roosevelt Inn in time periods other than the period of Plaintiff's claims cannot be admitted into evidence to suggest that the Roosevelt Defendants conducted themselves in any manner during the relevant time period with respect to the relevant parties in this action. This is precisely the type of evidence that Rule 404 precludes. *See U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that Fed. R. 404(b) seeks to prevent").

29. Decisions on admissibility are within the sound discretion of the trial court. *U.S. Bank, N.A. v. Pautenis*, 118 A.3d at 391 (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)). See also *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015), cert. denied, 137 S. Ct. 92 (U.S. 2016); *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995). Evidence from unidentified, unreliable sources relating to irrelevant matters would be not only prejudicial to defendants but would also be misleading to the jury, confusing the issues and evidence the jury needs to consider. "[I]t is the duty of the trial judge, . . . to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues." *Geesey v. Albee Pa. Homes, Inc*., 235

11

Case ID: 170300712
Control No.: 21060532

A.2d 176, 180 (Pa. Super. 1967); *Commonwealth v. Hicks,* 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific").

WHEREFORE, the Roosevelt Defendants respectfully request this Court enter the attached Order to Exclude and Preclude the FBI materials produced by the U.S. Attorney's Officer for the Eastern District of Pennsylvania.

**BLANK ROME LLP**

Dated: June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
   keddy@blankrome.com
   byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire,<br><br>      Plaintiff,<br><br>  v.<br><br>ROOSEVELT INN LLC d/b/a ROOSEVELT<br>INN and ROOSEVELT INN CAFÉ, et al.,<br>ROOSEVELT MOTOR INN, INC. d/b/a<br>ROOSEVELT MOTOR INN, UFVS<br>MANAGEMENT COMPANY, LLC,<br>YAGNA PATEL and ALPHA-CENTURION<br>SECURITY, INC. d/b/a ALPHA CENTURION<br>SECURITY INC.<br><br>      Defendants,<br><br>  v.<br><br>DAIQUAN DAVIS and ABDUL LOPEZ<br><br>      Additional Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL TRIAL DIVISION<br><br>MARCH TERM, 2017<br>NO.: 00712<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS ROOSEVELT INN LLC, ET AL.'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**<u>PRECLUDE AND EXCLUDE INADMISSIBLE EVIDENCE</u>**

Case ID: 170300712
Control No.: 21060532

## I.    MATTER BEFORE THE COURT

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by their undersigned attorneys, hereby file this memorandum of law in support of their motion to preclude documents produced by the U.S. Attorney's Office for the Eastern District of Pennsylvania. The documents are inadmissible because they contain hearsay and double hearsay statements, are incomplete, untrustworthy and unfairly prejudicial.

## II.    QUESTION INVOLVED

Should the Court grant the Motion of the Roosevelt Defendants and exclude from the trial FBI materials produced by the Office of the U.S. Attorney's Officer for the Eastern District of Pennsylvania?

Suggested answer:  Yes.

The documents in question, which are heavily redacted so as to remove *all* identifying information, such as names, dates, addresses and any other identifying information, contain hearsay and double hearsay statements. Additionally, they are incomplete and therefore, entirely untrustworthy. The documents are inadmissible and must be excluded pursuant to Rules of Evidence 106, 404, 801, 802 and 803.

## III.    FACTUAL BACKGROUND

Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. In her Complaint, Plaintiff alleged that from 2013 through 2014, she was "recruited, enticed, solicited, harbored, and/or transported to engage

Case ID: 170300712
Control No.: 21060532

in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis." Plaintiff amended her Complaint several times. Her last Amended Complaint includes solely claims of negligence against the Roosevelt Inn and her factual allegations narrow the time period in which she was alleged trafficked at the Roosevelt Inn to a limited period in the first half of 2014.

### A. The FBI Materials at Issue

In February 2019, Plaintiff served a Notice of Intent to serve a subpoena upon the U.S. Attorney's Office for the Eastern District of Pennsylvania ("USAO") and the FBI for "all non-grand jury material related to all investigations of human trafficking that occurred at the Roosevelt Inn." *See* Exhibit A, subpoena to FBI and USAO. United States Attorney William McSwain initially refused to produce any responsive documents, citing certain statutory authority that prohibited production. *See* Exhibit B. U.S. Attorney McSwain noted that some portion of the records sought by Plaintiff could be obtained through publicly available sources and/or from the criminal defense attorneys for Daiquan Davis and Abdul Lopez, the traffickers Plaintiff identified, subject to protective orders.

Accordingly, Plaintiff served subpoenas on criminal defense attorneys for Davis and Lopez, the parties signed federal protective orders and the respective attorneys produced the requested records.

On June 18, 2020, the USAO wrote again to Plaintiff's counsel responding to requests made directly to the FBI and a "separate request" for information relating to [REDACTED]. The USAO objected to the request as "overly broad and unduly burdensome," noting that the FBI would have to search the entirety of its criminal investigative files for potentially responsive information. The USAO also criticized the request because it implicated the review of a

3

Case ID: 170300712
Control No.: 21060532

significant number of files that might make only tangential reference to the hotels at issue. However, the USAO advised that the FBI [REDACTED]. Exhibit C, June 18, 2020 correspondence.

The Roosevelt Defendant opposed any production by the USAO and objected to the USAO's subjective modification of Plaintiff's request. *See* Exhibit D, November 11, 2020 correspondence from counsel for the Roosevelt Defendants. The reasons for the Roosevelt Defendants objections were 1) that the USAO's agreement to produce records solely as to the Roosevelt Inn and no other hotels was arbitrary and imprudent; 2) The FBI's agreement to produce partial records based on the FBI's modification of Plaintiff's request, limited to the Roosevelt Inn, would result in a selective, incomplete and misleading production of information; and 3) the FBI's limited search and selection of documents would be highly and unfairly prejudicial to the Roosevelt Defendants. Over the Roosevelt Defendants' objections, the USAO produced the documents ("FBI materials") in March 2021.

B.    **The FBI Materials are Incomplete**

As the Roosevelt Defendants had predicted, the FBI materials included a select and incomplete portion of the FBI files relating to the Roosevelt Inn. For example, the records indicate that the FBI was [REDACTED]. The production includes notes of the FBI personnel participating in the investigation. Blanche Bersch, trustee of a trust that is a part owner of the Roosevelt Inn, testified in this case that Roosevelt Inn had been contacted by the FBI. Bersch directly contacted an FBI agent who was involved in the investigation. According to Bersch, the agent (whose last name Bersch did not recall) informed her that [REDACTED]. Bersch pledged the Roosevelt Inn's and her cooperation in the investigation. *See* Exhibit F, Bersch transcript at 38-39, 43-44. The FBI materials do not include any notes or other reference to the

4

Case ID: 170300712
Control No.: 21060532

communication between the FBI and Bersch.  This omission illustrates the selectiveness and incompleteness of the USAO's production.

The FBI materials also do not include any reference to the completion or suspension of the investigation or the outcome of the investigation, which according to the documents spanned fourteen months.  The USAO did not charge the Roosevelt Defendants or any of its principals as a result of the investigation, but the selective document production includes no reference to a decision not to charge or the bases for that decision.

Plaintiff's final Amended Complaint alleges that her alleged trafficking at the Roosevelt Inn took place over a couple of months in 2014 and with only the "constructive knowledge" of the Roosevelt Defendants.  Plaintiffs' latest version of the alleged "facts" is refuted by evidence that shows that the Plaintiff was in other locations during the time she claims she was being held at the Roosevelt Inn.  In fact, to date, Plaintiff has failed to identify a single calendar day that she was at the Roosevelt Inn.  It can be verified, however, that Plaintiff [REDACTED].  As noted, [REDACTED].  None of the documents in the USAO production are dated during the time period Plaintiff alleges she was trafficked at the Roosevelt Inn.

**C.    The FBI Materials are Inadmissible**

The FBI materials are heavily redacted such that all names and other identifying information, such as addresses and dates have been removed.  The redaction of identifying information renders the remaining information not only inherently unreliable but also highly prejudicial.  According to the records, the FBI [REDACTED].  Not only do the documents constitute hearsay, since all identifying information has been removed, the statements in the documents cannot be investigated or verified.  For example, one note states, [REDACTED]. Another note states, [REDACTED].   The documents are unfairly prejudicial as they are clearly

5

Case ID: 170300712
Control No.: 21060532

inflammatory and sensational but lack any basis for reliability since they are entirely unverifiable. The FBI materials cannot properly be admitted as evidence.

Nearly the entirety of the production constitutes inadmissible hearsay and in many cases, double hearsay. The FBI notes allegedly report conversations with unnamed persons and observations by unnamed agents. In most of the documents, the FBI personnel involved in the reports are not named. Where agents are named, the notes are nonetheless hearsay statements recorded by the notes' authors, rather than statements of fact or personal knowledge.

Because key information has been redacted and removed, the FBI materials are incomplete and therefore, unreliable. Plaintiff's "evidence" in this case has been riddled with inconsistent "facts" regarding her actions and whereabouts during the relevant time period. The FBI materials are sensationalistic and prejudicial, but inherently unreliable. The documents do not offer facts to assist the jury, but rather will serve only to unfairly prejudice defendants. Such evidence is not admissible in this Court.

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

IV.     **ARGUMENT**

D.     **The FBI Materials Are Inadmissible Hearsay**

The FBI documents produced by the USAO contain nothing but hearsay and double hearsay.  The notes, many prepared by **unidentified** personnel, report conversations the FBI personnel had with **unidentified** third parties.  The third parties – the declarants – are not identified by name or in any other respect and in many cases, the documents report that declarants are repeating statements told to them by other unidentified persons.  These statements are hearsay and double hearsay.

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement."  *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R. E. 801.  A hearsay statement is inadmissible unless it falls into one of the enumerated exceptions set forth in the Pennsylvania Rules of Evidence.  See Pa. R. E. 802.  None of the exceptions set forth in P. R. E. 803 applies to unauthenticated statements made by unidentified, absent persons.

E.     **Exceptions to the Hearsay Rule Will Not Apply to Render the Documents Admissible**

The FBI records cannot be offered under Rule 803(6), pertaining to business records because with all identifying information removed, the documents are incomplete and untrustworthy.  Even if a witness appears to testify that the records are those of the type kept in the normal course of business of the FBI, the documents are inherently untrustworthy since all identifying information is redacted or deleted.  Pa. R. E. 803(6)(E) (business records exception does not apply when "the sources of information or other circumstances indicate lack of trustworthiness."); *Commonwealth v. Zimmerman*, 571 A.2d 1062, 1068 (Pa. Super. 1990) (holding that court may exclude an untrustworthy business record). See also *Liles v. Balmer*, 567

7

Case ID: 170300712
Control No.: 21060532

A.2d 691, 693 (Pa. Super. 1989) (citing *Ganster v. Western Pennsylvania Water Co.*, 504 A.2d 186, 189-190 (Pa. Super. 1985)):

> To satisfy the requirements of the Uniform Business Records in Evidence, Act, 42 Pa.C.S. § 6108(b), a report must: (1) have been made at or near the time of the events it purports to relate; (2) be generated as a regular practice of the business; and (3) be trustworthy as to the source of information or the method or circumstances of preparation.

See also *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 401 (Pa. Super. 2015) (holding untrustworthy and incomplete records sought to be admitted as business records were properly excluded as hearsay).[3]

The incomplete state of the FBI materials also runs afoul of Pa. R. E. 106, which provides that "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part-or any other writing or recorded statement-that in fairness ought to be considered at the same time." Because of the incomplete state of FBI materials, defendants do not have the opportunity to challenge or even understand the documents. "[Rule 106's] primary purpose is to correct misleading or impartial [*sic*] evidence." *Commonwealth v. Bryant*, 57 A.3d 191, 195 (Pa. Super. 2012) (citing *Commonwealth v. Passmore*, 857 A.2d 697, 712 (Pa. Super. 2004)). See also *Commonwealth v. McClure*, 144 A.3d 970, 976-977 (Pa. Super. 2016) (holding it was error for trial court to admit redacted and incomplete writing). In their current, redacted, incomplete condition, the documents are clearly misleading and are not impartial. They provide no valid evidentiary value but would be highly and unfairly prejudicial to Defendants.

---

[3] Further, only factual information from the business records is admissible. If the FBI records were admitted as business records pursuant to Rule 803(6), opinions in the records are not admissible. *In re A.J.R.-H*, 188 A.3d 1157, 1169 (Pa. 2018); *Williams v. McClain*, 520 A.2d 1374, 1376-77 (Pa. 1987); *Commonwealth v. DiGiacomo*, 345 A.2d 605 (Pa. 1975).

8

Case ID: 170300712
Control No.: 21060532

The documents are incomplete in another respect because they contain only a select subset of the documents that were responsive to Plaintiff's subpoena. Noticeably absent from the file of FBI notes is a document recording the unsolicited call from Roosevelt Inn owner Blanche Bersch, who spoke to an FBI agent about the ongoing investigation of hotels in Northeast Philadelphia and pledged her support to the investigation. Moreover, there are no documents in the production referencing the completion or suspension of the investigation. There was no basis to withhold this information from the production and its absence demonstrates that the production was incomplete. Defendants are unfairly prejudiced by the absence of this information in the USAO's production and by their inability to know what other information was withheld. The fairness standard of Rule 106 aligns with the untrustworthiness standard of Rules 803(6) and 803(8), exceptions to the business and public record exceptions to the hearsay rule. By any possible measure, even aside from hearsay, the FBI documents are incomplete and entirely untrustworthy.

**F.    The FBI Materials Contain Double Hearsay**

In addition to the inadmissibility of the FBI materials due to their incompleteness, the records are, for the most part, inadmissible double hearsay. *Commonwealth v. Laich*, 777 A.2d 1057, 1060 (Pa. 2001). "Where a hearsay document contains additional hearsay within it (often referred to as "double hearsay"), each level of hearsay must satisfy an exception to the rule prohibiting the admission of hearsay evidence." *In re A.J.R.-H*, 188 A.3d 1157, 1169-1170 (Pa. 2018) (citing *Commonwealth v. Ogrod*, 839 A.2d 294, 327 n.23 (Pa. 2003)). "In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established." *Commonwealth v. Laich*, 777 A.2d at 1060 (quoting *Commonwealth v. Chmiel*, 738 A.2d 406, 414 (Pa. 1999), cert. denied, 528 U.S. 1131 (2000)); *Commonwealth*

9

Case ID: 170300712
Control No.: 21060532

*May*, 898 A.2d 559, 565-566 (Pa. 2006) (holding hearsay statements in police investigative report were double hearsay and properly excluded). While parts of a document might be admitted, hearsay statements in the documents attributed to others must still be excluded.

Plaintiff has subpoenaed retired FBI Agent [REDACTED] to appear at trial for examination regarding the FBI materials. Offering Agent's [REDACTED] testimony will not suffice to overcome the evidentiary obstacles to the admission of the documents. Regardless of the testimony, the records are incomplete, contain hearsay statements and are inherently untrustworthy.

G.      **The FBI Materials Are Unfairly Prejudicial**

The incompleteness and inherent untrustworthiness of the documents warrant their exclusion pursuant to Pa. R. E. 403 as well. Rule 403 permits a court to exclude relevant evidence where "its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In deciding an evidentiary issue, courts balance the probative value of the evidence with the prejudicial impact the evidence could have on the party against whom it is offered. See Pa. R. E. 403; *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).

As discussed above, defendants have no ability to identify any of the alleged witnesses referenced in the documents and no ability to verify any of the statements. In addition to the other bases to exclude the documents, their inclusion would be unfair under Rule 403. Unreliable and unverifiable hearsay remarks of [REDACTED] for Plaintiff to make sensational claims that will catch a jury's attention. But the rules of this court require evidence to be not

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

only legitimate and relevant, but also fairly admitted.  The probative versus prejudicial analysis tips strongly in favor of excluding the FBI documents.

### H.    <u>The FBI Materials Are Improper Character Evidence</u>

The FBI materials are subject to exclusion pursuant to Pa. R. E. 404 as well. Unsubstantiated and unreliable comments from unrelated persons concerning the Roosevelt Inn in time periods other than the period of Plaintiff's claims cannot be admitted into evidence to suggest that the Roosevelt Defendants conducted themselves in any manner during the relevant time period with respect to the relevant parties in this action.  This is precisely the type of evidence that Rule 404 precludes.  See *U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that Fed. R. 404(b) seeks to prevent").

Decisions on admissibility are within the sound discretion of the trial court.  *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 391 (Pa. Super. 2015) (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)).  See also *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015); *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).   Evidence from unidentified, unreliable sources relating to irrelevant matters would be not only prejudicial to defendants but would also be misleading to the jury, confusing the issues and evidence the jury needs to consider.  "[I]t is the duty of the trial judge, . . . to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues."  *Geesey v. Albee Pa. Homes, Inc*., 235 A.2d 176, 180 (Pa. Super. 19967); *Commonwealth v. Hicks,* 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific").

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

## V. **RELIEF REQUESTED**

Pursuant to Pennsylvania Rules of Evidence 106, 403, 404, 602, 801, 802 and 803, the

Roosevelt Defendants respectfully request this Court enter the attached Order Excluding the FBI

Materials produced by the U.S. Attorney's Office.

**BLANK ROME LLP**

Dated:  June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID # 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

## <u>CERTIFICATE OF SERVICE</u>

I, Justina L. Byers, Esquire, hereby certify that, on this 2nd day of June 2021, I caused a true and correct copy of the foregoing Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's Motion to Exclude Evidence and accompanying memorandum of law to be served via the Court's electronic filing system and/or electronic mail and/or First Class Mail upon the following:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA  19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

Case ID: 170300712
Control No.: 21060532

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

*Additional Defendant*

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*

*/s/ Justina L. Byers*
JUSTINA L. BYERS

150213.00601/126087960v.1

Case ID: 170300712
Control No.: 21060532

FILED
02 JUN 2021 04:38 pm
Civil Administration
F. HEWITT

|  | : |  |
|---|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire, | : | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
|  | : |  |
| Plaintiff, | : | CIVIL ACTION – LAW |
|  | : |  |
| v. | : | MARCH TERM, 2017 |
|  | : | Civil Action No.: 00712 |
| ROOSEVELT INN LLC | : |  |
| d/b/a ROOSEVELT INN and | : |  |
| ROOSEVELT INN CAFÉ, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| DAIQUAN DAVIS AND ABDUL LOPEZ, | : |  |
|  | : |  |
| Additional Defendants. | : |  |

## ORDER

**AND NOW**, this _____ day of _____, 2021, upon consideration of

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor

Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's

Motion to Exclude Video Footage from January 2, 2015 and any response thereto, it is hereby

ORDERED that said Motion is GRANTED.

At the trial in this matter, the parties shall be precluded from introducing surveillance

video footage taken at the Roosevelt Inn on January 2, 2015.

**BY THE COURT:**

_____
J.

150213.00601/125132538v.1

Case ID: 170300712
Control No.: 21060490

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
      keddy@blankrome.com
      byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | |
| | MARCH TERM, 2017 |
| v. | NO.: 00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | JURY TRIAL DEMANDED |
| Defendants, | |
| v. | |
| DAIQUAN DAVIS and ABDUL LOPEZ | |
| Additional Defendants. | |

**MOTION TO PRECLUDE AND EXCLUDE REFERENCES
TO AND VIDEO FOOTAGE FROM JANUARY 2, 2015**

150213.00601/125132538v.1

Case ID: 170300712
Control No.: 21060490

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by and through their undersigned attorneys, hereby move the Court to enter an Order precluding surveillance video footage taken at Roosevelt Inn on January 2, 2015, many months after the relevant time period of Plaintiff's allegations. In support of this motion, the Roosevelt Defendants aver as follows:

## I.   **BACKGROUND**

1.      Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. ("Alpha"). Plaintiff amended her Complaint multiple times, including revising allegations regarding the length of time and the period of time in which she alleges she was trafficked. Her most recent Amended Complaint, which is based solely on claims of common law negligence, narrows the time period of her alleged trafficking to *several months in the first half of 2014* (the "Relevant Time Period"). Plaintiff testified that she turned herself into the Philadelphia Department of Human Services ("DHS") on June 6, 2014.

2.      On March 30-31, 2014, a shooting incident occurred at the Roosevelt Inn. The shooting incident has no connection to Plaintiff or her claims in this case. The Roosevelt Defendants immediately provided the surveillance footage to the Philadelphia Police to aid in their investigation into the shooting.

3.      In the course of discovery in this case, Plaintiff requested, and the Roosevelt Defendants produced the video footage from the March 30-31, 2014 shooting incident (the same footage the Roosevelt Defendants had provided to Philadelphia Police), despite that the shooting incident is not relevant to Plaintiff's claims. In addition, Plaintiff subpoenaed the Philadelphia

2

Case ID: 170300712
Control No.: 21060490

District Attorney's Office for the video files that the Roosevelt Defendants had voluntarily produced to the Philadelphia Police Department. The video files produced by the Philadelphia District Attorney's Office included footage from March 30-31, 2014 and inexplicably, footage January 2, 2015.

4. The Roosevelt Defendants have filed a separate motion to exclude all reference to the March 30-31, 2014, including the video footage, since the shooting has no relevance to Plaintiff's claims. Accordingly, the instant motion pertains only to the January 2, 2015 footage.

5. In August 2020, defendant Alpha amended its crossclaims against the Roosevelt Defendants, adding allegations that the video footage Plaintiff obtained from the District Attorney's Office had been altered, *i.e.*, that brief portions were intentionally deleted. Alpha accused the Roosevelt Defendants of "egregious spoliation." In seeking leave to amend its crossclaims, Alpha did not address obvious issues such as the chain of custody of the video files produced by the District Attorney's Office 3½ years after the Roosevelt Defendants had provided them to police; how and why the Roosevelt Defendants could or would "intentionally" destroy parts of the video files; or most glaring, why the footage is relevant to Alpha, since Alpha had no guards on duty at the Roosevelt Inn the night of March 30-31, 2014.

6. Presumably in support of its absurd spoliation theory, Alpha submitted an expert report on January 14, 2021, prepared by Jake Stone (the "Stone Report"), who reportedly analyzed the video files from March 30-31, 2014 and January 2, 2015. Exhibit A, Stone Report.

7. In his report, Stone concluded that video footage recorded on 17 different cameras throughout the Roosevelt Inn property included brief lapses because the motion detection settings on four of the 17 cameras had been "poorly" configured. The Stone Report does not support Alpha's ludicrous accusations that the Roosevelt Defendants deliberately destroyed

3

Case ID: 170300712
Control No.: 21060490

video evidence. Rather, the Stone Report concludes that the installer of four of the 17 cameras failed to set motion detection settings properly, which resulted at times, in brief lapses between two neighboring cameras in recording continuous motion. The Stone Report emphasizes the absurdity of Alpha's spoliation allegations.

8. The Stone Report also highlights the complete lack of relevance of video footage from January 2, 2015, which was recorded seven months after Plaintiff alleges she voluntarily returned to DHS custody. Neither Alpha nor Stone has offered any explanation as to why video from January 2, 2015 would be useful or relevant evidence in this case.

9. Plaintiff's theory of the instant litigation is that the Roosevelt Defendants were negligent in failing to recognize and prevent her alleged sex trafficking. Plaintiff alleges that the Roosevelt Defendants failed to implement procedures and monitor the hotel premises so as to prevent Plaintiff's alleged trafficking. Plaintiff's Fourth Amended Complaint, at ¶ 74. Accordingly, the temporal scope of relevant evidence is limited to the Relevant Time Period, during which Plaintiff claims she was on site at the Roosevelt Inn. Since the January 2, 2015 video footage post-dates Plaintiff's alleged presence at the Roosevelt Inn by seven months, it is not relevant and should be excluded.

## II. LEGAL ARGUMENT

### A. Evidence Relating to the Roosevelt Inn in January 2015 Is Not Relevant

10. Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa. R. E. 401. If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove,

4

Case ID: 170300712
Control No.: 21060490

then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial. Pa. R. E. 402.

11.     The video footage from January 2, 2015 is not relevant and should be excluded. Incidents that allegedly took place at the Roosevelt Inn seven months after the relevant time period of Plaintiff's claims do not tend to prove or disprove Plaintiff's allegations of sex trafficking during the Relevant Time Period. See *Mazzeo v. SpectaGuard Acquisition, LLC*, C.A. No. 02981, 2008 Phila. Ct. Com. Pl. LEXIS 158 *4-5 (Phila. Cty. June 10, 2008) (excluding as not relevant evidence of defendant's practices from an earlier time period than those of Plaintiff's claims); *Katz v. Strawbridge & Clothier*, C.A. No. 3332, 1993 Phila. Cty. Rptr. LEXIS 35, *7-8 (Phila. Cty. 1993) (excluding as not relevant evidence pertaining to conditions before and after event giving rise to Plaintiff's claims).

12.     Decisions on admissibility are within the sound discretion of the trial court. *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 391 (Pa. Super. 2015) (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)). See also *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015); *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995). Evidence relating to events or conditions after the time period of Plaintiff's allegations would be not only prejudicial to defendants but would also be misleading to the jury, confusing the issues and evidence the jury needs to consider. "[I]t is the duty of the trial judge, . . . to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues." *Geesey v. Albee Pa. Homes, Inc.*, 235 A.2d 176, 180 (Pa. Super. 19967); *Commonwealth v. Hicks*, 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific").

5

Case ID: 170300712
Control No.: 21060490

WHEREFORE, the Roosevelt Defendants respectfully request this Court enter the attached Order to exclude the video footage taken from the Roosevelt Inn from January 2, 2015 and all references to such footage.

**BLANK ROME LLP**

Dated: June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

6

Case ID: 170300712
Control No.: 21060490

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
      keddy@blankrome.com
      byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire,<br><br>          Plaintiff,<br><br>      v.<br><br>ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC.<br><br>          Defendants,<br><br>      v.<br><br>DAIQUAN DAVIS and ABDUL LOPEZ<br><br>          Additional Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL TRIAL DIVISION<br><br>MARCH TERM, 2017<br>NO.: 00712<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS ROOSEVELT INN LLC, ET AL.'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO
<u>EXCLUDE REFERENCES AND VIDEO FOOTAGE FROM JANUARY 2, 2015</u>**

Case ID: 170300712
Control No.: 21060490

## I.  MATTER BEFORE THE COURT

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by their undersigned attorneys, hereby file this memorandum of law in support of their motion to exclude surveillance video footage taken at the Roosevelt Inn on January 2, 2015 and any reference to such footage.  The January 2, 2015 video was taken seven months after Plaintiff voluntarily returned to the custody of the Philadelphia Department of Human Services ("DHS") and is not relevant to this action.

## II.  QUESTION INVOLVED

Should the Court grant the Motion of the Roosevelt Defendants and exclude the January 2, 2015 video footage and reference to such footage?

Suggested answer:  Yes.

Evidence from January 2, 2015 is not relevant to this litigation.  Plaintiff testified the period of her trafficking ended on June 6, 2014, when she left the Roosevelt Inn and returned voluntarily to the custody of DHS.  Surveillance video taken seven months after Plaintiff left the Roosevelt Inn is of no relevance and should be excluded.

## III.  FACTUAL BACKGROUND

Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. ("Alpha").  Plaintiff amended her Complaint several times.  Her last Amended Complaint includes solely claims of negligence against the Roosevelt Inn and her factual allegations narrow the time period in which she was alleged trafficked at the Roosevelt Inn to a limited period in the first half of 2014.  Plaintiff claims that

2

Case ID: 170300712
Control No.: 21060490

she was "recruited, enticed, solicited, harbored, and/or transported to engage in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis." She alleges generally that the Roosevelt Defendants were negligent in not recognizing that Plaintiff was being trafficked and not acting to prevent it.

In the course of discovery, Plaintiff obtained, pursuant to subpoena issued to the Philadelphia District Attorney's Office, surveillance video footage recorded at the Roosevelt Inn on January 2, 2015, a date that has no relevance to this litigation. Notwithstanding that the January 2, 2015 footage is not relevant to Plaintiff's claims, Alpha engaged an expert, Jake Stone, to analyze the January 2, 2015 footage, along with footage from a shooting incident that took place at the Roosevelt Inn on March 30-31, 2014. Alpha had its expert analyze the video footage in pursuit of support for its absurd and baseless claims that the Roosevelt Defendants had deliberated altered the video files, committing "egregious spoliation" of evidence.

The basis for Alpha's preposterous claim are brief lapses or gaps in the video files, where neighboring cameras fail to record continuous, uninterrupted motion from one camera range to the next. Stone, Alpha's retained expert, concluded that the gaps or lapses resulted from poorly configured motion detector settings on 4 of the 17 cameras at the Roosevelt Inn. Rather than unveiling "egregious spoliation," Stone opined that the contractor who installed the Roosevelt Inn's camera system failed to properly adjust the motion detector settings on 4 of the 17 cameras, and when all the camera views were viewed together, several brief lapses or gaps appeared in the videos. Stone's conclusions are hardly the smoking gun Alpha was seeking to substantiate its claims of intentional spoliation.

Notwithstanding Stone's conclusions, which debunk Alpha's claims that the Roosevelt Defendants intentionally destroyed evidence, the video from January 2, 2015 is not relevant to

150213.00601/125132538v.1

Case ID: 170300712
Control No.: 21060490

this case. Plaintiff testified that her trafficking ended when she voluntarily returned to DHS custody in June 2014. There is no connection between the January 2, 2015 video files and Plaintiff's claims in this case. Accordingly, the January 2, 2015 video files and all references thereto should be excluded from the trial in this matter.

IV. **LEGAL ARGUMENT**

A. **Information Relating to Incidents, Conditions, Alleged Acts and Omissions After June 6, 2014 Is Not Relevant**

Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa. R. E. 401. If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial. Pa. R. E. 402.

Plaintiff, after amending her pleadings repeatedly and in the face of evidence refuting her claims, has identified the relevant time period of her claims against the Roosevelt Inn to January 1, 2014 to June 6, 2014. Evidence relating to incidents that might have occurred or alleged acts or omission of the Roosevelt Defendants seven months after June 6, 2014 is not relevant to Plaintiff's claims. Surveillance video from January 2015 is of no relevance to this case; the contents of the video do not make any fact of the case more or less probable. See *Mazzeo v. SpectaGuard Acquisition, LLC*, C.A. No. 02981, 2008 Phila. Ct. Com. Pl. LEXIS 158 *4-5 (Phila. Cty. June 10, 2008) (excluding as not relevant evidence of defendant's practices from an earlier time period than those of Plaintiff's claims); *Katz v. Strawbridge & Clothier*, C.A. No.

150213.00601/125132538v.1

Case ID: 170300712
Control No.: 21060490

3332, 1993 Phila. Cty. Rptr. LEXIS 35, *7-8 (Phila. Cty. 1993) (excluding as not relevant evidence pertaining to conditions before and after event giving rise to Plaintiff's claims).

Pursuant to Rule 403 of the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Pa. R. E. 403. In deciding an evidentiary issue, courts balance the probative value of the evidence with the prejudicial impact the evidence could have on the party against whom it is offered. See Pa. R. E. 403; *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995). "Unfair prejudice supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially." *Carlini v. Glenn Hawbaker, Inc*., 219 A.3d 629, 639 (Pa. Super. 2019).

Evidence pertaining to events or conditions at the Roosevelt Inn seven months after the Relevant Time Period would be proffered not because of a connection to Plaintiff's allegations but for the purpose of portraying the Roosevelt Inn in a negative light. Such evidence could also be confusing and misleading to the jury. This Court has the discretion to exclude evidence that is not relevant and would be confusing or misleading to the jury. The Court, therefore, should exclude the video recorded on January 2, 2015 and all references to it.

## V.  **RELIEF REQUESTED**

Pursuant to Pennsylvania Rules of Evidence 401, 402 and 403, the Roosevelt Defendants respectfully request this Court enter the attached Order excluding video footage recorded at the Roosevelt Inn on January 2, 2015 and all references to it.

5

Case ID: 170300712
Control No.: 21060490

**BLANK ROME LLP**

Dated:  June 2, 2021

/s/ Charles S. Marion
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
         keddy@blankrome.com
         byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

6

Case ID: 170300712
Control No.: 21060490

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that, on this 2nd day of June 2021, I caused a true and correct copy of the foregoing Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's Motion to Exclude Evidence and accompanying memorandum of law to be served via the Court's electronic filing system and/or electronic mail and/or First Class Mail upon the following:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

Case ID: 170300712
Control No.: 21060490

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

*Additional Defendant*

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*

*/s/ Justina L. Byers*
JUSTINA L. BYERS

150213.00601/125132538v.1

| | | |
|---|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire, | : | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| | : | |
| Plaintiff, | : | CIVIL ACTION – LAW |
| | : | |
| v. | : | MARCH TERM, 2017 |
| | : | Civil Action No.: 00712 |
| ROOSEVELT INN LLC | : | |
| d/b/a ROOSEVELT INN and | : | |
| ROOSEVELT INN CAFÉ, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| v. | : | |
| | : | |
| DAIQUAN DAVIS AND ABDUL LOPEZ, | : | |
| | : | |
| Additional Defendants. | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2021, upon consideration of

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor

Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's

Motion to Preclude and Exclude Inadmissible Evidence and any response thereto, it is hereby

ORDERED that said Motion is GRANTED. At the trial in this matter, the parties shall be

precluded from introducing into evidence television, online and print news stories concerning the

Roosevelt Defendants, Trip Advisor reviews, and Facebook or other social media posts regarding

the Roosevelt Inn.

**BY THE COURT:**

_____

J.

Case ID: 170300712
Control No.: 21060528

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
    keddy@blankrome.com
    byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | |
| v. | MARCH TERM, 2017 NO.: 00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | JURY TRIAL DEMANDED |
| Defendants, | |
| v. | |
| DAIQUAN DAVIS and ABDUL LOPEZ | |
| Additional Defendants. | |

## MOTION TO PRECLUDE AND EXCLUDE INADMISSIBLE EVIDENCE

Case ID: 170300712
Control No.: 21060528

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by and through their undersigned attorneys, hereby move the Court to enter an Order precluding any reference at trial to television, online and print news stories relating to the Roosevelt Defendants, Trip Advisor reviews, and Facebook or other social media posts regarding the Roosevelt Inn.  In support of this motion, the Roosevelt Defendants aver as follows:

I.    **BACKGROUND**

2.    Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc.  Plaintiff amended her Complaint multiple times. Her most recent Amended Complaint is based solely on claims of common law negligence and narrows the time period of her alleged trafficking to several months in 2014.

3.    During the course of discovery, Plaintiff identified two who she alleges acted as her traffickers during the relevant time period.  The Roosevelt Defendants joined the two men, Daiquan Davis ("Davis") and Abdul Lopez ("Lopez"), as Additional Defendants to this action. Both Davis and Lopez are in federal prison, serving sentences for sex trafficking.

4.    Plaintiff's 2017 initial Complaint spurred an onslaught of negative publicity painting the Roosevelt Inn as a hub of human trafficking, drugs and other crimes.  Plaintiff's initial Complaint, replete with inaccuracies, opened the door for continued sensational, albeit inaccurate, reporting.

5.    The initial Complaint filed in March 2017 garnered a significant amount of publicity, as Plaintiff's counsel proclaimed it was the first case to be filed pursuant to

2

Case ID: 170300712
Control No.: 21060528

Pennsylvania's Human Trafficking statute, enacted in 2014. The new reports, however, were wildly inaccurate. For example, the day the Complaint was filed, headlines proclaimed that a minor was held as a sex slave at the hotel for two years and was forced to have sex with more than 1,000 men. Below is a sampling of headlines for articles printed locally, nationally and even internationally, within a week of Plaintiff's initial Complaint:

- March 10, 2017, "Suit: Philadelphia motel gave rooms to human traffickers," Associated Press;

- March 11, 2017, "Suit: Motel gave rooms to human traffickers in Northeast Philadelphia,"6abc.com;

- March 11, 2017, "First of its kind lawsuit accuses NE Philly hotel of accommodating sex trafficking," Philadelphia Inquirer;

- March 12, 2017, "Pa. hotel sued for providing rooms for prostitution, human trafficking," www.pennlive.com;

- March 13, 2017, "Teenage girl was forced to have sex with 1,000 men at Phila. motel while being held against her will for two years," Mail Online;

- March 13, 2017, "Philadelphia Teen Claims Motel Knew She Was Being Sex Trafficked but Did Nothing," people.com;

- March 14, 2017, "Motel Accused of Turning a Blind Eye to Child Sex-Trafficking," www.courthousenews.com;

- March 14, 2017, "Motel Turned Blind Eye To Child Sex Traffickers For Profit, Suit Claims," Huffington Post;

- March 14, 2017, "Teen 'sex slave' sues motel where alleged abuse took place," www.nypost.com;

- March 14, 2017, "Forced to have sex with 1000 men, a girl is now suing the motel," www.WashingtonPost.com;

- March 14, 2017, "Girl, 14, who was 'forced to have sex with over 1,000 men in 2 YEARS' is suing the hotel that 'let it happen,'" Mirror (UK);

- March 15, 2017, "Sex trafficking victim sues U.S. motel in landmark case," www.reuters.com;

150213.00601/125099348v.1

Case ID: 170300712
Control No.: 21060528

- March 15, 2017, "14 year old Philadelphia girl sues motel for being forced into sex trade with 1,000 men," International Business Times India;

- March 16, 2017, "Sex trafficking victim sues motel in key case," The Nelson Mail (New Zealand);

- March 17, 2017, "Victim Brands PA motel as sex den," South Asian Times.

- July 15, 2017, "Philadelphia Teen Claims Motel Knew She Was Being Sex Trafficked but Did Nothing," www.foxnews.com;

- October 14, 2018, "Human Trafficking happens here: Brainwashing, fear drug addiction used to control victims," York Daily Record;

See Exhibit A, a sampling of the articles referenced above.

6. The Philadelphia Inquirer's March 10, 2017 article, headlined, "First of kind lawsuit accuses N.E. Philly hotel of accommodating sex trafficking," referred to the Roosevelt Inn as "the city's "epicenter of human trafficking," a phrase that has been repeated in the press numerous times, along with Plaintiff's attorneys statement that Plaintiff had been "sold into sexual slavery at the Roosevelt Motel."  The Inquirer article continued to quote Plaintiff's attorney, Nadeem Bezar ("Bezar"):

> During 2013 and 2014, said Bezar, M.B. sometime spent weeks or months living at the motel at 7630 Roosevelt Blvd., was barred from leaving, and was forced to commit sex acts with about 1,000 men "double, triple and quadruple her age. . . . Bezar said the girl managed to get out once during the two years but was forced to return until she finally broke free and reestablished contact with her family and city child-welfare workers.

Exhibit B.

7. The salacious details from this story - that the victim was held at the hotel for two years and was forced to have sex with 1,000 men at the hotel for example -- were fodder for the media, but those very allegations have been disproven and abandoned by Plaintiff during the lawsuit.  Plaintiff has amended her Complaint four times. In the most recent amendment, filed in

4

Case ID: 170300712
Control No.: 21060528

November 2019, she omits any allegation of liability under the Human Trafficking statute. She now alleges that the alleged trafficking at the Roosevelt Inn took place over a couple of months in 2014 and with only the "constructive knowledge" of the Roosevelt Defendants. Moreover, Plaintiffs' latest version of the alleged "facts" is refuted by evidence that shows that the Plaintiff was in other locations during the time she claims she was being held at the Roosevelt Inn. Further, evidence shows that while Plaintiff engaged in commercial sex at various locations in Philadelphia, she did not do so at the Roosevelt Inn. In fact, to date, Plaintiff has failed to identify a single calendar day that she was at the Roosevelt Inn. Nonetheless, the media reports generated by Plaintiff's first Complaint, and her attorney's willingness to continue to discuss now disproven "facts" have kept the story -- complete with inaccurate but salacious details -- in the press.

8. Notwithstanding that some of Plaintiff's more dramatic statements from her 2017 Complaint are no either irrelevant or completely unsubstantiated, the Roosevelt Defendants have continued to be the subject of widespread and pervasive negative publicity, in no small measure due to Plaintiff's counsel's efforts. For example, Plaintiff's counsel Bezar, has never retracted statements made in the press in support of earlier versions of Plaintiff's Complaint.

9. The media's insistence on connecting the Roosevelt Inn to sex trafficking is evident in news stories that do not even involve such conduct. For example, several months ago, news stories reported about a man involved in a domestic dispute, who stole an ambulance, led police on an extended chase through Northeast Philadelphia, and was eventually shot multiple times by police. According to reports, the domestic dispute between the man and his wife began at the Roosevelt Inn. Despite that the hotel had no further connection to the incident, the hotel was mentioned in the press, "The motel at 7600 Roosevelt Blvd. has been linked to sex

5

Case ID: 170300712
Control No.: 21060528

trafficking on more than one occasion." February 29, 2020, "This map shows the wild, 24-mile ambulance police chase through Northeast Philly," https://billypenn.com, Exhibit C.

10.     In addition to television, online and print news reports, the Roosevelt Inn has received references in online platforms such as Trip Advisor and Facebook. In her Pretrial Memorandum, Plaintiff listed as exhibits purported online reviews from Trip Advisor and Facebook and included a sampling of such reviews. The claimed sample reviews, dating from 2007, 2012, December 2014 and 2016, are disparaging to the Roosevelt Inn and are proffered by Plaintiff as "evidence" of the presence of prostitution and drugs. Plaintiff's Pretrial Memorandum at 8. The so-called reviews are anonymous posts, which cannot be authenticated, and are nothing more than rank hearsay.

11.     In her Pretrial Memorandum, Plaintiff referenced a supposed Facebook post in which the poster, identified by Plaintiff as an employee of defendant Alpha-Centurion Security, Inc. posted a photograph with the comments, "these two chicks straight freaks" and "The freak hoes that came through there." Plaintiff offers this "evidence" as purported proof that commercial sex was occurring at the Roosevelt Inn. Plaintiff does not claim the photo was of her or of anyone connected to her. There is no relevant connection at all between the Facebook post and Plaintiff's claims. Not only it the post at issue irrelevant to this case, it is inherently unreliable, is unauthenticated and meaningless. The comments have no clear meaning, are hearsay and like the Trip Advisor reviews, could have been posted for any number of nefarious reasons.

12.     There is no doubt that online reviews and comments, such as those posted on Trip Advisor and Facebook, are inherently unreliable precisely because they cannot be authenticated.

6

Case ID: 170300712
Control No.: 21060528

It is commonplace for competitors and customers who are disgruntled for illegitimate reasons to post untrue negative reviews with a nefarious motive.

13.     The online reviews Plaintiff intends to offer as "evidence" are irrelevant to Plaintiff's claims, which implicate a period of several months in the first half of 2014.  Plaintiff does not claim to have been at the Roosevelt Inn in 2007, 2012, December 2014 and 2016.  The reviews do not relate to her, her alleged traffickers or the time period she alleges she was at the Roosevelt Inn.  These anonymous, unauthenticated, hearsay statements are nothing more than elements of Plaintiff's campaign to denigrate the reputation of the Roosevelt Inn.  Fortunately, the rules of evidence prevent the admission of such completely unreliable and irrelevant material.

14.     Because the television, online and print stories about the Roosevelt Inn and purported comments from Trip Advisor and Facebook proffered by Plaintiff are hearsay, unreliable, irrelevant and highly prejudicial, they should be excluded from the trial in this matter.

**LEGAL ARGUMENT**

II.     **ARTICLES AND REVIEWS RELATING TO THE ROOSEVELT INN ARE NOT RELEVANT, ARE HIGHLY PREJUDICIAL AND ARE INADMISSIBLE HEARSAY**

A.     **Information Relating Generally to the Roosevelt Inn Is Not Relevant**

15.     Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *See* Pa. R. E. 401.  If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial.  *See* Pa. R. E. 402.

7

Case ID: 170300712
Control No.: 21060528

16.     Online comments from 2007, 2012, December 2014 and 2016 on Trip Advisor and a meaningless Facebook post have no relevance to the facts of this case. The comments, even if they were truly written by unhappy customers—which is not only impossible to prove but also unlikely -- have no relevance to Plaintiff, her alleged traffickers, her claims or the time period the relates to her claims. Anonymous, unauthenticated online reviews from various time periods not at issue here are not even remotely relevant to the facts of consequence in is matter.

## B.     Purported Evidence Disparaging the Roosevelt Inn Is Unfairly Prejudicial

17.     Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Pa. R. E. 403. In deciding an evidentiary issue, courts balance the probative value of the evidence with the prejudicial impact the evidence could have on the party against whom it is offered. *See* Pa. R. E. 403; *Sprague v. Walter,* 656 A.2d 890, 909 (Pa. Super. 1995).

18.     As discussed above, the television, online and print reports that appeared after Plaintiff's March 2017 contained exaggerated, irrelevant and patently false information. There is no evidentiary value to the reports, they do not tend to prove any fact in the litigation and they should not be admitted as evidence.

19.     The purported customer reviews, Facebook post and "news" reports are being offered by Plaintiff merely to tarnish the reputation of the Roosevelt Inn and the Roosevelt Defendants. Unfounded, unreliable, claims of drugs and prostitution provide salacious material for Plaintiff to make sensational claims that will catch a jury's attention. But the rules of this court require evidence to be not only legitimate and relevant, but also fairly admitted. The

8

Case ID: 170300712
Control No.: 21060528

probative versus prejudicial analysis tips strongly in favor of excluding the purported online comments and news reports.

20.     Moreover, the Trip Advisor and Facebook comments would be offered by Plaintiff as evidence of the Roosevelt Defendants' prior bad acts.  Because of the highly prejudicial nature of character evidence, evidence of a party's prior acts is irrelevant and inadmissible.  *See* Pa. R. E. 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith."  The exceptions to the rule, provided in Rule 404(b)(2), do not apply.

21.     Unsubstantiated and unreliable comments from unrelated persons concerning the Roosevelt Inn in other time periods cannot be admitted into evidence to suggest that the Roosevelt Defendants conducted themselves in any manner during the relevant time period with respect to the relevant parties in this action.  This is precisely the type of evidence that Rule 404 precludes.  *See U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that Fed. R. 404(b) seeks to prevent").

22.     Such evidence is unfairly prejudicial because it may mislead the jury to conclude that the Roosevelt Defendants were negligent as to Plaintiff.  Rules 403 and 404 preclude the admission of the online customer reviews, Facebook post and news reports.

23.     Decisions on admissibility are within the sound discretion of the trial court.  *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 391 (Pa. Super. 2015) (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)).  See also *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015); *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).  Evidence from unidentified, unreliable sources relating to irrelevant matters would be not only prejudicial to defendants but

9

Case ID: 170300712
Control No.: 21060528

would also be misleading to the jury, confusing the issues and evidence the jury needs to consider. "[I]t is the duty of the trial judge, . . . to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues." *Geesey v. Albee Pa. Homes, Inc*., 235 A.2d 176, 180 (Pa. Super. 19967); *Commonwealth v. Hicks,* 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific").

24.     As several courts have found, anonymous internet reviews and comments are inherently unreliable. "[U]nder the cloak of anonymity, people will make outrageous, offensive, and even nonsensical statements." *Mathew Enter. v. Chrysler Grp*. LLC, Case No. 13-cv-04236-BLF,  2016 U.S. Dist. LEXIS 129925, *7-8 (N.D. Cal. Sept. 21, 2016) (quoting *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, No. 08-00359, 2008 U.S. Dist. LEXIS 105088 (D. Hawai'i Dec. 31, 2008)).  The Trip Advisor reviews and Facebook post are both inherently unreliable and offer noting probative since the authors of the posts and their motivations are unknown and unknowable.

## C.     The Purported Customer Reviews Are Inadmissible Hearsay

25.     The unauthenticated comments in the Trip Advisor and Facebook are inadmissible hearsay. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R. E. 801.  A hearsay statement is inadmissible unless it falls into one of the enumerated exceptions set forth in the Pennsylvania Rules of Evidence.  *See* Pa. R. E. 802.  None of the exceptions set forth in P. R. E. 803 applies to unauthenticated, statements made by unidentified, absent non-parties.

10

Case ID: 170300712
Control No.: 21060528

26.     The online Trip Advisor comments, which are anonymous, unauthenticated and not subject to any type of authentication, are also rank hearsay.  Barring having the persons who allegedly wrote the online posts appear in court, there is no way for Plaintiff to satisfy the evidentiary requirements for admission of these posts.  They cannot be authenticated as required by Rule of Evidence 901.  They are hearsay pursuant to Rule 801.  They have absolutely no evidentiary value.  See *Williams v. Outback Steakhouse of Fla., LLC*, Case No. 2:18-cv-11613, 2019 U.S. Dist. LEXIS 103209 *6 (E.D. Mich. June 20, 2019) (holding online restaurant review was inadmissible hearsay); *Mathew Enter. v. Chrysler Grp. LLC*, 2016 U.S. Dist. LEXIS 129925 at *7 (finding Yelp reviews are inadmissible hearsay, to which no exceptions apply, and finding further that Yelp review has little probative value and is highly prejudicial); *De Jongh v. Starbucks Corp*., Case No. 2015-CV-33748, 2016 Colo. Dist. LEXIS 26, *2, (Colo. Dist. Sept. 14, 2016) (holding Yelp review is inadmissible hearsay to which no exception applies).

27.     For the foregoing reasons, the Court should exclude the television, online and print news reports, the online Trip Advisor comments and Facebook post Plaintiff proffers as evidence.

WHEREFORE, the Roosevelt Defendants respectfully request this Court enter the attached Order to Exclude and Preclude the admission of television, online and print news reports, the online Trip Advisor reviews and Facebook post.

150213.00601/125099348v.1

Case ID: 170300712
Control No.: 21060528

**BLANK ROME LLP**

Dated: June 2, 2021

/s/ Charles S. Marion
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
   keddy@blankrome.com
   byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

12

Case ID: 170300712
Control No.: 21060528

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

---

| | | |
|---|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | : : : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | : : | |
| v. | : : | MARCH TERM, 2017 NO.: 00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | : : : : : : : : : | JURY TRIAL DEMANDED |
| Defendants, | : : | |
| v. | : : | |
| DAIQUAN DAVIS and ABDUL LOPEZ | : : | |
| Additional Defendants. | : : | |

---

**DEFENDANTS ROOSEVELT INN LLC, ET AL.'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**<u>PRECLUDE AND EXCLUDE INADMISSIBLE EVIDENCE</u>**

Case ID: 170300712
Control No.: 21060528

## I.    MATTER BEFORE THE COURT

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by their undersigned attorneys, hereby file this memorandum of law in support of their motion to preclude 1) television, print and online "news" reports relating to this litigation and the Roosevelt Inn; and 2) anonymous purported customer comments from Trip Advisor and 3) a unauthenticated, irrelevant Facebook post (the "Motion).

## II.    QUESTION INVOLVED

Should the Court exclude the trial television, print and online "news" reports regarding Plaintiff's case and the Roosevelt Inn, anonymous purported customer reviews from Trip Advisor and an irrelevant Facebook post?

Suggested answer:  Yes.

The publicity Plaintiff's initial 2017 received in television, print and online "news" sources was sensationalistic and highly inaccurate.  As Plaintiff's Complaint was repeatedly amended and her factual contentions changed, the reports published on television, in print and online were not corrected.  These so-called news reports are prejudicial, inaccurate, irrelevant and are unfairly prejudicial to the Roosevelt Defendants and must be excluded.  In addition, online reviews and comments regarding the Roosevelt Inn, completely unrelated to Plaintiff's claims, should be excluded from the trial in this matter.  Such reviews are inherently unreliable, are not subject to authentication and are inadmissible hearsay.

2

Case ID: 170300712
Control No.: 21060528

III.   **FACTUAL BACKGROUND**

Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc.  In her Complaint, Plaintiff alleged that from 2013 through 2014, she was "recruited, enticed, solicited, harbored, and/or transported to engage in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis."  Plaintiff amended her Complaint several times.  Her last Amended Complaint includes solely claims of negligence against the Roosevelt Inn and her factual allegations narrow the time period in which she was alleged trafficked at the Roosevelt Inn to a limited period in the first half of 2014.

A.   **Plaintiff's Complaint Generated Widely Reported by False "News"**

Plaintiff's 2017 initial Complaint prompted a blitz of negative publicity for the Roosevelt Defendants, depicting the Roosevelt Inn as a hub of human trafficking, drugs and other crimes. The new reports, however, were wildly inaccurate.  For example, the day the Complaint was filed, headlines proclaimed that a minor was held as a sex slave at the hotel for two years and was forced to have sex with more than 1,000 men.

In the press, Plaintiff's counsel described her initial Complaint as the first case to be filed pursuant to Pennsylvania's Human Trafficking statute, which was enacted in 2014.  While Plaintiff abandoned her statutory claims via one of several amended complaints, those statements to the press have never been corrected.  Nor have the salacious yet false claims that appeared in many news articles that followed Plaintiff's counsel's initial comments.  For example, a Philadelphia Inquirer article published after Plaintiff filed her Complaint described the Roosevelt Inn as "the city's epicenter of human trafficking."  The same article quoted Plaintiff's counsel,

3

Case ID: 170300712
Control No.: 21060528

who claimed that Plaintiff was held at the hotel for two years, a claim Plaintiff has long since abandoned. Exhibit A hereto is a sampling of the many articles from various news media (print, online and television) that repeated the sensational yet false claims about the Roosevelt Inn.

Because many of the "facts" in the articles are, at best, in question and at worst, disproven, the news reports have no evidentiary value, are unfairly prejudicial and should be excluded from the trial in this matter.

**B.** **Trip Advisor and Facebook Reviews Are Irrelevant, Unreliable and Are Hearsay**

In her Pretrial Memorandum, Plaintiff listed as exhibits purported online comments or reviews from Trip Advisor and Facebook. Plaintiff included a sampling of such Trip Advisor reviews dated 2007, 2012, December 2014 and 2016. All the of Trip Advisor reviews are disparaging to the Roosevelt Inn, including complaints of excessive noise, hallway traffic, broken air conditioning, uncomfortable beds, the smell of pot, the presence of condoms, young girls in the hallway and dirty bathrooms. Plaintiff's Pretrial Memorandum at 8. The so called reviews are anonymous posts, which cannot be authenticated, and are nothing more than rank hearsay. Even if they were reliable, none of the reviews have any relevance to Plaintiff's claims or are even from the relevant time period, the first half of 2014.

The Facebook post Plaintiff intends to proffer as a trial exhibit is similarly irrelevant and of no value – the post comments on a benign photo of two normally dressed women by calling them "freaks" and "hoes." The comment is clearly open to interpretation in its meaning, but more importantly, since anyone can post anything about anyone on any number of online sites, these comments hold absolutely no evidentiary value.

The television, online and print "news" reports and the online comments from Trip Advisor and Facebook are not proper pieces of evidence but merely are elements of Plaintiff's

4

Case ID: 170300712
Control No.: 21060528

smear campaign against the Roosevelt Defendants.  Plaintiff should not be permitted to try to prove her claims of the Roosevelt Defendants' involvement in her sex trafficking by offering unreliable falsehoods, innuendo and suggestions about crimes or events that have no relation to or bearing on her claims.  This so called evidence must be excluded.

## IV.    ARGUMENT

### A.    The Television, Online and Print News Reports Must be Excluded

The television, online and print news reports, which contain exaggerated, irrelevant and patently false information, must be excluded.  Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  See Pa. R. E. 403.  In deciding an evidentiary issue, courts balance the probative value of the evidence with the prejudicial impact the evidence could have on the party against whom it is offered.  See Pa. R. E. 403; *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).

There is no evidentiary value to contained exaggerated, irrelevant and false information. Because the "news" reports are inherently unreliable and do not tend to prove any fact in the litigation, they should not be admitted as evidence.

### B.    The Trip Advisor and Facebook Comments Are Not Relevant

Pennsylvania Rule of Evidence sets forth the standard for relevant evidence:  "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *See* Pa. R. E. 401.  If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove,

150213.00601/125099348v.1

Case ID: 170300712
Control No.: 21060528

then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial. *See* Pa. R. E. 402.

Online comments on Trip Advisor and Facebook from 2007, 2012, December 2014 and 2016 – time periods not at issue in this litigation -- have no relevance to the facts of this case. The comments, even if they were truly written by unhappy customers—which is not only impossible to prove but also unlikely -- have no relevance to Plaintiff, her claims, her alleged traffickers, or the time period of Plaintiffs' claims.

Purportedly written in time periods other than the relevant time period of Plaintiff's claims, the reviews complain of a variety of items having nothing to do with sex trafficking – the smell of pot, unclean bathrooms, the presence of condoms, uncomfortable beds, noise in the hallway and rude staff members. There is no connection to Plaintiff, the time period of Plaintiff's allegations (early 2014) or the subject matter of her allegations. The Facebook page, in which the poster labels two women in a photo "freaks" and "hoes" also means nothing and adds nothing to this case. Anonymous, unauthenticated online reviews from various time periods not at issue here are not even remotely relevant to the facts of consequence in is matter.

C.     **Permitting Evidence that Merely Denigrates the Roosevelt Inn Would Be Unfairly Prejudicial to the Roosevelt Defendants**

Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, undue delay or wasting time. *See* Pa. R. E. 403. The Court must balance the probative value with the prejudicial impact the proffered evidence could have against whom it is offered. *See* Pa. R. E. 403; *Sprague v. Walter,* 656 A.2d 890, 909 (Pa. Super. 1995).

The television, online and print so-called news reports that appeared after Plaintiff's March 2017 contained exaggerated, irrelevant and patently false information. There is no

6

Case ID: 170300712
Control No.: 21060528

evidentiary value to the reports, they do not tend to prove any fact in the litigation and they should not be admitted as evidence. The "news" reports and online comments are not relevant to Plaintiff's claims but would be offered solely to sully the reputation of the Roosevelt Defendants.

While the subject matter of the news reports and online comments would surely grab the jury's attention, the rules of this court require evidence to be not only legitimate and relevant, but also fairly admitted. The probative versus prejudicial analysis tips strongly in favor of excluding the purported online comments and news reports.

Moreover, the Trip Advisor and Facebook comments would be offered by Plaintiff as evidence of the Roosevelt Defendants' prior bad acts. Because of the highly prejudicial nature of character evidence, evidence of a party's prior acts is irrelevant and inadmissible. *See* Pa. R. E. 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith." The exceptions to the rule, provided in Rule 404(b)(2), do not apply.

Unsubstantiated and unreliable comments from unrelated persons concerning the Roosevelt Inn in other time periods cannot be admitted into evidence to suggest that the Roosevelt Defendants conducted themselves in any manner during the relevant time period with respect to the relevant parties in this action. This is precisely the type of evidence that Rule 404 precludes. *See U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that Fed. R. 404(b) seeks to prevent").

This court has the discretion to determine the admissibility of evidence. *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 391 (Pa. Super. 2015) (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)). See also *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015); *Sprague v.*

150213.00601/125099348v.1

Case ID: 170300712
Control No.: 21060528

*Walter*, 656 A.2d 890, 909 (Pa. Super. 1995). Evidence from unidentified, unreliable sources relating to irrelevant matters would be not only prejudicial to defendants but would also be misleading to the jury, confusing the issues and evidence the jury needs to consider. "[I]t is the duty of the trial judge, . . . to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues." *Geesey v. Albee Pa. Homes, Inc*., 235 A.2d 176, 180 (Pa. Super. 19967); *Commonwealth v. Hicks,* 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific").

As several courts in various jurisdictions have found, anonymous internet reviews and comments are inherently unreliable. "[U]nder the cloak of anonymity, people will make outrageous, offensive, and even nonsensical statements." *Mathew Enter. v. Chrysler Grp*. LLC, Case No. 13-cv-04236-BLF, 2016 U.S. Dist. LEXIS 129925 *7-8 (N.D. Cal. Sept. 21, 2016) (quoting *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, No. 08-00359, 2008 U.S. Dist. LEXIS 105088 (D. Hawai'i Dec. 31, 2008)). The Trip Advisor reviews and Facebook post are both inherently unreliable and offer noting probative since the authors of the posts and their motivations are unknown and unknowable. The Trip Advisor comments Plaintiff intends to proffer, some dating back to 2007, are inherently unreliable. They are anonymous, unauthenticated, and beyond investigation. Courts routinely exclude such online comments and reviews since they are inherently suspect and subject to abuse by competitors and others with illegitimate complaints. The *Doe* court's comments apply equally to the Facebook poster's comments, whose motivations are completely unknown. None of the online material is of probative value to this case.

8

Case ID: 170300712
Control No.: 21060528

### D.     The Trip Advisor and Facebook Comments Are Hearsay

The Trip Advisor and Facebook comments at issue are impermissible hearsay to which no exceptions apply. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R. E. 801. The Trip Advisor and Facebook comments are statements made in online fora – the statements are hearsay and cannot be offered for the truth of the content. None of the exceptions set forth in Rule 803 applies to the reviews or the Facebook post. *See Williams v. Outback Steakhouse of Fla., LLC*, Case No. 2:18-cv-11613, 2019 U.S. Dist. LEXIS 103209 *6 (E.D. Mich. June 20, 2019) (holding online restaurant review was inadmissible hearsay); *Mathew Enter. v. Chrysler Grp. LLC*, 2016 U.S. Dist. LEXIS 129925 at *7 (finding Yelp reviews are inadmissible hearsay, to which no exceptions apply, and finding further that Yelp review has little probative value and is highly prejudicial); *De Jongh v. Starbucks Corp*., Case No. 2015-CV-33748, 2016 Colo. Dist. LEXIS 26 *2, (Colo. Dist. Sept. 14, 2016) (holding Yelp review is inadmissible hearsay to which no exception applies). Accordingly, they must be excluded.

In addition, anonymous Trip Advisor and Facebook comments are not authenticated and cannot be authenticated, thereby running afoul of the requirements of Rule of Evidence 901:

> Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

*See* Pa. R. E. 901.

This Court has the discretion to exclude evidence that:

- is irrelevant;

- pertains to prior bad acts and is offered merely to sully a defendant's character;

150213.00601/125099348v.1

Case ID: 170300712
Control No.: 21060528

- has no probative value but would be unfairly prejudicial, confusing, misleading, will cause undue delay and waste time; and

- is inadmissible hearsay; and

- is unauthenticated.

All of the above bases for exclusion are present here and require that the Court exclude from the trial in this matter television, online and print news reports and comments on Trip Advisor and Facebook.

## V.    RELIEF REQUESTED

Pursuant to Pennsylvania Rules of Evidence 401, 402, 403, 404, 801 and 901, the Roosevelt Defendants respectfully request this Court enter the attached Order Excluding all television, online and print news reports regarding the Roosevelt Inn and online comments appearing on Trip Advisor and Facebook.

**BLANK ROME LLP**

Dated:  June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

150213.00601/125099348v.1

Case ID: 170300712
Control No.: 21060528

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that, on this 2nd day of June 2021, I caused a true and correct copy of the foregoing Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's Motion to Exclude Evidence and accompanying memorandum of law to be served via the Court's electronic filing system and/or electronic mail and/or First Class Mail upon the following:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

Case ID: 170300712
Control No.: 21060528

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN 47808

*Additional Defendant*

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*

*/s/ Justina L. Byers*
JUSTINA L. BYERS

2

Case ID: 170300712
Control No.: 21060528

| | | |
|---|---|---|
| M.B., minor by her Guardian, | : | IN THE COURT OF COMMON PLEAS |
| William A. Calandra, Esquire, | : | PHILADELPHIA COUNTY |
| | : | |
| Plaintiff, | : | CIVIL ACTION – LAW |
| | : | |
| v. | : | MARCH TERM, 2017 |
| | : | Civil Action No.: 00712 |
| ROOSEVELT INN LLC | : | |
| d/b/a ROOSEVELT INN and | : | |
| ROOSEVELT INN CAFÉ, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| v. | : | |
| | : | |
| DAIQUAN DAVIS AND ABDUL LOPEZ, | : | |
| | : | |
| Additional Defendants. | : | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2021, upon consideration of

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor

Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's

Motion to Preclude and Exclude References to Crimes, Criminal Activity and Arrests Unrelated

to Sex Trafficking and any response thereto, it is hereby ORDERED that said Motion is

GRANTED.

At the trial in this matter, the parties shall be precluded from introducing any of crimes or

criminal activity at the Roosevelt Inn other than purported sex trafficking, including drug related

Case ID: 170300712
Control No.: 21060498

crimes, prostitution, thefts, violence, weapon related crimes, shootings, domestic disturbances, police calls, police response and arrests.

**BY THE COURT:**

_____ J.

150213.00601/124240965v.1

Case ID: 170300712
Control No.: 21060498

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email:  cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire,<br><br>     Plaintiff,<br><br>  v.<br><br>ROOSEVELT INN LLC d/b/a ROOSEVELT<br>INN and ROOSEVELT INN CAFÉ, et al.,<br>ROOSEVELT MOTOR INN, INC. d/b/a<br>ROOSEVELT MOTOR INN, UFVS<br>MANAGEMENT COMPANY, LLC,<br>YAGNA PATEL and ALPHA-CENTURION<br>SECURITY, INC. d/b/a ALPHA CENTURION<br>SECURITY INC.<br><br>     Defendants,<br><br>  v.<br><br>DAIQUAN DAVIS and ABDUL LOPEZ<br><br>     Additional Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL TRIAL DIVISION<br><br>MARCH TERM, 2017<br>NO.: 00712<br><br>JURY TRIAL DEMANDED |

## MOTION TO PRECLUDE AND EXCLUDE REFERENCES TO CRIMES, CRIMINAL ACTIVITY AND ARRESTS UNRELATED TO PUPORTED SEX TRAFFICKING

150213.00601/124240965v.1

Case ID: 170300712
Control No.: 21060498

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by and through their undersigned attorneys, hereby move the Court to enter an Order precluding and excluding any reference at trial to crimes, criminal activity and arrests at the Roosevelt Inn, other than sex trafficking, including any reference to drug related crimes, prostitution, thefts, violence, including weapon related violence and shootings, police calls, police response and arrests. In support of this motion, the Roosevelt Defendants aver as follows:

1. Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. Plaintiff amended her Complaint multiple times. Her most recent Amended Complaint is based solely on claims of common law negligence and narrows the time period of her alleged trafficking to several months in 2014.

2. During the course of discovery, Plaintiff identified two men who she alleges acted as her traffickers during the relevant time period. The Roosevelt Defendants joined the two men, Daiquan Davis ("Davis") and Abdul Lopez ("Lopez"), as Additional Defendants to this action. Both Davis and Lopez are in federal prison, serving sentences for sex trafficking.

3. Among the exhibits Plaintiff likely intends to introduce at trial are records of the Philadelphia District Attorney's Office and Philadelphia Police Department, including Philadelphia Police "Call to Service" Reports. Many of the documents and other files (photographs and video files) contained in the above listed records pertain to crimes, criminal activity and arrests that have taken place at the Roosevelt Inn over vast periods of time, but the records do not relate in any respect to Plaintiff's claims in this case.

2

Case ID: 170300712
Control No.: 21060498

4.      Plaintiff's theory of the instant litigation is that the Roosevelt Defendants were negligent in failing to recognize and prevent her alleged sex trafficking. Plaintiff alleges that the Roosevelt Defendants failed to implement procedures and monitor the hotel premises so as to prevent Plaintiff's alleged trafficking. *See* Plaintiff's Fourth Amended Complaint, at ¶ 74.

5.      Throughout the litigation, Plaintiff has sought discovery of all crimes and criminal activities relating to the Roosevelt Inn -- drug related crimes, thefts, prostitution and gun violence. Plaintiff's broad sweeping discovery efforts are part of its overall scheme to disparage the Roosevelt Defendants and create the illusion that the hotel is a haven for criminals and criminal activity. Not only are unrelated crimes and arrests not relevant to Plaintiff's claims, reference to other crimes is prejudicial to the Roosevelt Defendants and is improper character evidence.

## A.      March 31, 2014 Shooting Incident

6.      On March 31, 2014, a shooting incident took place at the Roosevelt Inn. The Roosevelt Inn's surveillance cameras captured images of the men involved in the shooting—the perpetrator and his intended victims. The Roosevelt Inn cooperated in all respects with the Philadelphia Police Department and provided the video footage of the incident. In order to find and apprehend the men involved in the incident, the Philadelphia Police published and disseminated the video footage in the media, including posting the video on You Tube. Still screen captures and portions of the surveillance video were posted on news outlets with headlines such as "Wild shootout at Philadelphia motel," "Shocking video: shootout in motel hallway." The sensationalism around the shooting incident was purposefully resurrected when Plaintiff filed this case in 2017. Witnesses of the Roosevelt Defendants and Alpha Centurion Security, Inc. were examined about the shooting and the video; Plaintiff sought (and obtained)

3

Case ID: 170300712
Control No.: 21060498

the footage in discovery from both the Roosevelt Defendants and the Philadelphia District Attorney's Office.

7. Oddly, just a few months ago, Alpha Centurion moved for leave of court to amend its crossclaims against the Roosevelt Defendants to add allegations relating to video footage of the March 31, 2014 shooting incident (even though Alpha Centurion had no guard posted the night of the video and the shooting incident has nothing to do with Alpha).

8. While the salacious nature of the shooting incident and dramatic video will surely grab the attention of jurors, the shooting and the negative publicity it brought the Roosevelt Inn have nothing to do with Plaintiff's allegations of sex trafficking. The participants in the shooting incident were not involved in Plaintiff's alleged trafficking; there is no evidence Plaintiff was at the Roosevelt Inn at the time of the shooting and no testimony about the shooting has any relevance to Plaintiff's claims. The introduction of evidence of the shooting will be made for one purpose – to prejudice the jury against the Roosevelt Defendants. Plaintiff (and co-defendant Alpha) must not be permitted to use the March 31, 2014 shooting merely to smear the Roosevelt Defendants with the taint of scandal and violence.

**B.** **Other Evidence Related to Criminal Activity**

9. The Roosevelt Inn, like many hotels located in urban settings, is unfortunately sometimes an unknowing and non-consenting venue for criminal activity. Like thousands of hotels and motels across the United States, the Roosevelt Inn over the years has been the unwitting site of drug use, drug sales, domestic and other violence, prostitution and theft. It is not possible for any establishment, no matter how vigilant, to foresee and prevent all criminal activity, especially that which takes place behind closed hotel room doors. Such activity, however, is not relevant to Plaintiff's claims of sex trafficking. Permitting Plaintiff or any party

4

Case ID: 170300712
Control No.: 21060498

to offer evidence of unrelated crimes or police calls to the Roosevelt Inn hotel to turn this trial into a smear campaign against the Roosevelt Inn would not only be unfairly prejudicial to the Roosevelt Defendants but would create an unnecessary, distracting and sensational side show, wasting the court's and the jury's time.

10.     Because evidence relating to any crimes or criminal activity other than sex trafficking is irrelevant and highly prejudicial, it must be excluded from the trial in this matter.

## LEGAL ARGUMENT

### A.     Information Relating to Criminal Activity other than Sex Trafficking is Not Relevant

11.     Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa. R. E. 401.   If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial.  Pa. R. E. 402. *Conroy v. Rosenwald*, 940 A.2d 409, 417 (Pa. Super. 2007).

12.     The presence or alleged presence of drug sales, gun violence or other crimes does not raise an inference concerning the facts of whether Plaintiff was trafficked at the Roosevelt Inn or whether the Roosevelt Defendants were negligent in failing to prevent the alleged trafficking.  Likewise, evidence of the shooting incident on March 31, 2014 has no bearing on, and does not tend to prove or disprove Plaintiff's allegations of sex trafficking.  Evidence relating to the March 31, 2014 shooting or any other criminal activity at the Roosevelt Inn other

150213.00601/124240965v.1

Case ID: 170300712
Control No.: 21060498

than sex trafficking will be proffered merely to disparage the Roosevelt Inn with irrelevant, inflammatory material, which should not be permitted.

**B.**    **Purported Evidence Disparaging the Roosevelt Inn Is Unfairly Prejudicial**

13.    Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Pa. R. E. 403.  In deciding an evidentiary issue, courts balance the probative value of the evidence with the prejudicial impact the evidence could have on the party against whom it is offered.  See Pa. R. E. 403; *Sprague v. Walter*, 656, A.2d 890, 909 (Pa. Super. 1995).  Unfair prejudice is defined as a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.  *Conroy*, 940 A.2d at 417.

14.    Evidence of criminal activity would be offered in this case merely to besmirch the image of the Roosevelt Inn and the Roosevelt Defendants in the eyes of the jury.  Inflammatory and unrelated to Plaintiff's claims, such references could have the desired effect of portraying the Roosevelt Inn a hot spot for criminal activities.  Evidence that would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case should be precluded pursuant to Pa. R.E. 403.  *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1238 (Pa. Super. 2015).  The rules of this court require evidence to be not only legitimate and relevant, but also fairly admitted.  The probative versus prejudicial analysis tips strongly in favor of excluding references to any criminal activity other than sex trafficking.

15.    Moreover, criminal activity other than sex trafficking would be offered as evidence of the Roosevelt Defendants' "prior bad acts."  Because of the highly prejudicial nature of character evidence, evidence of a party's prior acts is irrelevant and inadmissible.  Pa. R. E.

6

Case ID: 170300712
Control No.: 21060498

404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith." The exceptions to the rule, provided in Rule 404(b)(2), do not apply.

16. Information pertaining to crimes and criminal activity unrelated to sex trafficking or Plaintiff's claims cannot be admitted into evidence to suggest that the Roosevelt Defendants conducted themselves in any manner during the relevant time period with respect to the relevant parties in this action. This is precisely the type of evidence that Rule 404 precludes. See *U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that Fed. R. 404(b) seeks to prevent").

17. Such testimony is unfairly prejudicial because it may mislead the jury to conclude that the Roosevelt Defendants were negligent as to Plaintiff. Rules 403 and 404 preclude the admission of such information.

18. Decisions on admissibility are within the sound discretion of the trial court. *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 391 (Pa. Super. 2015) (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)). See also *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015); *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995). Evidence relating to salacious but irrelevant matters would be not only prejudicial to defendants but would also be misleading to the jury, confusing the issues and evidence the jury needs to consider. "[I]t is the duty of the trial judge, . . . to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues." *Geesey v. Albee Pa. Homes, Inc.*, 235 A.2d 176, 180 (Pa. Super. 19967);

150213.00601/124240965v.1

Case ID: 170300712
Control No.: 21060498

*Commonwealth v. Hicks,* 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific").

19.     Testimony by any witness concerning alleged acts or omissions of the Roosevelt Defendants on occasions other than those raised by Plaintiff's Complaint and relating to criminal activity other than sex trafficking is irrelevant, improper character evidence, highly prejudicial, and must be precluded.

### B.     Information Relating to Other Crimes Is Inadmissible Hearsay

20.     Among the evidence of crimes other than sex trafficking that Plaintiff intends to proffer at trial are records from police and district attorneys' offices, which include calls to service, witness interviews, officer reports and the like.  Such statements and documents are inadmissible hearsay.  "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R. E. 801.  A hearsay statement is inadmissible unless it falls into one of the enumerated exceptions set forth in the Pennsylvania Rules of Evidence.  See Pa. R. E. 802.  Police reports prepared by officers who did not witness the events in question are inadmissible hearsay, to which no exception applies.  See *Phillips v. Lock*, 86 A.3d 906, 921 (Pa. Super. 2014) (citing *Rox Coal Co. v. WCAB (Snizaski)*, 807 A.2d 906, 914 (Pa. 2002)).

21.     Police call to service reports likewise are hearsay statements; they recount the statements of other declarants.  None of the hearsay exceptions apply to the call to service reports; the documents are inadmissible.

22.     For the foregoing reasons, the Court should exclude and preclude all reference to crimes and criminal activities at the Roosevelt Inn other than sex trafficking.

150213.00601/124240965v.1

Case ID: 170300712
Control No.: 21060498

WHEREFORE, the Roosevelt Defendants respectfully request this Court enter the attached Order to exclude and preclude from the trial in this matter all reference to crimes, criminal activity and arrests at the Roosevelt Inn other than sex trafficking, including but not limited to drug use, drug sales, theft, violence including gun violence and prostitution.

**BLANK ROME LLP**

Dated: June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

9

Case ID: 170300712
Control No.: 21060498

**BLANK ROME LLP**
BY: Charles S. Marion, Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email:  cmarion@blankrome.com
　　　　keddy@blankrome.com
　　　　byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | | |
|---|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | : | |
| v. | : | MARCH TERM, 2017 NO.: 00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | : | JURY TRIAL DEMANDED |
| Defendants, | : | |
| v. | : | |
| DAIQUAN DAVIS and ABDUL LOPEZ | : | |
| Additional Defendants. | : | |

150213.00601/124240965v.1

Case ID: 170300712
Control No.: 21060498

**DEFENDANTS ROOSEVELT INN LLC, ET AL.'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO PRECLUDE AND
EXCLUDE REFERENCES TO CRIMES, CRIMINAL ACTIVITY AND
ARRESTS UNRELATED TO PURPORTED SEX TRAFFICKING**

**I.     MATTER BEFORE THE COURT**

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt

Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel

(hereinafter collectively "the Roosevelt Defendants"), by their undersigned attorneys, hereby file

this memorandum of law in support of their motion to preclude and exclude all evidence of and

any reference at trial to crimes, criminal activity and arrests at the Roosevelt Inn, other than

purported sex trafficking, including any reference to drug related crimes, prostitution, thefts,

violence, including weapon related violence and shootings, police calls, police response and

arrests.

**II.    QUESTION INVOLVED**

Should the Court grant the Motion of the Roosevelt Defendants and preclude and

excluding any reference at trial to crimes, criminal activity and arrests at the Roosevelt Inn, other

than purported sex trafficking, including any reference to drug related crimes, prostitution, thefts,

violence, including weapon related violence and shootings, police calls, police response and

arrests?

Suggested answer:  Yes.

Evidence or references pertaining to crimes other than purported sex trafficking will be

proffered for the sole purpose of prejudicing the jury against the Roosevelt Inn by portraying it

as a haven for criminals and criminal activity.  Evidence and references relating to drug related

crimes, prostitution, thefts, violence, including weapon related violence and shootings, police

2

Case ID: 170300712
Control No.: 21060498

calls, police response and arrests are not relevant to Plaintiff's claims of alleged sex trafficking, would be unfairly prejudicial to the Roosevelt Defendants, are elements of improper character evidence and/or constitute inadmissible hearsay.

## III.   FACTUAL BACKGROUND

Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc.  Plaintiff amended her Complaint several times. Her last Amended Complaint includes solely claims of negligence against the Roosevelt Inn and her factual allegations narrow the time period in which she was alleged trafficked at the Roosevelt Inn to a limited period in the first half of 2014.  Plaintiff claims that she was "recruited, enticed, solicited, harbored, and/or transported to engage in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis."  She alleges generally that the Roosevelt Defendants were negligent in not recognizing that Plaintiff was being trafficked and not acting to prevent it.

Plaintiff has indicated her intent to present evidence at trial of various crimes, arrests, criminal activity and police response calls to the Roosevelt Inn.  Among the trial exhibits listed in Plaintiff's Pretrial Memorandum are documents obtained from the Philadelphia District Attorney's Office and Philadelphia Police Department, including Police "Call to Service" Reports.  The documents encompass reports of various crimes that took place that have no relation to Plaintiff's sex trafficking allegations.

### A.   March 31, 2014 Shooting

On March 31, 2014, a shooting incident took place in a hallway at the Roosevelt Inn. The Roosevelt Inn's surveillance cameras captured images of the men involved in the shooting—

3

Case ID: 170300712
Control No.: 21060498

the perpetrator and his intended victims. The Roosevelt Inn cooperated in all respects with the Philadelphia Police Department and provided the video footage of the incident. Seeking the public's help in identifying the men involved in the shooting, the Philadelphia Police disseminated the video footage in the media, including posting footage on You Tube. News outlets and social media posters published still screen captures and portions of the surveillance video with salacious headlines such as "Wild shootout at Philadelphia motel," "Shocking video: shootout in motel hallway." There is no evidence (or even suggestion) that the March 31, 2004 shooting incident had anything to do with Plaintiff's claims. Nonetheless, the sensationalism evoked by the shooting incident was purposefully resurrected when Plaintiff filed this case in 2017. Plaintiff's counsel questioned witnesses of the Roosevelt Defendants and Alpha Centurion Security, Inc. about the shooting and the video footage; Plaintiff sought (and obtained) the footage in discovery from both the Roosevelt Defendants and the Philadelphia District Attorney's Office. Alpha Centurion moved for leave of court to amend its crossclaims against the Roosevelt Defendants to add allegations – completely unfounded -- that the Roosevelt Defendants had altered video of the March 31, 2014 shooting incident (even though Alpha Centurion had no guard posted the night of the video and the shooting incident has nothing to do with Alpha). The salacious nature of the shooting incident and the surveillance footage are certainly dramatic and attention-grabbing. Nonetheless, the shooting and the negative publicity it brought the Roosevelt Inn have nothing to do with Plaintiff's allegations of sex trafficking. The participants in the shooting incident were not involved in Plaintiff's alleged trafficking; there is no evidence Plaintiff was at the Roosevelt Inn at the time of the shooting and no testimony about the shooting has any relevance to Plaintiff's claims.

150213.00601/124240965v.1

Evidence of the shooting will be brought into this litigation for one purpose – to prejudice the jury against the Roosevelt Defendants by besmirching its character with footage of this sensational incident.

### B. Other Evidence Related to Criminal Activity

The Roosevelt Inn is located on the Roosevelt Boulevard in Northeast Philadelphia and like many city establishments, it is, on occasion, the unwitting scene of certain criminal activity. Like many hotels and inns, the Roosevelt Inn over the years unfortunately has been the site of drug use, drug sales, domestic and other violence, theft and perhaps even prostitution. It is not possible for any establishment, no matter how vigilant, to foresee and prevent all criminal activity, especially when those acts take place behind the closed doors of hotel rooms.

Plaintiff's claims in this case relate to sex trafficking; they do not related to gun violence, thefts, drug crimes or even prostitution. Permitting Plaintiff or any party to offer evidence of crimes and criminal activity unrelated to Plaintiff or her claims would not only be unfairly prejudicial to the Roosevelt Defendants but would create an unnecessary, distracting and sensational side show, wasting the court's and the jury's time.

## IV. LEGAL ARGUMENT

### A. Evidence Relating to Crimes Other than Sex Trafficking Is Not Relevant

Plaintiff has listed among its trial exhibits documents it obtained from the Philadelphia District Attorney's Office and Philadelphia Police Department, including Police "Call to Service" Reports. Plaintiff's accused traffickers, Daiquan Davis and Abdul Lopez were both federally prosecuted and are in federal custody. The documents from Philadelphia District Attorney's Office and Philadelphia Police Department do not relate to Plaintiff, Davis or Lopez or the events detailed in Plaintiff's Complaint.

5

Case ID: 170300712
Control No.: 21060498

Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa. R. E. 401. If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial. Pa. R. E. 402.

Evidence indicating that the Roosevelt Inn was the site of drug sales, violence, thefts and prostitution has no relevance to Plaintiff's claims. Such information does not make any fact of the case more or less probable. This evidence should be excluded as nothing more than Plaintiff's attempt to sully the reputation of the Roosevelt Defendants with salacious innuendo.

**B.** **Permitting Evidence that Merely Denigrates the Roosevelt Inn Would Be Unfairly Prejudicial to the Roosevelt Defendants**

Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, undue delay or wasting time. Pa. R. E. 403. The Court must balance the probative value with the prejudicial impact the proffered evidence could have against whom it is offered. See Pa. R. E. 403; *Sprague v. Walter*, 656, A.2d 890, 909 (Pa. Super. 1995). Unfair prejudice is defined as the tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. *Conroy v. Rosenwald*, 940 A.2d 409, 417 (Pa. Super. 2007).

Here, evidence that crimes other than sex trafficking took place at the Roosevelt Inn, while patently irrelevant, contains scandalous material and will catch the jury's attention with its sensationalism. Evidence of other crimes offers no probative value but will be highly prejudicial

6

Case ID: 170300712
Control No.: 21060498

to the Roosevelt Defendants.  The probative versus prejudicial balance clearly tips in favor of excluding all evidence of crimes at the Roosevelt Inn other than sex trafficking.  *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1238 (Pa. Super. 2015).

Rule 403 also permits a judge to exclude evidence that could confuse or mislead the jury, cause undue delay or waste time.  Pa. R. E. 403.  Confusion, misdirection and distraction are precisely the reasons Plaintiff will proffer evidence of the March 31, 2014 shooting and other crimes.  The court must not allow the trial of Plaintiff's sex trafficking allegations to become a sideshow exhibition of other crimes possibly committed at the Roosevelt Inn.

### C.     Evidence of Prior Bad Acts Is Inadmissible

Evidence that crimes other than sex trafficking will serve no purpose in this trial other than to sully the Roosevelt Defendants' character.  In addition to being irrelevant and unduly prejudicial, evidence of other crimes proffered solely to impugn the character of the Roosevelt Defendants is clearly improper.  Because of the highly prejudicial nature of such evidence, information pertaining to or suggesting a party's prior bad acts is inadmissible.  Rule 404(b)(1) of the Pennsylvania Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith."  The exceptions to the rule, provided in Rule 404(b)(2), do not apply here.

Accordingly, Plaintiff may not offer evidence of unrelated crimes committed by unrelated actors to suggest that the Roosevelt Defendants conducted themselves in a certain manner *as to Plaintiff*.  This is precisely the type of evidence that Rule 404 precludes.  See *U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that [the equivalent] Fed. R. 404(b) seeks to prevent").

7

Case ID: 170300712
Control No.: 21060498

### D.   Many of the Documents Pertaining to Other Crimes are Inadmissible Hearsay

The documents from the Philadelphia District Attorney's Office and Philadelphia Police Department are inadmissible hearsay. Among the evidence of crimes other than sex trafficking that Plaintiff intends to proffer at trial are calls to service, witness interviews, officer reports and the like. Such statements and documents are inadmissible hearsay. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R. E. 801. A hearsay statement is inadmissible unless it falls into one of the enumerated exceptions set forth in the Pennsylvania Rules of Evidence. See Pa. R. E. 802. Police reports prepared by officers who did not witness the events in question are inadmissible hearsay, to which no exception applies. See *Phillips v. Lock*, 86 A.3d 906, 921 (Pa. Super. 2014) (citing *Rox Coal Co. v. WCAB (Snizaski)*, 807 A.2d 906, 914 (Pa. 2002)).

Police call to service reports likewise are hearsay statements; they recount the statements of other declarants. None of the hearsay exceptions apply to the call to service reports; the documents are inadmissible. For the foregoing reasons, the Court should exclude and preclude all reference to crimes and criminal activities at the Roosevelt Inn other than sex trafficking.

This Court has the discretion to exclude evidence that:

- is irrelevant;

- pertains to prior bad acts and is offered merely to sully a defendant's character;

- has no probative value but would be unfairly prejudicial, confusing, misleading, will cause undue delay and waste time; and

- is inadmissible hearsay; and

- is unauthenticated.

8

Case ID: 170300712
Control No.: 21060498

All of the above bases for exclusion are present here and require that the Court exclude any evidence or reference to crimes at the Roosevelt Inn other than sex trafficking, including references to violence, including gun violence, illegal gun possession, drug sales and drug possession, prostitution and theft.

## V.    **RELIEF REQUESTED**

Pursuant to Pennsylvania Rules of Evidence 401, 402, 403, 404 and 801, the Roosevelt Defendants respectfully request this Court enter the attached Order excluding and precluding any evidence or reference to crimes at the Roosevelt Inn other than alleged sex trafficking, including references to violence, including gun violence, illegal gun possession, drug sales and drug possession, prostitution and theft.

**BLANK ROME LLP**

Dated:  June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
         keddy@blankrome.com
         byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

9

Case ID: 170300712
Control No.: 21060498

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that, on this 2nd day of June 2021, I caused a true and correct copy of the foregoing Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's Motion to Exclude an Preclude Evidence and accompanying memorandum of law to be served via the Court's electronic filing system and/or electronic mail and/or First Class Mail upon the following:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

Case ID: 170300712
Control No.: 21060498

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

*Additional Defendant*

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*

*/s/ Justina L. Byers*
JUSTINA L. BYERS

2

Case ID: 170300712
Control No.: 21060498

|                                                              |   |                              |
|--------------------------------------------------------------|---|------------------------------|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire, | : | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
|                                                              | : |                              |
| Plaintiff,                                                   | : | CIVIL ACTION – LAW           |
|                                                              | : |                              |
| v.                                                           | : | MARCH TERM, 2017             |
|                                                              | : | Civil Action No.: 00712      |
| ROOSEVELT INN LLC<br>d/b/a ROOSEVELT INN and<br>ROOSEVELT INN CAFÉ, et al., | : |                              |
|                                                              | : |                              |
| Defendants.                                                  | : |                              |
|                                                              | : |                              |
| v.                                                           | : |                              |
|                                                              | : |                              |
| DAIQUAN DAVIS AND ABDUL LOPEZ,                               | : |                              |
|                                                              | : |                              |
| Additional Defendants.                                       | : |                              |

## ORDER

**AND NOW**, this _____ day of _____, 2021, upon consideration of

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor

Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's

Motion to Preclude and Exclude References to Incidents Before and After the Relevant Time

Period and any response thereto, it is hereby ORDERED that said Motion is GRANTED.

At the trial in this matter, the parties shall be precluded from introducing testimony or

evidence referencing any incidents or conditions pertaining to the Roosevelt Inn prior to January

2014 and after June 6, 2014.

**BY THE COURT:**

_____
                                                    J.

150213.00601/124947825v.1

Case ID: 170300712
Control No.: 21060493

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | MARCH TERM, 2017 NO.: 00712 |
| v. | JURY TRIAL DEMANDED |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | |
| Defendants, | |
| v. | |
| DAIQUAN DAVIS and ABDUL LOPEZ | |
| Additional Defendants. | |

**MOTION TO PRECLUDE AND EXCLUDE REFERENCES**
**TO ACTS AND OMISSONS OUTSIDE THE RELEVANT TIME PERIOD**

150213.00601/124947825v.1

Case ID: 170300712
Control No.: 21060493

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by and through their undersigned attorneys, hereby move the Court to enter an Order precluding and excluding any reference at trial to incidents or conditions at the Roosevelt Inn prior to January 1, 2014 and after June 6, 2014, *i.e.,* before and after the relevant time period of Plaintiff's allegations. In support of this motion, the Roosevelt Defendants aver as follows:

1.      Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. Plaintiff amended her Complaint multiple times, including revising allegations regarding the length of time and the period of time in which she alleges she was trafficked. Her most recent Amended Complaint, which is based solely on claims of common law negligence, narrows the time period of her alleged trafficking to *several months in the first half of 2014* (the "Relevant Time Period"). See Exhibit A, Fourth Amended Complaint. Plaintiff testified that she turned herself into the Philadelphia Department of Human Services on June 6, 2014.

2.      During the course of discovery, Plaintiff identified two men who she alleges acted as her traffickers during the Relevant Time Period. The Roosevelt Defendants joined the two men, Daiquan Davis ("Davis") and Abdul Lopez ("Lopez"), as Additional Defendants to this action. Both Davis and Lopez are in federal prison, serving sentences for sex trafficking.

3.      Among the evidence Plaintiff likely intends to introduce at trial are documents and testimony regarding incidents that allegedly occurred, and conditions that allegedly existed,

150213.00601/124947825v.1

Case ID: 170300712
Control No.: 21060493

at the Roosevelt Inn, alleged acts and omissions of the Roosevelt Defendants during time periods before and after the Relevant Time Period.

4.      Examples of such so-called evidence include:

● handwritten statements of witnesses purportedly describing their activities at the Roosevelt Inn that allegedly took place before January 1, 2014 and after June 6, 2014;

● testimony from multiple witnesses, including current and former employees of defendant Alpha-Centurion Security, Inc., relating to incidents that allegedly occurred before and after the Relevant Time period;

● records from the Philadelphia Police Department indicating police response calls to the Roosevelt Inn before and after the Relevant Time Period;

● video surveillance footage from the Roosevelt Inn from January 2015;[1]

● evidence of crimes or criminal activity at the Roosevelt Inn, other than sex trafficking, that allegedly occurred before or after the Relevant Time Period; and

● hearsay evidence such as summaries of witness interviews and purported online customer reviews concerning events outside of Relevant Time Period.[2]

5.      Plaintiff's theory of the instant litigation is that the Roosevelt Defendants were negligent in failing to recognize and prevent her alleged sex trafficking. Plaintiff alleges that the Roosevelt Defendants failed to implement procedures and monitor the hotel and to prevent Plaintiff from being trafficked. *See* Plaintiff's Fourth Amended Complaint, at ¶ 74.

---

[1] Defendant Alpha-Centurion Security, Inc. submitted a supplemental expert report in January 2021, in which its purported expert Jake Stone concluded, after a review of surveillance footage from March 2014 and January 2015, that the motion detector settings of the Roosevelt Inn's video surveillance system were "poorly set up," resulting in "footage jumping" and brief gaps in capturing activity from one camera to the next. The Roosevelt Defendants have moved separately to exclude Stone's report on the basis that the report fails to "assist the trier of fact to understand the evidence or determine a fact in issue." Pa. R. E. 702.

[2] Like the referenced video footage, several categories of proffered evidence identified in this paragraph are subject to other motions in limine to preclude or exclude, brought on other grounds.

150213.00601/124947825v.1

Case ID: 170300712
Control No.: 21060493

Accordingly, the temporal scope of relevant evidence is limited to the Relevant Time Period, during which Plaintiff claims she was on site at the Roosevelt Inn.

6.      Testimony, documentary evidence and references to incidents or conditions alleged to have existed before the Relevant Time Period are not relevant to Plaintiff's claims.

7.      In addition, the probative value of such evidence, even if it were relevant, is clearly outweighed by the unfair prejudice to the Roosevelt Defendants if such evidence were admitted. Permitting references to prostitution, crimes and illicit behaviors before and after the Relevant Time Period would serve only to distract and confuse the jury and take up valuable time during the trial in this matter.

8.      Plaintiff's broad sweeping discovery efforts – covering many years before and after the relevant time period -- are part of her overall scheme to disparage the Roosevelt Defendants. Not only are events outside the Relevant Time Period not relevant to Plaintiff's claims, reference to such incidents is prejudicial to the Roosevelt Defendants and is improper character evidence.

## LEGAL ARGUMENT

**A.      Information Relating to Incidents, Conditions, Alleged Acts and Omissions Outside the Relevant Time Period Is Not Relevant**

9.      Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Pa. R. E. 401. If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is

4

Case ID: 170300712
Control No.: 21060493

offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial. *See* Pa. R. E. 402.

10. Incidents that allegedly took place at the Roosevelt Inn before or after the Relevant Time Period are not relevant to Plaintiff's claims and do not tend to prove or disprove Plaintiff's allegations of sex trafficking during the Relevant Time Period. See *Mazzeo v. SpectaGuard Acquisition, LLC*, C.A. No. 02981, 2008 Phila. Ct. Com. Pl. LEXIS 158 *4-5 (Phila. Cty. June 10, 2008) (excluding as not relevant evidence of defendant's practices from an earlier time period than those of Plaintiff's claims); *Katz v. Strawbridge & Clothier*, C.A. No. 3332, 1993 Phila. Cty. Rptr. LEXIS 35, *7-8 (Phila. Cty. 1993) (excluding as not relevant evidence pertaining to conditions before and after event giving rise to Plaintiff's claims).

### B. Purported Evidence Disparaging the Roosevelt Inn Is Unfairly Prejudicial

11. Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Pa. R. E. 403. In deciding an evidentiary issue, courts balance the probative value of the evidence with the prejudicial impact the evidence could have on the party against whom it is offered. *See* Pa. R. E. 403; *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995). "Unfair prejudice supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially." *Carlini v. Glenn Hawbaker, Inc.*, 219 A.3d 629, 639 (Pa. Super. 2019).

12. Evidence pertaining to events or conditions at the Roosevelt Inn would be proffered not because of a connection to Plaintiff's allegations but for the purpose of portraying the Roosevelt Inn in a negative light. The rules of this court require evidence to be not only

5

Case ID: 170300712
Control No.: 21060493

legitimate and relevant, but also fairly admitted. The probative versus prejudicial analysis tips strongly in favor of excluding evidence pertaining to incidents or conditions before or after the Relevant Time Period.

13. Most of outside-the-Relevant-Time-Period evidence is disparaging to the Roosevelt Defendants and will be offered as evidence of the Roosevelt Defendants' "prior bad acts." Because of the highly prejudicial nature of character evidence, evidence of a party's prior acts is irrelevant and inadmissible. *See* Pa. R. E. 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith." The exceptions to the rule, provided in Rule 404(b)(2), do not apply.

14. Evidence pertaining to incidents or conditions at the Roosevelt Inn before and after the Relevant Time Period cannot be admitted into evidence to suggest that the Roosevelt Defendants conducted themselves in any manner during the Relevant Time Period and with respect to the relevant parties in this action. This is precisely the type of evidence that Rule 404 precludes. See *U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that Fed. R. 404(b) seeks to prevent").

15. Such testimony is unfairly prejudicial because it may mislead the jury to conclude that the Roosevelt Defendants were negligent as to Plaintiff. Rules 403 and 404 preclude the admission of such information.

16. Decisions on admissibility are within the sound discretion of the trial court. *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 391 (Pa. Super. 2015) (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)). *See also Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa.

6

Case ID: 170300712
Control No.: 21060493

2015); *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).  Evidence relating to events or conditions before and after the time period of Plaintiff's allegations would be not only prejudicial to defendants but would also be misleading to the jury, confusing the issues and evidence the jury needs to consider.  "[I]t is the duty of the trial judge, . . . to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues."  *Geesey v. Albee Pa. Homes, Inc*., 235 A.2d 176, 180 (Pa. Super. 19967); *Commonwealth v. Hicks,* 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific").

17.    Testimony by any witness concerning alleged acts or omissions of the Roosevelt Defendants on occasions outside the Relevant Time Period is irrelevant, improper character evidence, highly prejudicial, and must be precluded.

WHEREFORE, the Roosevelt Defendants respectfully request this Court enter the attached Order to exclude and preclude from the trial in this matter all reference to incidents or conditions at the Roosevelt Inn and acts or omissions of Roosevelt Defendants before January 1, 2014 and after June 6, 2014.

150213.00601/124947825v.1

Case ID: 170300712
Control No.: 21060493

**BLANK ROME LLP**

Dated: June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
         keddy@blankrome.com
         byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

8

Case ID: 170300712
Control No.: 21060493

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
         keddy@blankrome.com
         byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | | |
|---|---|---|
| M.B., minor by her Guardian, | : | COURT OF COMMON PLEAS |
| William A. Calandra, Esquire, | : | PHILADELPHIA COUNTY |
| | : | CIVIL TRIAL DIVISION |
| Plaintiff, | : | |
| | : | MARCH TERM, 2017 |
| v. | : | NO.: 00712 |
| | : | |
| ROOSEVELT INN LLC d/b/a ROOSEVELT | : | JURY TRIAL DEMANDED |
| INN and ROOSEVELT INN CAFÉ, et al., | : | |
| ROOSEVELT MOTOR INN, INC. d/b/a | : | |
| ROOSEVELT MOTOR INN, UFVS | : | |
| MANAGEMENT COMPANY, LLC, | : | |
| YAGNA PATEL and ALPHA-CENTURION | : | |
| SECURITY, INC. d/b/a ALPHA CENTURION | : | |
| SECURITY INC. | : | |
| | : | |
| Defendants, | : | |
| | : | |
| v. | : | |
| | : | |
| DAIQUAN DAVIS and ABDUL LOPEZ | : | |
| | : | |
| Additional Defendants. | : | |

Case ID: 170300712
Control No.: 21060493

**DEFENDANTS ROOSEVELT INN LLC, ET AL.'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO PRECLUDE AND
EXCLUDE REFERENCES TO ACTS AND OMISSIONS OUTSIDE THE
RELEVANT TIME PERIOD**

## I.    MATTER BEFORE THE COURT

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt

Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel

(hereinafter collectively "the Roosevelt Defendants"), by their undersigned attorneys, hereby file

this memorandum of law in support of their motion to preclude and exclude all evidence of and

any reference at trial to alleged acts and omissions of the Roosevelt Defendants before January 1,

2014 and after June 6, 2014, the time period relevant to Plaintiff's claims (the "Relevant Time

Period").

## II.    QUESTION INVOLVED

Should the Court preclude and excluding any reference to acts and omissions of the

Roosevelt Defendants or incidents and conditions at the Roosevelt Inn before January 1, 2014

and after June 6, 2014?

Suggested answer:  Yes.

Evidence or references pertaining to acts and omissions of the Roosevelt Defendants

relating to occurrences or conditions at the Roosevelt Inn before January 1, 2014 and after June

6, 2014 are not relevant to Plaintiff's claims.  Moreover, such evidence would be offered merely

to unfairly prejudice the jury against the Roosevelt Defendants with improper "prior bad act"

character evidence.  Plaintiff's claims relate to a specific six-month time period during which she

alleges she was the victim of sex trafficking.  Evidence presented in this trial should be limited to

that time period.

2

Case ID: 170300712
Control No.: 21060493

### III.   **FACTUAL BACKGROUND**

Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. Plaintiff amended her Complaint several times. Her last Amended Complaint includes solely claims of negligence against the Roosevelt Inn and her factual allegations narrow the time period in which she was alleged trafficked at the Roosevelt Inn to a limited period in the first half of 2014. Plaintiff claims that she was "recruited, enticed, solicited, harbored, and/or transported to engage in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis." She alleges generally that the Roosevelt Defendants were negligent in not recognizing that Plaintiff was being trafficked and not acting to prevent it.

Plaintiff has indicated her intent to present evidence at trial of pertaining to the events and conditions at the Roosevelt Inn, alleged acts and omissions of the Roosevelt Defendants before January 1, 2014 and after June 6, 2014. Such evidence includes but is not limited to "witness statements," police response calls and other police records, records from the Philadelphia District Attorney's Office, summaries of witness interviews, surveillance video footage from January 2015, witness testimony relating to before and after the relevant time, including testimony by defense witnesses, online comments pertaining to the Roosevelt Inn, all relating to time periods outside the Relevant Time Period.

Testimony, documentary evidence and references to incidents or conditions alleged to have existed before the Relevant Time Period are not relevant to Plaintiff's claims. In addition, the probative value of such evidence, even if it were relevant, is clearly outweighed by the unfair prejudice to the Roosevelt Defendants if such evidence were admitted. Permitting references to

3

Case ID: 170300712
Control No.: 21060493

prostitution, crimes and illicit behaviors before and after the Relevant Time Period would serve only to distract and confuse the jury and take up valuable time during the trial in this matter.

## IV.    LEGAL ARGUMENT

### C.    Information Relating to Incidents, Conditions, Alleged Acts and Omissions Outside the Relevant Time Period Is Not Relevant

Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Pa. R. E. 401. If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial. *See* Pa. R. E. 402.

Plaintiff, after amending her pleadings repeatedly and in the face of evidence refuting her claims, has identified the relevant time period of her claims against the Roosevelt Inn to January 1, 2014 to June 6, 2014. Evidence relating to incidents that might have occurred or alleged acts or omission of the Roosevelt Defendants before January 2014 and after June 6, 2014 is not relevant to Plaintiff's claims. For example, testimony of events from 2013, Trip Advisor comments from 2007 and surveillance footage from 2015 offer no relevant evidence in this case. Such information does not make any fact of the case more or less probable. See *Mazzeo v. SpectaGuard Acquisition, LLC*, C.A. No. 02981, 2008 Phila. Ct. Com. Pl. LEXIS 158 *4-5 (Phila. Cty. June 10, 2008) (excluding as not relevant evidence of defendant's practices from an earlier time period than those of Plaintiff's claims); *Katz v. Strawbridge & Clothier*, C.A. No. 3332, 1993 Phila. Cty. Rptr. LEXIS 35, *7-8 (Phila. Cty. 1993) (excluding as not relevant evidence pertaining to conditions before and after event giving rise to Plaintiff's claims).

4

Case ID: 170300712
Control No.: 21060493

Evidence from outside the Relevant Time Period should be excluded as nothing more than Plaintiff's attempt to sully the reputation of the Roosevelt Defendants with salacious innuendo.

**D.**     **Permitting Evidence that Merely Denigrates the Roosevelt Inn Would Be Unfairly Prejudicial to the Roosevelt Defendants**

Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, undue delay or wasting time. *See* Pa. R. E. 403. The Court must balance the probative value with the prejudicial impact the proffered evidence could have against whom it is offered. See Pa. R. E. 403; *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).

Here, evidence of incidents, including crimes related to commercial sex, that took place before or after the Relevant Time Period, while patently irrelevant, contain scandalous material and will catch the jury's attention. The "evidence," however, offers no probative value but will be highly prejudicial to the Roosevelt Defendants. The probative versus prejudicial balance clearly tips in favor of excluding all evidence of incidents, conditions at the Roosevelt Inn, alleged acts and omissions of the Roosevelt Defendants before and after the Relevant Time Period.

Rule 403 also permits a judge to exclude evidence that could confuse or mislead the jury, cause undue delay or waste time. *See* Pa. R. E. 403. Confusion, misdirection and distraction are precisely the reasons Plaintiff will proffer evidence of the March 31, 2014 shooting and other crimes. The court must not allow the trial of Plaintiff's sex trafficking allegations to become a sideshow exhibition of other crimes possibly committed at the Roosevelt Inn.

**E.**     **Evidence of Prior Bad Acts Is Inadmissible**

Evidence alleging acts and omissions on the part of the Roosevelt Defendants outside of the Relevant Time Period will serve no purpose in this trial other than to sully the Roosevelt

5

Case ID: 170300712
Control No.: 21060493

Defendants' character. In addition to being irrelevant and unduly prejudicial, evidence relating to incidents that took place before or after the Relevant Time Period proffered solely to impugn the character of the Roosevelt Defendants is clearly improper. Because of the highly prejudicial nature of such evidence, information pertaining to or suggesting a party's prior bad acts is inadmissible. Rule 404(b)(1) of the Pennsylvania Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith." The exceptions to the rule, provided in Rule 404(b)(2), do not apply here.

Accordingly, Plaintiff may not offer evidence of alleged acts and omissions outside the Relevant Time Period to suggest that the Roosevelt Defendants conducted themselves in a certain manner *as to Plaintiff* and during the Relevant Time Period. This is precisely the type of evidence that Rule 404 precludes. *See* U.S. v. Morley, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that [the equivalent] Fed. R. 404(b) seeks to prevent").

This Court has the discretion to exclude evidence that:

- is irrelevant;

- pertains to prior bad acts and is offered merely to sully a defendant's character; and

- has no probative value but would be unfairly prejudicial, confusing, misleading, will cause undue delay and waste time.

All of the above bases for exclusion are present here and require that the Court exclude any evidence or reference to incidents, conditions at the Roosevelt Inn and alleged acts and omissions of the Roosevelt Defendants before January 1, 2014 and after June 6, 2014.

150213.00601/124947825v.1

Case ID: 170300712
Control No.: 21060493

## V. **RELIEF REQUESTED**

Pursuant to Pennsylvania Rules of Evidence 401, 402, 403 and 404, the Roosevelt

Defendants respectfully request this Court enter the attached Order excluding and precluding any

evidence or reference to incidents, conditions at the Roosevelt Inn and alleged acts and

omissions of the Roosevelt Defendants before January 1, 2014 and after June 6, 2014.

**BLANK ROME LLP**

Dated: June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn,*
*Inc. d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

7

Case ID: 170300712
Control No.: 21060493

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that, on this 2nd day of June 2021, I caused a true and correct copy of the foregoing Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's Motion to Exclude an Preclude Evidence and accompanying memorandum of law to be served via the Court's electronic filing system and/or electronic mail and/or First Class Mail upon the following:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

Case ID: 170300712
Control No.: 21060493

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

*Additional Defendant*


Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*


*/s/ Justina L. Byers*
JUSTINA L. BYERS

150213.00601/124947825v.1

Case ID: 170300712
Control No.: 21060493

| | | |
|---|---|---|
| M.B., minor by her Guardian, | : | IN THE COURT OF COMMON PLEAS |
| William A. Calandra, Esquire, | : | PHILADELPHIA COUNTY |
| | : | |
| Plaintiff, | : | CIVIL ACTION – LAW |
| | : | |
| v. | : | MARCH TERM, 2017 |
| | : | Civil Action No.: 00712 |
| ROOSEVELT INN LLC | : | |
| d/b/a ROOSEVELT INN and | : | |
| ROOSEVELT INN CAFÉ, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| v. | : | |
| | : | |
| DAIQUAN DAVIS AND ABDUL LOPEZ, | : | |
| | : | |
| Additional Defendants. | : | |
| | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2021, upon consideration of

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor

Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's

Motion n Limine to Preclude Any Reference to Alleged Traffickers other than Davis and Lopez,

it is hereby ORDERED that said Motion is GRANTED.

At the trial in this matter, the parties shall be precluded from introducing evidence of or

referencing any alleged sex trafficker other than Daiquan Davis and Abdul Lopez, including but

not limited to their identities, their offenses, their activities at the Roosevelt Inn, law enforcement

Case ID: 170300712
Control No.: 21060491

activities related to their arrests; and all documents related to them, including their purported

written statements.

BY THE COURT:

_____ J.

150213.00601/123264676v.1

Case ID: 170300712
Control No.: 21060491

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire,<br><br>      Plaintiff,<br><br>   v.<br><br>ROOSEVELT INN LLC d/b/a ROOSEVELT<br>INN and ROOSEVELT INN CAFÉ, et al.,<br>ROOSEVELT MOTOR INN, INC. d/b/a<br>ROOSEVELT MOTOR INN, UFVS<br>MANAGEMENT COMPANY, LLC,<br>YAGNA PATEL and ALPHA-CENTURION<br>SECURITY, INC. d/b/a ALPHA CENTURION<br>SECURITY INC.<br><br>      Defendants,<br><br>   v.<br><br>DAIQUAN DAVIS and ABDUL LOPEZ<br><br>     Additional Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL TRIAL DIVISION<br><br>MARCH TERM, 2017<br>NO.: 00712<br><br>JURY TRIAL DEMANDED |

## MOTION IN LIMINE TO PRECLUDE EVIDENCE AND REFERENCES TO ALLEGED TRAFFICKERS OTHER THAN ADDITIONAL DEFENDANTS DAVIS AND LOPEZ

Case ID: 170300712
Control No.: 21060491

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by and through their undersigned attorneys, hereby moves the Court to enter an Order precluding at trial any reference to or evidence of alleged sex traffickers other than Additional Defendants Daiquan Davis and Abdul Lopez, including the introduction of unauthenticated statements allegedly made by such persons. In support of this motion, the Roosevelt Defendants aver as follows:

1.    Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. Plaintiff amended her Complaint multiple times. Her most recent Amended Complaint is based solely on claims of common law negligence.

2.    During the course of discovery, Plaintiff identified two men she alleges acted as her "pimps," *i.e.*, men who allegedly trafficked Plaintiff during the relevant time period. The Roosevelt Defendants joined those two men, Daiquan Davis ("Davis") and Abdul Lopez ("Lopez"), as Additional Defendants to this action. Both Davis and Lopez are in federal prison, serving sentences for sex trafficking.

3.    The parties deposed Abdul Lopez in this matter and Davis is scheduled to be deposed on June 10, 2021. The Roosevelt Defendants obtained signed statements from both Lopez and Davis.

4.    During discovery, Plaintiff produced handwritten statements allegedly obtained from other men who claimed to have acted as pimps for females engaging in commercial sex at the Roosevelt Inn. Specifically, Plaintiffs have produced statements of Rashaad McIntyre ("McIntyre") and Jerel Jackson ("Jackson") regarding their alleged illegal activities at the

2

Case ID: 170300712
Control No.: 21060491

Roosevelt Inn. Plaintiff has not identified either McIntyre or Jackson as having been involved or as having knowledge of her alleged trafficking. In fact, both McIntyre and Jackson were in federal custody during the time Plaintiff alleges she was trafficked at the Roosevelt Inn in 2014.[1]

5.     Plaintiff included Rashaad McIntyre on the witness list in her Pretrial Memorandum, at p. 21.

6.     Because the alleged activities of these other alleged traffickers are not relevant and the statements provided by Plaintiff are hearsay, irrelevant and highly prejudicial, this Court should preclude Plaintiff from offering the statements as evidence at trial and should be precluded from offering any reference to any alleged traffickers other than Davis and Lopez, the two men Plaintiff named and who are parties to the litigation.

## LEGAL ARGUMENT

### A.     Evidence Concerning Non-Party Alleged Traffickers is Not Relevant

7.     Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Pa. R. E. 401. If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial. *See* Pa. R. E. 402.

8.     Evidence is relevant only if it tends to prove or disprove a material fact. *Conroy v. Rosenwald*, 940 A.2d 409, 417 (Pa. Super. 2007). Plaintiff has never identified the other

---

[1] Attached as Exhibit A is the docket from *U.S. v. McIntyre*, docket no. 2:12-cr-00675, which indicates McIntyre was indicted in December 2012 and held in the custody of the United States Marshal pending the resolution of the federal charges. McIntyre pled guilty in September 2013 and has been incarcerated since that time. Attached as Exhibit B is the docket from U.S. v. Jackson, docket no. 2:13-cr-00622, which indicates Jackson was arrested in October 2013 and has been in custody since his arrest.

150213.00601/123264676v.1

Case ID: 170300712
Control No.: 21060491

alleged traffickers – McIntyre and Jackson – nor do their handwritten statements reference Plaintiff. The other alleged traffickers and their unauthenticated statements have no relevance to this litigation. The statements allege occurrences in different time periods, under different circumstances and involving different persons than those at issue in this case. Neither the statements nor any other information relating to traffickers other than Davis and Lopez tend to prove or disprove a fact material to Plaintiff's claims.

    **B.**    **Evidence Concerning Non-Party Alleged Traffickers Is Unfairly Prejudicial, Misleading and Would Waste Time**

    9.    Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Pa. R. E. 403. In deciding an evidentiary issue, courts balance the probative value of the evidence with the prejudicial impact the evidence could have on the party against whom it is offered. *See* Pa. R. E. 403; *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).

    10.    The statements, actions, criminal records and other information relating to alleged traffickers other than Davis and Lopez do not provide probative value to these proceedings. They do, however, have the potential to unfairly prejudice the Roosevelt Defendants. Unfair prejudice is defined as having a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. *Conroy*, 940 A.2d 409, 417 (Pa. Super. 2007). This is the very danger of admitting information relating to traffickers other than Davis and Lopez as evidence in this case. Evidence that would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case should be precluded pursuant to Pa. R.E. 403. *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1238 (Pa. Super. 2015).

4

Case ID: 170300712
Control No.: 21060491

11. The unauthenticated statements proffered by Plaintiff would be introduced as "evidence" of the Roosevelt Defendants" prior bad acts. Because of the highly prejudicial nature of character evidence, evidence of a party's prior acts is irrelevant and inadmissible. *See* Pa. R. E. 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith." The exceptions to the rule, provided in Rule 404(b)(2), do not apply.

12. A self-admitted criminal's alleged observations concerning his own activities at the Roosevelt Inn cannot be admitted into evidence to suggest that the Roosevelt Defendants conducted themselves in a certain manner during the relevant time period in this action. This is precisely the type of evidence that Rule 404 precludes. *See U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that [the equivalent] Fed. R. 404(b) seeks to prevent").

13. Even if the Court found that testimony regarding the alleged experiences of non-parties at the Roosevelt Inn had evidentiary value, this evidence must nonetheless be precluded pursuant to Rule 403. Such testimony is unfairly prejudicial because it may mislead the jury to conclude that the Roosevelt Defendants were negligent as to Plaintiff.

14. Decisions on admissibility are within the sound discretion of the trial court. *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 391 (Pa. Super. 2015) (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)). See also *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015); *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995). Were the court to permit evidence from or relating to alleged traffickers other than those connected to this litigation, the examination of the circumstances and credibility of those "witnesses" will become collateral

150213.00601/123264676v.1

Case ID: 170300712
Control No.: 21060491

disputes detracting from the claims at issue. The instant litigation is not the appropriate forum to dissect the other alleged traffickers' criminal cases, conducting a trial within the trial for each non-party alleged trafficker, dissections that would be necessary if the alleged traffickers' statements were to be considered. Evidence relating to non-party traffickers would be not only prejudicial to defendants but also would be misleading to the jury, confusing the pertinent issues and evidence the jury needs to consider. "[I]t is the duty of the trial judge, . . .to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues." *Geesey v. Albee Pa. Homes, Inc.*, 235 A.2d 176, 180 (Pa. Super. 1997); *Commonwealth v. Hicks*, 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific"). Moreover, the mini-trials on the other alleged traffickers' actions would waste valuable court time and cause undue delay in these proceedings.

15. Testimony by any witness concerning alleged acts or omissions of the Roosevelt Defendants on occasions other than those raised by Plaintiff's Complaint is irrelevant, improper character evidence, is highly prejudicial, and it must be precluded.

C. **Statements of Non-Party Alleged Are Inadmissible Hearsay**

16. The unauthenticated written statements of alleged traffickers are inadmissible hearsay. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R.E. 801. A hearsay statement is inadmissible unless it falls into one of the enumerated exceptions set forth in the Pennsylvania Rules of Evidence. *See* Pa. R. E. 802. None of the exceptions set forth in P. R. E. 803 applies to unauthenticated handwritten statements made by absent non-parties such as Jerel Jackson and Rashaad McIntyre.

6

Case ID: 170300712
Control No.: 21060491

17.     In addition, the statements Plaintiff proffers of alleged trafficking victims are not authenticated and as such, cannot be admitted into evidence.  Pennsylvania Rule of Evidence 901 requires authentication:

> Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

Pa.R.E. 901.

18.     For the foregoing reasons, the Court should exclude all information regarding any alleged traffickers other than Davis and Lopez, including any evidence disclosing:  their identities, their offenses, their activities at the Roosevelt Inn, law enforcement activities related to their arrests; and all documents related to them, including their purported statements.

WHEREFORE, the Roosevelt Defendants respectfully request this Court enter the attached Order to exclude and preclude 1) the admission of written statements of any alleged traffickers other than Daiquan Davis and Abdul Lopez; 2) any reference to or evidence of any alleged traffickers other than Daiquan Davis and Abdul Lopez; and 3) testimony by any alleged trafficker other than Daiquan Davis and Abdul Lopez.

150213.00601/123264676v.1

Case ID: 170300712
Control No.: 21060491

**BLANK ROME LLP**

Dated: June 2, 2021

/s/ Charles S. Marion
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

8

Case ID: 170300712
Control No.: 21060491

**BLANK ROME LLP**
BY: Charles S. Marion, Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
       keddy@blankrome.com
       byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

---

| | | |
|---|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | : | |
| v. | : | MARCH TERM, 2017 NO.: 00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | : | JURY TRIAL DEMANDED |
| Defendants, | : | |
| v. | : | |
| DAIQUAN DAVIS and ABDUL LOPEZ | : | |
| Additional Defendants. | : | |

Case ID: 170300712
Control No.: 21060491

**DEFENDANTS ROOSEVELT INN LLC, ET AL.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO PRECLUDE REFERENCES TO ALLEGED TRAFFICKERS OTHER THAN ADDITIONAL DEFENDANTS DAVIS AND LOPEZ**

## I.     MATTER BEFORE THE COURT

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by their undersigned attorneys, hereby file this memorandum of law in support of their motion to preclude any reference at trial to alleged sex traffickers other than Additional Defendants Daiquan Davis and Abdul Lopez, including reference to or admission of unauthenticated statements allegedly made by such persons (the "Motion").

## II.     QUESTION INVOLVED

Should the Court grant the Motion of the Roosevelt Defendants and preclude all reference at trial of alleged traffickers other than Additional Defendants Davis and Lopez?

Suggested answer:  Yes.

The Roosevelt Defendants anticipate that Plaintiff will attempt to introduce at trial evidence relating to alleged traffickers other than Additional Defendants Daiquan Davis and Abdul Lopez, including handwritten statements allegedly prepared by such persons.  Such evidence - which involves circumstances from a different time period and different circumstances than the instant litigation – is not relevant to this case.  The evidence is also highly prejudicial and constitutes inadmissible hearsay.

## III.     FACTUAL BACKGROUND

Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt

Case ID: 170300712
Control No.: 21060491

Defendants and Alpha-Centurion Security, Inc. In her Complaint, Plaintiff alleges that over a time period in 2014, she was "recruited, enticed, solicited, harbored, and/or transported to engage in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis." Plaintiff identified two individuals – Daiquan Davis and Abdul Lopez – as her alleged traffickers. According to Plaintiff, Davis and Lopez forced her to engage in commercial sex at various locations, including the Roosevelt Inn.

Plaintiff produced in discovery handwritten statements allegedly provided by other individuals purportedly with knowledge of commercial sex activity at the Roosevelt Inn. Two of the statements were purportedly signed by other alleged traffickers, Rashaad McIntyre and Jerel Jackson. Plaintiff also included McIntyre as a witness in her Pretrial Memorandum. McIntyre and Jackson are not parties to this litigation and have not been identified as having been involved in or witness to Plaintiff's alleged trafficking. In fact, during the time Plaintiff alleges she was trafficked, both McIntyre and Jackson were in federal custody, where they remain.

The handwritten statements purportedly by McIntyre and Jackson and all information pertaining to McIntyre and Jackson are irrelevant to Plaintiff's claims in the instant litigation. Neither McIntyre nor Jackson visited the Roosevelt Inn during the time Plaintiff claims to have been there in 2014. Plaintiff never claimed to have met McIntyre or Jackson. The alleged experiences or impressions of McIntyre and Jackson are completely irrelevant to Plaintiff's claims of being coerced into commercial sex by Davis and Lopez.

Even if information from or relating to McIntyre and Jackson were considered to be relevant to Plaintiff's claims, the probative value of this information is far outweighed by the prejudice to the Roosevelt Defendants. The handwritten statements purportedly provided by McIntyre and Jackson, which are inadmissible hearsay statements to which no exception applies,

3

Case ID: 170300712
Control No.: 21060491

are critical of and impugn the character of the Roosevelt Defendants. The rules of this court do not permit the admission of "evidence" of a past impropriety or prior bad acts as evidence of conduct during the relevant time period. Moreover, it is within the court's discretion to determine when so-called evidence should be excluded on the bases of relevance and unfair prejudice. In this case, evidence related to non-party alleged traffickers would be not only prejudicial to defendants but also would be misleading to the jury. The statements of the other alleged traffickers will surely be challenged, creating mini-trials on collateral issues having no bearing on Plaintiff's claims and serving only to confuse and distract the jury.

## IV. ARGUMENT

### A. Information Relating to Alleged Traffickers Other than Davis and Lopez Is Not Relevant

Information pertaining to alleged traffickers other than Daiquan Davis and Abdul Lopez is not relevant to Plaintiff's claims in this case. Plaintiff identified two men -- Davis and Lopez -- who she claims trafficked her at the Roosevelt Inn during a limited time period in 2014. Information regarding and handwritten statements by other alleged sex traffickers, who have both been incarcerated *since before* Plaintiff's period of trafficking allegedly took place, have no relevance to this litigation.

Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa. R. E. 401. If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial. Pa. R. E. 402. Here, Plaintiff seeks to admit evidence related to two convicted felons, who were both in

4

Case ID: 170300712
Control No.: 21060491

federal custody before the events giving rise to her claims took place. The information pertaining to the other traffickers, and the statements they purportedly made, will be offered by Plaintiff as evidence of the acts or failure to act on the part of the Roosevelt Defendants. But such evidence is clearly not relevant. Information regarding or statements from other alleged traffickers, who were not identified by Plaintiff, whom Plaintiff never encountered and who have nothing to do with Plaintiff's claims, are not relevant to Plaintiff's claims against the Roosevelt Defendants and should be excluded.

**B.      Evidence Concerning Non-Party Alleged Traffickers Is Unfairly Prejudicial**

Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, undue delay or wasting time. Pa. R. E. 403. The Court must balance the probative value with the prejudicial impact the proffered evidence could have against whom it is offered. See Pa. R. E. 403; *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).

Here, the statements, actions, criminal records and other information relating to any alleged trafficker other than Davis and Lopez provide no probative value to these proceedings, while they clearly have the potential to unfairly prejudice the Roosevelt Defendants. Unfair prejudice is defined as a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. *Conroy v. Rosenwald*, 940 A.2d at 417. The association of the Roosevelt Defendants to other alleged traffickers, including convicted felons McIntyre and Jackson, would be offered merely to prejudice the jury against the Roosevelt Defendants. As discussed above, such evidence is not relevant to Plaintiff's claims but would be offered merely as part of Plaintiff's smear campaign against the Roosevelt Defendants. Evidence that inflames the jury to make a decision based upon something

5

Case ID: 170300712
Control No.: 21060491

other than the legal propositions relevant to the case should be precluded. *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1238 (Pa. Super. 2015). The probative v. prejudicial balance clearly tips in favor of excluding any evidence related to the other traffickers.

Moreover, since the information pertaining to the other alleged traffickers will surely be challenged by defendants, along with their credibility, the court will become a forum for trials within trials to examine each the circumstances and motivations of the other traffickers. The mini trials on such collateral issues will be a waste of the court's time and cause undue delay in the adjudication of the matters truly at issue. Rule of Evidence 403 mandates that in such cases, even relevant information should be excluded.

**C.     Evidence of Prior Bad Acts Is Inadmissible**

In addition to being irrelevant and unduly prejudicial, evidence related to alleged traffickers other than Davis and Lopez would be introduced merely to suggest prior bad acts on the part of the Roosevelt Defendants. Because of the highly prejudicial nature of such evidence, information pertaining to or suggesting a party's prior bad acts is inadmissible. Rule 404(b)(1) of the Pennsylvania Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith." The exceptions to the rule, provided in Rule 404(b)(2), do not apply here.

Accordingly, Plaintiff may not offer evidence of non-party, unrelated actors or their alleged observations relating to other time periods to suggest that the Roosevelt Defendants conducted themselves in a certain manner *as to Plaintiff* and during the relevant time period in this action. This is precisely the type of evidence that Rule 404 precludes. See *U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that

150213.00601/123264676v.1

Case ID: 170300712
Control No.: 21060491

defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that [the equivalent] Fed. R. 404(b) seeks to prevent").

### D. The Purported Statements of McIntyre and Jackson are Inadmissible Hearsay

The "statements" of McIntyre and Jackson that Plaintiff will seek to admit into evidence are unauthenticated hearsay. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R. E. 801. A hearsay statement is inadmissible unless it falls into one of the enumerated exceptions set forth in the Pennsylvania Rules of Evidence. See Pa. R. E. 802. None of the exceptions set forth in P. R. E. 803 applies to unauthenticated handwritten statements made by absent non-parties Jackson and Rashaad McIntyre.

In addition, the statements Plaintiff proffers of alleged trafficking victims are not authenticated and as such, cannot be admitted into evidence. Pennsylvania Rule of Evidence 901 requires authentication:

> Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

Pa.R.E. 901. Accordingly, the statements must be excluded.

This Court has the discretion to exclude evidence that:

- is irrelevant;

- pertains to prior bad acts and is offered merely to sully a defendant's character;

- has no probative value but would be unfairly prejudicial, confusing, misleading, will cause undue delay and waste time; and

- is inadmissible hearsay.

7

Case ID: 170300712
Control No.: 21060491

All of the above bases for exclusion are present here and require that all reference to and information pertaining to any alleged traffickers other than Davis and Lopez be excluded.

## V.    **RELIEF REQUESTED**

Pursuant to Pennsylvania Rules of Evidence 401, 402, 403, 404 and 802, the Roosevelt Defendants respectfully request this Court enter the attached Order Excluding all references to alleged traffickers, other than Daiquan Davis and Abdul Lopez, including their identities, their offenses, their activities at the Roosevelt Inn, law enforcement activities related to their arrests; and all documents related to them, including their purported written statements.

**BLANK ROME LLP**

Dated:  June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

8

Case ID: 170300712
Control No.: 21060491

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that, on this 2nd day of June 2021, I caused true and correct copies of Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's Motion in Limine to Preclude Any Reference to Alleged Traffickers other than Davis and Lopez and accompanying memorandum of law to be served via the Court's electronic filing system and/or electronic mail and/or First Class Mail upon the following:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

Case ID: 170300712
Control No.: 21060491

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

*Additional Defendant*

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*

*/s/ Justina L. Byers*
JUSTINA L. BYERS

2

Case ID: 170300712
Control No.: 21060491

|  |  |  |
|---|---|---|
| M.B., minor by her Guardian, | : | IN THE COURT OF COMMON PLEAS |
| William A. Calandra, Esquire, | : | PHILADELPHIA COUNTY |
|  | : |  |
| Plaintiff, | : | CIVIL ACTION – LAW |
|  | : |  |
| v. | : | MARCH TERM, 2017 |
|  | : | Civil Action No.: 00712 |
| ROOSEVELT INN LLC | : |  |
| d/b/a ROOSEVELT INN and | : |  |
| ROOSEVELT INN CAFÉ, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| DAIQUAN DAVIS AND ABDUL LOPEZ, | : |  |
|  | : |  |
| Additional Defendants. | : |  |

## ORDER

**AND NOW**, this _____ day of _____, 2021, upon consideration of

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor

Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's

Motion to Preclude and Exclude Inadmissible Evidence and any response thereto, it is hereby

ORDERED that said Motion is GRANTED.

At the trial in this matter, the parties shall be precluded from introducing into evidence a

memorandum purporting to summarize an interview with Michael Staub ("the "CGS Memo")

and the testimony of Michael Staub.

**BY THE COURT:**

_____

_____ J.

150213.00601/125095718v.1

Case ID: 170300712
Control No.: 21060495

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
         keddy@blankrome.com
         byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire,<br><br>        Plaintiff,<br><br>    v.<br><br>ROOSEVELT INN LLC d/b/a ROOSEVELT<br>INN and ROOSEVELT INN CAFÉ, et al.,<br>ROOSEVELT MOTOR INN, INC. d/b/a<br>ROOSEVELT MOTOR INN, UFVS<br>MANAGEMENT COMPANY, LLC,<br>YAGNA PATEL and ALPHA-CENTURION<br>SECURITY, INC. d/b/a ALPHA CENTURION<br>SECURITY INC.<br><br>        Defendants,<br><br>    v.<br><br>DAIQUAN DAVIS and ABDUL LOPEZ<br><br>        Additional Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL TRIAL DIVISION<br><br>MARCH TERM, 2017<br>NO.: 00712<br><br>JURY TRIAL DEMANDED |

---

## <u>MOTION TO PRECLUDE AND EXCLUDE INADMISSIBLE EVIDENCE</u>

150213.00601/125095718v.1

<span style="color:red">Case ID: 170300712</span>
<span style="color:red">Control No.: 21060495</span>

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by and through their undersigned attorneys, hereby move the Court to enter an Order precluding any reference at trial to a memorandum purporting to summarize an interview with Michael Staub ("Staub") and precluding any testimony by Staub.  In support of this motion, the Roosevelt Defendants aver as follows:

1.      Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc.  Plaintiff amended her Complaint multiple times. Her most recent Amended Complaint is based solely on claims of common law negligence and narrows the time period of her alleged trafficking to several months in 2014.

2.      During the course of discovery, Plaintiff identified two who she alleges acted as her traffickers during the relevant time period.  The Roosevelt Defendants joined the two men, Daiquan Davis ("Davis") and Abdul Lopez ("Lopez"), as Additional Defendants to this action. Both Davis and Lopez are in federal prison, serving sentences for sex trafficking.

3.      During the course of discovery in this litigation, Plaintiff produced a memorandum apparently prepared for Plaintiff's counsel.  The memorandum is "from" "CGS LLC (GRC, PMG & RTC)" (the "CGS Memo").  *See* Exhibit A.  The CGS Memo states that it summarizes a conversation between "Investigators" and Michael Staub, who is also listed as a witness in Plaintiff's Pretrial Memorandum.

4.      According to the CGS Memo, Staub, told investigators he previously lived on the street behind the Roosevelt Inn but moved from his Leonard Street, Philadelphia address in part

2

Case ID: 170300712
Control No.: 21060495

because of events at the Roosevelt Inn, including two shootings, "open air drug sales" on the hotel property, the presence of drug paraphernalia, condoms and trash on the driveway and several suicides on the Roosevelt Inn property, which attracted a large media presence.

5. According to the CGS Memo, Staub told CGS that he had observed "a number of raids" at the Roosevelt resulting in arrests and had on occasion, seen people having sex in hotel rooms and a woman walk naked to the trash dumpster.

6. The CGS Memo states that Staub further stated that he had seen young girls and women entering and exiting the hotel and that they would "go to vehicles that arrived in the parking lot and engage in sex acts and/or get clothing and return to the Roosevelt Inn when they were finished their business." *See* Exhibit A, at 2.

7. According to the CGS Memo, Staub called police several times in relation to fights in the rear of the hotel and in the parking lot. Staub never gave his name to the 911 dispatchers and never made a complaint relating to the Roosevelt Inn to any municipal or governmental agency.

8. **Strikingly absent from the CGS Memo is any mention of Plaintiff, Daiquan David, Abdul Lopez or any fact or circumstance having any relevance to this litigation.**

9. Other than mentioning a suicide incident in 2016 and another in "early June," the CGS Memo includes no date references for Mr. Staub's observations. The CGS Memo clearly does not indicate that Mr. Staub observed anything related to the first half of 2014, the time period relevant to Plaintiff's claims.

10. The CGS Memo offers nothing of relevance to this litigation. Plaintiff's claims against the Roosevelt Inn do not involve any shootings, drugs, trash, suicides or raids. The CGS

3

Case ID: 170300712
Control No.: 21060495

Memo, and testimony provided by Michael Staub, add no relevant information and are of no evidentiary value to the litigation.

11.     Plaintiff's motive in proffering the irrelevant CGS Memo and testimony of Michael Staub is to disparage the Roosevelt Defendants; i.e., the CGS Memo and Staub testimony would be avenues through which Plaintiff could portray the Roosevelt Inn as a haven for drugs, crime and criminals, a site of police raids and violence.

12.     The CGS Memo, which purports to summarize an interview with Staub, is rank hearsay, not admissible on any grounds and should be excluded.

13.     Because the CGS Memo and Staub testimony are not relevant to Plaintiff's claims, are unfairly prejudicial to the Roosevelt Defendants, and because the CGS Memo is rank hearsay, the CGS Memo and Staub's testimony should be excluded and precluded.

## LEGAL ARGUMENT

### I.     THE CGS MEMO AND STAUB TESTIMONY ARE NOT RELEVANT, ARE HIGHLY PREJUDICIAL AND CONSTITUTE INADMISSIBLE HEARSAY

#### A.     The CGS Memo Is Inadmissible Hearsay Information

14.     The unauthenticated written "statements" recounted in the CGS Memo are inadmissible hearsay.  "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R. E. 801.  A hearsay statement is inadmissible unless it falls into one of the enumerated exceptions set forth in the Pennsylvania Rules of Evidence.  *See* Pa. R. E. 802.  None of the exceptions set forth in Pa. R. E. 803 applies to unidentified second party accounts purportedly of an interview recorded in a written document.

4

Case ID: 170300712
Control No.: 21060495

15.     In the CGS Memo, a person or persons, identified by initials, seemingly recounts comments provided by Michael Staub in an interview.  The memo is hearsay and is not subject to any of the exceptions provided by Rule 802.

**B.     The CGS Memo and Staub Testimony Do Not Offer Relevant Evidence**

16.     Pennsylvania Rule of Evidence sets forth the standard for relevant evidence: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *See* Pa. R. E. 401.  If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial.  *See* Pa. R. E. 402.

17.     The CGS Memo and testimony that Staub will provide offer no information that is relevant to Plaintiff, her claims, or her alleged traffickers.  Trash on the driveway and a suicide in 2016 have no relevance to this litigation.  Nor does drug use or fights in the parking lot. Plaintiff's attempt to use the CGS Memo and testimony of Michael Staub is merely to disparage the Roosevelt Inn with irrelevant, inflammatory material, and should not be permitted.

**C.     Purported Evidence Disparaging the Roosevelt Inn Is Unfairly Prejudicial**

18.     Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  *See* Pa. R. E. 403.  In deciding an evidentiary issue, courts balance the probative value of the evidence with the prejudicial impact the evidence could have on the party against whom it is offered.  *See* Pa. R. E. 403; *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).

5

Case ID: 170300712
Control No.: 21060495

19.     The CGS Memo and testimony of Staub would be presented by Plaintiff merely to tarnish the reputation of the Roosevelt Inn and the Roosevelt Defendants.  Unfounded, unreliable, claims of the presence of drugs and prostitution provide salacious material for Plaintiff to make sensational claims that will catch a jury's attention.  The rules of this court require evidence to be not only legitimate and relevant, but also fairly admitted.  The probative versus prejudicial analysis tips strongly in favor of excluding the CGS Memo and Staub testimony.

20.     Moreover, the CGS Memo and Staub testimony would be offered by Plaintiff as evidence of the Roosevelt Defendants' prior bad acts.  Because of the highly prejudicial nature of character evidence, evidence of a party's prior acts is irrelevant and inadmissible.  *See* Pa. R. E. 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith."  The exceptions to the rule, provided in Rule 404(b)(2), do not apply.

21.     Alleged observations of unrelated persons (which are unsubstantiated and unreliable) concerning activities at the Roosevelt Inn on unknown dates cannot be admitted into evidence to suggest that the Roosevelt Defendants conducted themselves in any manner during the relevant time period with respect to the relevant parties in this action.  This is precisely the type of evidence that Rule 404 precludes.  See *U.S. v. Morley*, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety … is the very evil that Fed. R. 404(b) seeks to prevent").

150213.00601/125095718v.1

Case ID: 170300712
Control No.: 21060495

22.     Such testimony is unfairly prejudicial because it may mislead the jury to conclude that the Roosevelt Defendants were negligent as to Plaintiff.  Rules 403 and 404 preclude the admission of the CGS Memo and the testimony of Staub.

23.     Decisions on admissibility are within the sound discretion of the trial court.  *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 391 (Pa. Super. 2015) (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)).  See also *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015); *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).   Evidence from unidentified, unreliable sources relating to salacious but irrelevant matters would be not only prejudicial to defendants but would also be misleading to the jury, confusing the issues and evidence the jury needs to consider.  "[I]t is the duty of the trial judge, . . . to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues."  *Geesey v. Albee Pa. Homes, Inc.*, 235 A.2d 176, 180 (Pa. Super. 19967); *Commonwealth v. Hicks,* 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific").

24.     Testimony by any witness concerning alleged acts or omissions of the Roosevelt Defendants on occasions other than those raised by Plaintiff's Complaint is irrelevant, improper character evidence, highly prejudicial, and must be precluded.

25.     For the foregoing reasons, the Court should exclude the CGS Memo and the testimony of Michael Staub.

WHEREFORE, the Roosevelt Defendants respectfully request this Court enter the attached Order to Exclude and Preclude the admission of the CGS Memo and the testimony of Michael Staub.

150213.00601/125095718v.1

Case ID: 170300712
Control No.: 21060495

**BLANK ROME LLP**

Dated: June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

150213.00601/125095718v.1

Case ID: 170300712
Control No.: 21060495

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
    keddy@blankrome.com
    byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, <br> William A. Calandra, Esquire, <br><br>          Plaintiff, <br><br>     v. <br><br> ROOSEVELT INN LLC d/b/a ROOSEVELT <br> INN and ROOSEVELT INN CAFÉ, et al., <br> ROOSEVELT MOTOR INN, INC. d/b/a <br> ROOSEVELT MOTOR INN, UFVS <br> MANAGEMENT COMPANY, LLC, <br> YAGNA PATEL and ALPHA-CENTURION <br> SECURITY, INC. d/b/a ALPHA CENTURION <br> SECURITY INC. <br><br>          Defendants, <br><br>     v. <br><br> DAIQUAN DAVIS and ABDUL LOPEZ <br><br>          Additional Defendants. | COURT OF COMMON PLEAS <br> PHILADELPHIA COUNTY <br> CIVIL TRIAL DIVISION <br><br> MARCH TERM, 2017 <br> NO.: 00712 <br><br> JURY TRIAL DEMANDED |

**DEFENDANTS ROOSEVELT INN LLC, ET AL.'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**PRECLUDE AND EXCLUDE INADMISSIBLE EVIDENCE**

150213.00601/125095718v.1

Case ID: 170300712
Control No.: 21060495

## I. MATTER BEFORE THE COURT

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt

Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel

(hereinafter collectively "the Roosevelt Defendants"), by their undersigned attorneys, hereby file

this memorandum of law in support of their motion to preclude a document purported to

summarize an interview with Michael Staub and the testimony of Michael Staub (the "Motion).

## II. QUESTION INVOLVED

Should the Court preclude a hearsay document purported to summarize an interview with

Michael Staub and the irrelevant and prejudicial testimony of Michael Staub?

Suggested answer: Yes.

Plaintiff has indicated in her Pretrial Memorandum that she intends to proffer testimony

of Michael Staub, a former neighbor of the Roosevelt Inn, and a memo prepared by

"Investigators" allegedly summarizing an interview with Staub.   Because such evidence is

irrelevant, unfairly prejudicial, improper character evidence and because the memo is

inadmissible hearsay, both the memo and Staub's testimony should be excluded from the trial in

this matter.

## III. FACTUAL BACKGROUND

Plaintiff commenced this civil action on March 10, 2017, alleging violations of

Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt

Defendants and Alpha-Centurion Security, Inc.   In her Complaint, Plaintiff alleged that from

2013 through 2014, she was "recruited, enticed, solicited, harbored, and/or transported to engage

in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or

repeated basis."  Plaintiff amended her Complaint several times.  Her last Amended Complaint

150213.00601/125095718v.1

Case ID: 170300712
Control No.: 21060495

includes solely claims of negligence against the Roosevelt Inn and her factual allegations narrow the time period in which she was alleged trafficked at the Roosevelt Inn to a limited period in the first half of 2014.

Plaintiff's Pretrial Memorandum listed as an exhibit a memorandum addressed to counsel from "CGS LLC (GRC, PMG & RTC)" (The "CGS Memo"). *See* Exhibit A. The CGS Memo states that is summarizes a conversation between "Investigators" and Michael Staub, who also appears on Plaintiff's witness list. According to the memorandum, Staub, told investigators he previously lived on the street behind the Roosevelt Inn but had moved from his Leonard Street, Philadelphia address in part because of events at the Roosevelt Inn, including two shootings, "open air drug sales" on the hotel property, the presence of drug paraphernalia, condoms and trash on the driveway and several suicides on the Roosevelt Inn property, which attracted a large media presence.

The CGS Memo purports to recount Staub's observations of "a number of raids" at the Roosevelt resulting in arrests. Staub purportedly told CGS that, through the hotel room windows, he seen people having sex in hotel rooms and once saw a woman walk naked to the trash dumpster.

The CGS Memo states that Staub further stated that he had seen young girls and women entering and exiting the hotel and that they would "go to vehicles that arrived in the parking lot and engage in sex acts and/or get clothing and return to the Roosevelt Inn when they were finished their business." Exhibit A, at 2. According to the CGS Memo, Staub called police several times in relation to fights in the rear of the hotel and in the parking lot but never gave his name to the 911 dispatchers and never made a complaint relating to the Roosevelt Inn to any municipal or governmental agency. **The CGS Memo does not reference Plaintiff, her alleged**

3

Case ID: 170300712
Control No.: 21060495

trafficking, her alleged traffickers or anything remotely relating to her claims. It also includes no dates, names or actual first-hand knowledge of anything. In fact, there is no time reference at all connected to Staub's reported observations except for his mention of a suicide event in 2016 and another suicide in "early June."

Not only is the CGS Memo clearly inadmissible as hearsay, it is clearly nothing more than Plaintiff's attempt to introduce the suggestion of illegal drug sales, violence and the possibility of illicit commercial sex at the Roosevelt Inn. However, suggestions and possibilities of crimes are not proper evidence nor do they relate to Plaintiff's claims. Plaintiff's purported sensationalistic "evidence" is irrelevant, offers nothing of probative value, is unfairly prejudicial, improper character evidence and is inadmissible hearsay, which must be excluded.

Mr. Staub is also listed as a witness in Plaintiff's Pretrial Memorandum. Presumably, his testimony will relate to the same "observations" addressed in the CGS memo –fights, gunfire, drug sales, trash and sex. Mr. Staub's testimony, like the CGS Memo, offers nothing of relevance to Plaintiff's claims, her alleged traffickers or any other topic at issue in this action. Like the CGS Memo, Staub's testimony should be excluded as nothing more than Plaintiff's attempt to sully the reputation of the Roosevelt Defendants with salacious innuendo.

## IV.    ARGUMENT

### A.    The CGS Memo Is Inadmissible Hearsay

The CGS Memo is impermissible hearsay to which no exceptions apply. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001); Pa. R. E. 801. The CGS Memo was a second hand account written by unknown persons allegedly summarizing the statement of

150213.00601/125095718v.1

Case ID: 170300712
Control No.: 21060495

observations of Michael Staub.  It cannot be admitted for the truth of the matters contained therein.  Pa. R. E. 801.

**B.    The CGS Memo and Staub's Testimony Are Not Relevant**

The CGS Memo and Staub testimony offer no relevant evidence in this matter.  The content of the CGS Memo and similar anticipated testimony of Staub bear no relevance to Plaintiff, her alleged traffickers or her claims in this case and should be excluded on that basis alone.  The CGS Memo and Staub's anticipated testimony are devoid of names, dates and any other detail that might somehow tie the content to this litigation.

Pennsylvania Rule of Evidence sets forth the standard for relevant evidence:  "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Pa. R. E. 401.  If the evidence does not raise an inference concerning a fact of consequence in the litigation or does not tend to prove the fact that it is offered to prove, then such evidence is irrelevant, and evidence that is not relevant is not admissible at trial.  Pa. R. E. 402.  Here, Plaintiff seeks to admit evidence that a former neighbor of the Roosevelt Inn observed what he believed related to be crimes – shooting, drugs and suicides – at some unknown time with unknown participants.  He also observed – by *looking in* the hotel windows -- sex occurring in hotel rooms and one on occasion, a naked woman on the hotel property.

These observations are not relevant to Plaintiff's claims.  They are merely attention getting sensational claims that serve only to denigrate the Roosevelt Inn as a venue for crime and violence.  The CGS Memo and Staub testimony will offer does not prove or tend to prove any fact of consequence in the litigation and must be excluded.

5

Case ID: 170300712
Control No.: 21060495

**C.** **Permitting Evidence that Merely Denigrates the Roosevelt Inn Would Be Unfairly Prejudicial to the Roosevelt Defendants**

Pursuant to the Pennsylvania Rules of Evidence, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, undue delay or wasting time. Pa. R. E. 403. The Court must balance the probative value with the prejudicial impact the proffered evidence could have against whom it is offered. See Pa. R. E. 403; *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).

Here, the CGS Memo and Staub testimony, while blatantly irrelevant, contains scandalous material and will catch the jury's attention with its sensational claims of gun violence, suicide, drugs and possible prostitution. Staub's so-called observations would offer no probative value but could be highly prejudicial to the Roosevelt Defendants. The association of the Roosevelt Defendants to other alleged crimes such as shootings and drug sales would be offered merely to prejudice the jury against the Roosevelt Defendants. As discussed above, such evidence is not relevant to Plaintiff's claims but would be offered solely to sully the reputation of the Roosevelt Defendants. The probative versus prejudicial balance clearly tips in favor of excluding the CGS Memo and Mr. Staub's testimony.

Rule 403 also permits a judge to exclude evidence that could confuse or mislead the jury, cause undue delay or waste time. Pa. R. E. 403. These are additional bases to exclude the CGS Memo and the Staub testimony.

**D.** **Evidence of Prior Bad Acts Is Inadmissible**

The CGS Memo and Staub testimony, in addition to being irrelevant and unduly prejudicial, are proffered by Plaintiff solely to impugn the character of the Roosevelt Defendants by suggestions of prior bad acts, which is clearly improper. Because of the highly prejudicial nature of such evidence, information pertaining to or suggesting a party's prior bad acts is

6

Case ID: 170300712
Control No.: 21060495

inadmissible. Rule 404(b)(1) of the Pennsylvania Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to should action in conformity therewith." The exceptions to the rule, provided in Rule 404(b)(2), do not apply here.

Accordingly, Plaintiff may not offer unprovable observations of non-party, unrelated actors relating to other events and other time periods to suggest that the Roosevelt Defendants conducted themselves in a certain manner *as to Plaintiff* and during the relevant time period in this action. This is precisely the type of evidence that Rule 404 precludes. See U.S. v. Morley, 199 F.3d 129, 134 (3d Cir. 1999) (holding that admission of prior acts introduced to imply that defendant was guilty "merely because he had previously engaged in 'similar' impropriety ... is the very evil that [the equivalent] Fed. R. 404(b) seeks to prevent").

This Court has the discretion to exclude evidence that:

- is irrelevant;

- pertains to prior bad acts and is offered merely to sully a defendant's character;

- has no probative value but would be unfairly prejudicial, confusing, misleading, will cause undue delay and waste time; and

- is inadmissible hearsay.

All of the above bases for exclusion are present here and require that the Court exclude CGS Memo and preclude the testimony of Michael Staub from the trial in this matter.

## V.  **RELIEF REQUESTED**

Pursuant to Pennsylvania Rules of Evidence 401, 402, 403, 404 and 801, the Roosevelt Defendants respectfully request this Court enter the attached Order Excluding the CGS Memo and precluding the testimony of Michael Staub.

7

Case ID: 170300712
Control No.: 21060495

**BLANK ROME LLP**

Dated: June 2, 2021

<u>/s/ Charles S. Marion</u>
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

8

Case ID: 170300712
Control No.: 21060495

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that, on this 2nd day of June 2021, I caused a true and correct copy of the foregoing Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's Motion to Exclude Evidence and accompanying memorandum of law to be served via the Court's electronic filing system and/or electronic mail and/or First Class Mail upon the following:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

Case ID: 170300712
Control No.: 21060495

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

*Additional Defendant*

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*


*/s/ Justina L. Byers*
JUSTINA L. BYERS

150213.00601/125095718v.1

Case ID: 170300712
Control No.: 21060495

|  |  |  |
|---|---|---|
| M.B., minor by her Guardian, | : | IN THE COURT OF COMMON PLEAS |
| William A. Calandra, Esquire, | : | PHILADELPHIA COUNTY |
|  | : |  |
| Plaintiff, | : | CIVIL ACTION – LAW |
|  | : |  |
| v. | : | MARCH TERM, 2017 |
|  | : | Civil Action No.: 00712 |
| ROOSEVELT INN LLC | : |  |
| d/b/a ROOSEVELT INN and | : |  |
| ROOSEVELT INN CAFÉ, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| DAIQUAN DAVIS AND ABDUL LOPEZ, | : |  |
|  | : |  |
| Additional Defendants. | : |  |

## ORDER

**AND NOW**, this _____ day of _____, 2021, upon consideration of

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor

Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's

Motion in Limine to Preclude Testimony of an Incompetent Witness it is hereby ORDERED that

said Motion is GRANTED.  XXXXXXXXXX is EXCUSED from testifying at trial testimony in

this matter.

**BY THE COURT:**

_____

J.

150213.00601/126086750v.1

Case ID: 170300712
Control No.: 21060526

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | : COURT OF COMMON PLEAS : PHILADELPHIA COUNTY : CIVIL TRIAL DIVISION |
| Plaintiff, | : |
| | : MARCH TERM, 2017 |
| v. | : NO.: 00712 |
| | : |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | : JURY TRIAL DEMANDED : : : : : : : : : |
| Defendants, | : |
| v. | : : |
| DAIQUAN DAVIS and ABDUL LOPEZ | : : |
| Additional Defendants. | : : |

**MOTION IN LIMINE TO PRECLUDE THE TRIAL TESTIMONY AND EXCLUDE
THE DEPOSITION TESTIMONY OF XXXXXXXXXX**

Case ID: 170300712
Control No.: 21060526

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants"), by and through their undersigned attorneys, hereby move the Court to enter an Order excluding the deposition testimony of XXXXXXXXXX ("XXXXXXXXXX") and precluding Plaintiff from presenting testimony of XXXXXXXXXX at the trial in this matter because XXXXXXXXXX lacks the mental competence to testify. In support of this motion, the Roosevelt Defendants aver as follows:

1.      Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. Plaintiff amended her Complaint multiple times. Her most recent Amended Complaint is based solely on claims of common law negligence. In addition, Plaintiff's most recent Complaint narrows the time period of her alleged trafficking to several months in the first half of 2014. Plaintiff alleges she was the victim of sex trafficking at numerous locations, including the Roosevelt Inn.

2.      Plaintiff's counsel deposed 11 current and former Roosevelt Inn employees in addition to the hotel's manager, Yagna Patel, who testified for three full days, and two principals. Among the deponents were five current and former front desk clerks.

3.      XXXXXXXXXX was a front desk clerk at the Roosevelt Inn from 2007 until August 2015. XXXXXXXXXX resigned from the hotel in 2015 due to health concerns.

4.      XXXXXXXXXX was deposed by Plaintiff's counsel on September 19, 2019. It was apparent from her testimony that she suffers some mental health impairment as her answers to many of counsel's questions were non-responsive and incomprehensible. She also gave testimony that completely contradicted statements made earlier in the deposition.

2

Case ID: 170300712
Control No.: 21060526

5.     Many of XXXXXXXXXX's responses were incomprehensible.  For example, asked why she resigned from her position at the Roosevelt Inn, XXXXXXXXXX responded that the job of front desk clerk became too physically demanding because "they had too much technology."  She explained:

```
 1    A.  Again, I'm lifting up my arm and working
 2    on the console.  I was hitting my elbow.  I thought
 3    that maybe I had broken the console because I had my
 4    arm up to turn on the camera, and at the same time,
 5    I was trying to answer the phone and I was coming
 6    down with my elbow.
 7        And then I was trying to reach back
 8    and do another type of credit card processing, and
 9    there were a million questions.  And then there were
10    cameras that I had to turn to and watch.  This is an
11    ongoing process all day.  Then I have to flip this
12    big cardboard box out, and that also was on top of
13    me.
```

==*See* Exhibit A, XXXXXXXXXX deposition transcript, at 42, 43.==  In a stark contradiction, notwithstanding the above, XXXXXXXXXX testified that monitoring the cameras was not one of her job duties.  *Id*. at 28.  Asked again why she left her job at the Roosevelt Inn, XXXXXXXXXX provided the following confusing response:

```
        Why did you leave the Roosevelt?
A.      I wasn't feeling real well.
Q.      What do you mean by that?
A.      I had a little bit of a need to throw up.
I had to throw up.
Q.      Was that because of --
A.      I was sick.  I felt like one of my organs
wasn't working right.  Okay.  So I became ill in my
stomach and maybe some of my sweat glands because I
just was not able to do the same things.  I could
not eat the same, and I could not function the same.
But I healed somehow from rest and just staying at
home for those four years.
```

3

Case ID: 170300712
Control No.: 21060526

*Id*. at 229-230.  XXXXXXXXXX later testified that she was sick because of the take out food in the vicinity of the Roosevelt Inn.  *Id*. at 230.

6.  By way of further example of bizarre and unresponsive testimony, when asked if drug dealers were ever in the hotel during XXXXXXXXXX's tenure, she responded that some people – musicians from out of state -- wanted to bring cameras and other large equipment into the room, which the hotel did not allow.  She then stated, "So drugs could sometimes be related." *Id*. at 72.

7.  Asked whether and when the hotel's cleaning staff ever told XXXXXXXXXX they found drug paraphernalia in the rooms, XXXXXXXXXX provided the following strange response:

> Sporadic, when they had the wrong people in.  Some of them were in wheelchairs, some of the people that came in, and we had to ask them to leave and they would come back in.  And you know, we had to tell them that they can't come in anymore at all.  And they kept saying that they weren't going to do anything and other than that, that was the only time there was drugs in the building.

*Id*. at 81-82.  XXXXXXXXXX then testified inexplicably that the rooms with double beds were the rooms that probably had drug paraphernalia.  *Id*. at 83.  Asked to explain, XXXXXXXXXX testified, "Because they would be carrying more than two people.  It would be more of a party situation.  It would be a room.  All two-bed rooms occasionally come across a drug addict."  *Id*.

8.  XXXXXXXXXX was asked about violence at the hotel.  Initially, she stated that most violence in the hotel was domestic.  Asked by Plaintiff's counsel to explain. XXXXXXXXXX provided a rambling, incoherent response:

> Q.   When you say domestic, what do you mean?
> A.   Maybe somebody was drinking so somebody drove her to the hotel and put the hotel in her name.  And then the girl who was drinking says that it should have been in her name, and then there's a

4

Case ID: 170300712
Control No.: 21060526

fight over the boyfriend because then it's a
boyfriend problem because then it's her room and not
the other girl's room.
Q. Okay.
A. And then the boyfriend comes down and
smashes his hands up on the counter because of
whatever reason, because they're asked to leave.
Q. Would this be a boyfriend that was staying
with two girlfriends in the hotel?
A. Yes, because it was under the one girl's
name who drove the girl there because she did not
have an ID, and they were both medical people. They
were all medical people.
Q. What do you mean?
A. Well, they worked at a hospital, and they
did have medical IDs. I guess they were -- they
were just staff members, maybe -- I don't think that
they were paramedics, but they worked somewhere in
the hospital.

*Id*. at 61-62. XXXXXXXXXX referenced domestic disputes later in the deposition, in an

equally incomprehensible manner:

Q. You keep saying domestic.
What do you understand as domestic?
A. That would be marriage, the marriage
people.
Q. Did you think on all the occasions when a
man and a woman were fighting in the hallway that
the couples were married?
A. Well, pretty much so. It wouldn't be a
change of partners, you know. It wouldn't be a room
with a change of partners that was continuous, you
know. That's the sex that they want. It would not
be that type of whore. Maybe they had -- maybe they
had been influenced by some other means.
Q. Like what?
A. Alcohol, you know. Maybe they had a
different outlook than a domestic view.

*Id*. at 124.

9.      Plaintiff's counsel asked XXXXXXXXXX if she considered whether a man and

woman fighting in the hallway might be "a pimp and a girl selling sex." *Id*. at 125. Despite

5

Case ID: 170300712
Control No.: 21060526

Plaintiff's counsel's efforts to elicit testimony about – and steer XXXXXXXXXX's testimony to

-- commercial sex, XXXXXXXXXX's response and the exchange that followed were again

rambling and incomprehensible:

```
 6   Q.   Did you ever consider that the man and the
 7        woman fighting in the hallway could be a pimp and a
 8        girl selling sex?
 9   A.   No.
10   Q.   No?
11   A.   No, not if it's not -- I always figure on
12        a group of people to be a pimp situation.
13   Q.   What do you mean, a group of people?
14   A.   If it was more of a party of people but
15        not three people.  Three people is usually a
16        boyfriend who gets too involved with the other
17        friend, with somebody's friend.
18   Q.   So let's talk about that.  A group of
19        people in a room you would consider a pimp and the
20        sale of sex?
21   A.   Right.
22   Q.   And that went on at the Roosevelt?
23   A.   Well, it's not that it went on.  I'm
24        saying that it would be more of a situation that
```

```
 1   could be aggravated through some other people coming
 2   in that didn't belong.
 3   Q.  Would that be a room -- is that an example
 4   of one of the rooms that you would keep an eye out
 5   on?
 6   A.   Right?
 7   Q.   So when there was a group of people in a
 8   room and people would come to visit that room, it
 9   was your thought that it might be someone selling
10   sex?
11   A.   Well, it could be aggravated by it.  You
12   know, it could be -- a lot of people, sometimes they
13   get aggravated and nasty and then things happen.
14   Q.   What do you mean by that?
15   A. They become hostile because they don't
16   have part in this hotel scenery, and they sometimes
17   want to bring other things into it, you know.  They
```

6

Case ID: 170300712
Control No.: 21060526

18    want to make money.
19    Q.   And how do they make money?
20    A. Well, cameras, you know, cameras, whatever
21    they want.  If it was -- if it was a situation like
22    that -- I'm saying that it wasn't.  But if it was to
23    be a situation, then it would be aggravated by the
24    fact that it wasn't domestic issue, that it would
 1    be something that would be theirs.  They would
 2    consider it their business if it was too many people
 3    in a room and somebody smoked pot or something.
 4    Q.  Okay.  In the situations where there were
 5    three people involved in an altercation, did you
 6    consider that to be a domestic situation?
 7    A.   Yes.
 8    Q.   And would that be because a man was having
 9    relations with two women?
10    A.   It was because somebody didn't understand
11    that they were not the person who was the partner
12    anymore and that maybe they were not going to be
13    married or maybe they were no longer friends.  Maybe
14    somebody stole her car and did not ask in the
15    process of doing the act, which is leaving the
16    person without security.
17      Okay.  If the person does not have
18    security, then there's a fight, and that is what
19    happened with one of them.  They stole her car.

*Id*. at 125-127.

     10.    Asked if there were ever any bases to summon police other than physical

violence, XXXXXXXXXX inexplicably responded:

> Call the police for many, many reasons if it's needed and if somebody is coming in from out of state and if they don't leave and they give a different reason for being there.  They lie.  Okay. Sometimes they come in from California or Arizona, and this was their room and it was in someone else's name.  And they want to keep it.  Then if they don't leave and they pay a late fee, then we have to call the police.

*Id*. at 62-63.

     11.    XXXXXXXXXX testified several times that she did not believe sex trafficking

was occurring at the Roosevelt Inn.  She also testified that prostitution was strictly forbidden

7

Case ID: 170300712
Control No.: 21060526

according to the Roosevelt Defendants' policies. *Id*. at 237, 240, 241, 244-245. In describing the policy, XXXXXXXXXX unabashedly used the word "whores" to identify prostitutes. She then explained that "prostitution has codes" and there are different codes for prostitution: "Transvestites are well accepted on the streets of Philadelphia. They are billionaires. As far as some people are concerned, they have money in their pocket to eat." *Id*. at 246-247. XXXXXXXXXX then testified that "women and minorities are not supposed to be prostitutes." *Id*. at 247.

12.     The transcript of XXXXXXXXXX's deposition is replete with very odd, rambling "responses" that are non-responsive and nonsensical. XXXXXXXXXX also contradicted herself numerous times, additionally rendering her testimony wholly unreliable. Accordingly, neither XXXXXXXXXX's deposition testimony nor her future trial testimony has any evidentiary value. It is troubling that the witness list in Plaintiff's Pretrial Memorandum included XXXXXXXXXX, given that her deposition testimony was clearly not lucid or trustworthy.

13.     During her deposition, XXXXXXXXXX denied that she was prescribed medication or that she suffered from any mental health conditions. Nonetheless, the transcript leaves no doubt that XXXXXXXXXX was not and is not mentally competent to testify in this litigation.

14.     XXXXXXXXXX's testimony is so unreliable as to have no evidentiary value.

15.     Moreover, XXXXXXXXXX is one of 5 current or former front desk clerks from the Roosevelt Inn who worked during the relevant time period. As such, her testimony regarding front desk procedures, even if it was reliable, would be redundant and unnecessary.

**LEGAL ARGUMENT**

8

Case ID: 170300712
Control No.: 21060526

A. **XXXXXXXXXX's Should Be Disqualified as a Witness and her Previous Testimony Excluded**

16.     Decisions on admissibility of evidence are within the sound discretion of the trial court.  *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 391 (Pa. Super. 2015) (citing *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014)).  See also *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015); *Sprague v. Walter*, 656 A.2d 890, 909 (Pa. Super. 1995).

17.     Pennsylvania Rule of Evidence 601 provides that a witness may be disqualified to testify because of incompetence based on a mental condition:

> (b) Disqualification for Specific Defects. A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:
>
> (1) is, or was, at any relevant time, incapable of perceiving accurately;
>
> (2) is unable to express himself or herself so as to be understood either directly or through an interpreter;
>
> (3) has an impaired memory, or
>
> (4) does not sufficiently understand the duty to tell the truth.

Pa. R. E. 601.  Evidence -- in this case, testimony -- is not competent if it "contributes nothing at all because the [witness] is wholly untrustworthy."  *Commonwealth v. Boich*, 982 A.2d 102, 109-110 (Pa. Super. 2009) (*en banc*) (internal quotations and citations omitted).

18.     XXXXXXXXXX's bizarre and often incoherent deposition testimony is wholly untrustworthy.  Her deposition testimony was non-responsive, often incomprehensible and in many cases, directly contradictory of itself.  While tragic, it is obvious even to a lay person that XXXXXXXXXX's testimony bears the taint of mental illness.

9

Case ID: 170300712
Control No.: 21060526

19.     Rule 403 of the Pennsylvania Rules of Evidence permits the court to exclude evidence, such as XXXXXXXXXX's testimony, that is unfairly prejudicial, confusing, misleading, will waste the court's time and/or is needlessly cumulative. *See* Pa. R. E. 403

20.     XXXXXXXXXX's deposition testimony and potential trial testimony fits almost all the criteria for exclusion referenced in Rule 403. Her testimony, incoherent and contradictory, is inherently confusing and very likely to be misleading. Because the testimony is not reliable, it's presentation would waste the court's time and delay the trial proceedings. Plaintiff has deposed and has listed as trial witnesses 10 other current or former Roosevelt Inn employees, including 4 other desk clerks. Whatever testimony XXXXXXXXXX could potentially provide as a former front desk clerk – if it were reliable – would be unnecessarily redundant and cumulative of the testimony of the 4 other desk clerks.

21.     XXXXXXXXXX's testimony is demonstrably incompetent and her testimony clearly unreliable. Her testimony is and would be confusing, misleading, unnecessarily cumulative and would be unfairly prejudicial to the Roosevelt Defendants. For all of these reasons, and because the act of testifying will be detrimental to her mental health, XXXXXXXXXX's deposition testimony should be excluded and XXXXXXXXXX should be disqualified as a trial witness in this case.

WHEREFORE, the Roosevelt Defendants respectfully request this Court enter the attached Order to exclude deposition testimony provided by XXXXXXXXXX and preclude XXXXXXXXXX from testifying at trial.

10

Case ID: 170300712
Control No.: 21060526

**BLANK ROME LLP**

Dated: June 2, 2021

<u>/s/ Charles S. Marion</u>
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

11

Case ID: 170300712
Control No.: 21060526

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
      keddy@blankrome.com
      byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | :    COURT OF COMMON PLEAS |
| | :    PHILADELPHIA COUNTY |
| | :    CIVIL TRIAL DIVISION |
| Plaintiff, | : |
| | :    MARCH TERM, 2017 |
| v. | :    NO.: 00712 |
| | : |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | :    JURY TRIAL DEMANDED |
| Defendants, | : |
| v. | : |
| DAIQUAN DAVIS and ABDUL LOPEZ | : |
| Additional Defendants. | : |

150213.00601/126086750v.1

Case ID: 170300712
Control No.: 21060526

**DEFENDANTS ROOSEVELT INN LLC, ET AL.'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION PRECLUDE THE TRIAL
TESTIMONY AND EXCLUDE THE DEPOSITION TESTIMONY OF
XXXXXXXXXX**

## I.   <u>MATTER BEFORE THE COURT</u>

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt

Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel

(hereinafter collectively "the Roosevelt Defendants"), by their undersigned attorneys, hereby file

this memorandum of law in support of their motion to preclude testimony at trial of former

Roosevelt Inn employee XXXXXXXXXX and to exclude XXXXXXXXXX's deposition

testimony.

## II.   <u>QUESTION INVOLVED</u>

Should the Court excuse XXXXXXXXXX from testifying at trial and preclude the

playing of XXXXXXXXXX's deposition at trial?

Suggested answer:  Yes.

XXXXXXXXXX is not mentally competent to provide trustworthy evidence in this

matter as defined by the Pennsylvania Rules of Evidence.  Accordingly, her deposition testimony

should be excluded and Plaintiff should be precluded from presenting testimony from

XXXXXXXXXX at trial.

## III.   <u>FACTUAL BACKGROUND</u>

Plaintiff commenced this civil action on March 10, 2017, alleging violations of

Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt

Defendants and Alpha-Centurion Security, Inc. ("Alpha").  In her Complaint, Plaintiff alleges

that over a time period in 2014, she was "recruited, enticed, solicited, harbored, and/or

Case ID: 170300712
Control No.: 21060526

transported to engage in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis."

During discovery, Plaintiff deposed 15 witnesses who were current or former employees of the Roosevelt Inn. This group included 4 current or former front desk clerks, including former employee XXXXXXXXXX. XXXXXXXXXX left her position at the Roosevelt Inn in 2015 for health reasons. Throughout her deposition, XXXXXXXXXX provided rambling, often incomprehensible and non-responsive "answers" to Plaintiff's counsel's questions. While she denied suffering from any medical conditions, including mental health conditions, XXXXXXXXXX's bizarre and often incoherent testimony leaves no doubt that that she was and is not mentally competent to provide evidence that is trustworthy.

During her deposition, XXXXXXXXXX provided non-responsive answers, frequently contradicted herself and rambled incoherently on topics such as the transvestites, criminals from California and Arizona, domestic violence and the lack of quality takeout food. Providing examples of XXXXXXXXXX's deposition testimony is the most effective way of demonstrating her inability to provide competent, reliable testimony.

Plaintiff questioned XXXXXXXXXX about violence in the hotel. XXXXXXXXXX responded that most violence in the hotel was what she considered domestic violence. Plaintiff encouraged her to explain and attempted to relate XXXXXXXXXX's notion of domestic violence to commercial sex:

> Q.    When you say domestic, what do you mean?
> A.    Maybe somebody was drinking so somebody
> drove her to the hotel and put the hotel in her
> name.  And then the girl who was drinking says that
> it should have been in her name, and then there's a
> fight over the boyfriend because then it's a
> boyfriend problem because then it's her room and not
> the other girl's room.

3

Case ID: 170300712
Control No.: 21060526

Q. Okay.
A. And then the boyfriend comes down and smashes his hands up on the counter because of whatever reason, because they're asked to leave.
Q. Would this be a boyfriend that was staying with two girlfriends in the hotel?
A. Yes, because it was under the one girl's name who drove the girl there because she did not have an ID, and they were both medical people. They were all medical people.
Q. What do you mean?
A. Well, they worked at a hospital, and they did have medical IDs. I guess they were -- they were just staff members, maybe -- I don't think that they were paramedics, but they worked somewhere in the hospital.

*See* Exhibit A, XXXXXXXXXX deposition transcript, at 61-62. Plaintiff's counsel attempted to

related XXXXXXXXXX's testimony of domestic disputes to commercial sex:

Q. You keep saying domestic. What do you understand as domestic?
A. That would be marriage, the marriage people.
Q. Did you think on all the occasions when a man and a woman were fighting in the hallway that the couples were married?
A. Well, pretty much so. It wouldn't be a change of partners, you know. It wouldn't be a room with a change of partners that was continuous, you know. That's the sex that they want. It would not be that type of whore. Maybe they had -- maybe they had been influenced by some other means.
Q. Like what?
A. Alcohol, you know. Maybe they had a different outlook than a domestic view.

6  Q. Did you ever consider that the man and the
7  woman fighting in the hallway could be a pimp and a
8  girl selling sex?
9  A. No.
10  Q. No?
11  A. No, not if it's not -- I always figure on

4

Case ID: 170300712
Control No.: 21060526

12  a group of people to be a pimp situation.
13  Q.   What do you mean, a group of people?
14  A.   If it was more of a party of people but
15  not three people.  Three people is usually a
16  boyfriend who gets too involved with the other
17  friend, with somebody's friend.
18  Q.   So let's talk about that.  A group of
19  people in a room you would consider a pimp and the
20  sale of sex?
21  A.   Right.
22  Q.   And that went on at the Roosevelt?
23  A.   Well, it's not that it went on.  I'm
24  saying that it would be more of a situation that

1  could be aggravated through some other people coming
2  in that didn't belong.
3  Q.   Would that be a room -- is that an example
4  of one of the rooms that you would keep an eye out
5  on?
6  A.   Right?
7  Q.   So when there was a group of people in a
8  room and people would come to visit that room, it
9  was your thought that it might be someone selling
10  sex?
11  A.   Well, it could be aggravated by it.  You
12  know, it could be -- a lot of people, sometimes they
13  get aggravated and nasty and then things happen.
14  Q.   What do you mean by that?
15  A. They become hostile because they don't
16  have part in this hotel scenery, and they sometimes
17  want to bring other things into it, you know.  They
18  want to make money.
19  Q.   And how do they make money?
20  A. Well, cameras, you know, cameras, whatever
21  they want.  If it was -- if it was a situation like
22  that -- I'm saying that it wasn't.  But if it was to
23  be a situation, then it would be aggravated by the
24  fact that it wasn't domestic issue, that it would

1  be something that would be theirs.  They would
2  consider it their business if it was too many people
3  in a room and somebody smoked pot or something.

5

Case ID: 170300712
Control No.: 21060526

4    Q.   Okay.  In the situations where there were
5    three people involved in an altercation, did you
6    consider that to be a domestic situation?
7    A.   Yes.
8    Q.   And would that be because a man was having
9    relations with two women?
10   A.   It was because somebody didn't understand
11   that they were not the person who was the partner
12   anymore and that maybe they were not going to be
13   married or maybe they were no longer friends.  Maybe
14   somebody stole her car and did not ask in the
15   process of doing the act, which is leaving the
16   person without security.
17      Okay.  If the person does not have
18   security, then there's a fight, and that is what
19   happened with one of them.  They stole her car.

*Id.* at 124-127.  On the topic of prostitution, XXXXXXXXXX provided bizarre comments about

"codes" for prostitution, "whores" and transvestites:

Q.    What do you mean, a coding?
A.    It's a -- I mean, prostitution has codes.
It's the code to prostitution.  You're not allowed
to have prostitutes.  Females, minorities, there are
not supposed to be prostitutes in your building at
all.
Q.    So let's break that down.  You said it's a
code.
   What do you mean by a code?  Is there
an actual, like, typed-in code, or is it, like, a
principle?
A.    Well, I was taught from my general studies
in college general things about prostitution on the
street.  I mean, there are different codes for
prostitution.  Transvestites are well accepted on
the streets of Philadelphia.  They are billionaires.
As far as some people are concerned, they have money
in their pocket to eat.  Okay.
   Nobody is going to take them off the
streets.  They make a lot of money.  Whores are not
allowed -- from what I understand, whores are not
really allowed.  Women and minorities are not
supposed to be prostitutes.

*Id.* at 247.

6

Case ID: 170300712
Control No.: 21060526

In addition to XXXXXXXXXX, Plaintiff's counsel deposed 10 other current and former Roosevelt Inn employees, including 4 other front desk clerks. If XXXXXXXXXX's testimony was reliable, which it clearly is not, it would nonetheless be cumulative and redundant.

Because XXXXXXXXXX is not mentally competent to provide reliable testimony, she should be disqualified as a witness, her deposition testimony should be excluded and her testimony at trial should be precluded.

## IV.    ARGUMENT

### A.    <u>XXXXXXXXXX Is Not a Competent Witness and her Testimony Is Untrustworthy</u>

As demonstrated by the testimony XXXXXXXXXX provided in her deposition, examples of which are provided above, XXXXXXXXXX is not mentally competent to provide testimonial evidence in this case. Pennsylvania Rule of Evidence 601 provides that a witness may be disqualified to testify because of incompetence based on a mental condition:

> (b) Disqualification for Specific Defects. A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:
>
> (1) is, or was, at any relevant time, incapable of perceiving accurately;
>
> (2) is unable to express himself or herself so as to be understood either directly or through an interpreter;
>
> (3) has an impaired memory, or
>
> (4) does not sufficiently understand the duty to tell the truth.

Pa. R. E. 601. Evidence -- in this case, testimony -- is not competent if it "contributes nothing at all because the [witness] is wholly untrustworthy." *Commonwealth v. Boich*, 982 A.2d 102, 109-110 (Pa. Super. 2009) (*en banc*) (internal quotations and citations omitted).

150213.00601/126086750v.1

Case ID: 170300712
Control No.: 21060526

XXXXXXXXXX's deposition testimony is wholly untrustworthy. She was unable in many cases to respond to the questions posed. In other cases, she completely contradicted herself. More often than not, her responses were incomprehensible. Tragically, the bizarre content of XXXXXXXXXX's testimony demonstrates her mental instability. Pursuant to Rule 601, she must be disqualified and her testimony precluded.

B. **XXXXXXXXXX's Testimony Should Be Excluded Pursuant to Rule of Evidence 403**

Rule of Evidence 403 permits a court to exclude evidence "if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa. R. E. 403.

XXXXXXXXXX's testimony fits every criteria to exclude evidence in accordance with Rule 403. If XXXXXXXXXX's incoherent deposition or trial testimony were presented, it would surely confuse and mislead the jury. The parties' efforts to try to make sense of or refute XXXXXXXXXX's odd statements will be time-consuming and time-wasting. XXXXXXXXXX's testimony, even though patently nonsensical, would be unfairly prejudicial to the Roosevelt Inn in that she is a former employee. Finally, given that Plaintiff has deposed and intends to call as witnesses 4 other current or former front desk clerks of the Roosevelt Inn, XXXXXXXXXX's testimony, even if lucid, would be cumulative and redundant. "[I]t is the duty of the trial judge, . . .to determine whether evidence . . . .may [] be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues." *Geesey v. Albee Pa. Homes, Inc*., 235 A.2d 176, 180 (Pa. Super. 19967); *Commonwealth v. Hicks,* 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact and context-specific").

8

Case ID: 170300712
Control No.: 21060526

The facts relating to and context of the testimony of XXXXXXXXXX surely tips the balance in favor of excluding her completely unreliable testimony, which has absolutely no evidentiary value.

150213.00601/126086750v.1

Case ID: 170300712
Control No.: 21060526

# V. RELIEF REQUESTED

Pursuant to Pennsylvania Rules of Evidence 403 and 601, the Roosevelt Defendants respectfully request this Court enter the attached Order excluding from the trial the deposition testimony of XXXXXXXXXX and precluding any trial testimony of XXXXXXXXXX.

**BLANK ROME LLP**

Dated:  June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

150213.00601/126086750v.1

Case ID: 170300712
Control No.: 21060526

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that, on this 2nd day of June 2021, I caused

true and correct copies of Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn

Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC

and Yagna Patel's Motion in Limine to Exclude and Preclude Testimony of XXXXXXXXXX

and accompanying memorandum of law to be served via the Court's electronic filing system

and/or electronic mail and/or First Class Mail upon the following:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

Case ID: 170300712
Control No.: 21060526

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

*Additional Defendant*

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*

/s/ Justina L. Byers
JUSTINA L. BYERS

150213.00601/126086750v.1

Case ID: 170300712
Control No.: 21060526

|  |  |  |
|---|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | : : : | IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | : : | CIVIL ACTION – LAW |
| v. | : : | MARCH TERM, 2017 Civil Action No.: 00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., | : : : : | |
| Defendants. | : : | |
| v. | : : | |
| DAIQUAN DAVIS AND ABDUL LOPEZ, | : : | |
| Additional Defendants. | : : | |

## ORDER

AND NOW, this _____ day of _____, 2021, upon consideration

of the Motion of defendants, upon consideration of Defendants Roosevelt Inn LLC d/b/a

Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn,

UFVS Management Company, LLC and Yagna Patel's Motion to Preclude and Exclude the

Expert Report and Testimony of Michelle Guelbart, and any response thereto, it is hereby

ORDERED and DECREED that the Motion is GRANTED and the February 24, 2020 Report of

Michelle Guelbart shall be EXCLUDED and Michelle Guelbart is PRECLUDED from testifying

in this case.

BY THE COURT:

_____
                                                          J.

150213.00601/125355441v.1

Case ID: 170300712
Control No.: 21060525

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

---

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | : COURT OF COMMON PLEAS |
| | : PHILADELPHIA COUNTY |
| | : CIVIL TRIAL DIVISION |
| Plaintiff, | : |
| | : MARCH TERM, 2017 |
| v. | : NO.: 00712 |
| | : |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | : JURY TRIAL DEMANDED |
| Defendants, | : |
| v. | : |
| DAIQUAN DAVIS and ABDUL LOPEZ | : |
| Additional Defendants. | : |

---

**ROOSEVELT DEFENDANTS MOTION TO EXCLUDE**
**EXPERT REPORT AND TESTIMONY OF MICHELLE GUELBART**

Case ID: 170300712
Control No.: 21060525

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (hereinafter collectively "the Roosevelt Defendants" or "Movants") hereby submit this Motion, with supporting memorandum of law, requesting that this Court exclude the February 24, 2020 expert report of Michelle Guelbart ("Guelbart") (the "Guelbart Report"), who was engaged by Plaintiff, and preclude Guelbart's testimony at trial, pursuant to Pa. R. E. 702, and in support thereof, aver as follows.

I.      **BACKGROUND**

A.      **Plaintiff's Complaint**

1.      Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc.  Plaintiff amended her Complaint multiple times, including revising allegations regarding the length of time and the period of time in which she alleges she was trafficked.  Her most recent Amended Complaint, which omits the statutory claim and is based solely on claims of common law negligence, narrows the time period of her alleged trafficking to several months in the first half of 2014 (the "Relevant Time Period").  Plaintiff testified that she turned herself into the Philadelphia Department of Human Services on June 6, 2014.

2.      Discovery has yielded evidence that refutes Plaintiff's claims that she was held for weeks or months at a time against her will at the Roosevelt Inn during the Relevant Time Period.

B.      **The Guelbart Report**

3.      The Guelbart Report, which provides an overview of what human trafficking is and efforts by governmental agencies, non-governmental organizations and other

3

Case ID: 170300712
Control No.: 21060525

industry groups to address human trafficking. *See* Exhibit A. Starkly absent from Guelbart's Report, however, is any data or empirical evidence showing the effectiveness of efforts taken to prevent or address human trafficking and whether those efforts would have been effective had they been implemented at the Roosevelt Inn. **Surprisingly, Guelbart's Report is devoid of a single citation to empirical research or any other evidence to support her conclusions**. The Report is decidedly *not* scientific in any respect.

4.      The Guelbart Report also fails to identify any data that suggests that her proposed interventions by the Roosevelt Inn are valid and/or reliable in general. While she states the conclusion that "companies that adopt policies and procedures to combat human trafficking and child exploitation mitigate the risk of exploitation occurring on their properties," she cites to no data or evidence that suggest it is true. In fact, as explained by Kimberly Mehlman-Orozco, who prepared an expert report on behalf of the Roosevelt Defendants, there is no empirical data to support the efficacy of any training in preparing, empowering, or training hotel staff, especially not at the time of Plaintiff's victimization. *See* Exhibit B, Mehlman-Orozco Report, at 50.

5.      The Guelbart Report finds the Roosevelt Defendants negligent in their failure to adopt and adhere to the referenced policies and interventions, but does not mention that such policies were developed long after the Relevant Time Period of Plaintiff's claims. In fact, while Guelbart concludes that the Roosevelt Defendants failed to meet the standard of care for hotels in 2014, she *never* identifies the standard of care to which she evaluated the Roosevelt Defendants' conduct.

6.      Guelbart reports that from 2004 to 2011, ECPAT-USA, according to Guelbart, the "leading organization fighting child sex trafficking in the United States," worked with "corporate social responsibility departments, education teams, and human resource

4

Case ID: 170300712
Control No.: 21060525

professionals" to share training material. Additionally, Guelbart reports that the issue of sex trafficking was added to the agenda of "countless industry conferences" of various hotel industry groups. Guelbart offers no connection of these vaguely referenced events to the Roosevelt Defendants, the relevant time period or the facts of this case.

7.      Guelbart's Report discusses the evolution the "Code of Conduct" (the "Code"), a set of policies and directives created by ECPAT-USA. According to Guelbart, in 2020, "over 60 U.S. based hospitality and travel companies had signed up to partner with ECPAT and implement the Code."[1] *See* Exhibit A, Guelbart Report at 6. Guelbart names several hotel companies (properties or management companies) that have signed the Code, but names only 7 – nationwide – that were signatories in 2014, the time period of Plaintiff's allegations.[2]

8.      Perhaps even more telling, many hotels and hotel chains that have signed the Code and implemented its policies continue to be implicated by commercial sex consumers and continue to be sued by sex trafficking victims. The Guelbart Report does not reference the prevalence of lawsuits brought against signatory hotels, large and small, over the past several years.

9.      Additionally, Guelbart provides no support for the proposition that the Roosevelt Defendants' failure to train employees specifically with regard to sex trafficking had any relevance to this case. In fact, Guelbart provides no data or evidence to support her conclusion that "proper training" of hotel employees results in an increase in the reporting of suspected trafficking incidents. According to Kimberly Mehlman-Orozco, there is no evidence

---

[1] In touting ECPAT-USA, her former employer, as the "nation's leading non-profit organization in eradicating child exploitation and trafficking," (Guelbart Report at 3), Guelbart uses her Report to advertise the organization's training without providing any evidence of its efficacy (and without disclosing the fee that ECPAT-USA's new partners must pay in order to sign onto The Code).
[2] Guelbart does not suggest that seven signatories to the Code established a standard of care in 2014; indeed, Guelbart's Report does not address what the applicable standard of care for hotels in 2014 was, a deficiency that renders her Report useless without further analysis.

150213.00601/125355441v.1

Case ID: 170300712
Control No.: 21060525

that correlates the adoption of policies and procedures to combat human trafficking and child exploitation to a reduction in the risk of exploitation occurring on a hotel property.  Exhibit B, Mehlman-Orozco Report, at 51.

10.     Guelbart's conclusions as to the negligence of the Roosevelt Defendants are based in part on her opinion that the Roosevelt Defendants, in 2014, the time of Plaintiff's claims, did not have in place a training program to assist employees in identifying and combating sex trafficking.  *See* Exhibit A at 9-12.  However, the report also states that in early 2014, there was a "lack of standardized training" in the hospitality industry.  *Id*. at 7.

11.     Guelbart faults the Roosevelt Defendants for not implementing specific plans and policies for preventing sex trafficking and responding to indicators of sex trafficking.  Guelbart offers the "industry standard" for such training, "Your Role in Preventing Human Trafficking," but fails to mention the "industry standard" training was disseminated in 2017, three years after the relevant time period.

12.     Another resource Guelbart faults the Roosevelt Defendants for not utilizing is the Blue Campaign's toolkit for the hotel industry (Report at 7) but Guelbart neglects to mention that the Blue Campaign's toolkit was published long after the Relevant Time Period of Plaintiff's claims.  See dhs.gov/blog/2016/08/10/human-trafficking-and-hospitality-industry. Moreover, Guelbart fails to cite any evidence that the toolkit has proven to be effective.

13.     By way of example, Guelbart opines that hotel employees should be trained to recognize "a number of indicators victims, buyers and traffickers exhibit during the time they are on a hotel property."  *See* Exhibit A at 4.  Beside the fact that most of the red-flag indicators were identified and training regarding the indicators disseminated long after early-mid 2014, the Relevant Time Period of Plaintiff's claims, there is no empirical evidence that tests the sensitivity or specificity of these so-called indicators.

6

Case ID: 170300712
Control No.: 21060525

14.     Guelbart ignores the dangers of using "indicators," demonstrated by multiple lawsuits alleging civil rights violations resulting from poorly conceived anti-trafficking trainings.  Several examples are cited in the May 20, 2020 expert report of Kimberly Mehlman-Orozco, attached as Exhibit B at 52.  Guelbart also ignores the fact that even law enforcement who are "trained on the issue" have difficulty in identifying victims of sex trafficking, which often results in failed service provision and erroneous criminalization.  *Id*. at 52.

15.     Guelbart concludes the Roosevelt Defendants were negligent with respect to identifying traffickers and trafficking victims despite Guelbart's own description of the "anonymous, risk-free nature" of hotels and her statement that "in a hotel the buyer, victim, and trafficker can go unnoticed."  *See* Exhibit A at 4.  She also ignores the sensitivity and specific challenges with victim identification, mentioned above.

16.     Moreover, as demonstrated by the documentary evidence and testimony of numerous Roosevelt Defendant witnesses, the Roosevelt Inn was not "anonymous" or "risk-free," as hotel guests were required to show identification at registration and employees called the police when needed.  Convicted trafficker Abdul Lopez described in his deposition that he was careful to hide his activities from the hotel manager, lest he be reported to authorities or kicked out of the hotel.  Exhibit C, Lopez deposition transcript, at 136-137, 177-178.

17.     Guelbart faults the Roosevelt Defendants for their failure to take steps such as implementing a company-wide anti-trafficking policy to prevent commercial sexual exploitation of children, but Guelbart provides no evidence to suggest that such company-wide anti-trafficking policies were standard business practices in 2014, much less any evidence to suggest that a company-wide anti-trafficking policy would have prevented Plaintiff's victimization or increased the likelihood of identification or intervention. Guelbart provides no evidence why a specific policy needs to be implemented in writing or why a general instruction

7

Case ID: 170300712
Control No.: 21060525

to notify management of illicit activity is not sufficient. *See* Exhibit B at 54. For example, Guelbart offers no evidence that alerting a specific person (an established relationship with trained law enforcement) is any more effective than reporting suspected activity to 911. *Id.*

        18.     Guelbart neglects to state that even currently, there are no empirically tested and validated indicators of sex trafficking, and they most certainly did not exist in 2014. The procedures and protocols touted by Guelbart in her report have not been empirically validated for efficacy and do not measure sensitivity and specificity. Again, Guelbart provides no evidence evaluating the content of these training objectives, much less when (or if) these objectives have become standard practice within the hotel industry. She clearly cites no evidence that these objectives were standard in the industry in 2014.

        In sum, Guelbart's conclusion that the Roosevelt Defendants' conduct fell below a reasonable standard, which resulted in Plaintiff's damages, is based on faulty analysis, is completely unsupported by any evidence, and entirely unreliable. Guelbart reached her conclusions:

      •      without providing any data or empirical evidence that the measures she opines the Roosevelt Defendants should have taken are even effective (while other evidence -not mentioned by Guelbart - indicates it is not);

      •      without identifying reasonable standards for a hotel in 2014, the relevant time period; and

      •      by identifying resources not implemented by the Roosevelt Defendants, but which were not yet developed or available in 2014.

Case ID: 170300712
Control No.: 21060525

## II.    LEGAL ARGUMENT

### A.    Guelbart's Report Does Not Pass the *Frye* Test

19.    The standards for admissibility of expert testimony in Pennsylvania are governed by Pennsylvania Rule of Evidence 702, which embodies the test set forth *in Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), which was adopted by Pennsylvania in *Commonwealth v. Topa*, 369 A.2d 1277 (Pa. 1977).  See *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1043-1044 (Pa. 2003).  Rule 702 provides:

> If scientific, technical or other specialized knowledge beyond that possessed by a lay person will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge skill or experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa. R. E. 702.

20.    The proponent of so-called expert evidence must prove that the methodology an expert used is generally accepted by scientists in the relevant field as a method for arriving at the conclusion the expert will testify to at trial.  *Grady*, 839 A.2d at 1045 (citing *Commonwealth v. Blasioli*, 713 A.2d 1117, 1119 (Pa. 1998)).

21.    It is the court's role as gatekeeper to scrutinize scientific methodology and conclusions "to ensure that what might appear to the jury to be science is not in fact speculation in disguise."  *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d 1314, 1325 (Pa. Super. 1997), *aff'd*, 764 A.2d 1 (Pa. 2000).

22.    It is within the sound discretion of the trial court whether to permit an expert witness to testify.  *Flanagan v. Labe*, 690 A.2d 183, 185 (Pa. 1997), *overruled on other grounds, Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202 (Pa. 2009). "Pennsylvania law requires that the judge serve as a gatekeeper before proffered expert testimony is provided at trial.  The judge must screen to ensure that the witness has demonstrated qualifications in the field offered,

9

Case ID: 170300712
Control No.: 21060525

the testimony provides information that an average juror would not already possess, the testimony is relevant and the methods used are reliable." *Greene v. Phila. Media Network, Inc.,* September Term, 2011, No. 01223, 2014 Phila. Ct. Com. Pl. LEXIS 236, *4-5 (Phila. Cty. Aug. 1, 2014).

23.     Rule 702 also requires that scientific testimony be given by "a witness who is qualified as an expert by knowledge, skill, experience, training or education." Pa. R. E. 702.  "Whether a witness is qualified to render opinions and whether his testimony passes the *Frye* test are two distinct inquiries that must be raised and developed separately by the parties and ruled upon separately by the trial courts." *Grady*, 839 A.2d at 1045-1046 (citing *Commonwealth v. Arroyo,* 723 A.2d 162, 170 (Pa. 1999)).

24.     The Guelbart Report does not meet the requirements set forth in Rule 702 and *Frye, i.e.,* it does not provide "scientific, technical or other specialized knowledge beyond that possessed by a lay person will assist the trier of fact to understand the evidence or determine a fact in issue." Pa. R. E. 702.

25.     The Guelbart Report is completely devoid of evidence or data to support Guelbart's conclusions and opinions.  Accordingly, the Report offers no scientific, technical, statistical or empirical data to assist the jury.  Because there is no evidence to support Guelbart's opinions, her Report amounts to speculation rather than science. *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d at 1325.

26.     While Guelbart, as a social worker, was involved in ECPAT-USA's "corporate engagement strategy," and increasing "corporate giving," (Guelbart CV at 1), she offers no qualifications with regard to the key issues on which she purports to opine:  the standard of care applicable to the Roosevelt Inn in 2014 and evaluating the efficacy of ECPAT-USA's and other procedures and interventions [which post-date the Relevant Time Period of

10

Case ID: 170300712
Control No.: 21060525

Plaintiff's claims]. Guelbart concludes without support, that the Roosevelt Defendants' conduct did not meet the standard of care for hotels in 2014. She opines, without support, that the Roosevelt Defendants' conduct would have met the standard of care had they implemented certain measures, the success of which have never been evaluated much less proven. Her opinions have no basis in accepted, scientific knowledge and amount to mere speculation.

27. Since the training and interventions discussed in the Guelbart Report post-dated Plaintiff's claims in this case, they are not relevant to this action. Guelbart's recitations of post 2014 efforts to combat sex trafficking will not aid the jury in evaluating the conduct of the Roosevelt Defendants in 2014, a requirement of Rule 702.

28. Because Guelbart's opinions do not provide scientific, technical or specialized knowledge, nor will they assist a jury in this case because they are not relevant to 2014, her testimony and Report should be excluded pursuant to Rule of Evidence 702.

WHEREFORE, Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel respectfully request that the Court exclude the expert report of Michelle Guelbart and preclude any testimony at trial by Michelle Guelbart.

150213.00601/125355441v.1

Case ID: 170300712
Control No.: 21060525

**BLANK ROME LLP**

Dated: June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

Case ID: 170300712
Control No.: 21060525

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | : COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | : |
| v. | : MARCH TERM, 2017 NO.: 00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | : JURY TRIAL DEMANDED |
| Defendants, | : |
| v. | : |
| DAIQUAN DAVIS and ABDUL LOPEZ | : |
| Additional Defendants. | : |

**THE ROOSEVELT DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT OF MICHELLE GUELBART AND TO PRECLUDE THE TESTIMONY OF MICHELLE GUELBART**

Case ID: 170300712
Control No.: 21060525

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (collectively, the "Roosevelt Defendants" or "Movants") hereby submit the following memorandum of law in support of their Motion requesting that this honorable Court exclude the February 24, 2020 expert report of Michelle Guelbart ("Guelbart"), who was engaged by Plaintiff and preclude Guelbart's testimony at trial, pursuant to Pa. R. E. 702, and in support thereof, aver as follows.

## I.    MATTER BEFORE THE COURT

Motion of defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel to Exclude the Expert Report of Michelle Guelbart and to Preclude the Testimony of Michelle Guelbart.

## II.    QUESTION PRESENTED

Should this Court exclude the report of Plaintiff's expert, Michelle Guelbart, and precluded her testimony at trial?

Suggested Answer:  Yes.

The expert report prepared by Michelle Guelbart ("Guelbart Report") does not meet the standards of Pennsylvania Rule of Evidence 702 because it provides no scientific, technical or specialized knowledge supported by empirical data or evidence.  The Guelbart Report merely touts the efforts of ECPAT-USA, Guelbart's former employer, in combatting child sex exploitation, and faults the Roosevelt Defendants for failing to implement the policies and interventions promoted by ECPAT-USA and other organizations, notwithstanding: 1) that those interventions did not exist at the relevant time period of Plaintiff's claims; and 2) that there is no empirical evidence that such interventions are effective in combatting sex trafficking.  Guelbart

2

Case ID: 170300712
Control No.: 21060525

has no expertise and offers no specialized knowledge as to the standard of care applicable to the Roosevelt Defendants in 2014, nor does she provide any support for her conclusions that the Roosevelt Defendants failed to meet a standard of care in 2014.

## III.   FACTUAL BACKGROUND

Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. ("Alpha"). Plaintiff amended her Complaint several times. Her last Amended Complaint includes solely claims of negligence against the Roosevelt Inn and her factual allegations narrow the time period in which she was alleged trafficked at the Roosevelt Inn to a limited period in the first half of 2014. Plaintiff claims that she was "recruited, enticed, solicited, harbored, and/or transported to engage in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis." She alleges generally that the Roosevelt Defendants and Alpha were negligent in not recognizing that Plaintiff was being trafficked and not acting to prevent it.

Michelle Guelbart holds a master's degree in social work, worked for ten years for ECPAT-USA, which touts itself as "the leading policy organization protecting children from commercial sexual exploitation through awareness, advocacy, policy, and legislation." Basically, Guelbart opines that the Roosevelt Defendants "failed to meet the standard of care with regard to recognizing and acting upon indications of sex trafficking and criminal activity that occurred at the Roosevelt Inn."

Guelbart's Report, and her opinions therein, are insufficient for several reasons. First, Guelbart fails to identify what the standard of care for a hotel with respect to combatting sex trafficking was in 2014, the relevant time period of Plaintiff's claims. In fact, in her report,

Case ID: 170300712
Control No.: 21060525

Guelbart comments that there was a "lack of standardized training on the issue" in 2014. *See* Exhibit A at 7.

Second, Guelbart faults the Roosevelt Defendants for not implementing certain measures and interventions, which Guelbart maintains were required in order for the Roosevelt Defendants to have met the standard of care in 2014. Guelbart, however, references no empirical data or evidence to support the notion that the interventions she identifies are actually effective. In addition, she declines to mention that the interventions and measures she faults the Roosevelt Defendants for not implementing had not yet been developed in 2014, the relevant time period.

Devoid of any empirical data to support her conclusions, Guelbart's Report amounts to mere speculation. It offers no scientific, technical or specialized knowledge, and provides no evidence to support her conclusions.

### A.    The Code and the Blue Campaign

Guelbart's Report champions her former employer ECPAT-USA in creating a code of conduct for corporate partners – including businesses in the hospitality industry – to sign and implement. Businesses can pay a fee to ECPAT-USA to sign on to the code of conduct, referred to as "The Code," thereby pledging to adopt measures "to combat child sex trafficking in and around their premises." Guelbart Report at 6. Guelbart notes that more than 60 U.S. based hospitality and travel companies have signed onto the Code as of 2020, and she identifies hotel owners and management companies that have signed The Code. Of the 16 hotel owners and management companies Guelbart lists, only seven had signed the Code by 2014. *See* Exhibit A at 6-7. On the measure of being a Code signatory, it clearly was not the "standard" for hotel owners in 2014.

4

Case ID: 170300712
Control No.: 21060525

Moreover, though not mentioned in the Guelbart Report, signatories to The Code, including large and small hotels, have been named in numerous civil suits by victims of sex trafficking.

Guelbart also touts the "Blue Campaign," a "national public awareness campaign, designed to educate the public, law enforcement and other industry partners to recognize the indicators of human trafficking." Guelbart notes that the Blue Campaign developed a toolkit for the hospitality industry, "which offers tips and resources that can help the hospitality industry inform and educate employees about human trafficking." Guelbart cites no data or evidence to prove the efficacy of the "toolkit." Moreover, Guelbart fails to mention that the toolkit for the hospitality industry was not available until several years after the relevant time period of Plaintiff's claims.

Guelbart faults the Roosevelt Defendants for their lack of anti-trafficking policies and training in 2014. She suggests that the Roosevelt Defendants should have followed the "5 Human Trafficking Hotel Industry Principles," released by the American Hotel and Lodging Association ("AHLA") in 2015, a year after Plaintiff's claims, and implemented the "industry standard training, "Your Role in Preventing Human Trafficking: Recognize the Signs," which was developed in 2017, three years after the relevant time period. Guelbart finds the Roosevelt Defendants failed to meet a standard of care that Guelbart never identifies. Simply put, Guelbart fails to provide any evidence to suggest that such company-wide anti-trafficking policies were standard business practices in 2014, much less any evidence to suggest that a company-wide anti-trafficking policy would have prevented Plaintiff's victimization or increased the likelihood of identification or intervention. Moreover, as noted, Guelbart offers no empirical support or

5

Case ID: 170300712
Control No.: 21060525

evidence that implementing The Code or similar policies is effective in combatting child sex trafficking.[3] With no such support, her conclusions are not scientific but are merely speculative.

## IV.   LEGAL ARGUMENT

Guelbart's opinions do not satisfy the standards for admissibility. Plaintiff should be precluded from offering into evidence the Guelbart Report and the testimony of Michelle Guelbart.

### A.   Standard for Admissibility of Expert Opinions

Rule 702 of the Pennsylvania Rules of Evidence governing expert testimony provides as follows:

> If scientific, technical or other specialized knowledge beyond that possessed by a lay person will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge skill or experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa. R. E. 702.

Rule 702 embodies the test set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). The adoption of the rule in 1998 did not alter the requirement that scientific evidence offered must be generally accepted within the relevant scientific community. *See Commonwealth v. Nazarovitch*, 436 A.2d 170, 172 (Pa. 1981); *Commonwealth v. Topa*, 369 A.2d 1277, 1281 (Pa. 1977). Scientific evidence is that which "draws its convincing force from some principle of science, mathematics and the like." *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d 1314, 1317 (Pa. Super. 1997) (citing *Commonwealth v. Rodgers*, 605 A.2d 1228, 1234 (Pa. Super. 1992)) (citations omitted), *aff'd*, 764 A.2d 1 (Pa. 2000). It is the court's role as

---

[3] To the contrary, Dr. Kimberly Mehlman-Orozco, an expert retained by the Roosevelt Defendants stated in her report that there are no empirically tested and validated indicators of sex trafficking and these most certainly did not exist in 2014. Further, the procedures and protocols mentioned by Guelbart in her report have not been empirically validated for efficacy. *See* Exhibit B at 52-54.

6

Case ID: 170300712
Control No.: 21060525

gatekeeper to scrutinize scientific methodology and conclusions "to ensure that what might appear to the jury to be science is not in fact speculation in disguise." *Blum*, 705 A.2d at 1325. Expert reports will not meet the test of scientific reliability where the methods used to draw their conclusion were not generally accepted. *Id.* at 1317.

**B.     The Guelbart Report Does Not Meet the Rule 702 Standard for Admissibility**

The Guelbart Report and Guelbart's testimony do not meet the requirements embodied in Rule 702.

**1.     Guelbart's Opinions Are Not Based on Accepted Scientific Evidence or Methodology**

"Testimony by a qualified expert "doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive." *Blum*, 705 A.2d at 1323 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315-16 (9th Cir. 1995)). Although courts have allowed experts to reach conclusions based on personal expertise, it is clear that experts must rely on methodology and principles that are generally accepted in the relevant scientific community. *Trach v. Fellin*, 817 A.2d 1102, 1112 (Pa. Super. 2003), *app. denied*, 847 A.2d 1288 (Pa. 2004); see also *Cummins v. Rosa*, 846 A.2d 148, 150-151 (Pa. Super. 2004). The *Frye* court held:

> [W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

*Frye*, 293 F. at 1014 (emphasis added).

"Under *Frye,* a party wishing to introduce such evidence must demonstrate to the trial court that the relevant scientific community has reached general acceptance of the principles and

Case ID: 170300712
Control No.: 21060525

methodology employed by the expert witness before the trial court will allow the expert witness to testify regarding his conclusions." *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 208 (Pa. Super. 2003) (citing *Trach v. Fellin*, 817 A.2d at 1108-1109, 1112). In this case, Guelbart's conclusions are not supported by data or evidence. Guelbart's opinions have not been accepted by "the relevant scientific community." As demonstrated by Dr. Mehlman-Orozco in her expert report, there is no empirical data to support Guelbart's conclusions. *See* Exhibit B at 50-54.

Not only does Guelbart fail to offer empirical support for her opinions (because none exists), she fails to acknowledge evidence that refutes her opinions. For example, she faults the Roosevelt Defendants for not recognizing "indicators" of traffickers and trafficking victims in 2014. But the Guelbart Report fails to mention the multiple lawsuits that resulted from poorly conceived anti-trafficking trainings and that are alleged to violate basic civil liberties. *See* Exhibit B at 52. Moreover, as reported by Dr. Mehlman-Orozco, there is no empirical evidence that has tested the sensitivity or specificity of any "indicators" or "red-flags" in the identification of victims, buyers, or traffickers. Additionally, most of the referenced "indicators" or "red-flags" were developed and disseminated after Plaintiff's victimization and are currently criticized for lack of sensitivity/specificity. *Id*. at 51 (citing Song, Sandra. (2019), "When Anti-Sex Trafficking Policies Like the Marriott's Do More Harm Than Good").

Guelbart's opinions have not been "sufficiently established" nor does Guelbart cite to any evidence to suggest that they have. Admitting her Report and allowing her to testify therefore, would not aid the jury but rather, would mislead them. In examining the admissibility of expert witness testimony, the Pennsylvania Supreme Court has stated: "[T]his Court has recognized the influential nature of expert testimony on complex subjects, and the potential that distortions have to mislead laypersons." *Betz v. Pneumo Abex LLC*, 44 A.3d 27, 53 (Pa. 2012). It is the burden

8

Case ID: 170300712
Control No.: 21060525

of proponent of the expert evidence to demonstrate that the evidence meets all of the elements for admission under Rule 702; *i.e.,* that the Guelbart Report and her testimony add *accepted scientific* information and will assist the jury in determining or understanding a fact at issue in this action. *Grady v. Frito-Lay*, 839 A.2d 1038, 1045 (Pa. 2003). The Guelbart Report and testimony will do no such thing.

### 2. Guelbart Opines Regarding a Standard of Care that is Not Relevant

Guelbart's Report fails to include critical information to support her findings that the Roosevelt Defendants were negligent. She opines that the Roosevelt Defendants failed to meet the standard of care for hotels without identifying what the standard of care for hotels was in 2014. In fact, Guelbart states that in 2014, there was a "lack of standardized training on the issue [of combatting sex trafficking]. *See* Exhibit A at 7. Instead, Guelbart provides information to suggest what the standard of care for hotels is *currently*.

Guelbart faults the Roosevelt Defendants for not complying with standards that were introduced well after 2014 and for not implementing policies and training that were developed well after 2014. Training modules and standards of conduct that existed in the hotel industry beginning in 2015 (and later) – and Guelbart's opinions about those issues – are not relevant to this case. For example, the number of hospitality industry companies who signed onto ECPAT-USA's Code of Conduct in 2020 (60) is not relevant to the standard of care in 2014 (when there were only seven signatories, according to Guelbart). *See* Exhibit A at 6-7. The "industry standard training" (Guelbart Report at 9-10), protocols developed by AHLA, the Blue Campaign toolkit -- identified by Guelbart as what the Roosevelt Defendants should have implemented -- did not exist in 2014. They are therefore not relevant to the evaluation of the conduct of the Roosevelt Defendants in 2014.

150213.00601/125355441v.1

Case ID: 170300712
Control No.: 21060525

It is within the sound discretion of the trial court whether to permit an expert witness to testify. *Flanagan v. Labe*, 690 A.2d 183, 185 (Pa. 1997), *overruled on other grounds, Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202 (Pa. 2009). "Pennsylvania law requires that the judge serve as a gatekeeper before proffered expert testimony is provided at trial. The judge must screen to ensure that the . . . testimony is relevant." *Greene v. Phila. Media Network, Inc.,* September Term, 2011, No. 01223, 2014 Phila. Ct. Com. Pl. LEXIS 236* (Phila. Cty. Aug. 1, 2014). An expert's testimony should not be admitted when it will cause confusion or prejudice. *Commonwealth v. Zook*, 615 A.2d 1, 11 (Pa. 1992). Guelbart's testimony and Report do not add relevant information that will aid the jury; instead, her opinions pose a real danger of confusing and misleading the jury. Since Guelbart's opinions do not relate to facts at issue, they do not meet the helpfulness standard of Rule 702.

## V.     CONCLUSION

For the foregoing reasons, Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel request the entry of an order excluding the Guelbart Report and precluding Guelbart from testifying at trial.

150213.00601/125355441v.1

Case ID: 170300712
Control No.: 21060525

**BLANK ROME LLP**

Dated:  June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

11

Case ID: 170300712
Control No.: 21060525

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that true and correct copies of the foregoing

Motion and supporting Memorandum of Law to Exclude Expert Report and Preclude Expert

Testimony were forwarded by electronic mail on this 2nd day of June 2021, addressed to counsel

of record as follows:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

And by United States First Class Mail, postage prepaid: upon the following:

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN 47808

*Additional Defendant*

Case ID: 170300712
Control No.: 21060525

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*


_____/s/ Justina L. Byers_____
JUSTINA L. BYERS

150213.00601/125355441v.1

Case ID: 170300712
Control No.: 21060525

|  |  |
|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire,<br><br>Plaintiff,<br><br>v.<br><br>ROOSEVELT INN LLC<br>d/b/a ROOSEVELT INN and<br>ROOSEVELT INN CAFÉ, et al.,<br><br>Defendants.<br><br>v.<br><br>DAIQUAN DAVIS AND ABDUL LOPEZ,<br><br>Additional Defendants. | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL ACTION – LAW<br><br>MARCH TERM, 2017<br>Civil Action No.: 00712 |

## ORDER

AND NOW, this _____ day of _____, 2021, upon consideration

of the Motion of defendants, upon consideration of Defendants Roosevelt Inn LLC d/b/a

Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn,

UFVS Management Company, LLC and Yagna Patel's Motion to Preclude and Exclude the

Expert Report and Testimony of Richard Hudak, and any response thereto, it is hereby

ORDERED and DECREED that the Motion is GRANTED and the December 30, 2019 Report of

Richard G. Hudak shall be EXCLUDED and Richard G. Hudak shall be PRECLUDED from

testifying in this case.

BY THE COURT:

_____

J.

Case ID: 170300712
Control No.: 21060522

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | | |
|---|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | : | |
| | : | MARCH TERM, 2017 |
| v. | : | NO.: 00712 |
| | : | |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | : | JURY TRIAL DEMANDED |
| Defendants, | : | |
| v. | : | |
| DAIQUAN DAVIS and ABDUL LOPEZ | : | |
| Additional Defendants. | : | |

### ROOSEVELT DEFENDANTS MOTION TO EXCLUDE
### EXPERT REPORT AND TESTIMONY OF RICHARD G. HUDAK

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt

Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel

Case ID: 170300712
Control No.: 21060522

(hereinafter collectively "the Roosevelt Defendants" or "Movants") hereby submit this Motion, with supporting memorandum of law, requesting that this honorable Court exclude the December 30, 2019 expert report of Richard G. Hudak ("Hudak") (the "Hudak Report"), who was engaged by Plaintiff, and preclude Hudak's testimony at trial, pursuant to Pa. R. E. 702, and in support thereof, aver as follows.

## I. BACKGROUND

### A. Plaintiff's Complaint

1. Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. Plaintiff amended her Complaint multiple times, including revising allegations regarding the length of time and the period of time in which she alleges she was trafficked. Her most recent Amended Complaint, which omits the statutory claim and is based solely on claims of common law negligence, narrows the time period of her alleged trafficking to several months in the first half of 2014 (the "Relevant Time Period"). Plaintiff testified that she turned herself into the Philadelphia Department of Human Services on June 6, 2014.

2. Discovery has yielded evidence that refutes Plaintiff's claims that she was held for weeks or months at a time against her will at the Roosevelt Inn during the Relevant Time Period.

### B. The Hudak Report

3. The Hudak Report fails to meet the requirements of admissibility pursuant to Pa. R. E. 702 and should be excluded. First, the report purports to provide a factual background of the Roosevelt Inn by providing a numbered list of "facts" and "findings" that are inaccurate, misleading and wholly irrelevant.

3

Case ID: 170300712
Control No.: 21060522

4.    Specifically, Hudak reports that from January 2011 to January 2016 – a five year period – there were 1487 calls to the Philadelphia Police Department concerning suspected criminal activity "at or near" 7600 East Roosevelt Inn, the address of the Roosevelt Inn.  "Calls for service" data is raw, incomplete and unverifiable data.  Its value is *de minimus* and Hudak's reliance on such data surely raises questions as to his as qualifications as a witness with scientific or technical expertise.

5.    Of the approximate 1500 calls, Hudak provides detail pertaining to 73 calls from 2011 to 2015, of which 30 related to sexual abuse or commercial sex.  Hudak does not identify any calls that related to activity during the time period relevant to this litigation, the first half of 2014.  Accordingly, the statistics he provides are irrelevant; these facts will not assist the jury in understanding what occurred during the time period of Plaintiff's claims.

6.    Hudak's report is replete with generalized statements with no support in the record or in the specialized field in which he claims to belong.  For example, on page 5 of his report, Hudak states that "human sex trafficking, abuse of narcotics and other crimes at the hotel were open and obvious."  *See* Exhibit A, Hudak Report, at 5, ¶ 1.  This statement is in direct contradiction to the modus operandi of human trafficking crimes in general and the human trafficking crimes that are alleged to have happened in this case.  Sex trafficking is a clandestine activity.  Plaintiff testified that she was permitted to leave the hotel room except to meet customers at the side or rear entrance doors.  *Id*. at 19, ¶ 4.

7.    Hudak provides a "review of media" that includes a description of a shooting incident that took place on March 31, 2014 at the Roosevelt Inn.  Hudak identifies the incident with the comment that the video portrays a "remarkable" "amount of pedestrian traffic in the hallway at 12:28 am."  This statement is not relevant to Plaintiff's claims and is offers no useful information to the jury.  The shooting incident, which was captured by the Roosevelt Inn's

4

Case ID: 170300712
Control No.: 21060522

video surveillance cameras, has no relevance to Plaintiff or to her claims, nor has Plaintiff so alleged.[1]  Indeed, it has not been established that Plaintiff was even at the Roosevelt Inn at the time of the shooting.  Hudak does not indicate what portion of video he watched whether it was 8 hours or 8 seconds.  He does not indicate what a "remarkable amount" of pedestrian traffic" is in his opinion.  His "opinion" that the video depicts a "remarkable amount of pedestrian traffic" is clearly not based on scientific or technical knowledge and adds nothing of value for a fact finder in this matter.

   8. The Hudak report includes sections titled "Review of Trip Advisor," "Review of Yelp," and "Review of Facebook," which include completely irrelevant, anonymous, and wholly unreliable comments from 2007, 2011, 2012, 2013, 2015 and 2016 regarding drugs, "bad people," and prostitution.  These anonymous comments have nothing to do with Plaintiff's claims or the time period of Plaintiff's claims.  Nor do the reviews provide the jury with any factual information relevant to Plaintiff's claims or that will assist the jury in understanding actual admissible evidence or determining a fact in issue.  Hudak purports to have scientific or technical expertise yet relies on inherently unreliable and irrelevant social media posts on which to base his opinions.  He also ignores other internet based posts in which prostitution customers complained that the front desk personnel at the Roosevelt Inn stopped him from going to the room and "asked too many questions."  *See* Exhibit B, Report of Kimberly Mehlman-Orozco, at 28.

   9. Hudak's "Opinions" are stated on page 19-21 of his report.  They are remarkable for their lack of scientific support, lack of factual support and lack of relevance to Plaintiff's claims.  The first opinion is that the Roosevelt Defendants "knew or should have known human trafficking, prostitution, drug abuse and transactions, and other criminal activities

---

[1] In part because it is not relevant to the claims in this litigation, the Roosevelt Defendants have filed a separate motion to preclude any reference to the March 31, 2014 shooting incident.

Case ID: 170300712
Control No.: 21060522

were occurring at the hotel." In support of this conclusion, Hudak cites, *inter alia*, the 1487 calls to the Philadelphia Police over a five-year time frame regarding activity in or around the Roosevelt Inn. As discussed, *supra,* the statistics Hudak cites are irrelevant, unverifiable, unreliable and span a time period, 90% of which is not relevant to Plaintiff's claims. Hudak also supports his conclusion by citing to "social media [that] was critical reporting criminal activity at the hotel." *See* Exhibit A, Hudak Report at 19, ¶ 1. Pursuant to Rule of Evidence 702, Hudak's testimony and report are supposed to be offered to impart his scientific or technical knowledge. His absurd reliance upon unsubstantiated, anonymous, unreliable posts to social media sites from time periods pre and postdating the relevant time period *by years* illustrates the failure of Hudak's opinions to meet the standard of Rule 702.

10.     Another example of the vacuous nature of Hudak's conclusions is opinion no. 2, which asserts that offering condoms in a vending machine is evidence that the Roosevelt "Defendants failed to take steps to deter or prevent criminal activity including sex trafficking, and instead permitted illegal criminal acts to occur." *See* Exhibit A, Hudak Report at 19, ¶ 2.

11.     Hudak cites additional opinions without factual or scientific support and which *ignore record evidence*. For example, he states that "Defendants failed to report criminal activity to authorities demonstrating a 'willful blindness' for the law." Hudak deliberately omitted references to the deposition testimony of multiple Roosevelt Inn employees who testified that they have called the police to the hotel to report suspicious activity and have cooperated with law enforcement in their investigations on numerous occasions. Roosevelt Inn manager, defendant Yagna Patel, testified that he has been subpoenaed by prosecutors to testify in criminal cases and has always cooperated in any and all police investigations, providing copies of surveillance video if requested or allowing law enforcement to view video footage if requested, providing guest records or other documents if requested, retaining trash from guests' rooms upon

6

Case ID: 170300712
Control No.: 21060522

their departure if requested by law enforcement. Front desk clerk Bibi Bogan testified that she called the police approximately 20 times. Housekeeper Farida Hussain testified that she has provided room trash to police on six or seven occasions and on other occasions, assisted law enforcement by looking in guest rooms for airline tickets. Front desk clerk Abdul Azeez testified that he cooperated with law enforcement requests to review computer and check in records. Trustee Blanche Bersch testified in her deposition that she contacted the FBI directly to ask about rumors of prostitution in hotels in Northeast Philadelphia. Bersch told the FBI that that the Roosevelt Defendants wanted to know of any prostitution related activities and wanted to assist law enforcement in any way possible. USVS Management Company's corporate designee, Anthony Uzzo, testified extensively about the hotel staff's cooperation with law enforcement.

12. Hudak's opinions ignore the widely acknowledged surreptitious nature of sex trafficking. For example, Hudak opines that the Roosevelt "Defendants knew or should have known that M.B. was younger than other guests," but instead was "'willfully blind' to her presence." However, in the preceding paragraph he recounts M.B.'s testimony that she was "only allowed to leave the room to provide access to 'Johns' at the side or back entrances." *See* Exhibit A, Hudak Report at 19, ¶¶ 4, 5. Hudak similarly ignores the statements of Plaintiff and her traffickers indicating their deliberate efforts to conceal their activities. *See* Exhibit C, Declaration of Daiquan Davis; Exhibit D, deposition transcript of Abdul Lopez, at 147-148, 177-178; Exhibit E, Declaration of Abdul Lopez; Exhibit F, deposition transcript of Plaintiff, at 241-242, 317.

13. Hudak opines that "hoteliers should be trained to know their guests and acknowledge their presence" and offers a list of "warning signs" for human trafficking identified by the Department of Homeland Security. Hudak's Report does not state that the Department of Homeland Security toolkit that he references was not published until 2017, several years after the

7

Case ID: 170300712
Control No.: 21060522

time period of Plaintiff's claims, is not based in research and has never been testes for its efficacy. *See* Exhibit B, Mehlman-Orozco Report, at 28, 49. According to the DHS, the toolkit was never intended to be a mandatory intervention that would reduce the prevalence of sex trafficking but rather, was intended to raise awareness. *Id*. at 28, n. 69.

14.    Moreover, Hudak conflates prostitution with sex trafficking, though they are different activities. Hudak ignores statistics indicating that the majority of consenting adult sex workers are not victims of trafficking. *Id*. at 28-29, n. 70-73.

15.    Hudak's opinions improperly rely on misstatements or misrepresentations of deposition testimony. For example, Hudak's opinions rely on Plaintiff's testimony that "it was obvious there were condoms everywhere, dirty towels, prepaid cards everywhere, lingerie," which Hudak describes as a response to a question about whether housekeepers would know about prostitution activities. *See* Exhibit A, Hudak Report at 8. Plaintiff's response that Hudak cites was actually in response to a question about whether front desk clerks, not housekeeping staff, were aware of commercial sex activities. Plaintiff admitted that front desk clerks never entered the hotel rooms. Exhibit F, Plaintiff's deposition at 174. Hudak fails to reference Plaintiff's testimony –- and the corroborating testimony of her traffickers -- that she and her traffickers made overt efforts to conceal their commercial sex activities from hotel staff and security. *Id*. at 242.

16.    Hudak supports his opinions with similarly misrepresented testimony of other witnesses. *See* Exhibit B, Mehlman-Orozco Report, at 29-49. As Mehlman-Orozco notes, the "majority (pages 7 to 19) of Mr. Hudak's report consisted of cherry-pick[ed] excerpts from depositions, completely taking deposition statements out of context, or erroneously citing depositions to support his *a priori* erroneous conclusions." *Id*. at 29.

150213.00601/125423762v.1

Case ID: 170300712
Control No.: 21060522

In sum, Hudak's conclusion that the Roosevelt Defendants' conduct fell below a reasonable standard, which resulted in Plaintiff's damages, is based on faulty analysis, is completely unsupported and entirely unreliable. Hudak reached his conclusions:

- by relying upon misstated or mispresented deposition testimony;

- without providing any data or empirical evidence that the measures he opines the Roosevelt Defendants should have taken are even effective (while other evidence - not mentioned by Hudak - indicates it is not);

- without identifying reasonable standards for a hotel in 2014, the relevant time period;

- by identifying resources not implemented by the Roosevelt Defendants, but which were not yet developed or available in 2014.

## II.    LEGAL ARGUMENT

### A.    Hudak's Report Does Not Pass the *Frye* Test

17.    The standards for admissibility of expert testimony in Pennsylvania are governed by Pennsylvania Rule of Evidence 702, which embodies the test set forth *in Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), which was adopted by Pennsylvania in *Commonwealth v. Topa*, 369 A.2d 1277 (Pa. 1977). See *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1043-1044 (Pa. 2003). Rule 702 provides:

> If scientific, technical or other specialized knowledge beyond that possessed by a lay person will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge skill or experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa. R. E. 702.

18.    The proponent of so-called expert evidence must prove that the methodology an expert used is generally accepted by scientists in the relevant field as a method

9

Case ID: 170300712
Control No.: 21060522

for arriving at the conclusion the expert will testify to at trial. *Grady*, 839 A.2d at 1045 (citing *Commonwealth v. Blasioli*, 713 A.2d 1117, 1119 (Pa. 1998)).

19. It is the court's role as gatekeeper to scrutinize scientific methodology and conclusions "to ensure that what might appear to the jury to be science is not in fact speculation in disguise." *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d 1314, 1325 (Pa. Super. 1997), *aff'd*, 764 A.2d 1 (Pa. 2000).

20. It is within the sound discretion of the trial court whether to permit an expert witness to testify. *Flanagan v. Labe*, 547 Pa. 254, 690 A.2d 183, 185 (Pa. 1997), *overruled on other grounds, Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202 (Pa. 2009). "Pennsylvania law requires that the judge serve as a gatekeeper before proffered expert testimony is provided at trial. The judge must screen to ensure that the witness has demonstrated qualifications in the field offered, the testimony provides information that an average juror would not already possess, the testimony is relevant and the methods used are reliable." *Greene v. Phila. Media Network, Inc.,* September Term, 2011, No. 01223, 2014 Phila. Ct. Com. Pl. LEXIS 236,*4-5 (Phila. Cty. Aug. 1, 2014).

21. Rule 702 also requires that scientific testimony be given by "a witness who is qualified as an expert by knowledge, skill, experience, training or education." Pa. R. E. 702. "Whether a witness is qualified to render opinions and whether his testimony passes the *Frye* test are two distinct inquiries that must be raised and developed separately by the parties, and ruled upon separately by the trial courts." *Grady*, 839 A.2d at 1045-1046 (citing *Commonwealth v. Arroyo,* 723 A.2d 162, 170 (Pa. 1999)).

22. The Hudak Report does not meet the requirements set forth in Rule 702 and *Frye, i.e.,* it does not provide "scientific, technical or other specialized knowledge beyond

Case ID: 170300712
Control No.: 21060522

that possessed by a lay person will assist the trier of fact to understand the evidence or determine a fact in issue." Pa. R. E. 702.

23. The Hudak is completely devoid of evidence or data to support Hudak's conclusion that "the Roosevelt Defendants were negligent by not intervening, deterring or preventing . . . human trafficking and criminal activities from occurring during the period of 2014 . . . and by failing to alert law enforcement authorities when suspicious activity was observed." *See* Exhibit A at 22. The only applicable standard of care that Hudak identifies is a DHS toolkit that was published three years after Plaintiff's victimization.

24. The Hudak Report offers no scientific, technical, statistical or empirical data to assist the jury. Because there is no evidence to support Hudak's opinions, his Report amounts to speculation rather than science. *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d at 1325.

25. Hudak opines, without support, that the Roosevelt Defendants' conduct would have met the standard of care had they implemented certain measures, the success of which have never been evaluated much less proven. Hudak's opinions have no basis in accepted, scientific knowledge and amount to mere speculation.

26. Since the training and interventions discussed in the Hudak Report post-dated Plaintiff's claims in this case, they are not relevant to this action. Hudak's recitations of post 2014 efforts to combat sex trafficking will not aid the jury in evaluating the conduct of the Roosevelt Defendants in 2014, a requirement of Rule 702.

27. While Hudak purports to rely upon the testimony of several witnesses, his deliberate and/or careless misstatements and misrepresentations of the witnesses' testimony render his conclusions inherently unreliable.

150213.00601/125423762v.1

Case ID: 170300712
Control No.: 21060522

28.    Because Hudak's opinions do not provide scientific, technical or specialized knowledge, nor will they assist a jury in this case because they are not relevant to 2014, his testimony and Report should be excluded pursuant to Rule of Evidence 702.

WHEREFORE, Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel respectfully request that the Court exclude the expert report of Richard Hudak and preclude any testimony at trial by Richard Hudak.

**BLANK ROME LLP**

Dated:  June 2, 2021

/s/ Charles S. Marion
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
          keddy@blankrome.com
          byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

12

Case ID: 170300712
Control No.: 21060522

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
        keddy@blankrome.com
        byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, <br><br> Plaintiff, <br><br> v. <br><br> ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. <br><br> Defendants, <br><br> v. <br><br> DAIQUAN DAVIS and ABDUL LOPEZ <br><br> Additional Defendants. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION <br><br> MARCH TERM, 2017 NO.: 00712 <br><br> JURY TRIAL DEMANDED |

**THE ROOSEVELT DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT OF RICHARD HUDAK AND TO PRECLUDE THE TESTIMONY OF RICHARD HUDAK**

Case ID: 170300712
Control No.: 21060522

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (collectively, the "Roosevelt Defendants" or "Movants") hereby submit the following memorandum of law in support of their Motion requesting that this honorable Court exclude the December 30, 2019 expert report of Richard Hudak ("Hudak"), who was engaged by Plaintiff, and preclude Hudak's testimony at trial, pursuant to Pa. R. E. 702, and in support thereof, aver as follows.

## I.  MATTER BEFORE THE COURT

Motion of defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel to Exclude the Expert Report of Richard Hudak and to Preclude the Testimony of Richard Hudak.

## II.  QUESTION PRESENTED

Should this Court exclude the report of Plaintiff's expert, Richard Hudak, and preclude him from testifying at trial?

Suggested Answer:  Yes.

The expert report from Richard Hudak ("Hudak Report") does not meet the standards of Pennsylvania Rule of Evidence 702 because it provides no scientific, technical or specialized knowledge supported by empirical data or evidence.  The Hudak Report relies upon unverifiable, unreliable sources of information, such as anonymous posts to social media sites made during time periods not at issue, unverifiable, raw data listing police calls for a 5 year period, only 6 months of which is relevant, and misstated, misrepresented and out of context statements and testimony.  Hudak also relies upon proposed interventions proposed by the Department of Homeland Security, notwithstanding: 1) that those interventions did not exist at the relevant time

2

Case ID: 170300712
Control No.: 21060522

period of Plaintiff's claims; and 2) that there is no empirical evidence that such interventions are effective in combatting sex trafficking. Hudak offers no specialized knowledge as to the standard of care applicable to the Roosevelt Defendants in 2014, nor does he provide reliable or valid support for his conclusions that the Roosevelt Defendants failed to meet a standard of care in 2014.

## III.  FACTUAL BACKGROUND

Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. ("Alpha"). Plaintiff amended her Complaint several times. Her last Amended Complaint includes solely claims of negligence against the Roosevelt Inn and her factual allegations narrow the time period in which she was alleged trafficked at the Roosevelt Inn to a limited period in the first half of 2014. Plaintiff claims that she was "recruited, enticed, solicited, harbored, and/or transported to engage in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis." She alleges generally that the Roosevelt Defendants and Alpha were negligent in not recognizing that Plaintiff was being trafficked and not acting to prevent it.

Plaintiff has proffered an expert report written by Richard Hudak (the "Hudak Report"). Hudak concludes basically that the Roosevelt Defendants were negligent by not intervening, deterring or preventing Plaintiff's trafficking. Hudak's Report, and his opinions therein, are insufficient by any measure. Hudak's Report does not meet the standards for admissibility pursuant to Pennsylvania law and must be excluded.

### A.  Hudak Fails to Identify the Standard of Care

Hudak fails to identify what the standard of care for a hotel with respect to combatting sex trafficking was in 2014, the relevant time period of Plaintiff's claims. While he identifies "a

3

Case ID: 170300712
Control No.: 21060522

number of warning signs that indicate the presence of human trafficking at hotels" identified by the Department of Homeland Security ("DHS") (Hudak Report at 20), Hudak neglects to add that this list of warning signs was part of a toolkit DHS published in 2017, three years after Plaintiff's claims. In fact, Plaintiff's other liability expert, Michelle Guelbart, stated in her report that in 2014, there was a "lack of standardized training on the issue." *See* Exhibit G, Guelbart Report at 7.

**B.     Hudak's Alternative Interventions Were Developed Years After the Relevant Time Period**

Hudak faults the Roosevelt Defendants for not implementing certain measures and interventions: "Hoteliers should be trained to know their guests and acknowledge their presence." Exhibit A, Hudak Report at 20. Again, the interventions Hudak proposes the Roosevelt Defendants should have employed were developed in 2017, years after the relevant time period. Moreover, Hudak references no empirical data or evidence to support the notion that the interventions he vaguely describes are actually effective. The fact is, no such data exists. *See* Mehlman-Orozco Report at 25-28.[2] Devoid of any empirical data to support his conclusions, Hudak's Report amounts to mere speculation. It offers no scientific, technical or specialized knowledge, and provides no evidence to support his conclusions.

**C.     Hudak's Facts and Findings Lack Support from Valid Sources**

Hudak's Report is remarkable for its select reliance on completely unverifiable, unreliable and irrelevant sources of information, such as anonymous social media posts and police calls to or around the Roosevelt Inn for a five-year period. Hudak also relies on select and

---

[2] To the contrary, Dr. Kimberly Mehlman-Orozco, an expert retained by the Roosevelt Defendants stated in her report that there are no empirically tested and validated indicators of sex trafficking and these most certainly did not exist in 2014. Further, the procedures and protocols mentioned by Hudak in his report have not been empirically validated for efficacy. Mehlman-Orozco Report at 52-54.

150213.00601/125423762v.1

Case ID: 170300712
Control No.: 21060522

out of context deposition testimony and statements in support of his opinions, while completely ignoring record evidence in contradiction. The result of this one-sided analysis is not the scientific or technical evaluation required by Rule 702 of the Rules of Evidence.

Hudak's Report lists certain facts and findings, the support from which purportedly can be found in unreliable sources such as Yelp. Hudak list of "finding" lists paragraphs wherein Hudak reviews online, anonymous postings to Trip Advisor, Yelp and Facebook from as early as 2007 and as late as 2016. These posts are anonymous, unverifiable and completely irrelevant. Hudak's use of such material purportedly to support his "scientific, technical or specialized knowledge" is absurd. Hudak's reliance upon newspaper articles is similarly inappropriate and decidedly unscientific.

His other findings are purportedly based on deposition testimony and declarations of witnesses. Hudak, however, overtly cherry picks snippets of testimony, taking them out of context, while ignoring conflicting record evidence. This practice is hardly the scientific analysis required by Rule 702.

For example, Hudak repeatedly describes the Roosevelt Defendants as "willfully blind" to Plaintiff's victimization and criminal activity. Hudak makes no mention of the statements of Plaintiff and both of her traffickers that they took measures to hide their activities from hotel staff and security. Hudak also ignores the testimony of numerous Roosevelt Inn witnesses in describing their efforts to alert and cooperate with law enforcement regarding activities at the hotel.

Hudak faults the Roosevelt Defendants for not abiding by a standard of care that he does not identify, faults them for not implanting a program that did not exist in 2014 and uses

5

Case ID: 170300712
Control No.: 21060522

unreliable support for his opinions. Hudak's conclusions are not scientific but are merely speculative. His Report and testimony should be excluded.

IV.    **LEGAL ARGUMENT**

Hudak's opinions do not satisfy the standards for admissibility. Plaintiff should be precluded from offering into evidence the Hudak Report and the testimony of Richard Hudak.

A.    **Standard for Admissibility of Expert Opinions**

Rule 702 of the Pennsylvania Rules of Evidence governing expert testimony provides as follows:

> If scientific, technical or other specialized knowledge beyond that possessed by a lay person will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge skill or experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa. R. E. 702.

Rule 702 embodies the test set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). The adoption of the rule in 1998 did not alter the requirement that scientific evidence offered must be generally accepted within the relevant scientific community. *See Commonwealth v. Nazarovitch*, 436 A.2d 170, 172 (Pa. 1981); *Commonwealth v. Topa*, 369 A.2d 1277, 1281 (Pa. 1977). Scientific evidence is that which "draws its convincing force from some principle of science, mathematics and the like." *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d 1314, 1317 (Pa. Super. 1997) (citing *Commonwealth v. Rodgers*, 605 A.2d 1228, 1234 (Pa. Super. 1992)) (citations omitted), *aff'd*, 764 A.2d 1 (Pa. 2000). It is the court's role as gatekeeper to scrutinize scientific methodology and conclusions "to ensure that what might appear to the jury to be science is not in fact speculation in disguise." *Blum*, 705 A.2d at 1325.

*Frye* sets an automatic rule of mandatory exclusion for scientific testimony that is not supported by evidence that the opinion, reasoning or method has gained general acceptance in

6

Case ID: 170300712
Control No.: 21060522

the particular field in which is belongs. *Daubert v. Merrell Dow Pharmaceuticals*, 113 S.Ct. 2786 (1993). Similarly, expert reports will not meet the test of scientific reliability where the methods used to draw their conclusion were not generally accepted. *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d at 1317.

**B.**    **The Hudak Report Does Not Meet the Rule 702 Standard for Admissibility**

The Hudak Report and Hudak's testimony do not meet the requirements embodied in Rule 702.

### 1.    Hudak's Opinions Are Not Based on Accepted Scientific Evidence or Methodology

"Testimony by a qualified expert "doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive." *Blum*, 705 A.2d at 1323 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315-16 (9th Cir. 1995)). Although courts have allowed experts to reach conclusions based on personal expertise, it is clear that experts must rely on methodology and principles that are generally accepted in the relevant scientific community. *Trach v. Fellin*, 817 A.2d 1102, 1112 (Pa. Super. 2003), *app. denied*, 847 A.2d 1288 (Pa. 2004); see also *Cummins v. Rosa*, 846 A.2d 148, 150-151 (Pa. Super. 2004). The *Frye* court held:

> [W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

*Frye*, 293 F. at 1014 (emphasis added).

"Under *Frye,* a party wishing to introduce such evidence must demonstrate to the trial court that the relevant scientific community has reached general acceptance of the principles and

150213.00601/125423762v.1

Case ID: 170300712
Control No.: 21060522

methodology employed by the expert witness before the trial court will allow the expert witness to testify regarding his conclusions." *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 208 (Pa. Super. 2003) (citing *Trach v. Fellin*, 817 A.2d at 1108-1109, 1112), *app. denied*, 847 A.2d 1287 (Pa. 2004). In this case, Hudak's conclusions are not supported by data or evidence. Hudak's opinions have not been accepted by "the relevant scientific community." Not only have Hudak's opinions not been "sufficiently established" with factual or scientific support, Hudak does not identify the standard that he claims Defendants failed to meet. Moreover, as noted by Dr. Mehlman-Orozco in her expert report, there is no empirical data to support Hudak's conclusions as to the efficacy of practices Hudak faults the Roosevelt Defendants for not implementing. *See* Exhibit B, Mehlman-Orozco Report, at 50-54. Hudak bases his opinions on anonymous, unverifiable, irrelevant and inherently unreliable sources such as social media posts (dating from 2007 to 2016), newspaper articles and raw data reporting police calls. Additionally, Hudak's selection of testimony excerpts, with no acknowledgement of conflicting record evidence, casts doubt on any scientific process he purports to have used.

Admitting Hudak's Report and allowing him to testify therefore, would not aid the jury but rather, would mislead them. In examining the admissibility of expert witness testimony, the Pennsylvania Supreme Court has stated: "[T]his Court has recognized the influential nature of expert testimony on complex subjects, and the potential that distortions have to mislead laypersons." *Betz v. Pneumo Abex LLC*, 44 A.3d 27, 53 (Pa. 2012). It is the burden of proponent of the expert evidence to demonstrate that the evidence meets all of the elements for admission under Rule 702; *i.e.,* that the Hudak Report and his testimony add *accepted scientific* information that will assist the jury in determining or understanding a fact at issue in this action. *Grady v.*

Case ID: 170300712
Control No.: 21060522

*Frito-Lay*, 839 A.2d 1038, 1045 (Pa. 2003). The Hudak Report and testimony will do no such thing.

<h3 style="text-align:center">2.       Hudak Opines Regarding a Standard of Care that is Not Relevant</h3>

Hudak's Report fails to include critical information to support his "findings" that the Roosevelt Defendants were negligent. Hudak opines that the Roosevelt Defendants failed to meet the standard of care for hotels without identifying what the standard of care for hotels was in 2014. In fact, Plaintiff's other expert Guelbart states that in 2014, there was a "lack of standardized training on the issue [of combatting sex trafficking]. *See* Exhibit G, Guelbart Report at 7. Instead, Hudak offers a recitation of a DHS toolkit published in 2017, which post-dates the relevant time period of this case by three years. Even if this standard has been scientifically proven to be effective, which it is has not, is not relevant to the evaluation of the conduct of the Roosevelt Defendants in 2014.

It is within the sound discretion of the trial court whether to permit an expert witness to testify. *Flanagan v. Labe*, 690 A.2d 183, 185 (Pa. 1997), *overruled on other grounds, Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202 (Pa. 2009). "Pennsylvania law requires that the judge serve as a gatekeeper before proffered expert testimony is provided at trial. The judge must screen to ensure that the . . . testimony is relevant." *Greene v. Phila. Media Network, Inc.,* September Term, 2011, No. 01223, 2014 Phila. Ct. Com. Pl. LEXIS 236* (Phila. Cty. Aug. 1, 2014). An expert's testimony should not be admitted when it will cause confusion or prejudice. *Commonwealth v. Zook*, 615 A.2d 1, 11 (Pa. 1992). Hudak's testimony and Report do not add relevant information that will aid the jury; instead, his opinions pose a real danger of confusing and misleading the jury. Since Hudak's opinions do not relate to facts at issue, they do not meet the helpfulness standard of Rule 702.

9

Case ID: 170300712
Control No.: 21060522

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel request the entry of an order excluding the Hudak Report and precluding Hudak from testifying at trial.

<b>BLANK ROME LLP</b>

Dated:  June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

150213.00601/125423762v.1

Case ID: 170300712
Control No.: 21060522

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that true and correct copies of the foregoing

Motion and supporting Memorandum of Law to Exclude Expert Report and Preclude Expert

Testimony were forwarded by electronic mail on this 2nd day of June 2021, addressed to counsel

of record as follows:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA  19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

And by United States First Class Mail, postage prepaid: upon the following:

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

*Additional Defendant*

Case ID: 170300712
Control No.: 21060522

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*

/s/ *Justina L. Byers*
JUSTINA L. BYERS

150213.00601/125423762v.1

Case ID: 170300712
Control No.: 21060522

| | |
|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire, | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| Plaintiff, | CIVIL ACTION – LAW |
| v. | MARCH TERM, 2017<br>Civil Action No.: 00712 |
| ROOSEVELT INN LLC<br>d/b/a ROOSEVELT INN and<br>ROOSEVELT INN CAFÉ, et al., | |
| Defendants. | |
| v. | |
| DAIQUAN DAVIS AND ABDUL LOPEZ, | |
| Additional Defendants. | |

## ORDER

AND NOW, this _____ day of _____, 2021, upon consideration of the Motion of defendants, upon consideration of Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel's Motion to Preclude and Exclude the Expert Report and Testimony of Jake Stone, and any response thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED and the January 14, 2021 Report of Jake Stone of the Capsicum Group shall be EXCLUDED and Jack Stone shall be PRECLUDED from testifying in this case.

BY THE COURT:

_____

J.

Case ID: 170300712
Control No.: 21060524

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
　　　keddy@blankrome.com
　　　byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian, William A. Calandra, Esquire, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiff, | |
| v. | MARCH TERM, 2017 NO.: 00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT INN and ROOSEVELT INN CAFÉ, et al., ROOSEVELT MOTOR INN, INC. d/b/a ROOSEVELT MOTOR INN, UFVS MANAGEMENT COMPANY, LLC, YAGNA PATEL and ALPHA-CENTURION SECURITY, INC. d/b/a ALPHA CENTURION SECURITY INC. | JURY TRIAL DEMANDED |
| Defendants, | |
| v. | |
| DAIQUAN DAVIS and ABDUL LOPEZ | |
| Additional Defendants. | |

**ROOSEVELT DEFENDANTS MOTION TO EXCLUDE**
**EXPERT REPORT AND TESTIMONY OF JAKE STONE**

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt

Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel

Case ID: 170300712
Control No.: 21060524

(hereinafter collectively "the Roosevelt Defendants" or "Movants") hereby submit this Motion, with supporting memorandum of law, requesting that this honorable Court exclude the January 14, 2021 expert report of Jake Stone ("Stone"), who was engaged by defendant Alpha-Centurion Security, Inc.'s ("Alpha") (the "Stone Report") and preclude Stone's testimony at trial, pursuant to Pa. R. E. 702, and in support thereof, aver as follows.

## I.    BACKGROUND

### A.    Plaintiff's Complaint

1.    Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc.  Plaintiff amended her Complaint multiple times, including revising allegations regarding the length of time and the period of time in which she alleges she was trafficked.  Her most recent Amended Complaint, which omits the statutory claim and is based solely on claims of common law negligence, narrows the time period of her alleged trafficking to several months in the first half of 2014 (the "Relevant Time Period").  Plaintiff testified that she turned herself into the Philadelphia Department of Human Services on June 6, 2014.

2.    Discovery has yielded evidence that refutes Plaintiff's claims that she was only at the Roosevelt Inn for a few weeks during the Relevant Time Period.

### B.    Video Surveillance at the Roosevelt Inn

3.    On March 31, 2014, a shooting incident occurred inside the Roosevelt Inn. The Roosevelt Inn's video surveillance cameras captured footage of the gunman and his intended victims.  The Roosevelt Defendants voluntarily supplied the video footage to the Philadelphia

3

Case ID: 170300712
Control No.: 21060524

Police Department promptly after the incident and the police used the video footage to locate and arrest the gunman.[1]

4.     Plaintiff has not claimed that the March 31, 2014 shooting incident has any relevance to her claims.  Nevertheless, during discovery in this litigation, the Roosevelt Defendants produced video footage from March 30-31, 2014, which included footage from multiple cameras, in response to Plaintiff's discovery requests.  In addition, Plaintiff subpoenaed the same video footage from the Philadelphia District Attorneys' Office, which presumably obtained it from Philadelphia Police during the prosecution of the March 30-31, 2014 gunman.  The District Attorney produced the March 31, 2014 footage from the Roosevelt Inn's surveillance camera system.

5.     In August 2020, Alpha amended its crossclaims against the Roosevelt Defendants to add allegations that the video footage from the Roosevelt Inn that the District Attorney produced pursuant to subpoena had several time lapses.  Alpha, with no factual support, alleged that the Roosevelt Defendants had removed portions of the video footage and committed "egregious spoliation."

6.     Alpha was not involved in the March 30-31, 2014 shooting incident at the Roosevelt Inn nor were any Alpha employees present on the day of shooting.  In March 2014, the Roosevelt Inn had Alpha security officers posted only on Friday and Saturday nights.  The shooting took place on a Sunday night.  Nonetheless, Alpha argued in its motion for leave to amend its crossclaims that the "deleted" footage could possibly show "security guards properly performing their limited contractual duties."

---

[1] The Roosevelt Defendants have filed a separate motion to exclude the video footage from March 30-31, 2014 and January 2, 2015 from the trial in this matter.  The video footage has no relevance to Plaintiff's claims.  However if the Court desires, the Roosevelt Defendants will make the video footage available for the Court's review.

4

Case ID: 170300712
Control No.: 21060524

C.    **The Stone Report**

7.    Apparently in pursuit of Alpha's unfounded claims that the Roosevelt Defendants deleted portions of the video footage, Alpha engaged an expert, Jake Stone, who analyzed the March 30-31, 2014 Roosevelt Inn footage and inexplicably, video footage from the Roosevelt Inn from January 2, 2015 – seven months after Plaintiff had turned herself into to DHS custody.

8.    Stone produced an expert report describing his analysis of the video footage.  Stone explained his conclusion that a few of the 17 separate cameras at the Roosevelt Inn failed to capture "complete activity" in the stairwells and exterior of the hotel on March 30-31, 2014 because the motion detector settings on certain of the cameras were not properly adjusted.  *See* Exhibit A, Stone Report, at 1-5.  Likewise, certain of the cameras failed to capture "complete activity" in the northern wing of the hotel on January 2, 2015.  *Id*.

9.    Stone did not find that the Roosevelt Defendants or anyone else "intentionally destroyed" portions of the video footage or committed "egregious spoliation" as Alpha alleged.  Rather, Stone concluded that the motion detection area settings on 4 of the 17 cameras were not properly adjusted or configured so as to "sufficiently include areas within the [first floor hallway of the north wing] to capture full activity."  *Id*. at 5.

10.    Basically, Stone's conclusions were that on 4 of the 17 cameras in and around the hotel, the contractors who installed the Roosevelt Inn's video cameras failed to install the motion detection setting so as to fully capture the largest area possible.  *Id*.

II.    **LEGAL ARGUMENT**

A.    **Stone's Report Does Not Pass the *Frye* Test**

11.    The standards for admissibility of expert testimony in Pennsylvania are governed by Pennsylvania Rule of Evidence 702, which embodies the test set forth *in Frye v.*

5

Case ID: 170300712
Control No.: 21060524

*United States*, 293 F. 1013 (D.C. Cir. 1923), which was adopted by Pennsylvania in

*Commonwealth v. Topa*, 369 A.2d 1277 (Pa. 1977). *See Grady v. Frito-Lay, Inc.*, 839 A.2d

1038, 1043-1044 (Pa. 2003). Rule 702 provides:

> If scientific, technical or other specialized knowledge beyond that possessed by a lay person will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge skill or experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa. R. E. 702.

12.    It is within the sound discretion of the trial court whether to permit an

expert witness to testify. *Flanagan v. Labe*, 547 Pa. 254, 690 A.2d 183, 185 (Pa. 1997),

*overruled on other grounds, Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202 (Pa. 2009).

"Pennsylvania law requires that the judge serve as a gatekeeper before proffered expert

testimony is provided at trial. The judge must screen to ensure that the . . . testimony is relevant."

*Greene v. Phila. Media Network, Inc.,* September Term, 2011, No. 01223, 2014 Phila. Ct. Com.

Pl. LEXIS 236* (Phila. Cty. Aug. 1, 2014).

13.    Rule 702 also requires that scientific testimony be given by "a witness

who is qualified as an expert by knowledge, skill, experience, training or education." Pa. R. E.

702. "Whether a witness is qualified to render opinions and whether his testimony passes the

*Frye* test are two distinct inquiries that must be raised and developed separately by the parties,

and ruled upon separately by the trial courts. *Grady*, 839 A.2d at 1045-1046 (citing

*Commonwealth v. Arroyo,* 723 A.2d 162, 170 (Pa. 1999)).

14.    In the case at bar, the Stone Report does not pass the requirements set

forth in Rule 702 and *Frye, i.e.,* it will not "assist the trier of fact to understand the evidence or

determine a fact in issue."

150213.00601/125116818v.1

Case ID: 170300712
Control No.: 21060524

15. By this motion, the Roosevelt Defendants challenge neither Stone's qualifications, nor his methodologies. Rather, Movants challenge the relevance and usefulness of the Stone Report. The Stone Report is subject to exclusion pursuant to Rule 702 and *Frye* because it does not assist the trier of fact to understand evidence or determine a fact in issue.

16. Alpha presumably hired Stone to substantiate its ludicrous claims that the Roosevelt Defendants had intentionally destroyed or deleted portions of the video footage from March 30-31, 2014 and January 2, 2015. The Stone Report, however, does not conclude that portions of the tape were deleted or destroyed. Instead, Stone concludes that the "missing" or lapsed time on the recorded video were caused by "poorly" configured motion detector settings. The lapses that Alpha pled were caused by the Roosevelt Defendants' intentional destruction were actually never recorded at all, according to Stone's Report.

17. Since Alpha was the party that alleged the Roosevelt Defendants had committed "egregious spoliation," a claim which has now been debunked by the Stone Report, the Stone Report and Stone's testimony are of no value to Alpha or the fact finder in this case. However, while the Stone Report and testimony will not assist the trier of fact, they could very well confusion, mislead and distract the jury, making their exclusion appropriate.

WHEREFORE, Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel respectfully request that the Court exclude the expert report of Jake Stone and preclude any testimony at trial by Jake Stone.

7

Case ID: 170300712
Control No.: 21060524

**BLANK ROME LLP**

Dated:  June 2, 2021

*/s/ Charles S. Marion*

Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5500
Fax:  (215) 569-5555
Email:  cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

8

Case ID: 170300712
Control No.: 21060524

**BLANK ROME LLP**
BY: Charles S. Marion. Esquire
Attorney I.D. No. 56509
Kevin M. Eddy, Esquire
Attorney I.D. No. 92904
Justina L. Byers, Esquire
Attorney I.D. No. 76773
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
      keddy@blankrome.com
      byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn, Inc.*
*d/b/a Roosevelt Motor Inn, UFVS*
*Management Company, LLC and Yagna Patel*

| | |
|---|---|
| M.B., minor by her Guardian,<br>William A. Calandra, Esquire, | : COURT OF COMMON PLEAS<br>: PHILADELPHIA COUNTY<br>: CIVIL TRIAL DIVISION |
|        Plaintiff, | : |
| | : MARCH TERM, 2017 |
|     v. | : NO.: 00712 |
| ROOSEVELT INN LLC d/b/a ROOSEVELT<br>INN and ROOSEVELT INN CAFÉ, et al.,<br>ROOSEVELT MOTOR INN, INC. d/b/a<br>ROOSEVELT MOTOR INN, UFVS<br>MANAGEMENT COMPANY, LLC,<br>YAGNA PATEL and ALPHA-CENTURION<br>SECURITY, INC. d/b/a ALPHA CENTURION<br>SECURITY INC. | : JURY TRIAL DEMANDED<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
|        Defendants, | : |
|     v. | : |
| DAIQUAN DAVIS and ABDUL LOPEZ | : |
|        Additional Defendants. | : |

**THE ROOSEVELT DEFENDANTS' LAW IN SUPPORT OF MOTION TO EXCLUDE
EXPERT REPORT OF JAKE STONE AND TO PRECLUDE
THE TESTIMONY OF JAKE STONE**

Case ID: 170300712
Control No.: 21060524

Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel (collectively, the "Roosevelt Defendants" or "Movants") hereby submit the following memorandum of law in support of their Motion requesting that this honorable Court exclude the January 14, 2021 expert report of Jake Stone ("Stone"), who was engaged by Defendant Alpha-Centurion Security, Inc. ("Alpha") and preclude Stone's testimony at trial, pursuant to Pa. R. E. 702, and in support thereof, aver as follows.

## I.    MATTER BEFORE THE COURT

Motion of defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel to Exclude the Expert Report of Jake Stone and to Preclude the Testimony of Jake Stone.

## II.    QUESTION PRESENTED

Should the Court exclude the report of Alpha's expert Jake Stone and preclude his testimony at trial precluded?

Suggested Answer:  Yes.

The expert report prepare by Jake Stone ("Stone Report") does not meet the standards of Pennsylvania Rule of Evidence 702 because his conclusions are not relevant to the facts of this case and do not assist the factfinder in understanding the issues in this litigation or in determining a fact at issue.  Stone's Report concerns surveillance video recorded at the Roosevelt Inn on March 30-31, 2014 and January 2, 2015 (seven months after Plaintiff testified she last visited the Roosevelt Inn).  Nothing depicted in the video from either day has any

2

Case ID: 170300712
Control No.: 21060524

relevance to the facts and issues in this litigation.[2]  Moreover, Stone's conclusions -- that certain short lapses in the video footage are the result of poorly configured motion detector settings on 4 of the Roosevelt Inn's 17 cameras – does not assist the factfinder in determining any fact at issue.

## III.    **FACTUAL BACKGROUND**

Plaintiff commenced this civil action on March 10, 2017, alleging violations of Pennsylvania's Human Trafficking Law and asserting negligence claims against the Roosevelt Defendants and Alpha-Centurion Security, Inc. ("Alpha").  Plaintiff amended her Complaint several times.  Her last Amended Complaint includes solely claims of negligence against the Roosevelt Inn and her factual allegations narrow the time period in which she was alleged trafficked at the Roosevelt Inn to a limited period in the first half of 2014.  Plaintiff claims that she was "recruited, enticed, solicited, harbored, and/or transported to engage in commercial sex acts" on the Roosevelt Defendants' premises on a "regular, consistent and/or repeated basis." She alleges generally that the Roosevelt Defendants and Alpha were negligent in not recognizing that Plaintiff was being trafficked and not acting to prevent it.

In the course of discovery in this matter, Plaintiff subpoenaed from the Philadelphia District Attorney's Office certain video surveillance footage recorded at the Roosevelt Inn, which the Roosevelt Defendants had voluntarily provided to the Philadelphia Police Department. The video footage is from multiple cameras and was recorded on two dates, March 30-31, 2014 and January 2, 2015.  The March 30-31, 2014 footage depicts a shooting incident that took place in the hallways at the Roosevelt Inn.  Plaintiff has not alleged, and discovery has not indicated, that the shooting has any relevance to Plaintiff's claims in this action.  The second piece of

---

[2] The Roosevelt Defendants have moved separately to exclude the video footage from March 30-31, 2014 and January 2, 2015.

Case ID: 170300712
Control No.: 21060524

footer, from January 2, 2015, is clearly not relevant to this case since it was taken on a date seven months after Plaintiff alleged that she last stayed at the Roosevelt Inn.

Notwithstanding the irrelevance of the video footage from March 2014 and January 2015, defendant Alpha sought leave to amend its crossclaims to add allegations that the Roosevelt Defendants "intentionally destroyed" parts of the video footage, committing "egregious spoliation." Alpha's claims are absurd. There are no facts on record and no evidence at all to suggest that the Roosevelt Defendants did anything to alter the video. Alpha's ludicrous claims are based on their observation that the video footage, which derives from 17 different cameras placed throughout the hotel property, jumps or has brief lapses. In pursuit of its baseless theory, Alpha retained a forensics expert, Jake Stone, to analyze the video footage. Stone did not inspect or analyze the Roosevelt Inn's actual video camera system.

Stone did not conclude that anyone tampered with or altered the video; rather, he concluded that 4 of the 17 cameras were not properly adjusted so as to capture "complete activity" within the cameras' ranges. Stone found the time lapses he observed were caused by "poorly configured motion detection area setting(s)." *See* Exhibit A, Stone Report, at 4. He found the poorly configured motion detection settings caused the cameras have brief lapses in recording activity in the stairwell and the exterior of the building on March 30-31, 2014 and in the northern wing hallway on January 2, 2015. *Id.* at 5.

Stone's analysis and conclusions add absolutely no evidentiary value to this case. The March 30-31, 2014 shooting is not relevant to Plaintiff's claims and related video footage should be excluded. Even if it were to be admitted, the lapses on the video – if they in fact exist -- are *de minimis*; *i.e.,* according to Stone, they are brief and occur in footage from only 4 of 17 cameras, meaning "complete activity" was not captured by the camera for only brief snippets of

4

Case ID: 170300712
Control No.: 21060524

time and in only 4 of 17 areas/angles covered by the cameras. The entire subject of the lapses in the video and Alpha's crossclaims alleging spoliation amount to absolutely much ado about nothing. The lapses were a pretense for Alpha to add crossclaims against the Roosevelt Defendants, which have absolutely no basis in fact.

The subject of the January 2, 2015 video footage is even more attenuated to this action. Plaintiff alleged that she was trafficked at the Roosevelt Inn for a time in 2014 up until the date she left the hotel and turned herself in to DHS on June 6, 2014. Any evidence of activity at the Roosevelt Inn after June 6, 2014 is of no relevance. Clearly, Stone's conclusions of poorly configured motion detector settings on cameras recording activity on January 2, 2015 offers nothing of relevance or value in this litigation.

## IV.     **LEGAL ARGUMENT**

Stone's Report, regarding brief lapses on video footage from two dates that have no relevance to Plaintiff's claims or Alpha's defenses, does not satisfy the standards for admissibility. Alpha should be precluded from offering into evidence the Stone Report and the testimony of Jake Stone.

### A.     **Standard for Admissibility of Expert Opinions**

Rule 702 of the Pennsylvania Rules of Evidence governing expert testimony provides as follows:

> If scientific, technical or other specialized knowledge beyond that possessed by a lay person **will assist the trier of fact to understand the evidence or determine a fact in issue**, a witness qualified as an expert by knowledge skill or experience, training or education may testify thereto in the form of an opinion or otherwise.

*See* Pa. R. E. 702 (emphasis added).

Case ID: 170300712
Control No.: 21060524

Rule 702 embodies the test set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). The adoption of the rule in 1998 did not alter the requirement that scientific evidence offered must be generally accepted within the relevant scientific community. *See Commonwealth v. Nazarovitch*, 436 A.2d 170, 172 (Pa. 1981); *Commonwealth v. Topa*, 369 A.2d 1277, 1281 (Pa. 1977). Additionally, Rule 702 and *Frye* require as a necessary predicate to the admission of scientific evidence that the evidence actually be helpful to the trier of fact. It is the burden of proponent of the expert evidence to demonstrate that the evidence meets all of the elements for admission under Rule 702; *i.e.,* Alpha must demonstrate that the Stone Report and testimony add *relevant* information and will assist the jury in determining or understanding a fact at issue in this action. *See Grady v. Frito-Lay*, 839 A.2d 1038, 1045 (Pa. 2003). The Stone Report and testimony will do no such thing. Instead, the Stone Report and testimony could confuse, distract and mislead the jury.

B.    **The Stone Report Does Not Meet the Rule 702 Standard for Admissibility**

The Stone Report and Stone's testimony will not meet the relevance and helpfulness requirements embodied in Rule 702. In examining the admissibility of expert witness testimony, the Pennsylvania Supreme Court has stated: "[T]his Court has recognized the influential nature of expert testimony on complex subjects, and the potential that distortions have to mislead laypersons." *Betz v. Pneumo Abex LLC*, 615 Pa. 504, 44 A.3d 27, 53 (Pa. 2012). While Stone might be an expert in the forensic examination of video footage, the subject of his report and his conclusions are nonetheless irrelevant to the facts at issue and they will be of no assistance to the jury.

It is within the sound discretion of the trial court whether to permit an expert witness to testify. *Flanagan v. Labe*, 547 Pa. 254, 690 A.2d 183, 185 (Pa. 1997), *overruled on other*

6

Case ID: 170300712
Control No.: 21060524

*grounds, Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202 (Pa. 2009). "Pennsylvania law requires that the judge serve as a gatekeeper before proffered expert testimony is provided at trial. The judge must screen to ensure that the . . . testimony is relevant." *Greene v. Phila. Media Network, Inc.,* September Term, 2011, No. 01223, 2014 Phila. Ct. Com. Pl. LEXIS 236* (Phila. Cty. Aug. 1, 2014). An expert's testimony should not be admitted when it will cause confusion or prejudice. *Commonwealth v. Zook*, 615 A.2d 1, 11 (Pa. 1992). Here, not only is the video footage itself irrelevant to the facts and issues in this case, but the proposed cause of the brief lapses in the footage – improperly configured motion detection settings on 4 of cameras – is clearly not relevant. Stone's testimony and Report, while perhaps accurate, remain irrelevant and useless in this case and pose a real danger of confusing and misleading the jury. Since Stone's opinions do not relate to facts at issue, they do not meet the helpfulness standard of Rule 702.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants Roosevelt Inn LLC d/b/a Roosevelt Inn and Roosevelt Inn Café, Roosevelt Motor Inn, Inc. d/b/a Roosevelt Motor Inn, UFVS Management Company, LLC and Yagna Patel request the entry of an order excluding the Stone Report and precluding Stone from testifying at trial.

150213.00601/125116818v.1

Case ID: 170300712
Control No.: 21060524

**BLANK ROME LLP**

Dated: June 2, 2021

*/s/ Charles S. Marion*
Charles S. Marion (PA ID# 56509)
Kevin M. Eddy (PA ID# 92904)
Justina L. Byers (PA ID# 76773)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
Email: cmarion@blankrome.com
keddy@blankrome.com
byers@blankrome.com

*Attorneys for Defendants,*
*Roosevelt Inn LLC d/b/a Roosevelt Inn and*
*Roosevelt Inn Café, Roosevelt Motor Inn,*
*Inc. d/b/a Roosevelt Motor Inn,*
*UFVS Management Company, LLC and*
*Yagna Patel*

8

Case ID: 170300712
Control No.: 21060524

## CERTIFICATE OF SERVICE

I, Justina L. Byers, Esquire, hereby certify that true and correct copies of the foregoing

Motion to Exclude Expert Report and Preclude Expert Testimony were forwarded by United

States First Class Mail, postage prepaid, on this 2nd day of June 2021, addressed to counsel of

record as follows:

Thomas R. Kline, Esquire
Nadeem A. Bezar, Esquire
Emily B. Marks, Esquire
Kyle Nocho, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA  19102

*Attorneys for Plaintiff,*
*M.B., minor by her Guardian, William A. Calandra, Esquire*

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Melanie J. Foreman, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*Attorneys for Defendant,*
*Alpha-Centurion Security, Inc.*

Daiquan Davis
Register Number 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

*Additional Defendant*

Case ID: 170300712
Control No.: 21060524

Abdul Lopez
Register Number 69643-066
FCI Tucson
Federal Correctional Institution
P.O. Box 24550
Tucson, AZ 85734

*Additional Defendant*

*/s/ Justina L. Byers*
JUSTINA L. BYERS

150213.00601/125116818v.1

Case ID: 170300712
Control No.: 21060524

| | | |
|---|---|---|
| M.B. | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| v. | : | |
| | : | CIVIL TRIAL DIVISION |
| ROOSEVELT INN LLC | : | MARCH TERM, 2017 |
| d/b/a ROOSEVELT INN and | : | NO.: 00712 |
| ROOSEVELT INN CAFÉ, et al. | : | |
| | : | |

## ORDER

**AND NOW**, this _____ day of June, 2021, upon consideration of Plaintiff's Motion in Limine to Preclude the Opinions by Expert Witness James Francis Regarding Work Allegedly Done for an Unnamed Fortune 100 Company, and any response in opposition thereto, it is hereby:

**ORDERED** and **DECREED** that Plaintiff's Motion is **GRANTED**.  Defendants are precluded from offering testimony or opinions regarding work allegedly done for an unnamed Fortune 100 company by expert witness James Francis.  Defense counsel shall instruct all defense witnesses to abide by this and all Orders entered by the Court.

BY THE COURT:

_____

J.

**KLINE & SPECTER, P.C.**           Attorneys for Plaintiff
BY:    THOMAS R. KLINE, ESQUIRE/28895
        NADEEM A. BEZAR, ESQUIRE/63577
        EMILY B. MARKS, ESQUIRE/204405
        KYLE B. NOCHO, ESQUIRE/319270
1525 Locust Street
Philadelphia, Pennsylvania 19102
(215) 772-1000

| | | |
|---|---|---|
| M.B. | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| v. | : | |
| | : | CIVIL TRIAL DIVISION |
| ROOSEVELT INN LLC | : | MARCH TERM, 2017 |
| d/b/a ROOSEVELT INN and | : | NO.: 00712 |
| ROOSEVELT INN CAFÉ, et al. | : | |
| | : | |

### PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE OPINIONS BY EXPERT WITNESS JAMES FRANCIS REGARDING WORK ALLEGEDLY DONE FOR AN UNNAMED FORTUNE 100 COMPANY

**NOW COMES** Plaintiff, outside the presence of the Jury, requesting that this Honorable Court enter an Order to Preclude Defendants from offering evidence, testimony or argument regarding work allegedly done for an unnamed Fortune 100 company by expert witness James Francis. In Support of this Motion, Plaintiff respectfully submits, and incorporates herein, the attached Memorandum of Law.

                             **KLINE & SPECTER, P.C.**

                             */s/Emily B. Marks*

            **BY:**  _____
                             THOMAS R. KLINE, ESQUIRE
                             NADEEM A. BEZAR, ESQUIRE
                             EMILY B. MARKS, ESQUIRE
                             KYLE B. NOCHO, ESQUIRE
                             *Attorneys for Plaintiff*

Case ID: 170300712
Control No.: 21060530

**KLINE & SPECTER, P.C.**　　　　　　　　　Attorneys for Plaintiff
BY:　　THOMAS R. KLINE, ESQUIRE/28895
　　　　NADEEM A. BEZAR, ESQUIRE/63577
　　　　EMILY B. MARKS, ESQUIRE/204405
　　　　KYLE B. NOCHO, ESQUIRE/319270
1525 Locust Street
Philadelphia, Pennsylvania 19102
(215) 772-1000

| | | |
|---|---|---|
| M.B. | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| v. | : | |
| | : | CIVIL TRIAL DIVISION |
| ROOSEVELT INN LLC | : | MARCH TERM, 2017 |
| d/b/a ROOSEVELT INN and | : | NO.: 00712 |
| ROOSEVELT INN CAFÉ, et al. | : | |
| | : | |

**PLAINTIFF' MEMORANDUM OF LAW IN SUPPORT OF HER MOTION IN LIMINE
TO PRECLUDE OPINIONS BY EXPERT WITNESS JAMES FRANCIS REGARDING
WORK ALLEGEDLY DONE FOR AN UNNAMED FORTUNE 100 COMPANY**

Plaintiff, by their counsel, Kline & Specter, P.C., respectfully submits this Memorandum

of Law in Support the Motion in Limine to Preclude the Opinions by Expert Witness James

Francis Regarding Work Allegedly Done for an Unnamed Fortune 100 Company.

**I.　　PRELIMINARY STATEMENT**

It is anticipated that Defendant Alpha will attempt to introduce testimony from its expert

witness James Francis regarding work that he allegedly did for an unnamed Fortune 100

company, including reviewing its policies and procedures.  This expert is attempting to bolster

his credibility to the jury, while denying the jury the ability assesses the value of this alleged

experience by withholding details about the work done for the unnamed company.  This potential

testimony from James Francis would violate the Pennsylvania Rule of Evidence requiring expert

witnesses to disclose the facts and data that form the basis for their opinions.  Francis fails to

meet that requirement by describing the work for an unnamed company as confidential.

Therefore, his potential testimony about the alleged work done should be precluded by the Court.

Case ID: 170300712
Control No.: 21060530

## II.    QUESTIONS PRESENTED:

1. Should this Honorable Court preclude Defendant Alpha from offering evidence, testimony or argument regarding work allegedly done for an unnamed Fortune 100 company by its expert witness James Francis?

    **SUGGESTED ANSWER:**    *Yes.* Expert witnesses are required to reveal the facts and basis for their opinions, which James Francis does not by describing the work as confidential and failing to identify the details of the work done for an unnamed company.

## II.    BRIEF FACTUAL AND PROCEDURAL HISTORY

Plaintiff M.B. was the victim of sex trafficking that occurred at the Roosevelt Inn Motel when she was just 14 years-old from approximately January 2014 through June 6, 2014. Plaintiff filed a Complaint on March 10, 2017 against Defendants Roosevelt Inn LLC and Roosevelt Motor Inn, Inc., as owners of the motel; the motel's management company, UFVS Management Company, LLC; and the motel's manager, Yagna Patel (hereinafter collectively, "Roosevelt Defendants"). On September 5, 2017, Plaintiff filed an Amended Complaint adding the security company, Alpha-Centurion Security, Inc. (hereinafter "Alpha"), as an additional defendant.

Defendant Alpha has produced two reports from its expert witness James Francis. *See* Francis Report dated 2/20/2020, attached as Exhibit "A" and Francis Report dated 6/15/2020, attached as Exhibit "B". It is anticipated that Alpha will attempt to introduce testimony from James Francis regarding work that he allegedly did for an unnamed Fortune 100 company, including reviewing its policies and procedures. This potential testimony from James Francis would violate the Pennsylvania Rule of Evidence requiring expert witnesses to disclose the facts and data that form the basis for their opinions. Francis fails to meet that requirement by describing the work for an unnamed company as confidential. Therefore, his potential testimony about the alleged work done should be precluded by the Court.

Case ID: 170300712
Control No.: 21060530

**III. THE COURT SHOULD PRECLUDE DEFENDANT ALPHA FROM OFFERING EVIDENCE, TESTIMONY OR ARGUMENT REGARDING WORK ALLEGEDLY DONE FOR AN UNNAMED FORTUNE 100 COMPANY BY EXPERT WITNESS JAMES FRANCIS**

The Court should preclude Defendant Alpha's expert witness from offering testimony about work allegedly done for a Fortune 100 company, because his testimony runs afoul of the requirement that expert witnesses disclose the basis for their opinions.

In both expert reports of James Francis, he writes:

> Additionally, during a recent confidential matter, I reviewed the policies and procedures of a Fortune 100 company regarding just this issue. This company required all contracted security personnel, to include off-duty police, to first notify company management of any security related matter regardless of the severity of the issue and/or its potential designation as a criminal offense. Company management, not the contracted security, would then make the decision on how to proceed and who to notify.

*See* Ex. A at page 11; *see* Ex. B at page 13.

This reference to work allegedly done for a Fortune 100 company runs afoul of the requirement that James Francis identify the basis for his opinions. Pennsylvania Rule of Evidence 705 provides: "If an expert states an opinion the expert must state the facts or data on which the opinion is based." Mr. Francis simply stating that the work was a "confidential matter" and failing to identify the company prevents Plaintiff's counsel from effectively cross-examining Mr. Francis about this testimony. The lack of information about this work also denies the jury the ability to assess the credibility of the testimony and determine how much weight that they should give to the testimony.

The Pennsylvania Supreme Court has reasoned that the burden is squarely on the party offering the expert testimony to provide the basis for the expert opinion:

> [R]equiring the proponent of an expert opinion to clarify for the jury the assumptions upon which the opinion is based avoids planting in the juror's mind a general statement likely to remain

3

Case ID: 170300712
Control No.: 21060530

> with him in the jury room when the disputed details are lost. Relying on cross-examination to illuminate the underlying assumptions may further confuse jurors already struggling to follow complex testimony. Additionally, total reliance on cross-examination permits the party propounding the expert's evidence to introduce it generally in a conclusory manner without relation to the record and casts the whole burden of disqualifying it on the opponent. This is contrary to the usual practice of allocating to the proponent of evidence, as the party with the laboring oar, the duty of laying a logically understandable foundation.

*See Kozak v. Struth*, 515 Pa. 554, 560, 531 A.2d 420, 423 (1987).  Admission of James Francis' testimony about work allegedly done for an unnamed Fortune 100 company would violate this precedent and the requirement that experts identify the basis for their opinions.  The Court should thus preclude Defendants from offering testimony from James Francis regarding work allegedly done for a unnamed Fortune 100 company.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter the proposed Order attached to this Motion.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

*/s/Emily B. Marks*

BY:  _____
THOMAS R. KLINE, ESQUIRE
NADEEM A. BEZAR, ESQUIRE
EMILY B. MARKS, ESQUIRE
KYLE B. NOCHO, ESQUIRE
*Attorneys for Plaintiff*

4

Case ID: 170300712
Control No.: 21060530

## <u>VERIFICATION</u>

I, EMILY B. MARKS, ESQUIRE, hereby state that I am the attorney for Plaintiff M.B. in this matter and hereby verify that the statements made in the foregoing motion are true and correct to the best of my knowledge, information and belief.

The undersigned understands that the statements contained therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.


**KLINE & SPECTER, P.C.**

*/s/Emily B. Marks*

BY: _____

THOMAS R. KLINE, ESQUIRE
NADEEM A. BEZAR, ESQUIRE
EMILY B. MARKS, ESQUIRE
KYLE B. NOCHO, ESQUIRE
*Attorneys for Plaintiff*

Case ID: 170300712
Control No.: 21060530

## <u>CERTIFICATE OF SERVICE</u>

I, Emily B. Marks, Esquire attorney for Plaintiff, do hereby certify that service of a true and correct copy of the above ***Plaintiff's Motion in Limine to Preclude the Opinions by Expert Witness James Francis Regarding Work Allegedly Done for an Unnamed Fortune 100 Company***, was filed with the Court on June 2, 2021 and served by electronic filing upon counsel of record:

Justina L. Byers, Esquire
Charles S. Marion, Esquire
Kevin M. Eddy, Esquire
Blank Rome LLP
One Logan Square, 130 North 18th Street
Philadelphia, PA 19103
*Counsel for Defendants Roosevelt Inn LLC, Roosevelt Motor Inn, Inc.,*
*UFVS Management Company, LLC and Yagna Patel*

Thomas P. Wagner, Esq.
Robert W. Stanko, Esq.
Melanie J. Foreman, Esq.
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*President of Defendant Alpha-Centurion Security, Inc.*

By first-class mail upon the following parties:
Daiquan Davis, Register No. 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN 47808
*Pro Se Defendant*

Abdul Lopez, Register No. 69643-066
USP Tucson
U.S. Penitentiary
P.O. Box 24550
Tucson, AZ 85734
*Pro Se Defendant*

**KLINE & SPECTER, P.C.**

***/s/Emily B. Marks***

BY: _____
          EMILY B. MARKS, ESQUIRE
          *Attorney for Plaintiff*

Case ID: 170300712
Control No.: 21060530

# EXHIBIT A

Case ID: 170300712
Control No.: 21060530

# Redacted

Case ID: 170300712
Control No.: 21060530

# EXHIBIT B

Case ID: 170300712
Control No.: 21060530

# Redacted

Case ID: 170300712
Control No.: 21060530

FILED
02 JUN 2021 02:18 pm
Civil Administration
F. HEWITT

| | | |
|---|---|---|
| M.B | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| v. | : | |
| | : | CIVIL TRIAL DIVISION |
| ROOSEVELT INN LLC | : | MARCH TERM, 2017 |
| d/b/a ROOSEVELT INN and | : | NO.: 00712 |
| ROOSEVELT INN CAFÉ, et al. | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |

## ORDER

**AND NOW**, this _____ day of June, 2021, upon consideration of Plaintiff's Motion in Limine to Preclude the Roosevelt Defendants from Offering Cumulative Liability Expert Testimony, and any response thereto, it is hereby:

**ORDERED** and **DECREED** that Plaintiff's Motion is **GRANTED**. Defendants Roosevelt Inn LLC, Roosevelt Motor Inn, Inc., UFVS Management Company, LLC, and Yagna Patel (collectively "Roosevelt Defendants") are precluded from offering cumulative liability expert testimony at the time of trial. The Roosevelt Defendants shall be limited to one liability expert. Defense counsel shall instruct all defense witnesses to abide by this and all Orders entered by the court.

BY THE COURT:

_____
                                                    J.

Case ID: 170300712
Control No.: 21060404

**KLINE & SPECTER, P.C.**                                Attorneys for Plaintiff M.B.
BY:     THOMAS R. KLINE, ESQUIRE/28895
        NADEEM A. BEZAR, ESQUIRE/63577
        EMILY B. MARKS, ESQUIRE/204405
        KYLE B. NOCHO, ESQUIRE/319270
1525 Locust Street
Philadelphia, Pennsylvania 19102
(215) 772-1000

| | | |
|---|---|---|
| M.B | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| v. | : | |
| | : | CIVIL TRIAL DIVISION |
| ROOSEVELT INN LLC | : | MARCH TERM, 2017 |
| d/b/a ROOSEVELT INN and | : | NO.: 00712 |
| ROOSEVELT INN CAFÉ, et al. | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |

## PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE ROOSEVELT DEFENDANTS FROM OFFERING CUMULATIVE LIABILITY EXPERT TESTIMONY

    **NOW COMES** Plaintiff, outside the presence of the Jury, requesting that this Honorable

Court enter an Order to Preclude the Roosevelt Defendants from offering cumulative liability

expert testimony at the time of trial.  The bases for this motion are set forth in the attached Brief.

 

                                                     Respectfully submitted,
                                                     **KLINE & SPECTER, P.C.**

                                              ***/s/Emily B. Marks***
**BY:** _____
                                         THOMAS R. KLINE, ESQUIRE
                                         NADEEM A. BEZAR, ESQUIRE
                                         EMILY B. MARKS, ESQUIRE
                                         KYLE B. NOCHO, ESQUIRE
                                         *Attorneys for Plaintiff*

Case ID: 170300712
Control No.: 21060404

**KLINE & SPECTER, P.C.**                Attorneys for Plaintiff M.B.
BY:    THOMAS R. KLINE, ESQUIRE/28895
        NADEEM A. BEZAR, ESQUIRE/63577
        EMILY B. MARKS, ESQUIRE/204405
        KYLE B. NOCHO, ESQUIRE/319270
1525 Locust Street
Philadelphia, Pennsylvania 19102
(215) 772-1000

| | | |
|---|---|---|
| M.B | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| v. | : | |
| | : | CIVIL TRIAL DIVISION |
| ROOSEVELT INN LLC | : | MARCH TERM, 2017 |
| d/b/a ROOSEVELT INN and | : | NO.: 00712 |
| ROOSEVELT INN CAFÉ, et al. | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |

<u>**PLAINTIFF'S BRIEF IN SUPPORT OF HER PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE ROOSEVELT DEFENDANTS FROM OFFERING CUMULATIVE LIABILITY EXPERT TESTIMONY**</u>

      Plaintiff, M.B., by and through the undersigned attorneys, hereby files this Plaintiff's

Motion in Limine to Preclude the Roosevelt Defendants from Offering Cumulative Liability

Expert Testimony.  For the reasons cited below, at the time of trial, Defendants Roosevelt Inn

LLC, Roosevelt Motor Inn, Inc., UFVS Management Company, LLC, and Yagna Patel

(collectively "Roosevelt Defendants") should be limited to one liability expert.

**I.**    <u>**PRELIMINARY STATEMENT**</u>

      The Roosevelt Defendants have produced two liability expert reports that cover the same

issue of the ability of motel staff to detect that sex trafficking was occurring at the Roosevelt Inn.

Cumulative evidence is prejudicial on its face because it misleads the jury to wrongly believe

that because Defendants have multiple experts rendering the same opinions their opinions must

be correct and hold more weight.  Permitting Defendant to present more than one liability expert

Case ID: 170300712
Control No.: 21060404

on the same issue would be prejudicial to Plaintiff, as well as an inefficient use of the Court and jury's time

## II.  QUESTION PRESENTED:

Should this Honorable Court preclude Defendant from offering cumulative liability expert testimony at trial regarding the ability to detect that sex trafficking is occurring?

***SUGGESTED ANSWER:*** *Yes.* Cumulative testimony would be unfairly prejudicial to Plaintiff and a waste of the Court's time and resources.

## III.  BRIEF FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff M.B. was the victim of sex trafficking that occurred at the Roosevelt Inn Motel when she was just 14 years-old from approximately January 2014 through June 6, 2014. Plaintiff filed a Complaint on March 10, 2017 against the Roosevelt Defendants. On September 5, 2017, Plaintiff filed an Amended Complaint adding the security company, Alpha-Centurion Security, Inc., as an additional defendant (hereinafter "Defendant Alpha").

The Roosevelt Defendants have produced two liability expert reports from the experts Kimberly Mehlman-Orozco and Norman Bates. See Mehlman-Orozco Report attached as Exhibit "A" and Bates Report attached as Exhibit "B". Mehlman-Orozco and Bates provided substantially similar opinions regarding whether the Roosevelt Defendants were negligent in failing to prevent criminal activity at the Roosevelt Inn and the harm incurred by M.B. as a result of being sold for sex and sexually assaulted at the motel.

## IV.  THE ROOSEVELT DEFENDANTS SHOULD BE PRECLUDED FROM OFFERING CUMULATIVE LIABILITY EXPERT TESTIMONY

Pennsylvania trial judges have broad discretion regarding the admissibility of potentially misleading and confusing evidence. Daset Mining Corp. v. Industrial Fuels Corp., 473 A.2d 584, 588 (Pa. Super. 1984). A trial court may properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Id.; see also Pa. R. Evid. 403.

Case ID: 170300712
Control No.: 21060404

Generally, "prejudice" means an undue tendency to suggest a decision based on an improper basis. Id.

A court may preclude evidence which is irrelevant or merely cumulative of other evidence. Burch v. Sears, Roebuck, and Co., 467 A.2d 615 (Pa. 1983). In order to promote judicial economy and efficiency, trial courts may preclude multiple experts from testifying on the same issues for the same parties. See Pa. R.C.P. 223 (stating that the court may issue orders "[l]imiting the number of witnesses whose testimony is similar or cumulative"); see also MacDonald v. Chestnut Hill Hosp., 2005 Phila. Ct. Com. Pl. LEXIS 273 (Phila. 2005), aff'd without opinion, 903 A.2d 61 (Pa. Super. 2006). See also Johnson v. Romy, 1996 Pa. Super. LEXIS 2116 *10 (Pa. Super. 1996), Ries v. Ries' Estate, 185 A. 288 (Pa. 1936).

Here, the Roosevelt Defendants have produced liability expert reports from Kimberly Mehlman-Orozco and Norman Bates. See Mehlman-Orozco Report attached as Exhibit "A" and Bates Report attached as Exhibit "B". In Bates' report, Bates concludes that sex trafficking is difficult to detect and hotel operator would need to be told that trafficking was occurring:

> Hotel operators may be able to identify common prostitution activity and take steps to help reduce the level of that activity. However, human sex trafficking is more insidious. It is criminal activity that is generally not open and obvious to others that the victim is being trafficked against her will and acting under duress, force or coercion. In most instances, the hotel operator would need to be told by the victim or some other person with special knowledge that trafficking was occurring, otherwise it would be highly unlikely that trafficking would be discovered.

See Exhibit "B" at page 2.

Bates also opines:

> Hotel operators may, under some circumstances, be able to identify common prostitution activity and take steps to help reduce the level of that activity (it would be extremely difficult to eliminate it entirely). However, human sex trafficking is more insidious. It is criminal activity that is generally not open and obvious to others that the victim is being trafficked against her will and acting under duress, force or coercion. In most instances, the hotel operator would need to be told by the victim or some other person with special knowledge that trafficking was occurring.

See Exhibit "B" at page 10.

3

Case ID: 170300712
Control No.: 21060404

Bates continues to repeat his theme that it would be highly unlikely for a hotel operator, like the Roosevelt Defendants, to detect the presence of sex trafficking[1]:

> In the overall scheme of social norms and newly recognized criminal activity, dealing with common prostitution is usually accomplished through thorough check-in procedures, enforcement of hotel policies and the routine monitoring of activity in a hotel. In contrast, identifying and addressing human sex trafficking presents a totally different set of issues. Unless the hotel operator is acutely aware of the sex trafficking by virtue of being told about it by the victim, who is seeking help, or by the participants (e.g., the trafficker), it is highly unlikely that a hotel operator can be expected to meet a "should have known" standard.

See Exhibit "B" at page 70.

Similarly, Mehlman-Orozco provides the following opinions:

### III. SUMMARY OF OPINIONS

a. Sex trafficking is a clandestine crime.

b. Sex trafficking victims are difficult to identify and are frequently misidentified.

See Exhibit "A" at page 9.

Mehlman-Orozco repeats this theme throughout her report:

> Human trafficking is a clandestine crime. Traffickers go to great lengths to conceal their activities from third parties. While the plaintiff's purported "experts" claim that the Roosevelt Inn knew or should have known about M.B.'s commercial sexual exploitation, there is a wealth of countervailing evidence.

See Exhibit "A" at page 21.

She similarly opines: "Human trafficking is a clandestine crime. Traffickers go to great lengths to not only conceal their illicit activities from third parties, but to also veil the exploitation from their victims and their social network." See Exhibit "A" at page 49.

---

[1] Defendants' experts attempt to heighten Plaintiff's burden of proof. Plaintiff is not required to prove that the Roosevelt Defendants were aware of sex trafficking at the Roosevelt Defendants. Plaintiff need only show that the Roosevelt Defendants knew or should have known that there was a likelihood of criminal activity at the Roosevelt Inn.

Case ID: 170300712
Control No.: 21060404

Mehlman-Orozco concludes: "It is extremely difficult to identify a victim of sex trafficking without in-depth information. Although M.B. was a victim of sex trafficking, her sex trafficker went to great lengths to conceal her exploitation from third parties." See Exhibit "A" at pages 60 – 61.

Mehlman-Orozco also improperly evaluates the credibility of evidence calling into question her opinion about the difficulty to detect sex trafficking was occurring: "Testimony contradicting the clandestine nature of sex trafficking crimes is of questionable veracity and should be treated accordingly in developing conclusions."[2] See Exhibit "A" at page 23.

Mehlman Orozco concedes that "M.B. was unequivocally a victim of sex trafficking", but then states: "the clandestine nature of her victimization inhibited and intervention." See Exhibit "A" at page 24.

Mehlman Orozco also criticizes the report of Plaintiff's liability expert Richard Hudak, writing about her opinion on the "clandestine" nature of sex trafficking:

> On page 5 of Mr. Hudak's report he states that "human sex trafficking, abuse of narcotics, and other crimes at the hotel, were open and obvious." This statement is in direct contradiction to the modus operandi of human trafficking crimes in general and the human trafficking crimes that are alleged to have happened in this case. Sex trafficking is a clandestine activity. Sex traffickers go to great lengths to conceal the victimization and to make the victims believe there are consenting participants to their own exploitation.

See Exhibit "A" at page 27.

The opinions of Mehlman-Orozco and Bates are overlapping and cumulative. Cumulative evidence is prejudicial on its face because it instills in the jury the notion of veracity and the idea that because Defendants have multiple experts rendering the same opinions their opinions must be correct and hold more weight.

---

[2] This opinion by Kimberly Mehlman Orozco is also the subject of Plaintiff's Motion in Limine to Preclude Defendants from Soliciting Testimony and Opinions Concerning the Credibility and Veracity of Evidence or Witnesses.

Case ID: 170300712
Control No.: 21060404

Permitting Defendants to present more than one liability expert with virtually identical opinions would be prejudicial to Plaintiff well as an inefficient use of the Court and jury's time.

## V. <u>CONCLUSION</u>

For reasons set forth above, Plaintiff respectfully request this Honorable Court grant Plaintiff's Motion in Limine to Preclude the Roosevelt Defendants from Offering Cumulative Liability Expert Testimony.

Respectfully submitted,
**KLINE & SPECTER, P.C.**

BY:   */s/Emily B. Marks*

THOMAS R. KLINE, ESQUIRE
NADEEM A. BEZAR, ESQUIRE
EMILY B. MARKS, ESQUIRE
KYLE B. NOCHO, ESQUIRE
*Attorneys for Plaintiff*

6

Case ID: 170300712
Control No.: 21060404

## <u>VERIFICATION</u>

I, EMILY B. MARKS, ESQUIRE, hereby state that I am the attorney for Plaintiff M.B. in this matter and hereby verify that the statements made in the foregoing motion are true and correct to the best of my knowledge, information and belief.

The undersigned understands that the statements contained therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

**KLINE & SPECTER, P.C.**

**BY:**  */s/Emily B. Marks*
_____
THOMAS R. KLINE, ESQUIRE
NADEEM A. BEZAR, ESQUIRE
EMILY B. MARKS, ESQUIRE
KYLE B. NOCHO, ESQUIRE
*Attorneys for Plaintiff*

Case ID: 170300712
Control No.: 21060404

## CERTIFICATE OF SERVICE

I, Emily B. Marks, Esquire attorney for Plaintiff, do hereby certify that service of a true and correct copy of the above ***Plaintiff's Motion in Limine to Preclude the Roosevelt Defendants from Offering Cumulative Liability Expert Testimony***, was filed with the Court on June 2, 2021 and served by electronic filing upon counsel of record:

Charles S. Marion, Esquire
Kevin M. Eddy, Esquire
Justina L. Byers, Esquire
Blank Rome LLP
One Logan Square, 130 North 18th Street
Philadelphia, PA 19103
*Counsel for Defendants Roosevelt Inn LLC, Roosevelt Motor Inn, Inc.,*
*UFVS Management Company, LLC and Yagna Patel*

Thomas P. Wagner, Esq.
Robert W. Stanko, Esq.
Melanie J. Foreman, Esq.
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*President of Defendant Alpha-Centurion Security, Inc.*

By first-class mail upon the following parties:

Daiquan Davis, Register No. 72304-066
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN 47808
*Pro Se Defendant*

Abdul Lopez, Register No. 69643-066
USP Tucson
U.S. Penitentiary
P.O. Box 24550
Tucson, AZ 85734
*Pro Se Defendant*

**KLINE & SPECTER, P.C.**

*/s/Emily B. Marks*
BY: _____
EMILY B. MARKS, ESQUIRE
*Attorney for Plaintiff*

# EXHIBIT A

Case ID: 170300712
Control No.: 21060404

# Redacted

Case ID: 170300712
Control No.: 21060404

# EXHIBIT B

Case ID: 170300712
Control No.: 21060404

# Redacted

Case ID: 170300712
Control No.: 21060404