```
 1                  IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

 3

 4   M.B.,                       :      CIVIL ACTION
                                 :
 5           Plaintiff,          :
                                 :
 6           vs.                 :
                                 :
 7   ROOSEVELT INN LLC, et al.,  :      NO. 21-2984
                                 :
 8           Defendants.         :

 9
                               - - - - -
10
     K.R.,                       :      CIVIL ACTION
11                               :
             Plaintiff,          :
12                               :
             vs.                 :
13                               :
     ROOSEVELT INN LLC, et al.,  :      NO. 21-3218
14                               :
             Defendants.         :
15
                               - - - - -
16
17   C.A.,                       :      CIVIL ACTION
                                 :
18           Plaintiff,          :
                                 :
19           vs.                 :
                                 :
20   ROOSEVELT INN LLC, et al.,  :      NO. 21-3222
                                 :
21           Defendants.         :

22
                               - - - - -
23

24   (CONT.)

25
```

```
1    (CONT.)

2

3    B.H.,                        :    CIVIL ACTION
                                   :
4             Plaintiff,          :
                                   :
5             vs.                 :
                                   :
6    ROOSEVELT INN LLC, et al.,   :    NO. 21-3225
                                   :
7             Defendants.         :

8
                                   - - - - -
9    A.H.,                        :    CIVIL ACTION
                                   :
10            Plaintiff,          :
                                   :
11            vs.                 :
                                   :
12   ROOSEVELT INN LLC, et al.,   :    NO. 21-3277
                                   :
13            Defendants.         :

14
                                   - - - - -
15
16   C.A.,                        :    CIVIL ACTION
                                   :
17            Plaintiff,          :
                                   :
18            vs.                 :
                                   :
19   WYNDHAM WORLDWIDE            :    NO. 21-3392
     CORPORATION, et al.,         :
20                                 :
              Defendants.         :
21
                                   - - - - -
22

23
     (CONT.)
24

25
```

```
1    (CONT.)

2

3    B.H.,                         :    CIVIL ACTION
                                   :
4            Plaintiff,            :
                                   :
5            vs.                   :
                                   :
6    WYNDHAM WORLDWIDE             :    NO. 21-3396
     CORPORATION, et al.,          :
7            Defendants.           :

8

9                          - - - - -

10
     K.R.,                         :    CIVIL ACTION
11                                 :
             Plaintiff,            :
12                                 :
             vs.                   :
13                                 :
     WYNDHAM WORLDWIDE             :    NO. 21-3401
14   CORPORATION, et al.,          :
                                   :
15           Defendants.           :

16
                            - - - - -
17
     A.H.,                         :    CIVIL ACTION
18                                 :
             Plaintiff,            :
19                                 :
             vs.                   :
20                                 :
     WYNDHAM WORLDWIDE             :    NO. 21-3430
21   CORPORATION, et al.,          :
                                   :
22           Defendants.           :

23
                            - - - - -
24
     (CONT.)
25
```

```
1   (CONT.)

2
    A.H.,                        :      CIVIL ACTION
3                                :
            Plaintiff,           :
4                                :
            vs.                  :
5                                :
    ROOSEVELT INN, LLC, et al.,  :    NO. 21-3914
6                                :
            Defendants.          :
7
                           - - - - -
8

9                      PHILADELPHIA, PA

10                   SEPTEMBER 29, 2021

11  BEFORE:      THE HONORABLE GENE E.K. PRATTER, J.

12                 HEARING ON MOTION FOR REMAND

13  APPEARANCES:

14                  KLINE & SPECTER PC
                    BY:  EMILY B. MARKS, ESQUIRE
15                  NADEEM A. BEZAR, ESQUIRE
                    1525 Locust Street
16                  Philadelphia, PA  19102
                    For Plaintiffs M.B., C.A., B.H., K.R.
17

18                  DILWORTH PAXSON LLP
                    BY:  PETER C. HUGHES, ESQUIRE
19                  1500 Market Street
                    Philadelphia, PA  19102
20                  For Plaintiffs M.B., C.A., B.H., K.R.

21
                    SALTZ MONGELUZZI BARRETT & BENDESKY, PC
22                  BY:  K. ANDREW HEINOLD, ESQUIRE
                    1650 Market Street, 52nd Floor
23                  One Liberty Place
                    Philadelphia, PA 19103
24                  For Plaintiff A.H.

25
                       (CONT.)
```

```
 1    APPEARANCES:  (CONT.)

 2                   BLANK ROME LLP
                     BY:  CHARLES S. MARION, ESQUIRE
 3                   JUSTINA LEE BYERS, ESQUIRE
                     One Logan Square
 4                   18th & Cherry Streets
                     Philadelphia, PA  19103
 5                   For Roosevelt Inn, Roosevelt Motor Inn,
                     UFVS, Yagna Patel
 6

 7                   K&L GATES LLP
                     BY:  DANIEL M. ELIADES, ESQUIRE
 8                   One Newark Center, 10th Floor
                     Newark, NJ  07102
 9                   For Wyndham Defendants, Days Inn Worldwide, Inc.

10

                     DLA PIPER LLP
11                   BY:  NATHAN P. HELLER, ESQUIRE
                     1650 Market Street, Suite 5000
12                   Philadelphia, PA  19103
                     For Wyndham entities
13

14                   MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
                     BY:  MELANIE J. FOREMAN, ESQUIRE
15                   THOMAS P. WAGNER, ESQUIRE
                     2000 Market Street, Suite 2300
16                   Philadelphia, PA  19103
                     For Apha-Centurion in M.B. case
17

18                   SAUL EWING LLP
                     BY:  MATTHEW JUDSON SMITH, ESQUIRE
19                   1500 Market Street
                     Center Square West, 38th Floor
20                   Philadelphia, PA  19102
                     For Eighty Eight, L.P.
21

22                   MCCORMICK & PRIORE, P.C.
                     BY:  DAMALI K. MARTIN, ESQUIRE
23                   2001 Market Street, Suite 3810
                     Philadelphia, PA  19103
24                   For 4200 Roosevelt Blvd., 4200 Rose Hospitality

25
                     (CONT.)
```

```
 1   APPEARANCES:  (CONT.)

 2
                      DEASEY MAHONEY VALENTINI NORTH, LTD
 3                    BY:  HARRY G. MAHONEY, ESQUIRE
                      1601 Market Street, Suite 3400
 4                    Philadelphia, PA  19103
                      For American Motor Inns, Inc.
 5

 6                    COZEN O'CONNOR
                      BY:  JACQUELINE PROMISLO, ESQUIRE
 7                    1650 Market Street, Suite 2800
                      Philadelphia, PA  19103
 8                    For Alpha-Centurion in A.H. case

 9
                      STRADLEY RONON STEVENS & YOUNG
10                    BY:  ADAM C. SASSO, ESQUIRE
                      2005 Market Street Suite 2600
11                    Philadelphia, PA  19103
                      For Alpha-Centurian in the C.A., B.H., K.R. cases
12

13                    POST & SCHELL, P.C.
                      BY:  CHARLES W. SPITZ, ESQUIRE
14                    1600 John F. Kennedy Blvd.
                      Four Penn Center
15                    Philadelphia, PA  19103
                      For 4200 Rose Hospitality, 4200 Roosevelt
16                    Blvd. in the A.H. case

17
                      BENNETT BRICKLIN & SALTZBURG
18                    BY:  CATHERINE DESILVESTER, ESQUIRE
                      West Tower Center Square
19                    1500 Market Street
                      Philadelphia, PA  19103
20                    For Ritz Hotel Group in B.H, C.A. cases

21
                      THOMAS, THOMAS & HAFER, LLP
22                    BY:  KATHERINE M. PRUDENTE, ESQUIRE
                      1012 N. Bethlehem Pike
23                    Spring House, PA  19477
                      For Ramara, Inc. in the C.A. and B.H. cases
24

25                    (CONT.)
```

```
 1   APPEARANCES:   (CONT.)

 2
                      MAGOLIS EDELSTEIN
 3                    BY:  MEGHAN SANDORA, ESQUIRE
                      170 S. Independence Mall W
 4                    Suite 400 E
                      Philadelphia, PA  19106
 5                    For Ashoka Investment & Management in the B.H.
                      and C.A. cases
 6


 7


 8                    KATHLEEN FELDMAN, CSR, CRR, RPR, CM
                      Official Court Reporter
 9                    James A. Byrne U.S. Courthouse
                      601 Market Street
10                    Philadelphia, PA  19106
                      (215)779-5578
11
          (Transcript produced by machine shorthand via C.A.T.)
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Deputy Clerk opened court)

 2            THE COURT:  Hello, please take your seats.

 3    Whoever's going to be arguing, please come up front and if

 4    you're all going to argue, you can stay there and be

 5    uncomfortable.  Well, to add to your come-back-to-court

 6    experience today, I've arranged for a criminal case jury to

 7    finish their deliberations.  I'm told they've reached a

 8    verdict and they're going to be coming in and delivering a

 9    verdict so you all get the extra thrill of watching what you

10    may never have seen before which is a 10b-5 securities fraud

11    criminal case come to a conclusion.  So, you know, I don't

12    know whether you're going to put that on your timesheets or

13    not, but there we go.  Speaking of which, it looks like it's

14    full employment oral argument set aside for the issues posed

15    by the motion for a remand in the case and I'm just going to

16    use the name Roosevelt Inn at Docket Number 21-2984 to refer

17    to all the various records, but just to note for the record,

18    it's Captions 2984, 3392, 3222, 3396, 3225, 3401, 3218, 3430,

19    3277, 3914.  If I missed any of your cases, it was

20    inadvertent, but let me know.  I am happy to listen to you in

21    any order that you'd like, presumably you know somebody's

22    planning to do something, so we don't have to have a lot of

23    repetition particularly since I will be holding you up a

24    little bit to take this verdict.  The cases were removed and

25    then the plaintiffs filed motions for remand.  So I would
```

1    assume I will first hear from the plaintiffs who wish to have

2    the cases returned to State Court, but if it works better for

3    you all to do it in some other fashion, I assure you that if I

4    can't follow along, certainly my law clerk can.

5          How would you like to proceed?

6          MS. MARKS:  Good afternoon, Your Honor.  Emily Marks

7    from Kline & Specter on behalf of the plaintiffs M.B., C.A.,

8    B.H. and K.R.  I think it makes sense as plaintiffs' counsel

9    to go first.

10         THE COURT:  Fine.  Let me first then take a full

11   attendance.  I am actually looking at this long list where

12   you've already done the sign-in, but I want to give you all a

13   chance to use your vocal cords and Ms. Feldman here will take

14   down the names of everybody who is here.

15         So, Ms. Marks, I have you already.  Who else?

16         MR. HUGHES:  Good afternoon, Your Honor.  Peter

17   Hughes, Dilworth Paxson LLP, also for M.B., C.A., B.H. and

18   K.R.

19         THE COURT:  Okay.

20         MR. HEINOLD:  Good afternoon, Your Honor.  K. Andrew

21   Heinold of Saltz Mongeluzzi & Bendesky for the plaintiff A.H.

22         THE COURT:  Thank you.  Would you mind if I just

23   said hello to all of you at the end as opposed to each of you

24   individually?  Okay, let's keep going.

25         MR. MARION:  Charles Marion and my colleague,

1   Justina Byers, we're with Blank Rome, on behalf of we call

2   them the Roosevelt Defendants, the debtors, and the related

3   nondebtors, Roosevelt Inn, Roosevelt Motor Inn, UFVS

4   Management and Yagna Patel.

5           MR. ELIADES:  Good afternoon, Your Honor.  Dan

6   Eliades, K&L Gates, for Wyndham Worldwide Corporation, Wyndham

7   Hotel Group, LLC, Wyndham Hotels and Resorts, Inc., Wyndham

8   Hotel Management, Inc., and Days Inn Worldwide, Inc.

9           MS. FOREMAN:  Good afternoon, Your Honor.  Melanie

10  Foreman and my colleague, Tom Wagner, from Marshall Dennehey

11  on behalf of Alpha-Centurion Security Inc. in the M.B.

12  lawsuit.

13          MR. SMITH:  Good morning, Your Honor.  There aren't

14  enough seats up there so I was just hanging back here.

15          THE COURT:  Actually, in my world, it's afternoon.

16          MR. SMITH:  Oh.  Good afternoon.  Matthew Smith from

17  Saul Ewing on behalf of additional defendant, Eighty Eight,

18  L.P.

19          THE COURT:  I should have, when we started here, I

20  should have explained that the protocol I've been following in

21  this courtroom is that when you speak, you can take your masks

22  off as long as those who are next to you are satisfied with

23  that and, of course, if you are as well.  We've had no problem

24  with that, but I leave it to you all, but it does make it a

25  little easier for Ms. Feldman to understand what's going on.

1            Okay.  Next, sir.

2            MR. BEZAR:  Good afternoon, Your Honor.  Nadeem

3   Bezar from Kline & Specter on behalf of the plaintiffs that

4   Ms. Marks has identified.

5            THE COURT:  Okay.

6            MS. MARTIN:  Good afternoon.  Damali Martin,

7   McCormick Priore, on behalf of 4200 Roosevelt Boulevard and

8   4200 Rose Hospitality.

9            MR. MAHONEY:  Good afternoon, Your Honor.  Harry

10  Mahoney, M-A-H-O-N-E-Y, from Deasey Mahoney, on behalf of

11  American Motor Inns, Inc.

12           MS. PROMISLO:  Good afternoon.  Jacqueline Promislo,

13  Cozen O'Connor, for the defendant Alpha-Centurian in the A.H.

14  case.

15           MR. SASSO:  Good afternoon, Your Honor.  Adam Sasso,

16  Stradley Ronon Stevens & Young, here on behalf of defendant

17  Alpha-Centurian in the C.A., B.H. and K.R. cases.

18           MR. SPITZ:  Good afternoon, Your Honor.  Charles

19  Spitz from Post & Schell and I represent 4200 Rose Hospitality

20  and 4200 Roosevelt Boulevard in the A.H. case.

21           MR. HELLER:  Good afternoon, Your Honor.  Nathan

22  Heller from DLA Piper on behalf of Wyndham Hotels and Resorts

23  and the other Wyndham entities that Mr. Eliades, my cocounsel,

24  already put on the record.

25           THE COURT:  Okay.

1          MS. DESILVESTER:  Good afternoon, Your Honor.

2     Catherine DeSilvester of Bennett Bricklin & Saltzburg on

3     behalf of the Ritz Hotel Group in the B.H. and C.A. matter.

4          MS. PRUDENTE:  Good afternoon, Your Honor.

5     Katherine Prudente with Thomas, Thomas & Hafer on behalf of

6     Ramara, Inc. in the C.A. and B.H. matter.

7          MS. SANDORA:  Good afternoon, Your Honor.  Meghan

8     Sandora, Margolis Edelstein, on behalf of Ashoka Investment &

9     Management in the B.H. and C.A. matters.

10          THE COURT:  All right, I think I've got everybody.

11     If I've skipped you or you all are hiding behind somebody

12     else, let me know now.  Very well, I guess I'd like to hear

13     then from the plaintiffs on the argument of remand and then I

14     suppose, although I don't want anybody to feel frustrated

15     here, if there are some unique arguments on behalf of any

16     particular defendant, then we can have more than one argument,

17     but presumably you all have interacted with each other and so

18     I'm guessing, partially hoping, but guessing that there's

19     going to be one primary argument on behalf of the defendants

20     as opposed to one for each of you that would be duplicative.

21          But, if not, I'm here to serve.

22          Okay.  Go ahead.

23          MS. MARKS:  Your Honor, plaintiffs M.B., C.A., B.H.

24     and K.R. seek remand of the state civil actions pursuant to

25     equitable remand 28 U.S.C. 1452(b) or, in the alternative,

1    permissive abstention per 28 U.S.C. 1334(c)(1).

2             THE COURT:  What would that accomplish if I did the

3    permissive abstention?  What would that really do for anybody?

4             MS. MARKS:  Your Honor, I think it would result in

5    the same result for equitable remand which is the return of

6    these cases to State Court where they belong.

7             THE COURT:  Okay.  Go ahead.  Sorry.

8             MS. MARKS:  Your Honor, my clients are seeking that

9    their cases be remanded to State Court in these cases because

10   this is where their cases were filed.  This is where their

11   cases were commenced.  This is where their cases have been

12   aggressively litigated for years.  And plaintiffs chose to

13   have their cases heard by citizens of Philadelphia County who

14   have a vested interest in the outcome of these cases that

15   involve the sexual exploitation of these young women, who at

16   the time were children, at three Philadelphia hotels.  These

17   cases could not have been brought in Federal Court at all

18   without the Roosevelt Defendants', the debtors, filing of

19   bankruptcy, a bankruptcy that was filed after trial had

20   commenced in the M.B. case in an effort to halt that trial and

21   to halt the other litigation as well as engage in forum

22   shopping.

23            THE COURT:  Well, that smacks of an unstated, but

24   unmistakable, as well, argument of potential bad faith on the

25   part of the defense.  Is that what you're really going -- do

1    you really want to make that allegation?

2            MS. MARKS:  I'm not making that allegation, Your

3    Honor.  I'm simply saying what we have before us is evidence

4    that what the Roosevelt Defendants were trying to do was to

5    stop the trial and to engage in forum shopping.

6            THE COURT:  Well, those sound very, if not bad, then

7    at least on the way to be bad faith from a legal argument

8    standpoint.

9            MS. MARKS:  Well, Your Honor, what I say, I don't

10   say lightly, but I don't think we need to get to any

11   accusations about bad faith.  What I'm saying is, though, what

12   it is clear happened was that the bankruptcy was filed for

13   purposes of stopping the trial and that's not the first time

14   that the Roosevelt Defendants had tried to stop the trial in

15   the M.B. case.  They filed a motion to continue the trial

16   which was denied by Judge Cohen.  They also filed a motion to

17   change venue in the form of a motion in limine which was also

18   denied by Judge Cohen.

19           THE COURT:  As I understand it, they tried, I guess,

20   twice to postpone or move the trial if I understand the

21   arguments correctly prior to bankruptcy.  So maybe on the

22   continuum from wherever to bad faith, there is a stop -- a

23   gamesmanship as a point in all of this behavior.  Is that

24   where you are on that point?

25           MS. MARKS:  Absolutely, Your Honor.

```
 1              THE COURT:  Okay, why is that bad?

 2              MS. MARKS:  Your Honor, because it's manipulation of

 3     the court system to deprive the plaintiffs of their choice of

 4     forum and venue which was the Philadelphia Court of Common

 5     Pleas.

 6              THE COURT:  So how have you been prejudiced?  How

 7     did each plaintiff get prejudiced that you're at least

 8     concerned with?

 9              MS. MARKS:  Your Honor, the plaintiffs have been

10     prejudiced because these cases belong in State Court.  Again,

11     this is where they chose to have their case.

12              THE COURT:  Have we not been nice to you here?

13     What's the problem?

14              MS. MARKS:  No, Your Honor, I certainly don't say

15     that.

16              THE COURT:  No, that sounds facetious.  I don't mean

17     that, of course, but I'm actually looking for some explanation

18     of what is the prejudice in terms of two forums.  I would

19     think that you might be willing to talk about the timing and

20     the investment and getting ready and on the eve of trial, et

21     cetera, and that has a -- that smacks of prejudice as opposed

22     to some ephemeral notion of the difference between "State

23     Court" and "Federal Court."

24              MS. MARKS:  Yes, Your Honor, I can respond to that.

25     So with regard to the M.B. case, jury selection was scheduled
```

1    for June 17th.  The trial was first assigned to Judge

2    Cunningham and then reassigned to Judge Stella Tsai.  The

3    parties filed approximately 40 motions in limine and

4    responses.  Counsel for the parties toured the courtroom where

5    the trial was going to be heard and the trial testimony of

6    additional defendant, Daiquan Davis, was videotaped at the

7    request of the Roosevelt Defendants.  When that testimony went

8    poorly, they filed for bankruptcy just hours before jury

9    selection.  That case, Your Honor, the M.B. case had been

10   litigated since 2017, so quite some time, and this wasn't a

11   bankruptcy that was just filed on the verge of trial.  It was

12   actually filed after trial had started.  As I had mentioned,

13   the Roosevelt Defendants' efforts to, you know, halt that

14   litigation didn't just begin with the bankruptcy.  There had

15   been a motion to change venue and also a motion to continue

16   trial.  They have done everything that they could to deny

17   plaintiffs their choice of forum.

18            As far as the other cases and the investment in the

19   State Court actions, those cases, although they did not have

20   trial dates, they were aggressively litigated for years and

21   were nearing completion.  Contrary to the Roosevelt

22   Defendants' assertion that discovery in those cases was

23   somewhat postponed due to the pandemic, that's not accurate.

24   There were nearly 20 depositions taken of desk clerks,

25   managers, former employees who were tracked down who were

1    working for the North American Motor Inns, as that particular

2    hotel had been sold during the pendency of the litigation.  So

3    the discovery in those cases, because the discovery as far as

4    the Roosevelt Hotel was complete with regard to the M.B. case,

5    was focusing on the other two hotels.  The defendants took my

6    clients' depositions over two days.  They were grilled.

7              THE COURT:  But all that would be imported into a

8    federal lawsuit, would they not?  The idea that it would be

9    removed doesn't mean we reset the clock and everything starts

10   all over.

11             MS. MARKS:  Your Honor, but the State Court is

12   intimately familiar with these cases and everything that has

13   transpired --

14             THE COURT:  Why do different judges have those

15   cases, have all the cases?

16             MS. MARKS:  Your Honor, initially, the M.B. case, I

17   believe, some of the decisions were made by Judge Cohen and

18   Judge Shelley Robins New and then we had the trial assignment.

19   As far as the C.A., B.H. and K.R. matters, initially Judge

20   Anders was presiding over those cases and when he became the

21   supervising judge, the matters were reassigned to Judge

22   Carpenter.  So the Philadelphia Court of Common Pleas judges

23   have expended countless hours resolving too many discovery --

24             THE COURT:  That conjures up this sort of

25   institutional memory as opposed to what we have here which is

1    the single docket.  No, I understand the point you're making,

2    but I think it's hard to say.  It's really not an equivalent

3    of saying that one judge has some sort of arguable mastery

4    over the facts and the background of the case as opposed to

5    the institution of the Court of Common Pleas.

6                MS. MARKS:  Your Honor, if I could provide some

7    background information about the particular cases and so

8    M.B. -- and that may also bring light to why it's so important

9    that the cases be tried in Philadelphia Court of Common Pleas

10   where, again, the plaintiffs chose to have their cases heard.

11               So M.B. was sold for sex at the Roosevelt Inn when

12   she was just 14 years old.  Plaintiffs C.A. and B.H. were also

13   sold for sex at the Roosevelt Inn as well as the Days Inn on

14   Roosevelt Boulevard and the North American Motor Inns, both

15   also Philadelphia hotels.  The North American Motor Inns is

16   located -- was located on City Line Avenue and it was since

17   sold and now I believe not currently operating.  The Days Inn

18   on Roosevelt Boulevard is part of the Wyndham brand of hotels.

19   The Wyndham defendants make up the largest brand of hotel

20   chains in the world.  So we're dealing with all three hotels

21   that are Philadelphia well-known hotels where sex trafficking

22   has taken place.  So as far as remander or abstention, which

23   is why we're here before Your Honor, the question that we have

24   is where these cases should be tried.  So recently, Judge

25   Chan, who's presiding over the Bankruptcy Court matters, made

1      it clear that the automatic stay does not apply to the list of

2      other defendants not related to the Roosevelt Defendants.  So

3      those cases can be -- can move forward.  As I will explain to

4      Your Honor, the criteria for remand or abstention all favor

5      remand and the courts have broad discretion in remanding the

6      cases.  And most courts have been guided by a seven-factor

7      test and I believe here that the parties agree that the seven

8      factor test which was set forth -- it's the Dieterly v. Boy

9      Scouts case that I'll refer to as the Boy Scouts case -- is

10     the criteria for remand, but that where the parties differ is

11     the applications of the facts to that criteria.

12              So, Your Honor, with respect to the criteria, one of

13     the first factors is the effect, whether remand will have the

14     effect on the efficient administration of the bankruptcy

15     cases.  And in these cases, remand will have little or no

16     impact on the administration of the bankruptcy case.  The

17     Bankruptcy Court cannot decide these personal injury cases.

18     They have to be heard in a court other than bankruptcy.

19     There's absolutely no efficiency to having these cases be

20     heard in the Federal District Court while there's a bankruptcy

21     court matter because the Bankruptcy Court can't simply hear

22     it.

23              The next criteria is the extent to which issues of

24     state law predominate.  All of plaintiffs' claims arise under

25     Pennsylvania common law.  As I mentioned, this case could not

1    have been brought in Federal Court.  There's no federal

2    question of law and there's no diversity jurisdiction.

3            THE COURT:  Is there anything unsettled about the

4    state law that you say is controlling here?

5            MS. MARKS:  Well, Your Honor, certainly this is a

6    new area of the law in that although plaintiffs' claims are

7    personal injury claims, these are not run-of-the-mill motor

8    vehicle cases or slip and falls, but I certainly don't mean to

9    diminish the importance of those types of claims as they can

10   be quite complex.

11           THE COURT:  I should say.

12           MS. MARKS:  These cases involve some of the first

13   application of common law negligence theories to holding

14   landowners and business operators accountable for the sexual

15   exploitation and the selling of girls for sex by third

16   parties.

17           So the Roosevelt Defendants have stated in filing

18   that these cases --

19           THE COURT:  How is that different?  I have seen a

20   number of cases where the hotel sublets out a portion to like

21   a spa and then there's some alleged personal tort by the

22   masseuse or the masseur and then the offended party sues not

23   only the spa, but also the hotel landlord.  Is that

24   essentially -- I mean that theory seems to me to be

25   reminiscent of what you're saying.

1          MS. MARKS:  It is reminiscent, Your Honor, but it's

2     different in that's these are sex trafficking cases.

3          THE COURT:  Well, I understand that part.  Okay.

4     All right.

5          MS. MARKS:  Your Honor, I anticipate that the

6     Roosevelt Defendants will argue that these are not complex

7     matters that certainly can be tried in Federal Court, but in

8     State Court filings --

9          THE COURT:  I'm sure there's some unintended slam

10    there somewhere, but go ahead.

11         MS. MARKS:  Well, the Roosevelt Defendants have

12    stated --

13         THE COURT:  Even a federal judge can figure their

14    way through that.  I get it.

15         MS. MARKS:  No, Your Honor, I did not mean that, but

16    that, you know, the Roosevelt Defendants have argued in State

17    Court that these -- have agreed that these are complex issues,

18    these are complex cases.  In their motions to continue trial,

19    they stated that -- in reference to the complexity of the

20    litigation and the enormity of the task of finding replacement

21    counsel.  So their lead counsel, James Quinlan, who was a

22    partner of Blank Rome, withdrew his appearance and actually I

23    believe stopped working at Blank Rome just prior to the trial

24    so they were requesting additional time.  In an affidavit

25    attached to that motion, Mr. Quinlan verified that, I'll

1    quote, "The file is one of the largest in size that I have

2    been challenged to handle during my 15 year-plus legal

3    career."

4          So, Your Honor, this is -- these are complex cases,

5    and, as I mentioned, much time and effort and many resources

6    that the Philadelphia Court of Common Pleas has invested in

7    these cases over the years.

8          With respect to another criteria which is comity,

9    Your Honor, in the Boy Scouts case that I referenced earlier,

10   the District Court deferred to the State Court in that case,

11   and that case, it had been pending in State Court for

12   approximately six months prior to its removal with the Court

13   ruling on -- in the State Court ruling on several motions.

14   The District Court in the Boy Scout case determined that the

15   Common Pleas Court was more familiar with the numerous factual

16   disputes.  Here we have cases that have been pending for

17   years, one particular case where trial had commenced, and

18   certainly these cases have been -- are much further along than

19   the Boy Scout case was which was remanded back.

20         The next criteria, Your Honor, is the degree of

21   relatedness or remoteness of the proceedings in the main

22   bankruptcy case and there may be some connection to the

23   bankruptcy case, but the Bankruptcy Court, Your Honor, as I

24   mentioned, can't hear these cases.  So what we're left with is

25   where the cases should be tried.

1          The next criteria is the existence of a right to a

2   jury trial.

3          THE COURT:  I have to interrupt just a second.

4          MS. MARKS:  Sure.

5          THE COURT:  The natural breakpoint here for this

6   jury would be when you are concluded with your preliminary

7   argument.  Would you agree that sounds like a natural breaking

8   point?

9          MS. MARKS:  Yes, Your Honor.

10          THE COURT:  When might that be?

11          MS. MARKS:  Your Honor, I probably have a few more

12   minutes, but I understand.

13          THE COURT:  No, no, no, I'm unhappy enough at having

14   to interrupt you and hold you all up, but I really cannot let

15   this jury sit in this other case and wait for the full panoply

16   of all the arguments.  I just don't want to interrupt you any

17   more that I already have.

18          MS. MARKS:  You know, Your Honor, I wouldn't mind if

19   you need to conclude this matter.  I understand.

20          THE COURT:  Okay.  Well, my usual routine is after

21   you hear from your opponents, you get to pop back up and say

22   anything more you want to, all right?  But what I would like

23   to know is will there be other plaintiffs' counsel arguing

24   differences on behalf of other plaintiffs?

25          MR. HEINOLD:  Good afternoon, Your Honor.  We

1    represent plaintiff A.H.  We're the only other plaintiff

2    counsel.  As you can hear, Ms. Marks is thoroughly analyzing

3    for the Court so unless Your Honor has specific questions to

4    us, we'll rely on what Ms. Marks says.

5            THE COURT:  That's great.  So how about if I just

6    stick with my usual protocol.  After I hear from the defense

7    and you hear my questions of them, then you'll have a chance

8    to argue some more.  Will that be okay?

9            MS. MARKS:  Yes, Your Honor.

10           THE COURT:  Thank you very much.

11           Okay, Mr. Coyle, what do you need in terms of

12   timing?

13           THE DEPUTY CLERK:  We're ready.

14           THE COURT:  They're ready to come in?

15           THE DEPUTY CLERK:  They're ready.  Counsel is in the

16   witness room down here.

17           THE COURT:  You can tell them to come on in here.

18           And the jury is in here?  (Indicating)

19           THE DEPUTY CLERK:  Yes.

20           THE COURT:  And I'll just ask you, folks, if you

21   wouldn't mind vacating your spots a bit.

22           Just so you all have a point of context, this is a

23   ten-count criminal case involving Title 15 and Title 18

24   securities fraud.

25           (After recess:)

```
 1              THE COURT:  So there you go.  That's the other side
 2    of the fence.  Do you want to come back on up?  The excitement
 3    of that case was one of the codefendants was a former Eagles
 4    football player so that's what was interesting about that
 5    case.
 6              Which of the defendants would like to speak first?
 7              MR. MARION:  Your Honor, Charles Marion on behalf of
 8    the debtors and related debtor parties.
 9              THE COURT:  Got it.
10              MR. MARION:  Do you want me to use the podium or
11    stay here?
12              THE COURT:  Whatever works best for you.
13              MR. MARION:  If it's okay, I'm going to use the
14    podium.
15              THE COURT:  You might then want to turn it.
16              MR. MARION:  It's heavier than I thought.
17              THE COURT:  That is, actually.
18              MR. MARION:  Good afternoon, Your Honor.  Charles
19    Marion, Blank Rome, on behalf of the debtor defendants, the
20    Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc., and the
21    nondebtor-related parties which are UFVS Management Company,
22    LLC and Yagna Patel.  And, Your Honor, I may refer to those
23    four defendants as the Roosevelt Defendants.  They're all
24    affiliated with each other.  Mr. Patel is the manager of the
25    hotel and they're all insured or additional insureds under
```

1    the policies that may or may not provide coverage here.

2              Your Honor, the cases we removed to this Court are

3    absolutely related to the debtor's bankruptcy proceeding and

4    estate.  In our brief, we gave the definition that an action

5    is related to a bankruptcy case where its outcome could

6    conceivably have any effect on the estate being administered

7    in bankruptcy.

8              THE COURT:  Well, under your definition of what's

9    related, what would not be related?

10              MR. MARION:  I suppose, Your Honor, if there would

11    be a claim that may not have any impact on the debtor's

12    assets.  I don't know what that may be.

13              THE COURT:  What kind of claim would that be?

14              MR. MARION:  That's a good question, Your Honor.

15              THE COURT:  The reason I ask is, you know,

16    related -- related can be either a loose or a tight reign.

17              MR. MARION:  Yes.

18              THE COURT:  And somewhere there should be a

19    limitation on what is under the umbrella of "related."

20              MR. MARION:  Yeah, and I guess to flesh it out a

21    little bit more, Your Honor, the cases talk about if the

22    outcome of these cases will alter the debtor's rights,

23    liabilities, options, will impact on the handling and

24    administration of the bankrupt estate, then they're related.

25    And here we would argue they indisputably are related.  The

1    plaintiffs obviously seek substantial amounts in damages in

2    the five pending cases.  If they get a verdict in any one of

3    those five cases, it would probably greatly exceed the value

4    of the assets our client has which, Your Honor, really are

5    just the hotel.  It's a mom and pop independent hotel on

6    Roosevelt Boulevard in Northeast Philadelphia.  A negligible

7    amount of cash on hand and their insurance policies which, as

8    Your Honor knows, coverage has been denied, there's litigation

9    pending in this court before the Honorable Darnell Jones.  It

10   could very well be that our clients don't have any insurance

11   coverage, but in the M.B. case, primary excess combined to 25

12   million policy limits, but, Your Honor, there's also

13   crossclaims in these cases with Alpha-Centurion, the security

14   company the hotel hired, where if Alpha were to get a

15   crossclaim verdict against my client, that would also impact

16   the assets of the estate.  So we would contend that they're

17   clearly-related actions.

18           And, Your Honor, I wanted to mention the notice we

19   filed last Friday.  I don't know if Your Honor saw it.  There

20   were some orders recently ordered by Judge Chan in the

21   bankruptcy case, one of which granted our clients' motion for

22   basically a global mediation.  All the parties and all their

23   insurers in these cases have agreed to participate in that

24   mediation.  Judge Frank has been appointed as the mediator.

25   He's conducting an initial conference with everyone next

1    Friday, October 8th.  There was also an order entered which we

2    submitted which has a bar date for claims, for tort

3    claims under --

4              THE COURT:  November?

5              MR. MARION:  Yes, November 30th, Your Honor.  So we

6    anticipate the mediation, while Judge Frank is already at work

7    in trying to get the parties together for some preliminary

8    initial conferences, the actual probably multi-day mediation

9    will likely take place in December or January and Judge

10   Chan --

11             THE COURT:  But she did not lift the stay, right?

12             MR. MARION:  Correct, Your Honor, she hasn't ruled

13   on that yet.  She put that off.  She actually expressed a --

14   if I can -- I wasn't at the bankruptcy hearing, but as I

15   understand it as was reported to me, she strongly favors

16   having this mediation and hopes that it might, you know,

17   achieve some kind of resolution here.

18             THE COURT:  Well, that would be unusual for a judge

19   to say.

20             MR. MARION:  But, Your Honor, keeping the cases in

21   this court would certainly, in our view, provide the most

22   efficient way to administer and coordinate these cases.  Your

23   Honor's obviously already consolidated the cases for

24   administrative purposes.  That could not have happened in the

25   State Court with five cases at different stages.  The removal

1    we filed, Your Honor, was proper, it was timely, and it was in

2    good faith.  It was not done lightly -- I'm sorry, the

3    bankruptcy, Your Honor.  The removal was timely and properly

4    filed in good faith, but so was the bankruptcy proceeding.  It

5    was not done for purposes of forum shopping.  It was, rather,

6    for our clients to find the most orderly way to coordinate and

7    resolve all of these pending claims to allow them to

8    reorganize and go about continuing to operate its hotel.

9    Contrary to what Ms. Marks has argued, the trial in the M.B.

10   case had not yet commenced.  As counsel said, jury selection

11   was scheduled for the next day, we don't dispute that, but the

12   trial had not certainly started.  There was one trial

13   deposition taken which the parties had started talking about

14   back in March of this year.  The judge had only been assigned

15   one day before the bankruptcy was filed and, Your Honor, five

16   days before we filed for bankruptcy, at the insurance

17   carrier's prompting, I asked plaintiffs' counsel for a written

18   settlement demand and it's in our papers, Your Honor.  To that

19   point, they had only demanded policy limits, $25 million, and

20   this was the Friday night before we filed for bankruptcy.  On

21   June 11, plaintiffs' counsel sent a letter saying that they

22   would lower their settlement demand to $24 million which, Your

23   Honor, as I said, the value of the hotel we think is only

24   probably worth about three and a half million or so.  We don't

25   know if there's any insurance coverage here so that was

 1   certainly one of the factors which made our clients consider

 2   and ultimately decided to file for bankruptcy protection.  Ms.

 3   Marks mentioned motions we filed which she claims were filed

 4   to try to avoid trial.  That was not the case.  As she herself

 5   mentioned, our colleague, Jim Quinlan, our partner, who had

 6   been -- literally attended every deposition in these cases and

 7   been at every event decided to go in-house for a good

 8   opportunity shortly before trial.  He actually called

 9   plaintiffs' counsel and plaintiffs' counsel actually suggested

10   to us that we might file a motion to continue the trial and

11   that they would only file a soft opposition.  So it's a little

12   disingenuous for them to argue that we filed that to avoid

13   trial.  We did file it, however, and we also did file a motion

14   to transfer venue because, Your Honor, when the plaintiffs

15   filed all of these cases, they went to the media, which is

16   their right, and there was a lot of negative publicity about

17   our clients' hotel.  We -- it was a very extensive motion to

18   transfer venue.  We had very real and legitimate concerns

19   about the jury being poisoned by this negative media

20   publicity.  We attached multiple articles from different news

21   sources which really casted a negative light on our clients so

22   that was a very legitimate filing.

23           Your Honor, the Dieterly case that plaintiff relies

24   on, while we do agree those are the factors that Your Honor

25   can consider in deciding whether to remand or abstain, that

1    was a very different situation.  The Boy Scouts of America, a

2    huge organization, had a lot more assets than our client, a

3    mom and pop hotel.  There were various cases removed from

4    different jurisdictions.  The Dieterly case was from

5    Philadelphia Court of Common Pleas, but the bankruptcy was

6    filed in the District of Delaware so the comity issue was a

7    bit different there and even if you do apply the seven factors

8    from Dieterly as Ms. Marks went through, we contend that those

9    factors weigh in favor of your not remanding the case.

10           THE COURT:  Well, run through them and explain that

11   to me.  I think it seems to me that it's hard to tote up those

12   factors and say they argue in favor of the removal.  So why

13   don't you explain to me why --

14           MR. MARION:  Sure, Your Honor.

15           THE COURT:  -- my quick toting them up on my fingers

16   will --

17           MR. MARION:  Okay, I'll be happy to do that.  So the

18   first is the effect on the efficient administration of the

19   bankruptcy estate and we believe this factor weighs heavily in

20   favor of not remanding because it would be most efficient and

21   effective when it comes to the administration of the

22   bankruptcy estate in our view to keep these related cases --

23           THE COURT:  They tell me they don't plan to enforce

24   a collective to get a judgment except in the bankruptcy so

25   they're not going to interfere with the bankruptcy.

1          MR. MARION:  That's not exactly true -- well, they

2     say that, Your Honor, but a judgment would change their status

3     to secured creditors.  It would have significant impact on the

4     bankruptcy estate.  So that is not accurate what they've said

5     in that respect, but certainly the bankruptcy proceedings

6     being administered in this court, our clients' bankruptcy

7     counsel, who was on one of the calls with Your Honor and

8     unfortunately could not be here today, had another hearing,

9     feels very strongly that it is important to keep these cases

10    in this court to have the most efficient and effective way of

11    administering them all.  And as Your Honor --

12          THE COURT:  Why would not the speedier resolution

13    actually facilitate the bankruptcy proceedings particularly

14    given the fact that -- well, you've got the question of the

15    insurance and so it's really unknowable until that's resolved

16    what anybody would be looking to to collect from, right?  I

17    mean I'm just not quite seeing why Federal Court makes it a

18    better forum from the administration of the bankruptcy than

19    State Court because in either one, you know, let's say I kept

20    the cases and I said, Okay, you guys are ready to try the

21    case, let's go at it tomorrow or whatever, you know, two

22    weeks.  You still end up with a verdict one way or another and

23    how does that -- so why would being here be better than being

24    done the street?

25          MR. MARION:  Well --

1          THE COURT:  The administration of the bankruptcy

2    estate.

3          MR. MARION:  I think, Your Honor, that obviously

4    Congress provided for removal in this kind of bankruptcy

5    situation and the Bankruptcy Court does take jurisdiction over

6    the claims, but cannot liquidate those tort claims so they

7    would have to be tried --

8          THE COURT:  Right.

9          MR. MARION:  -- and we believe it would be easier to

10   have them all tried in this court, the same court in which the

11   bankruptcy is pending.

12         THE COURT:  But why?

13         MR. MARION:  I mean I think, Your Honor, and not to

14   say anything bad about the State Court, but the other four

15   cases are not nearly -- I mean contrary to what Ms. Marks

16   said, I don't believe any of those are close to trial and, you

17   know, in some ways, the cases may get to trial more quickly in

18   Federal Court than the State Court.  And I think that to have

19   them all in one forum, if I may, Your Honor --

20         THE COURT:  Well, I'm just trying to figure out why.

21   I mean I understand a little bit of what you're saying, but

22   not in terms of saying that weighs in favor -- you know, why

23   this particular issue weighs in favor of the remand -- the

24   removal, I suppose, of the remand.  I guess it gets a little

25   complicated as to the nondebtors.  And would a remand harm the

1    estate administration if there is some issue about allocating

2    liability among defendants, I suppose, but I don't quite know

3    why -- I can't get my hands around the concept of why that

4    makes the removal better for the administration of the

5    bankruptcy estate than the remand.

6              MR. MARION:  Well, I will say, Your Honor, the

7    Bankruptcy Code 28 U.S.C. § 157(b)(5), which we cited in our

8    opposition brief, says that the manifest purpose of that

9    section which we relied on is to centralize administration of

10   the estate and to eliminate the multiplicity of forums for the

11   adjudication of parts of the bankruptcy case.  So, you know,

12   in our view, it would be better.  That factor would weigh in

13   favor of keeping the cases here because they would all be in

14   one forum.

15             THE COURT:  Well, let's pose the following just to

16   test the theory.

17             Let's say there had not been a consolidation.  So

18   let's say your worst nightmare is you get ten of us here at

19   6th & Market which is no different than having 10 down the

20   street, right, 10 judges?

21             MR. MARION:  I'm not so sure, Your Honor, because I

22   think in Federal Court there's more of an opportunity to have

23   them deal with related cases and, you know --

24             THE COURT:  We don't have to.

25             MR. MARION:  You don't have to, no, that's true.

1    That's true.

2            THE COURT:  That's what I'm saying.  So imagine the

3    nightmare and you've got ten of us to deal with.

4            MR. MARION:  I don't think it's a nightmare, Your

5    Honor.  I think that would be fine.

6            THE COURT:  Okay, so you get that mixed in.  Do you

7    see what I'm saying?  I'm not quite sure what is it about the

8    removal that makes it better for the bankruptcy

9    administration.

10            MR. MARION:  Well, I will say that Judge Chan has

11    ordered this mediation and she actually has, even despite the

12    pendency of the insurance coverage litigation which is

13    ongoing, has gotten all of the insurers and all the parties to

14    participate in that.

15            THE COURT:  Is that mediation with Judge Frank

16    coordinated --

17            MR. MARION:  Yes -- I'm sorry.

18            THE COURT:  -- with whatever Judge Jones may or may

19    not be doing?  Is there any coordination at all?

20            MR. MARION:  Not that I'm aware of.  Yeah, I don't

21    believe so.

22            THE COURT:  Have you guys told Judge Jones about it?

23            MS. BYERS:  Your Honor, we don't represent the

24    debtors in the Judge Jones' action.  I'm not certain if the

25    debtor counsel has notified Judge Jones of the mediation or

1    Judge Frank's participation.

2              THE COURT:  Well, if all the insurers are going to

3    see Judge Frank -- or former retired, whatever he is, former

4    Judge Frank, I would simply recommend that it makes good sense

5    to bring Judge Jones up to speed on that.  He might find that

6    to be a useful piece of information.

7              MR. MARION:  I agree, Your Honor, and we'll advise

8    insurance counsel for our client.  It may have happened.  I

9    just don't know.

10             THE COURT:  Let me put it this way.  If I were Judge

11   Jones and I found out after the fact, I would be dismayed.

12             MR. MARION:  Okay.  I'll make sure that's either

13   happened or will happen.

14             THE COURT:  Okay, why don't you move to the

15   predominance of whether it's state law or not.

16             MR. MARION:  Well, as Your Honor, I believe, alluded

17   to, the issue or the claims, rather, in these cases are rather

18   straightforward.  They're negligence and negligent infliction

19   of emotional distress.  While trafficking cases may be a

20   relatively new area of the law, we're really talking, Your

21   Honor, about the well-settled Pennsylvania law and the duty of

22   an innkeeper to its guests.

23             THE COURT:  Why does that not say that state law

24   predominates, in fact, it is the case and so it belongs in

25   State Court.

1          MR. MARION:  Your Honor, I think that one may be a

2   wash.  I think Your Honor could certainly apply these state

3   law principles.  We're not moving these cases to another

4   jurisdiction outside of Pennsylvania.  It's still the same

5   application of Pennsylvania law.  So I would argue that that's

6   kind of a neutral factor here.  And when it comes to comity,

7   which is one of the next factors, you know, as I said in the

8   Dieterly case, you were looking at a bankruptcy filed -- the

9   Dieterly case was pending in the Philadelphia Court of Common

10  Pleas as these cases were, but the bankruptcy was filed in

11  Delaware District Court and there were some issues relating

12  to, you know, across state or across different forums.  Those

13  concerns aren't present here.  I mean we're just talking about

14  cases that were either in Philadelphia State Court or

15  Philadelphia Federal Court so I don't think we have those

16  concerns in this case.

17          The degree or relatedness or remoteness of the

18  proceedings of the main bankruptcy case, this, Your Honor, is

19  one of the key differences from the Dieterly case.  In that

20  case, the Court found that remand would have limited effect

21  upon the administration of the bankruptcy case, but here we

22  really contend that it would hinder the efficient

23  administration because you have these tort claims before

24  different judges at different stages and they would all

25  conceivably, you know, if the plaintiffs win in any of these

1    cases have a very large impact on the bankruptcy case and the

2    bankruptcy estate.  We cited law in our brief, Your Honor,

3    that where the outcome of the litigation could have a profound

4    effect on the assets in the bankruptcy estate, this factor

5    counsels strongly against remand.

6            The next one, Your Honor, is the existence of a

7    right to a jury trial which clearly is precedent in either

8    court.

9            And prejudice -- the last is the prejudice to being

10   voluntarily removed parties and there's really none here.  The

11   other defendants in our cases have either consented to removal

12   or have removed themselves.  As Your Honor has seen, they

13   favor removal.

14           And just on abstention, Your Honor, that really --

15   the law says it's the exception, not the rule, and there's,

16   you know, policy of -- some courts have held that abstention

17   would undercut the purpose of Section 157(b) of the Bankruptcy

18   Code and the process we follow to remove the case to this

19   Court.

20           So based on all these reasons, Your Honor, we

21   believe the cases should remain and the motion should be

22   denied.

23           THE COURT:  Okay.

24           MR. MARION:  Thank you.

25           THE COURT:  Actually, why don't you take another

1   minute or two to address again my concern that something just

2   doesn't feel right about the timing here.

3            MR. MARION:  About the filing of the bankruptcy?

4            THE COURT:  Yes.

5            MR. MARION:  Well, Your Honor, I can tell you that

6   our clients deliberated for months, if not years, about filing

7   for bankruptcy and when we got closer to this trial and we did

8   engage in a court-ordered settlement conference in the Court

9   of Common Pleas and I think since the mediation in December

10   of 2019 or thereabouts, the plaintiffs would not come down

11   from policy limits 25 million and, again, Your Honor this is

12   one case out of five pending cases.  So it was quite clear --

13            THE COURT:  All right, I understand it's just a

14   number and maybe that shocks somebody into saying, Well, let's

15   get off the dime here, you know, we've been dithering forever

16   about bankruptcy or no bankruptcy.  Yikes, they seem to be

17   serious, yikes, we're starting tomorrow, yikes, where is that

18   Bankruptcy Court filing, but it seems to me that Roosevelt Inn

19   had no real estate that I can speak of or at least no mortgage

20   shown.

21            MR. MARION:  Right.

22            THE COURT:  There are no liens that were there.

23   There's not much of an unsecured debt from what I can see.

24            So other than the lawsuits, what prompted the

25   bankruptcy?  It's the lawsuits.

1          MR. MARION:  Well, the lawsuits and the denial of

2     insurance coverage, the exorbitant settlement demands.  I mean

3     COVID had an impact on the hotel.  The owners had told us, you

4     know, they were operating still but not -- barely staying

5     above water from what we were told.  So I think all those

6     factors combined and, you know, the settlement demand just

7     before trial was not an insignificant factor.  It was, you

8     know -- it just really caused our clients to take that step.

9          THE COURT:  Yes, but why should I not look at the

10    use of the Bankruptcy Code here as an effort to use the code

11    as a shield from liability?  It's virtually a sword, by the

12    way, but let me just stick with the shield analogy.  It's a

13    shield from liability on the cases.

14         MR. MARION:  Well, it's a stay.  I mean, it's an

15    automatic stay of the cases so the client can hopefully

16    reorganize.  It was a Chapter 11 filing, not a Chapter 7.

17    They're not looking to liquidate, they're looking to

18    reorganize and continue in business and, you know, frankly,

19    Your Honor, in the bankruptcy proceeding, our clients are

20    pursuing a path where they want to take what assets they do

21    have or may have in insurance and create some sort of pool or

22    trust for the legitimate claimants.  You know, they were

23    looking at one case going to trial very soon where the demand

24    was so high and the risk of an adverse verdict was high.  They

25    weren't looking to avoid trial, but they were looking at, you

1    know, this could certainly, you know, liquidate or, you know,

2    they would be out of business in any event, I guess, so they

3    were looking for an opportunity to try to reorganize and

4    remain in business and, you know, it's something they're

5    entitled to do under the Bankruptcy Code.  The timing perhaps

6    wasn't ideal, I won't disagree too strongly with that, Your

7    Honor.  We were -- Ms. Byers and I were gearing up for trial

8    like other counsel.  Believe me, we were working around the

9    clock.  There was a separate lawyer who's handled the

10   bankruptcy, but, you know, it was a good-faith filing.  I mean

11   it was not done for forum shopping or delay.  It was really

12   done so they could try to reorganize and continue in business.

13                   THE COURT:  Okay.

14                   MR. MARION:  Thank you.

15                   THE COURT:  Do any of the other defendants want to

16   argue on the remand issue?

17                   MR. ELIADES:  I would, Your Honor, on behalf of the

18   Wyndham Defendants.

19                   THE COURT:  Sure.  Come on up.

20                   MR. ELIADES:  My glasses were all fogged up, Judge.

21                   THE COURT:  I know.  Been there, done that.

22                   MR. ELIADES:  Your Honor, certain of the Wyndham

23   entities are defendants in lawsuits filed on behalf of C.A.,

24   B.H., K.R. and A.H.  The Wyndham entities are not defendants

25   in the M.B. case.  So, accordingly, we'd only be arguing the

1    remand motions with respect to four cases and I note it's not

2    with respect to M.B.

3         Your Honor, the plaintiffs in those four cases chose

4    to bring a single lawsuit seeking damages from multiple

5    defendants for trafficking alleged at several hotels.  The

6    defendants in each of those cases have asserted or are

7    entitled to assert various crossclaims, indemnification claims

8    or contribution claims and any damages which may be awarded to

9    a plaintiff in one of the four cases that we're speaking about

10   would need to be allocated amongst the various defendants who

11   are found to have liability.

12         THE COURT:  That was what I was talking to counsel

13   about, that that might be where there's some administration of

14   the estate and something about the bankruptcy forum that might

15   at least have some relationship to what's happened here.  I

16   get it.

17         MR. ELIADES:  Exactly, Judge, and we're talking

18   about an administrative nightmare to use the Court's phrase

19   earlier.

20         THE COURT:  Well, no, that nightmare was the ten

21   separate judges.

22         MR. ELIADES:  Yeah.  Well, you could see a situation

23   where, you know, if the Court were to uncouple these cases and

24   have Federal Court jurisdiction retained over the claims

25   against the debtors, but have the matters proceed against the

```
1    nondebtor parties in the State Court, you would have, you

2    know, all sorts of administrative challenges from dealing with

3    crossclaims, indemnification claims to potentially, you know,

4    the impact of adverse rulings in the State Court affecting the

5    rights of the debtors.  So -- but I'll get to that in a

6    second.

7              So just to recap the overview, Judge, two of the

8    defendants in the four actions that affect the Wyndham

9    entities exercised their right to file a bankruptcy

10   proceeding.  The debtors then exercised their statutory right

11   under 28 U.S.C. 1452 and separately removed only the claims by

12   and against the debtors and the parties related to the debtors

13   in C.A., B.H., K.R. and A.H.  They also removed the claims

14   related to the debtor parties to the M.B. case from the Court

15   of Common Pleas to this Court.  The remaining codefendants in

16   those four actions exercised their statutory right and filed

17   separate timely notices of removal removing only the claims by

18   and against the nondebtor parties in the four litigations.  So

19   at this point, C.A., B.H., K.R. and A.H. have been removed and

20   are pending before Your Honor and the parties and the claims

21   in each of those litigations have been rejoined in this court

22   in exactly the same posture that the plaintiffs chose to

23   commence those cases in the State Court.

24             THE COURT:  Except they didn't choose to come here

25   and why -- I mean, is not -- well, to ask the question
```

1    actually is to answer the question.  Is not the filing of one

2    of your codefendants, one of the defendants, just the

3    opportunity for opportunism for the rest of you because you

4    couldn't be here in the first place?

5               MR. ELIADES:  It is an opportunity, Judge.  It's a

6    statutory opportunity.

7               THE COURT:  Okay.

8               MR. ELIADES:  And we have to get over it.  It's an

9    opportunity that Congress gave to these nondebtor

10   codefendants, but they can only exercise and take advantage of

11   that opportunity if they can establish that the removal was

12   proper which I'll address in a second.

13              THE COURT:  Go ahead.

14              MR. ELIADES:  So none of the removing parties have

15   taken the position that the plaintiffs are not entitled at the

16   appropriate time to a jury trial.

17              In fact, 28 U.S.C. 157(b)(5) provides a mechanism

18   for District Courts to conduct trials in personal injury

19   actions in exactly this situation.

20              So the plaintiffs in the C.A., B.H., and K.R.

21   litigations filed separate motions to deem the removals by the

22   nondebtor parties void, to remand those cases back to State

23   Court, and we're asking this Court to exercise permissive

24   abstention.

25              The plaintiff in the A.H. matter filed an identical

1   motion albeit arguably out of time.  So the Wyndham Defendants

2   and most, if not all --

3           THE COURT:  Is that going to be your argument?

4   Who's going to be the one to --

5           MR. ELIADES:  I'm not going to argue that, Judge.  I

6   believe --

7           THE COURT:  Okay, is somebody going to try to argue

8   that?

9           MR. ELIADES:  I believe counsel from Saul Ewing is

10  going to argue that.

11          THE COURT:  Not that I want to overemphasize the

12  word try, but I have.

13          MR. ELIADES:  Maybe counsel will not argue that.

14          THE COURT:  Just saying.

15          MR. ELIADES:  So the Wyndham defendants and most, if

16  not all, of the nondebtor removing parties filed oppositions

17  to the remand motions in those four cases, and as Your Honor

18  is well aware, when there's an objection to a remand, the

19  party that is invoking Federal Court jurisdiction has the

20  initial burden of demonstrating that the removal to the

21  District Court is proper by a preponderance of the evidence.

22  So the joint removal by the Wyndham defendants and the

23  nondebtor parties were made pursuant to 28 U.S.C. §§ 1334 and

24  1452(a).  So 1452(a) is the gateway to 1334 and that provides

25  that a party may remove any claim or cause of action to the

1   District Court where the civil action's pending if the

2   District Court has jurisdiction under 1334.  And 1334(b) says

3   that the District Court shall have original, but not

4   exclusive, jurisdiction of all civil proceedings arising under

5   Title 11 bankruptcy or arising in or related to bankruptcy

6   cases.  And Your Honor correctly, you know, pointed out the

7   very, very broad related to jurisdiction that has come out in

8   case law.  The PriceWaterhouse case, which we have in our

9   brief, contains a pronouncement from the Third Circuit that

10  related to a jurisdiction is the broadest potential path to

11  bankruptcy jurisdictions and the Pacor case, another Third

12  Circuit decision --

13          THE COURT:  It is at most a translucent concept in

14  this case.  At most.

15          MR. ELIADES:  And as counsel for the debtor cited

16  earlier, the Pacor case, you know, provides that related to

17  jurisdiction -- or actually it's related to a bankruptcy case

18  if its outcome could conceivably have any effect on the estate

19  being administered in bankruptcy and we cited and I know the

20  Eighty Eight L.P. defendant also cited a number of cases where

21  circuit courts have found that related to jurisdiction is

22  extremely broad and specifically was applied in connection

23  with contribution, indemnification and crossclaims in personal

24  injury cases.

25          Now, as debtor's counsel also cited, the conceivable

1    effect test is satisfied.

2         THE COURT:  How can anybody with a straight face

3    even call it a test?  I mean I don't mean to be too

4    argumentative about it, but that to me, that's almost as hard

5    to get ahold of as related to is.

6         MR. ELIADES:  I think we can fairly characterize it

7    as a low hurdle, Judge.

8         THE COURT:  All right.  I don't want to beat that

9    horse too much, but it does -- as somebody who spends their

10   entire life it seems like dealing with all the tests that

11   everybody comes up with, that one is, you know, hard to resist

12   to talk about.

13        MR. ELIADES:  So let me just say according to the

14   Third Circuit, an action satisfies or clears that low hurdle

15   if the outcome could alter the debtor's rights, liabilities,

16   options or freedom of action either positively or negative in

17   any way which impacts upon the handling and administration of

18   the bankruptcy estate.  And as I noted earlier, the outcome of

19   the nondebtor party's potential crossclaims, contribution

20   claims, indemnification claims inarguably could alter the

21   debtor's liabilities.  In addition, if there is a

22   determination of liability against defendants in any of these

23   actions, that liability would have to be specifically

24   allocated among the debtor and nondebtor defendants who are

25   found liable by the trier of fact, and that clearly would

1    affect the debtor's rights, liabilities, and options.  And,

2    you know, also to the extent that there is a bifurcation of

3    these claims, discovery rulings by one court or in one court

4    apart from the potential for inconsistent results could be

5    binding upon and affect the debtor's rights, liabilities and

6    options and also significantly affect the administration of

7    debtor's estates.

8             THE COURT:  I will say that it is absolutely

9    undeniable that there's a greater facility in a single

10   district to consolidate matters relatively easily and we do

11   that all the time and it's a little more cumbersome to do if

12   you've got, you know, ten different State Court cases.

13   There's no getting around that for anybody to argue.  It is

14   easier to do.  We do do it frequently.  It's not necessarily

15   going to happen, but one of the arguments made for it always

16   is the spookiness of inconsistent verdicts.  I get that.  So I

17   think that is just a fact that's true, but I'm not sure of

18   much more, you know, beyond that.  I actually had thought of a

19   question for plaintiffs' counsel on the point of why does the

20   bankruptcy -- why does the difference in terms of the

21   debtor's facility to defend itself become sort of important

22   once the bankruptcy is filed, but that's not going to be a

23   question for you because you're not even representing the

24   debtor.

25             MR. ELIADES:  Thank goodness, Judge.

1            THE COURT:  There you go.

2            MR. ELIADES:  So, Your Honor, I don't think there's

3    any serious question that the claims related to the non --

4    that the claims against and of the nondebtor parties in at

5    least the four litigations that we're concerned with are

6    related to.

7            THE COURT:  Do you find your clients more at risk

8    somehow if the case is against you proceeding in State Court

9    apace?

10           MR. ELIADES:  I don't know if I'm the right person

11   to answer that, Judge, because I'm not involved in the defense

12   of the substantive cases.  I can't imagine that my client

13   would authorize me to say yes in that --

14           THE COURT:  And yet if you say no, then that has an

15   implication to the issue at hand.

16           MR. ELIADES:  Your Honor, I think there's no serious

17   question that the Wyndham and the nondebtor cases are related

18   to and that the cases were properly removed.  So once you

19   clear that admittedly low hurdle, the burden shifts to the

20   parties seeking remand or permissive abstention to establish

21   that by a preponderance of the evidence.  And the Wyndham

22   Defendants submit that none of the plaintiffs have satisfied

23   their burden with respect to the four cases.

24           The plaintiffs in C.A., B.H., K.R. and A.H. present

25   two identical arguments regarding the joint removals of the

1    Wyndham parties and other nondebtor defendants.

2          The first is that the plaintiffs assert that each

3    matter was improperly removed and is therefore void because

4    the debtors have previously removed the entirety of each

5    litigation to this Court rather than just the claims against

6    the debtor parties.

7          The plaintiffs then argue that the cases should be

8    remanded because they satisfy -- under the circumstances,

9    satisfy the test for abstention and/or remand.

10          Your Honor, the first argument is easily dealt with.

11    The Roosevelt Inn Defendants' notices of removal state that

12    the claims being removed are those against the Roosevelt Inn

13    Defendants asserted by the plaintiff, the Roosevelt Inn

14    Defendants against additional defendants and other

15    crossclaims.  The other -- the claims of the -- the claims

16    against the nondebtor parties are not subject of the notices

17    of removal filed by the debtors.

18          The second argument in connection with the void

19    argument, the plaintiffs cite to the Brown versus Jevic case,

20    it's a Third Circuit case out of 2009, for the proposition

21    that the Wyndham matters were not properly removed.  The Brown

22    and the removal statute that are subject of Brown are

23    inapplicable to these cases, Your Honor.  The matter in Brown

24    was removed pursuant to 28 U.S.C. § 1453 which deals with the

25    removal of class actions under the Class Action Fairness Act

1  of 2005 and that statute provides that an entire class action

2  needs to be removed.  You can't -- you can't cherry pick the

3  claims.  The Wyndham entities as well as the debtors removed

4  under a different statute, 28 U.S.C. 1452, and that statute

5  specifically says that a party can remove any claim or cause

6  of action.  So the void argument, Your Honor, we think fails.

7          Remand and abstention, Your Honor, we briefed that

8  pretty extensively.  I know the debtors did as well -- yes,

9  the debtors did and certainly the other nondebtor defendants

10  briefed the elements and, you know, I'm happy to address any

11  of the elements, Your Honor.

12          THE COURT:  Do you agree, though, I mean, I think

13  the focus here really is on the Court's discretion to remand

14  claims on any equitable grounds.  I mean do you agree that

15  that's sort of where we all are?

16          MR. ELIADES:  I think that's the standard, Judge, in

17  light of the statutory -- I think that the discretion is

18  viewed in light of the statutory grant of jurisdiction in this

19  type of matter.  So --

20          THE COURT:  But once you're there, there still is

21  the Court's exercise of discretion, right?

22          MR. ELIADES:  No question, Judge, yes.

23          THE COURT:  Okay.  I mean just not to put too fine a

24  point on it, but that's where I see this coming down and

25  that's why I went through all of these factors.

1          MR. ELIADES:  Yes, and in looking at all of these
2    factors at least as the Wyndham Defendants do, that the
3    plaintiffs haven't met their burden by a preponderance of the
4    evidence that these factors militate in favor of permissive
5    abstention or remand.
6          We talked about the administration, the effect of
7    the administration on the bankruptcy estate.  I think that
8    that factor weighs, frankly, in favor of Federal Court
9    jurisdiction.
10         The difficulty or unsettled nature of applicable
11   law, I think that does not favor the plaintiff.  The Third
12   Circuit has noted time and again that Federal and State Courts
13   are equally capable of applying settled state case law to a
14   difficult set of facts.
15         THE COURT:  But what if the plaintiff -- well, but
16   what if it is correct that this particular issue, the
17   Innkeeper liability for the alleged sex trafficking, what if
18   that is kind of a new knocking it up a notch, you know, it's a
19   new issue, would that not suggest that it should go back to
20   the State Courts to handle?
21         MR. ELIADES:  Well, Your Honor, I haven't seen any
22   briefing that that is the case so I would be happy to address
23   that, but it doesn't sound to me like there's a new tort which
24   has been created.
25         THE COURT:  Well, I guess the issue would be whether

1    that's an extension of pushing beyond where everything has

2    happened in the past, whether this is a new level.  Not a new

3    cause of action necessarily, but it may be a new level of

4    liability.  I'm just posing that as a thought.

5            MR. ELIADES:  The comity factor, Judge, we think

6    weighs in favor of staying here.  These cases, you know, are

7    Philadelphia cases.  They'll be handled here in Philadelphia.

8            THE COURT:  Oh, even the folks that were just here,

9    you have no idea where they came from.  They've come as far

10   away as Northampton County and Lancaster and Berks County all

11   working very hard to get here to downtown Philadelphia.

12           MR. ELIADES:  I'm sure, Judge.  The right to a jury

13   trial is the same here as it was in the Court of Common Pleas.

14           THE COURT:  No doubt.

15           MR. ELIADES:  The degree of relatedness or

16   remoteness of the proceedings to the main bankruptcy case I

17   think is close.  We don't think that prejudice favors the

18   plaintiff and we fall back to, you know, those cases that say

19   that, you know, abstention and even remand are extraordinary

20   remedies, right?  They are the exception as opposed to the

21   rule when there is otherwise valid Federal Court jurisdiction.

22           THE COURT:  Thank you.

23           MR. ELIADES:  Thank you, Judge.

24           THE COURT:  Did I hear that somebody wants to argue

25   that A.H. was too late to move -- yes.  Oh, look at that, the

1    hand is still going up, okay.

2              MR. SMITH:  Yes, Your Honor.

3              THE COURT:  I don't mean to jump over anybody else

4    who's planning to argue before getting to this point, but why

5    don't you tell me what's up.

6              MR. SMITH:  Sure.  Thank you, Your Honor.  Matthew

7    Smith from Saul Ewing on behalf of the additional defendant,

8    Eighty Eight, L.P.  We are only involved in the A.H. case

9    specifically.  We're joined as a third-party defendant.  I

10   don't have a lot to add from what Wyndham's counsel spoke to

11   on the other issues.  The only unique issue that I was going

12   to speak to was the untimeliness.

13             THE COURT:  Yes.

14             MR. SMITH:  So we filed a joint notice of removal

15   along with the Wyndham --

16             THE COURT:  As I understand, the point is you filed

17   on time, but the wrong case.

18             MR. SMITH:  Correct.  So the 30-day window applies

19   from -- 30-day window in 1447, we cite case law in our brief

20   that it applies to bankruptcy removals under 1452 as well.  We

21   also cite case law that it's a strict 30-day rule unless it's

22   an issue of subject matter jurisdiction.  You know, cases

23   where it's 31 days, too bad.  We also cited a case in our

24   brief where a similar issue came up, a party filed it on the

25   wrong docket.  There were two cases removed.  The cases had

1   been previously consolidated.  The party filed a motion to

2   remand on the wrong docket, eventually later tried to file a

3   motion to remand on the correct docket, and the Court said,

4   you know, that's not just a clerical error.  It's untimely.

5            So it's similar to what happened here.  Plaintiff

6   filed a motion to remand in the 3277, the Roosevelt

7   Defendants' removal case, but not in 3450, which was the case

8   removed by codefendants Wyndham and Eighty Eight, L.P.  So we

9   raised this issue in our response which was filed yesterday

10  because their motion had been untimely filed.

11           THE COURT:  Let me pose a couple of familiar

12  principles.  Going back to the shield and the sword, this

13  timing thing is being used as a sword, not so much a shield,

14  because nobody's going to say, wow, what a surprise this all

15  is, right?  The filing was, albeit in the wrong case, it was

16  obviously a related case, right?

17           MR. SMITH:  Yes.

18           THE COURT:  And the Court has the ability to assign

19  an earlier filing if justice so requires, right?

20           MR. SMITH:  So Your Honor --

21           THE COURT:  Would you not agree with that?

22           MR. SMITH:  In circumstances, yes.

23           THE COURT:  Okay, you're going to tell me that the

24  statute says must be filed in 30 days.

25           MR. SMITH:  Yes.

```
 1                THE COURT:  That's what you're going to tell me?

 2                MR. SMITH:  Yes, and --

 3                THE COURT:  Where does it say the Court cannot

 4   exercise some equitable principles?

 5                MR. SMITH:  So there's case law saying that the

 6   Court actually lacks authority once that 30-day window runs to

 7   remand the case.  Even if the Court chooses to, it can't.

 8                THE COURT:  What is the case for that strident view?

 9                MR. SMITH:  We cite multiple cases in our briefing.

10                THE COURT:  Give me your best one.

11                MR. SMITH:  Sure.  I would say the --

12                THE COURT:  It is different than a statute of

13   limitations.

14                MR. SMITH:  Correct.  Correct.  The Roxbury case,

15   Third Circuit case, saying courts do not have the power to

16   remand for procedural defect once the 30-day statutory period

17   lapsed.  So this issue came up in a case we cited a little

18   bit, as well, where the Court said we have power to correct

19   clerical mistakes, but this didn't fall under that umbrella.

20   Plaintiff filed a motion last night asking the Court to

21   retroactively deem its motion timely.  They realized that, you

22   know, the days had passed.

23                THE COURT:  This is all of our favorite nunc pro

24   tunc.

25                MR. SMITH:  So I mean we would respectfully ask for
```

1    at least an opportunity to respond to that in writing.  I just

2    got my hands on it late last night.

3                THE COURT:  How much time do you need?

4                MR. SMITH:  Not a lot.

5                THE COURT:  When I ask that, it is, in part, a trick

6    question.  One of the sacrosanct rules that I grew up with in

7    practice was what Henry Reed said, you may remember this,

8    would call the Goosey Gander Rule.  So if a timing rule is

9    good for the goose, it's going to be good for the gander.  So

10   when you tell me when you're going to file something under the

11   circumstances of this argument, you will want to file on time.

12               MR. SMITH:  Absolutely, Your Honor.

13               THE COURT:  Okay.  So how much time do you need?

14               MR. SMITH:  Ten days.

15               THE COURT:  On this principle?

16               MR. SMITH:  Seven days.  Is there a time Your Honor

17   would suggest?  Seven days?  Five days?

18               THE COURT:  Well, how about -- I'm sorry.

19               MR. SMITH:  Whatever Your Honor picks, we'll get it

20   in on time.

21               THE COURT:  How about by Tuesday, close of business

22   Tuesday?

23               MR. SMITH:  Sure.

24               THE COURT:  Does that run afoul of any major family

25   holiday or birthday, wedding, et cetera?

```
 1                MR. SMITH:  Nope.  That sound good, Your Honor.

 2                THE COURT:  Good.  Sounds good to me.  Anything else

 3     on A.H.'s problems?

 4                MR. SMITH:  No, Your Honor.

 5                THE COURT:  Speaking of problems, although I'm being

 6     a little light on some of the features of this particular

 7     argument, it is clear this is a super serious case involving

 8     extremely serious issues for people, not just the plaintiffs,

 9     of course, but the defendants and the various people involved

10     in the case, and as lawyers and judges, frankly, we all become

11     fairly comfortable with handling serious matters sometimes in

12     a relatively lighthearted way.  Please do not misunderstand

13     me.  I recognize this is a super serious case.  The legal

14     principles are very serious as well.  They're interesting, by

15     the way, but at the root of all of these cases, there are some

16     really very serious allegations if borne out of unspeakable

17     activity.  So Tuesday close of business on this narrow issue.

18                MR. SMITH:  Will do.  Thank you, Your Honor.

19                THE COURT:  Okay.  Other comments, arguments?  Yes,

20     sir -- wait, I've got one here.  Come on up.  Why don't you

21     get in line.

22                MS. FOREMAN:  Melanie Foreman, Marshall Dennehey.

23                Your Honor, I represent Alpha-Centurion Security

24     Inc. --

25                THE COURT:  Right.
```

```
1              MR. SMITH:  -- only in the M.B. lawsuit.
2              THE COURT:  Okay.
3              MR. SMITH:  I don't want to belabor the points that
4    have already been very fully argued to you.  I would simply
5    like to take the opportunity to make a few points to Your
6    Honor.  Since this matter has been removed to the Eastern
7    District, there has already been more efficiency in this
8    lawsuit.  All of the lawsuits, all five of them, have been
9    consolidated before Your Honor which was not the case in State
10   Court.  As I mentioned, I only represent Alpha in the M.B.
11   lawsuit which was the lawsuit that was about to go to trial.
12   The State Court did not rule on any motions in limine in that
13   case, no rulings had been made, and the trial had not started.
14   Well, there had been a deposition.  Nothing had been moved
15   into the record.  So the trial had not, in fact, started.

16             This is indeed a very complex case, but it is not
17   complex because of the law that is at issue.  Plaintiffs'
18   claims sound in negligence and negligent infliction of
19   emotional distress alone.  There is a new statute in
20   Pennsylvania under the human trafficking laws.  Plaintiff does
21   not have a claim under that statute.  If she did, this may be
22   a different case and I would say, yes, it is unique, but as it
23   is, these are negligence claims and this Honorable Court is
24   more than able to determine those matters.

25             Your Honor, Mr. Marion mentioned some things that
```

1    Judge Chan in the Bankruptcy Court had advised.  I was at that

2    hearing and so I'll try to shed a little more light on that.

3            The M.B. lawsuit does remain completely stayed.

4    There are no other hotels within that lawsuit.  Judge Chan has

5    repeatedly advised the parties that she has no intention of

6    permitting any of the debtors' assets going to one potential

7    tort creditor simply because she was first in line.  Judge

8    Chan has every intention of making sure that the alleged

9    victims, including M.B., have equal rights and that none

10   should have priority over the others.  To that end, she's

11   ordered that the claimants as well as the insurers and all of

12   the other codefendants participate in the mandatory mediation

13   with Judge Frank.  Remanding the M.B. matter when the

14   Bankruptcy Court is poised to try to resolve the matter and

15   where it remains stayed would not be in the best interest of

16   the parties and would be contrary to the statutes that my

17   colleagues have already explained to you.

18           Finally, Your Honor, though we are in the Eastern

19   District of Pennsylvania, we are certainly in Philadelphia,

20   and the plaintiff will certainly get a jury of her peers if we

21   remain in Federal Court.

22           Thank you.

23           THE COURT:  Thank you.  Okay, somebody -- yes, sir?

24           MR. MAHONEY:  Your Honor, Harry Mahoney on behalf of

25   American Motor Inns, Inc.  I think you alluded to this at the

1    beginning of the session.  I just wanted to put on the record

2    that we would join in the arguments made by counsel for

3    defendant Wyndham.

4              THE COURT:  Okay.  Thank you.

5              Okay, others, before I go back to the beginning?

6              MR. HEINOLD:  Your Honor, if you want me to respond

7    to Eighty Eight, L.P.'s untimeliness argument.

8              THE COURT:  Why don't you do that now and then we'll

9    keep that separate.

10             MR. HEINOLD:  So, Your Honor, it's undisputed we

11   filed it under the 3277 case which was the Roosevelt action

12   when it was the notice of removal was filed in the 3430

13   action.  However, all the defendants had notice of the filing

14   on time as it was filed on September 1st which was within the

15   30-day period.  The Wyndham Defendants, who are represented by

16   Mr. Heller and other attorneys at his office, were on the

17   attorney record of that 3277 case.  Mr. Smith and the other

18   attorneys who represent Eighty Eight, L.P. were also on that

19   and, in fact, actually entered their appearance in that 3277

20   action the day before it was filed.  Additionally, we sent a

21   copy by e-mail of the time-stamped version on the 2nd and when

22   Mr. Heller notified us on the 14th of -- that it was filed in

23   the wrong action, we immediately within the hour filed it

24   under the appropriate headings.  As was mentioned by Mr.

25   Smith, we filed, and Your Honor acknowledged, we filed a

1   motion nunc pro tunc seeking that the motion be retroactively

2   determined to be timely as there is no prejudice to any of the

3   parties as they were well aware of the issues at hand.  Each

4   have actually filed responses.  I believe Mr. Heller may have

5   responded partially and incorporating his colleagues' other

6   arguments, but these are issues that have been responded to

7   and there has been no prejudice raised as to the timeliness.

8          THE COURT:  Thank you.  When you're falling on your

9   sword, just don't bleed on the carpet, all right?

10          MR. HEINOLD:  Understood, Your Honor.

11          THE COURT:  All right.  I understand.  The point I

12   was making to your opponent there is there is an underpinning.

13   We're all -- I can't remember what the actual quotation is

14   about, but, you know, misfilings, accidental clerical

15   misfilings, if that's what this was, happen to all of us and

16   there but for, you know, whatever goes -- John Branford is the

17   actual quotation.  Ms. Greene, remind me, who was that quote?

18   Is that it?

19          THE LAW CLERK:  I think so.

20          THE COURT:  Yes.  Okay, I think that issue which

21   you're going to focus on, folks, is going to be 30 days and 30

22   days, and that's all it needs, period, end of story, but I'll

23   leave that to you all to squabble about.

24          Ms. Marks, do you want to come back?

25          MS. MARKS:  Yes, Your Honor.  I'll be brief.

1            THE COURT:  Okay.

2            MS. MARKS:  Your Honor, certainly this Court is

3    capable of hearing personal injury matters.  I never meant to

4    suggest otherwise.

5            THE COURT:  No, no, please, I didn't take it that

6    way.

7            MS. MARKS:  My only point, Your Honor, is that these

8    are novel applications of state law.

9            THE COURT:  Isn't the statute a part of

10   anybody's claim specifically or not?

11           MS. MARKS:  It is not, Your Honor.  Initially, M.B.

12   filed her claim, there were common law negligence claims as

13   well as a claim under the Pennsylvania Human Trafficking Law,

14   however, it was determined that that law was not in effect at

15   the time M.B. was sex trafficked so there was an amendment of

16   the Complaint.

17           Your Honor, we are here under pretenses by the

18   Roosevelt Defendants to drag these cases out of Philadelphia

19   Court of Common Pleas.  The plaintiffs have a right to

20   determine where their cases should be heard.  They chose

21   Philadelphia.  The citizens of Philadelphia are being deprived

22   of the opportunity to sit in judgment of the Roosevelt Inn and

23   other defendants involving hotels in Philadelphia County.  The

24   Roosevelt Defendants are citizens of Philadelphia County.

25   Don't they want a jury made up of their peers?  Defendants

1    have sent in a playbook for other defendants to file to

2    manipulate the Court to deprive plaintiffs of their place and

3    their chosen forum.

4            THE COURT:  Would somebody be able to argue that if

5    the -- if a large settlement demand is what throws somebody

6    into bankruptcy, that there is a chilling effect of having

7    settlement discussions?

8            MS. MARKS:  Your Honor, my --

9            THE COURT:  What I heard was you dropped a big

10   demand on them, they became concerned because the number was

11   so high.  If that's true, does that mean that every time

12   somebody gets a high demand that might be in excess of what

13   they think their assets are, they're going to scoot over to

14   Bankruptcy Court?  And where's the good policy in that if

15   people are in favor of settlements?

16           MS. MARKS:  Well, Your Honor, I don't think it's a

17   good policy if debtors or defendants like the Roosevelt

18   Defendants get to use the Bankruptcy Court proceedings as a

19   shield from liability.  I don't think that would be a good

20   outcome.  Our clients, you know, their objective is to expose

21   the hotels where they were sexually exploited and --

22           THE COURT:  Well, let me ask the question that

23   actually does occur to me and here the issue is, is there not

24   fundamentally at least some difference that I'm going to get

25   to in a minute between the Federal Court in the bankruptcy

1    setting and State Court?  What if a debtor has so little money

2    or in the way of assets has so little assets that it cannot

3    defend itself in State Court, but they can operate if they go

4    into the bankruptcy world?  Are they not prejudiced

5    fundamentally by being made to defend without any assets and

6    the ability to defend in State Court?  How can they put up a

7    fight if they have no money and no assets?

8              MS. MARKS:  Your Honor, I think that the point is

9    the Bankruptcy Court can't determine the claims.  The claims

10   have to be determined --

11             THE COURT:  Well, no, that's why they get the

12   protection of the bankruptcy and they stay it while they kind

13   of collect themselves.

14             MS. MARKS:  But plaintiffs' claims don't go away.

15   They have to be determined.  There has to be some type of

16   judgment or verdict and why we're here today is the

17   determination as to where that should be held.

18             THE COURT:  But there's also a when aspect to what

19   you're doing here as well because the notion is that you want

20   to be remanded to State Court and get back up and running

21   where you were going to be up and running.

22             MS. MARKS:  Yes, Your Honor.  Yes.

23             THE COURT:  But what happens if, as a result of all

24   this, and there's a lack of resolution on the insurance

25   coverage, you have the Roosevelt Defendants basically left

1   defenseless because they have no wherewithal to defend

2   themselves.  I'm posing this as a theoretical question and

3   does that not mean they should be allowed to stay in

4   Bankruptcy Court, stay the claim against them, and there we

5   have it?

6           MS. MARKS:  Well, Your Honor, the Roosevelt

7   Defendants are being defended by counsel which is being paid

8   for by their insurance companies so I don't think that we have

9   that situation and it's the same -- what Your Honor presents

10  would be the same whether in State or Federal Court.  The

11  Bankruptcy Court can't determine the plaintiffs' lawsuits.

12  They have --

13          THE COURT:  No, but the Bankruptcy Court can stay

14  the proceedings.

15          MS. MARKS:  And they have been stayed as to the

16  Roosevelt debtors.

17          THE COURT:  Okay.

18          MS. MARKS:  Your Honor, just one last point.  These

19  cases are factually similar to the Boy Scout case where in

20  that case, the plaintiff filed in State Court, it was removed

21  to Federal Court as a result of a bankruptcy, and in that

22  court, the court of this District remanded those cases back to

23  State Court.  And I would ask that Your Honor do the same and

24  remand M.B, C.A., B.H. and K.R.'s cases back to State Court.

25  Thank you.

1          THE COURT:  Anything else from anybody?  Now would

2    be the time if you're going to pop up and say something more.

3          Yes, sir?

4          MR. ELIADES:  Your Honor, I just have one short

5    point.

6          THE COURT:  Sure.

7          MR. ELIADES:  On the issue of the effect of Federal

8    Court jurisdiction over the litigations on the administration

9    of the debtor's bankruptcy estates, as Your Honor's been

10   advised, the Bankruptcy Court has ordered a mediation of

11   claims involving the debtors and parties related to the

12   debtors in the Bankruptcy Court.  That order leaves open the

13   possibility for the Bankruptcy Court to direct additional

14   parties to mediate these litigations.  Wyndham and

15   other nondebtor --

16         THE COURT:  They can only order people if those

17   other parties have some kind of a crossclaim, existing

18   crossclaim against them, right?  I mean they can't just --

19         MR. ELIADES:  And there's the jurisdiction issue,

20   Judge, which I think I'm getting to.  Wyndham and other

21   nondebtor parties submitted statements to Your Honor

22   consenting to -- at least the Wyndham defendants did --

23   consenting to participate in a global mediation, whether that

24   mediation occurs in the Bankruptcy Court or whether it occurs

25   in the District Court, and to the extent that Your Honor would

1    choose to retain jurisdiction over these litigations, it is

2    within Your Honor's power to refer the matters to the

3    Bankruptcy Court for mediation only, to conduct a partial

4    referral, which would have an impact on the administration of

5    the debtor's bankruptcy.

6         Thank you, Judge.

7         THE COURT:  Yes, sir.

8         MR. MARION:  Your Honor, I just wanted to add to

9    remind Your Honor that Ms. Marks had indicated that there was

10    no allegation here of a bad faith bankruptcy filing by my

11    clients and that the steps my clients have taken both to file

12    the bankruptcy and to remove to this Court were in accordance

13    with the statutory authority granted by Congress.

14         Thank you.

15         THE COURT:  Now's the time if anybody else wants to

16    say anything.  Okay, we're adjourned.  Thanks very much.

17         Actually, before I adjourn, I gave counsel after the

18    negotiations and until Tuesday close of business to address

19    further the filing and timing of the A.H. motion to remand.

20    It is my habit to give counsel after an argument that's had a

21    fair amount of give and take and a number of people and then

22    the Court asking questions to give counsel the opportunity to

23    supplement your papers.  When I say supplement, I really mean

24    supplement.  I don't mean to repeat what you've already said.

25    I'll give you all that opportunity as well under certain

1  rules.  One of those rules is that you can file -- you can

2  submit no more than seven one-sided pages, double-spaced type

3  large enough for a normal human being to read, no footnotes,

4  no appendices, no attachments, and one-inch margins all around

5  and it must be seven pages that includes the caption that you

6  use and your signature line.  Is there anything ambiguous

7  about what I mean about seven pages?  Okay, I really would

8  confine yourself to anything that opposing counsel raised that

9  you might want to nail down, anything that the Court asks that

10  you want to discuss or address, and get that to me by the

11  close of business on Tuesday which would be, just to be

12  precise, Tuesday is October the 5th, close of business, my

13  close of business -- well, close of business is 5 o'clock.

14  Okay?  If that really causes somebody some serious problems in

15  terms of the timing, let me know, but you all have so many

16  colleagues and capabilities that I'm sure that you can make

17  the best deadline.

18          Again, my apologies for holding you up with that

19  other case, but I hope you found it at least somewhat

20  interesting and thanks very much.

21          We're adjourned.  Bye.

22          MS. MARKS:  Thank you, Your Honor.

23              (Court adjourned)

24

25

1                      C E R T I F I C A T E
2
3        I certify that the foregoing is a correct transcript
4   from the record of the proceedings in the above-entitled
5   matter.
6                                  *Kathleen Feldman*
7
8                       _____
9                       Kathleen Feldman, CSR, CRR, RPR, CM
                        Official Court Reporter
10
11  Date: ____October 8, 2021____
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# $

**$24** [1] - 29:22
**$25** [1] - 29:19

# 0

**07102** [1] - 5:8

# 1

**10** [2] - 34:19, 34:20
**1012** [1] - 6:22
**10b-5** [1] - 8:10
**10th** [1] - 5:8
**11** [3] - 29:21, 40:16, 46:5
**1334** [3] - 45:23, 45:24, 46:2
**1334(b** [1] - 46:2
**1334(c)(1)** [1] - 13:1
**14** [1] - 18:12
**1447** [1] - 54:19
**1452** [3] - 43:11, 51:4, 54:20
**1452(a** [1] - 45:24
**1452(a)** [1] - 45:24
**1452(b** [1] - 12:25
**1453** [1] - 50:24
**14th** [1] - 61:22
**15** [2] - 22:2, 24:23
**1500** [3] - 4:19, 5:19, 6:19
**1525** [1] - 4:15
**157(b** [1] - 38:17
**157(b)(5** [2] - 34:7, 44:17
**1600** [1] - 6:14
**1601** [1] - 6:3
**1650** [3] - 4:22, 5:11, 6:7
**170** [1] - 7:3
**17th** [1] - 16:1
**18** [1] - 24:23
**18th** [1] - 5:4
**19102** [3] - 4:16, 4:19, 5:20
**19103** [10] - 4:23, 5:4, 5:12, 5:16, 5:23, 6:4, 6:7, 6:11, 6:15, 6:19
**19106** [2] - 7:4, 7:10
**19477** [1] - 6:23
**1st** [1] - 61:14

# 2

**20** [1] - 16:24
**2000** [1] - 5:15
**2001** [1] - 5:23
**2005** [2] - 6:10, 51:1
**2009** [1] - 50:20
**2017** [1] - 16:10
**2019** [1] - 39:10
**2021** [1] - 4:10
**21-2984** [2] - 1:7, 8:16
**21-3218** [1] - 1:13
**21-3222** [1] - 1:20
**21-3225** [1] - 2:6
**21-3277** [1] - 2:12
**21-3392** [1] - 2:19
**21-3396** [1] - 3:6
**21-3401** [1] - 3:13
**21-3430** [1] - 3:20
**21-3914** [1] - 4:5
**215)779-5578** [1] - 7:10
**2300** [1] - 5:15
**25** [2] - 27:11, 39:11
**2600** [1] - 6:10
**28** [1] - 12:25, 13:1, 34:7, 43:11, 44:17, 45:23, 50:24, 51:4
**2800** [1] - 6:7
**29** [1] - 4:10
**2984** [1] - 8:18
**2nd** [1] - 61:21

# 3

**30** [3] - 55:24, 62:21
**30-day** [6] - 54:18, 54:19, 54:21, 56:6, 56:16, 61:15
**30th** [1] - 28:5
**31** [1] - 54:23
**3218** [1] - 8:18
**3222** [1] - 8:18
**3225** [1] - 8:18
**3277** [5] - 8:19, 55:6, 61:11, 61:17, 61:19
**3392** [1] - 8:18
**3396** [1] - 8:18
**3400** [1] - 6:3
**3401** [1] - 8:18
**3430** [2] - 8:18, 61:12
**3450** [1] - 55:7
**3810** [1] - 5:23
**38th** [1] - 5:19
**3914** [1] - 8:19

# 4

**40** [1] - 16:3
**400** [1] - 7:4
**4200** [8] - 5:24, 6:15, 11:7, 11:8, 11:19, 11:20

# 5

**5** [1] - 69:13
**5000** [1] - 5:11
**52nd** [1] - 4:22
**5th** [1] - 69:12

# 6

**601** [1] - 7:9
**6th** [1] - 34:19

# 7

**7** [1] - 40:16

# 8

**8th** [1] - 28:1

# A

**A.H** [18] - 2:9, 3:17, 4:2, 4:24, 6:8, 6:16, 9:21, 11:13, 11:20, 24:1, 41:24, 43:13, 43:19, 44:25, 49:24, 53:25, 54:8, 68:19
**A.H.'s** [1] - 58:3
**ability** [2] - 55:18, 65:6
**able** [2] - 59:24, 64:4
**above-entitled** [1] - 70:4
**absolutely** [5] - 14:25, 19:19, 26:3, 48:8, 57:12
**abstain** [1] - 30:25
**abstention** [12] - 13:1, 13:3, 18:22, 19:4, 38:14, 38:16, 44:24, 49:20, 50:9, 51:7, 52:5, 53:19
**accidental** [1] - 62:14
**accomplish** [1] - 13:2
**accordance** [1] -
68:12
**according** [1] - 47:13
**accordingly** [1] - 41:25
**accountable** [1] - 20:14
**accurate** [2] - 16:23, 32:4
**accusations** [1] - 14:11
**achieve** [1] - 28:17
**acknowledged** [1] - 61:25
**Act** [1] - 50:25
**action** [12] - 26:4, 35:24, 45:25, 47:14, 47:16, 51:1, 51:6, 53:3, 61:11, 61:13, 61:20, 61:23
**Action** [1] - 50:25
**ACTION** [10] - 1:4, 1:10, 1:17, 2:3, 2:9, 2:16, 3:3, 3:10, 3:17, 4:2
**action's** [1] - 46:1
**actions** [8] - 12:24, 16:19, 27:17, 43:8, 43:16, 44:19, 47:23, 50:25
**activity** [1] - 58:17
**actual** [3] - 28:8, 62:13, 62:17
**Adam** [1] - 11:15
**aDAM** [1] - 6:10
**add** [3] - 8:5, 54:10, 68:8
**addition** [1] - 47:21
**additional** [7] - 10:17, 16:6, 21:24, 25:25, 50:14, 54:7, 67:13
**additionally** [1] - 61:20
**address** [6] - 39:1, 44:12, 51:10, 52:22, 68:18, 69:10
**adjourn** [1] - 68:17
**adjourned** [3] - 68:16, 69:21, 69:23
**adjudication** [1] - 34:11
**administer** [1] - 28:22
**administered** [3] - 26:6, 32:6, 46:19
**administering** [1] - 32:11
**administration** [20] - 19:14, 19:16, 26:24, 31:18, 31:21, 32:18,
33:1, 34:1, 34:4, 34:9, 35:9, 37:21, 37:23, 42:13, 47:17, 48:6, 52:6, 52:7, 67:8, 68:4
**administrative** [3] - 28:24, 42:18, 43:2
**admittedly** [1] - 49:19
**advantage** [1] - 44:10
**adverse** [2] - 40:24, 43:4
**advise** [1] - 36:7
**advised** [3] - 60:1, 60:5, 67:10
**affect** [4] - 43:8, 48:1, 48:5, 48:6
**affecting** [1] - 43:4
**affidavit** [1] - 21:24
**affiliated** [1] - 25:24
**afoul** [1] - 57:24
**afternoon** [19] - 9:6, 9:16, 9:20, 10:5, 10:9, 10:15, 10:16, 11:2, 11:6, 11:9, 11:12, 11:15, 11:18, 11:21, 12:1, 12:4, 12:7, 23:25, 25:18
**aggressively** [2] - 13:12, 16:20
**agree** [7] - 19:7, 23:7, 30:24, 36:7, 51:12, 51:14, 55:21
**agreed** [2] - 21:17, 27:23
**ahead** [4] - 12:22, 13:7, 21:10, 44:13
**ahold** [1] - 47:5
**al** [10] - 1:7, 1:13, 1:20, 2:6, 2:12, 2:19, 3:6, 3:14, 3:21, 4:5
**albeit** [2] - 45:1, 55:15
**allegation** [3] - 14:1, 14:2, 68:10
**allegations** [1] - 58:16
**alleged** [4] - 20:21, 42:5, 52:17, 60:8
**allocated** [2] - 42:10, 47:24
**allocating** [1] - 34:1
**allow** [1] - 29:7
**allowed** [1] - 66:3
**alluded** [2] - 36:16, 60:25
**almost** [1] - 47:4
**alone** [1] - 59:19
**Alpha** [9] - 6:8, 6:11, 10:11, 11:13, 11:17,

27:13, 27:14, 58:23, 59:10

**Alpha-Centurian** [3] - 6:11, 11:13, 11:17

**Alpha-Centurion** [4] - 6:8, 10:11, 27:13, 58:23

**alter** [3] - 26:22, 47:15, 47:20

**alternative** [1] - 12:25

**ambiguous** [1] - 69:6

**amendment** [1] - 63:15

**America** [1] - 31:1

**American** [6] - 6:4, 11:11, 17:1, 18:14, 18:15, 60:25

**amount** [2] - 27:7, 68:21

**amounts** [1] - 27:1

**analogy** [1] - 40:12

**analyzing** [1] - 24:2

**Anders** [1] - 17:20

**Andrew** [1] - 9:20

**ANDREW** [1] - 4:22

**answer** [2] - 44:1, 49:11

**anticipate** [2] - 21:5, 28:6

**apace** [1] - 49:9

**apart** [1] - 48:4

**Apha** [1] - 5:16

**Apha-Centurion** [1] - 5:16

**apologies** [1] - 69:18

**appearance** [2] - 21:22, 61:19

**aPPEARANCES** [1] - 7:1

**APPEARANCES** [3] - 4:13, 5:1, 6:1

**appendices** [1] - 69:4

**applicable** [1] - 52:10

**application** [2] - 20:13, 37:5

**applications** [2] - 19:11, 63:8

**applied** [1] - 46:22

**applies** [2] - 54:18, 54:20

**apply** [3] - 19:1, 31:7, 37:2

**applying** [1] - 52:13

**appointed** [1] - 27:24

**appropriate** [2] - 44:16, 61:24

**area** [2] - 20:6, 36:20

**arguable** [1] - 18:3

**arguably** [1] - 45:1

**argue** [17] - 8:4, 21:6, 24:8, 26:25, 30:12, 31:12, 37:5, 41:16, 45:5, 45:7, 45:10, 45:13, 48:13, 50:7, 53:24, 54:4, 64:4

**argued** [3] - 21:16, 29:9, 59:4

**arguing** [3] - 8:3, 23:23, 41:25

**argument** [16] - 8:14, 12:13, 12:16, 12:19, 13:24, 14:7, 23:7, 45:3, 50:10, 50:18, 50:19, 51:6, 57:11, 58:7, 61:7, 68:20

**argumentative** [1] - 47:4

**arguments** [8] - 12:15, 14:21, 23:16, 48:15, 49:25, 58:19, 61:2, 62:6

**arise** [1] - 19:24

**arising** [2] - 46:4, 46:5

**arranged** [1] - 8:6

**articles** [1] - 30:20

**Ashoka** [2] - 7:5, 12:8

**aside** [1] - 8:14

**aspect** [1] - 65:18

**assert** [2] - 42:7, 50:2

**asserted** [2] - 42:6, 50:13

**assertion** [1] - 16:22

**assets** [12] - 26:12, 27:4, 27:16, 31:2, 38:4, 40:20, 60:6, 64:13, 65:2, 65:5, 65:7

**assign** [1] - 55:18

**assigned** [2] - 16:1, 29:14

**assignment** [1] - 17:18

**assume** [1] - 9:1

**assure** [1] - 9:3

**attached** [2] - 21:25, 30:20

**attachments** [1] - 69:4

**attendance** [1] - 9:11

**attended** [1] - 30:6

**attorney** [1] - 61:17

**attorneys** [2] - 61:16, 61:18

**authority** [2] - 56:6, 68:13

**authorize** [1] - 49:13

**automatic** [2] - 19:1, 40:15

**Avenue** [1] - 18:16

**avoid** [3] - 30:4, 30:12, 40:25

**awarded** [1] - 42:8

**aware** [3] - 35:20, 45:18, 62:3

**B**

**B.H** [23] - 2:3, 3:3, 4:16, 4:20, 6:11, 6:20, 6:23, 7:5, 9:8, 9:17, 11:17, 12:3, 12:6, 12:9, 12:23, 17:19, 18:12, 41:24, 43:13, 43:19, 44:20, 49:24, 66:24

**background** [2] - 18:4, 18:7

**bad** [9] - 13:24, 14:6, 14:7, 14:11, 14:22, 15:1, 33:14, 54:23, 68:10

**bankrupt** [1] - 26:24

**bankruptcy** [76] - 13:19, 14:12, 14:21, 16:8, 16:11, 16:14, 19:14, 19:16, 19:18, 19:20, 22:22, 22:23, 26:3, 26:5, 26:7, 27:21, 28:14, 29:3, 29:4, 29:15, 29:16, 29:20, 30:2, 31:5, 31:19, 31:22, 31:24, 31:25, 32:4, 32:5, 32:6, 32:13, 32:18, 33:1, 33:4, 33:11, 34:5, 34:11, 35:8, 37:8, 37:10, 37:18, 37:21, 38:1, 38:2, 38:4, 39:3, 39:7, 39:16, 39:25, 40:19, 41:10, 42:14, 43:9, 46:5, 46:11, 46:17, 46:19, 47:18, 48:20, 48:22, 52:7, 53:16, 54:20, 64:6, 64:25, 65:4, 65:12, 66:21, 67:9, 68:5, 68:10, 68:12

**Bankruptcy** [23] - 18:25, 19:17, 19:21, 22:23, 33:5, 34:7, 38:17, 39:18, 40:10, 41:5, 60:1, 60:14,

64:14, 64:18, 65:9, 66:4, 66:11, 66:13, 67:10, 67:12, 67:13, 67:24, 68:3

**bar** [1] - 28:2

**barely** [1] - 40:4

**BARRETT** [1] - 4:21

**based** [1] - 38:20

**beat** [1] - 47:8

**became** [2] - 17:20, 64:10

**become** [2] - 48:21, 58:10

**BEFORE** [1] - 4:11

**begin** [1] - 16:14

**beginning** [2] - 61:1, 61:5

**behalf** [21] - 9:7, 10:1, 10:11, 10:17, 11:3, 11:7, 11:10, 11:16, 11:22, 12:3, 12:5, 12:8, 12:15, 12:19, 23:24, 25:7, 25:19, 41:17, 41:23, 54:7, 60:24

**behavior** [1] - 14:23

**behind** [1] - 12:11

**belabor** [1] - 59:3

**belong** [2] - 13:6, 15:10

**belongs** [1] - 36:24

**Bendesky** [1] - 9:21

**BENDESKY** [1] - 4:21

**bENNETT** [1] - 6:17

**Bennett** [1] - 12:2

**Berks** [1] - 53:10

**best** [4] - 25:12, 56:10, 60:15, 69:17

**bethlehem** [1] - 6:22

**better** [6] - 9:2, 32:18, 32:23, 34:4, 34:12, 35:8

**between** [2] - 15:22, 64:25

**beyond** [2] - 48:18, 53:1

**BEZAR** [2] - 4:15, 11:2

**Bezar** [1] - 11:3

**bifurcation** [1] - 48:2

**big** [1] - 64:9

**binding** [1] - 48:5

**birthday** [1] - 57:25

**bit** [6] - 8:24, 24:21, 26:21, 31:7, 33:21, 56:18

**BLANK** [1] - 5:2

**Blank** [4] - 10:1, 21:22, 21:23, 25:19

**bleed** [1] - 62:9

**Blvd** [3] - 5:24, 6:14, 6:16

**borne** [1] - 58:16

**Boulevard** [5] - 11:7, 11:20, 18:14, 18:18, 27:6

**Boy** [7] - 19:8, 19:9, 22:9, 22:14, 22:19, 31:1, 66:19

**brand** [2] - 18:18, 18:19

**Branford** [1] - 62:16

**breaking** [1] - 23:7

**breakpoint** [1] - 23:5

**Bricklin** [1] - 12:2

**BRICKLIN** [1] - 6:17

**brief** [7] - 26:4, 34:8, 38:2, 46:9, 54:19, 54:24, 62:25

**briefed** [2] - 51:7, 51:10

**briefing** [2] - 52:22, 56:9

**bring** [3] - 18:8, 36:5, 42:4

**broad** [2] - 19:5, 46:7, 46:22

**broadest** [1] - 46:10

**brought** [2] - 13:17, 20:1

**Brown** [4] - 50:19, 50:21, 50:22, 50:23

**burden** [4] - 45:20, 49:19, 49:23, 52:3

**business** [12] - 20:14, 40:18, 41:2, 41:4, 41:12, 57:21, 58:17, 68:18, 69:11, 69:12, 69:13

**BY** [16] - 4:14, 4:18, 4:22, 5:2, 5:7, 5:11, 5:14, 5:18, 5:22, 6:3, 6:6, 6:10, 6:13, 6:18, 6:22, 7:3

**bye** [1] - 69:21

**Byers** [2] - 10:1, 41:7

**BYERS** [2] - 5:3, 35:23

**byrne** [1] - 7:9

**C**

**C.A** [23] - 1:17, 2:16, 4:16, 4:20, 6:11, 6:20, 6:23, 7:5, 9:7, 9:17, 11:17, 12:3, 12:6, 12:9, 12:23, 17:19, 18:12, 41:23, 43:13,

43:19, 44:20, 49:24, 66:24

**C.A.T** [1] - 7:11
**cannot** [5] - 19:17, 23:14, 33:6, 56:3, 65:2
**capabilities** [1] - 69:16
**capable** [2] - 52:13, 63:3
**caption** [1] - 69:5
**Captions** [1] - 8:18
**career** [1] - 22:3
**Carpenter** [1] - 17:22
**carpet** [1] - 62:9
**carrier's** [1] - 29:17
**case** [96] - 5:16, 6:8, 6:16, 8:6, 8:11, 8:15, 11:14, 11:20, 13:20, 14:15, 15:11, 15:25, 16:9, 17:4, 17:16, 18:4, 19:9, 19:16, 19:25, 22:9, 22:10, 22:11, 22:14, 22:17, 22:19, 22:22, 22:23, 23:15, 24:23, 25:3, 25:5, 26:5, 27:11, 27:21, 29:10, 30:4, 30:23, 31:4, 31:9, 32:21, 34:11, 36:24, 37:8, 37:9, 37:16, 37:18, 37:19, 37:20, 37:21, 38:1, 38:18, 39:12, 40:23, 41:25, 43:14, 46:8, 46:11, 46:14, 46:16, 46:17, 49:8, 50:19, 50:20, 52:13, 52:22, 53:16, 54:8, 54:17, 54:19, 54:21, 54:23, 55:7, 55:15, 55:16, 56:5, 56:7, 56:8, 56:14, 56:15, 56:17, 58:7, 58:10, 58:13, 59:9, 59:13, 59:16, 59:22, 61:11, 61:17, 66:19, 66:20, 69:19
**cases** [111] - 6:11, 6:20, 6:23, 7:5, 8:19, 8:24, 9:2, 11:17, 13:6, 13:9, 13:10, 13:11, 13:13, 13:14, 13:17, 15:10, 16:18, 16:19, 16:22, 17:3, 17:12, 17:15, 17:20, 18:7, 18:9, 18:10, 18:24, 19:3, 19:6, 19:15, 19:17, 19:19, 20:8, 20:12, 20:18, 20:20, 21:2, 21:18, 22:4,

22:7, 22:16, 22:18, 22:24, 22:25, 26:2, 26:21, 26:22, 27:2, 27:3, 27:13, 27:23, 28:20, 28:22, 28:23, 28:25, 30:6, 30:15, 31:3, 31:22, 32:9, 32:20, 33:15, 33:17, 34:13, 34:23, 36:17, 36:19, 37:3, 37:10, 38:1, 38:11, 38:21, 39:12, 40:13, 40:15, 42:1, 42:3, 42:6, 42:9, 42:23, 43:23, 44:22, 45:17, 46:6, 46:20, 46:24, 48:12, 49:12, 49:17, 49:18, 49:23, 50:7, 50:23, 53:6, 53:7, 53:18, 54:22, 54:25, 56:9, 58:15, 63:18, 63:20, 66:19, 66:22, 66:24
**cash** [1] - 27:7
**casted** [1] - 30:21
**CATHERINE** [1] - 6:18
**Catherine** [1] - 12:2
**caused** [1] - 40:8
**causes** [1] - 69:14
**Center** [4] - 5:8, 5:19, 6:14, 6:18
**centralize** [1] - 34:9
**Centurian** [3] - 6:11, 11:13, 11:17
**Centurion** [5] - 5:16, 6:8, 10:11, 27:13, 58:23
**certain** [3] - 35:24, 41:22, 68:25
**certainly** [16] - 9:4, 15:14, 20:5, 20:8, 21:7, 22:18, 28:21, 29:12, 30:1, 32:5, 37:2, 41:1, 51:9, 60:19, 60:20, 63:2
**certify** [1] - 70:3
**cetera** [2] - 15:21, 57:25
**chains** [1] - 18:20
**challenged** [1] - 22:2
**challenges** [1] - 43:2
**Chan** [7] - 18:25, 27:20, 28:10, 35:10, 60:1, 60:4, 60:8
**chance** [2] - 9:13, 24:7
**change** [3] - 14:17, 16:15, 32:2
**Chapter** [2] - 40:16

**characterize** [1] - 47:6
**Charles** [4] - 9:25, 11:18, 25:7, 25:18
**CHARLES** [2] - 5:2, 6:13
**cherry** [1] - 51:2
**Cherry** [1] - 5:4
**children** [1] - 13:16
**chilling** [1] - 64:6
**choice** [2] - 15:3, 16:17
**choose** [2] - 43:24, 68:1
**chooses** [1] - 56:7
**chose** [6] - 13:12, 15:11, 18:10, 42:3, 43:22, 63:20
**chosen** [1] - 64:3
**Circuit** [6] - 46:9, 46:12, 47:14, 50:20, 52:12, 56:15
**circuit** [1] - 46:21
**circumstances** [3] - 50:8, 55:22, 57:11
**cite** [4] - 50:19, 54:19, 54:21, 56:9
**cited** [8] - 34:7, 38:2, 46:15, 46:19, 46:20, 46:25, 54:23, 56:17
**citizens** [3] - 13:13, 63:21, 63:24
**City** [1] - 18:16
**civil** [13] - 1:4, 1:10, 1:17, 2:3, 2:9, 2:16, 3:3, 3:10, 3:17, 4:2, 12:24, 46:1, 46:4
**claim** [9] - 26:11, 26:13, 45:25, 51:5, 59:21, 63:10, 63:12, 63:13, 66:4
**claimants** [2] - 40:22, 60:11
**claims** [38] - 19:24, 20:6, 20:7, 20:9, 28:2, 28:3, 29:7, 30:3, 33:6, 36:17, 37:23, 42:7, 42:8, 42:24, 43:3, 43:11, 43:13, 43:17, 43:20, 47:20, 48:3, 49:3, 49:4, 50:5, 50:12, 50:15, 51:3, 51:14, 59:18, 59:23, 63:12, 65:9, 65:14, 67:11
**class** [2] - 50:25, 51:1
**Class** [1] - 50:25
**clear** [5] - 14:12, 19:1, 39:12, 49:19,

58:7
**clearly** [3] - 27:17, 38:7, 47:25
**clearly-related** [1] - 27:17
**clears** [1] - 47:14
**clerical** [3] - 55:4, 56:19, 62:14
**Clerk** [1] - 8:1
**clerk** [1] - 9:4
**CLERK** [4] - 24:13, 24:15, 24:19, 62:19
**clerks** [1] - 16:24
**client** [6] - 27:4, 27:15, 31:2, 36:8, 40:15, 49:12
**clients** [12] - 13:8, 27:10, 29:6, 30:1, 30:21, 39:6, 40:8, 40:19, 49:7, 64:20, 68:11
**clients'** [4] - 17:6, 27:21, 30:17, 32:6
**clock** [2] - 17:9, 41:9
**close** [9] - 33:16, 53:17, 57:21, 58:17, 68:18, 69:11, 69:12, 69:13
**closer** [1] - 39:7
**CM** [2] - 7:8, 70:9
**cocounsel** [1] - 11:23
**code** [1] - 40:10
**Code** [4] - 34:7, 38:18, 40:10, 41:5
**codefendants** [6] - 25:3, 43:15, 44:2, 44:10, 55:8, 60:12
**Cohen** [3] - 14:16, 14:18, 17:17
**COLEMAN** [1] - 5:14
**colleague** [3] - 9:25, 10:10, 30:5
**colleagues** [2] - 60:17, 69:16
**colleagues'** [1] - 62:5
**collect** [2] - 32:16, 65:13
**collective** [1] - 31:24
**combined** [2] - 27:11, 40:6
**come-back-to-court** [1] - 8:5
**comfortable** [1] - 58:11
**coming** [2] - 8:8, 51:24
**comity** [4] - 22:8, 31:6, 37:6, 53:5

**commence** [1] - 43:23
**commenced** [4] - 13:11, 13:20, 22:17, 29:10
**comments** [1] - 58:19
**Common** [12] - 15:4, 17:22, 18:5, 18:9, 22:6, 22:15, 31:5, 37:9, 39:9, 43:15, 53:13, 63:19
**common** [3] - 19:25, 20:13, 63:12
**companies** [1] - 66:8
**company** [1] - 27:14
**Company** [1] - 25:21
**Complaint** [1] - 63:16
**complete** [1] - 17:4
**completely** [1] - 60:3
**completion** [1] - 16:21
**complex** [7] - 20:10, 21:6, 21:17, 21:18, 22:4, 59:16, 59:17
**complexity** [1] - 21:19
**complicated** [1] - 33:25
**conceivable** [1] - 46:25
**conceivably** [3] - 26:6, 37:25, 46:18
**concept** [2] - 34:3, 46:13
**concern** [1] - 39:1
**concerned** [2] - 15:8, 49:5, 64:10
**concerns** [3] - 30:18, 37:13, 37:16
**conclude** [1] - 23:19
**concluded** [1] - 23:6
**conclusion** [2] - 8:11, 68:3
**conduct** [2] - 44:18, 68:3
**conducting** [1] - 27:25
**conference** [2] - 27:25, 39:8
**conferences** [1] - 28:8
**confine** [1] - 69:8
**Congress** [3] - 33:4, 44:9, 68:13
**conjures** [1] - 17:24
**connection** [3] - 22:22, 46:22, 50:18
**consented** [1] - 38:11

**consenting** [2] - 67:22, 67:23

**consider** [2] - 30:1, 30:25

**consolidate** [1] - 48:10

**consolidated** [3] - 28:23, 55:1, 59:9

**consolidation** [1] - 34:17

**CONT** [10] - 1:24, 2:1, 2:23, 3:1, 4:1, 5:1, 5:25, 6:1, 6:25, 7:1

**cONT** [2] - 3:24, 4:25

**contains** [1] - 46:9

**contend** [3] - 27:16, 31:8, 37:22

**context** [1] - 24:22

**continue** [6] - 14:15, 16:15, 21:18, 30:10, 40:18, 41:12

**continuing** [1] - 29:8

**continuum** [1] - 14:22

**contrary** [4] - 16:21, 29:9, 33:15, 60:16

**contribution** [3] - 42:8, 46:23, 47:19

**controlling** [1] - 20:4

**coordinate** [2] - 28:22, 29:6

**coordinated** [1] - 35:16

**coordination** [1] - 35:19

**copy** [1] - 61:21

**cords** [1] - 9:13

**cORPORATION** [4] - 2:19, 3:6, 3:14, 3:21

**Corporation** [1] - 10:6

**correct** [8] - 28:12, 52:16, 54:18, 55:3, 56:14, 56:18, 70:3

**correctly** [2] - 14:21, 46:6

**counsel** [29] - 9:8, 16:4, 21:21, 23:23, 24:2, 24:15, 29:10, 29:17, 29:21, 30:9, 32:7, 35:25, 36:8, 41:8, 42:12, 45:9, 45:13, 46:15, 46:25, 48:19, 54:10, 61:2, 66:7, 68:17, 68:20, 68:22, 69:8

**counsels** [1] - 38:5

**count** [1] - 24:23

**countless** [1] - 17:23

**County** [5] - 13:13, 53:10, 63:23, 63:24

**couple** [1] - 55:11

**course** [3] - 10:23, 15:17, 58:9

**Court** [115] - 7:8, 9:2, 13:6, 13:9, 13:17, 15:4, 15:10, 15:23, 16:19, 17:11, 17:22, 18:5, 18:9, 18:25, 19:17, 19:20, 19:21, 20:1, 21:7, 21:8, 21:17, 22:6, 22:10, 22:11, 22:12, 22:13, 22:14, 22:15, 22:23, 24:3, 26:2, 28:25, 31:5, 32:17, 32:19, 33:5, 33:14, 33:18, 34:22, 36:25, 37:9, 37:11, 37:14, 37:15, 37:20, 38:19, 39:8, 39:18, 42:23, 42:24, 43:1, 43:4, 43:4, 43:14, 43:15, 43:23, 44:23, 45:19, 45:21, 46:1, 46:2, 46:3, 48:12, 49:8, 50:5, 52:8, 53:13, 53:21, 55:3, 55:18, 56:3, 56:6, 56:7, 56:18, 56:20, 59:10, 59:12, 59:23, 60:1, 60:14, 60:21, 63:2, 63:19, 64:2, 64:14, 64:18, 64:25, 65:1, 65:3, 65:6, 65:9, 65:20, 66:4, 66:10, 66:11, 66:13, 66:20, 66:21, 66:23, 66:24, 67:8, 67:10, 67:12, 67:13, 67:24, 67:25, 68:3, 68:12, 68:22, 69:9, 69:23, 70:9

**Court's** [3] - 42:18, 51:13, 51:21

**court-ordered** [1] - 39:8

**Courthouse** [1] - 7:9

**courtroom** [2] - 10:21, 16:4

**courts** [5] - 19:5, 19:6, 38:16, 46:21, 66:15

**Courts** [3] - 44:18, 52:12, 52:20

**coverage** [7] - 26:1, 27:8, 27:11, 29:25, 35:12, 40:2, 65:25

**COVID** [1] - 40:3

**Coyle** [1] - 24:11

**Cozen** [1] - 11:13

**COZEN** [1] - 6:6

**create** [1] - 40:21

**created** [1] - 52:24

**creditor** [1] - 60:7

**court** [18] - 8:1, 8:5, 15:3, 19:18, 19:21, 27:9, 28:21, 32:6, 32:10, 33:10, 38:8, 39:8, 43:21, 48:3, 66:22

**COURT** [151] - 1:1, 8:2, 9:10, 9:19, 9:22, 10:15, 10:19, 11:5, 11:25, 12:10, 13:2, 13:7, 13:23, 14:6, 14:19, 15:1, 15:6, 15:12, 15:16, 17:7, 17:14, 17:24, 20:3, 20:11, 20:19, 21:3, 21:9, 21:13, 23:3, 23:5, 23:10, 23:13, 23:20, 24:5, 24:10,

24:14, 24:17, 24:20, 25:1, 25:9, 25:12, 25:15, 25:17, 26:8, 26:13, 26:15, 26:18, 28:4, 28:11, 28:18, 31:10, 31:15, 31:23, 32:12, 33:1, 33:8, 33:12, 33:20, 34:15, 34:24, 35:2, 35:6, 35:15, 35:18, 35:22, 36:2, 36:10, 36:14, 36:23, 38:23, 38:25, 39:4, 39:13, 39:22, 40:9, 41:13, 41:15, 41:19, 41:21, 42:12, 42:20, 43:24, 44:7, 44:13, 45:3, 45:7, 45:15, 45:14, 46:13, 47:2, 47:8, 48:8, 49:1, 49:7, 49:14, 51:12, 51:20, 51:23, 52:15, 52:25, 53:8, 53:14, 53:22, 53:24, 54:3, 54:13, 54:16, 55:11, 55:18, 55:21, 55:23, 56:1, 56:3, 56:8, 56:10, 56:12, 56:23, 57:3, 57:5, 57:13, 57:15, 57:18, 57:21, 57:24, 58:2, 58:5, 58:19, 58:25, 59:2, 60:23, 61:4, 61:8, 62:8, 62:11, 62:20, 63:1, 63:5, 63:9, 64:4, 64:9, 64:22, 65:11, 65:18, 65:23, 66:13, 66:17, 67:1, 67:6, 67:16, 68:7, 68:15

**creditors** [1] - 32:3

**criminal** [3] - 8:6, 8:11, 24:23

**criteria** [8] - 19:4, 19:10, 19:11, 19:12, 19:23, 22:8, 22:20, 23:1

**crossclaim** [3] - 27:15, 67:17, 67:18

**crossclaims** [6] - 27:13, 42:7, 43:3, 46:23, 47:19, 50:15

**CRR** [2] - 7:8, 70:9

**CSR** [2] - 7:8, 70:9

**cumbersome** [1] - 48:11

**Cunningham** [1] - 16:2

**D**

**Daiquan** [1] - 16:6

**damages** [3] - 27:1, 42:4, 42:8

**DAMALI** [1] - 5:22

**Damali** [1] - 11:6

**Dan** [1] - 10:5

**DANIEL** [1] - 5:7

**Darnell** [1] - 27:9

**Date** [1] - 70:11

**date** [1] - 28:2

**dates** [1] - 16:20

**Davis** [1] - 16:6

**Days** [4] - 5:9, 10:8, 18:13, 18:17

**days** [11] - 17:6, 29:16, 54:23, 55:24, 56:22, 57:14, 57:16, 57:17, 62:21, 62:22

**deadline** [1] - 69:17

**deal** [2] - 34:23, 35:3

**dealing** [3] - 18:20, 43:2, 47:10

**deals** [1] - 50:24

**dealt** [1] - 50:10

**DEASEY** [1] - 6:2

**Deasey** [1] - 11:10

**debt** [1] - 39:23

**debtor** [9] - 25:8, 25:19, 35:25, 43:14, 46:15, 47:24, 48:24, 50:6, 65:1

**debtor's** [12] - 26:3, 26:11, 26:22, 46:25, 47:15, 47:21, 48:1, 48:5, 48:7, 48:21, 67:9, 68:5

**debtors** [18] - 10:2, 13:18, 25:8, 35:24,

42:25, 43:5, 43:10, 43:12, 50:4, 50:17, 51:3, 51:8, 51:9, 64:17, 66:16, 67:11, 67:12

**debtors'** [1] - 60:6

**December** [2] - 28:9, 39:9

**decide** [1] - 19:17

**decided** [2] - 30:2, 30:7

**deciding** [1] - 30:25

**decision** [1] - 46:12

**decisions** [1] - 17:17

**deem** [2] - 44:21, 56:21

**defect** [1] - 56:16

**defend** [5] - 48:21, 65:3, 65:5, 65:6, 66:1

**defendant** [9] - 10:17, 11:13, 11:16, 12:16, 16:6, 46:20, 54:7, 54:9, 61:3

**Defendants** [33] - 1:8, 1:14, 1:21, 2:7, 2:13, 2:20, 3:7, 3:15, 3:22, 4:6, 5:9, 10:2, 14:4, 14:14, 16:7, 19:2, 20:17, 21:6, 21:11, 21:16, 25:23, 41:18, 45:1, 49:22, 50:13, 50:14, 52:2, 61:15, 63:18, 63:24, 64:18, 65:25, 66:7

**defendants** [31] - 12:19, 17:5, 18:19, 19:2, 25:6, 25:19, 25:23, 34:2, 38:11, 41:15, 41:23, 41:24, 42:5, 42:6, 42:10, 43:8, 44:2, 45:15, 45:22, 47:22, 47:24, 50:1, 50:14, 51:9, 58:9, 61:13, 63:23, 63:25, 64:1, 64:17, 67:22

**Defendants'** [5] - 13:18, 16:13, 16:22, 50:11, 55:7

**defended** [1] - 66:7

**defense** [3] - 13:25, 24:6, 49:11

**defenseless** [1] - 66:1

**deferred** [1] - 22:10

**definition** [2] - 26:4, 26:8

**degree** [3] - 22:20, 37:17, 53:15

**Delaware** [2] - 31:6,

37:11
**delay** [1] - 41:11
**deliberated** [1] - 39:6
**deliberations** [1] - 8:7
**delivering** [1] - 8:8
**demand** [7] - 29:18, 29:22, 40:6, 40:23, 64:5, 64:10, 64:12
**demanded** [1] - 29:19
**demands** [1] - 40:2
**demonstrating** [1] - 45:20
**denial** [1] - 40:1
**denied** [4] - 14:16, 14:18, 27:8, 38:22
**Dennehey** [2] - 10:10, 58:22
**DENNEHEY** [1] - 5:14
**deny** [1] - 16:16
**deposition** [3] - 29:13, 30:6, 59:14
**depositions** [2] - 16:24, 17:6
**deprive** [2] - 15:3, 64:2
**deprived** [1] - 63:21
**Deputy** [1] - 8:1
**DEPUTY** [3] - 24:13, 24:15, 24:19
**DeSilvester** [1] - 12:2
**DESILVESTER** [2] - 6:18, 12:1
**desk** [1] - 16:24
**despite** [1] - 35:11
**determination** [2] - 47:22, 65:17
**determine** [4] - 59:24, 63:20, 65:9, 66:11
**determined** [5] - 22:14, 62:2, 63:14, 65:10, 65:15
**Dieterly** [7] - 19:8, 30:23, 31:4, 31:8, 37:8, 37:9, 37:19
**differ** [1] - 19:10
**difference** [3] - 15:22, 48:20, 64:24
**differences** [2] - 23:24, 37:19
**different** [16] - 17:14, 20:19, 21:2, 28:25, 30:20, 31:1, 31:4, 31:7, 34:19, 37:12, 37:24, 48:12, 51:4, 56:12, 59:22

**difficult** [1] - 52:14
**difficulty** [1] - 52:10
**DILWORTH** [1] - 4:18
**Dilworth** [1] - 9:17
**dime** [1] - 39:15
**diminish** [1] - 20:9
**direct** [1] - 67:13
**disagree** [1] - 41:6
**discovery** [5] - 16:22, 17:3, 17:23, 48:3
**discretion** [4] - 19:5, 51:13, 51:17, 51:21
**discuss** [1] - 69:10
**discussions** [1] - 64:7
**disingenuous** [1] - 30:12
**dismayed** [1] - 36:11
**dispute** [1] - 29:11
**disputes** [1] - 22:16
**distress** [2] - 36:19, 59:19
**District** [14] - 19:20, 22:10, 22:14, 31:6, 37:11, 44:18, 45:21, 46:1, 46:2, 46:3, 59:7, 60:19, 66:22, 67:25
**district** [1] - 48:10
**DISTRICT** [2] - 1:1, 1:2
**dithering** [1] - 39:15
**diversity** [1] - 20:2
**DLA** [2] - 5:10, 11:22
**Docket** [1] - 8:16
**docket** [4] - 18:1, 54:25, 55:2, 55:3
**done** [8] - 9:12, 16:16, 29:2, 29:5, 32:24, 41:11, 41:12, 41:21
**double** [1] - 69:2
**double-spaced** [1] - 69:2
**doubt** [1] - 53:14
**down** [7] - 9:14, 16:25, 24:16, 34:19, 39:10, 51:24, 69:9
**downtown** [1] - 53:11
**drag** [1] - 63:18
**dropped** [1] - 64:9
**due** [1] - 16:23
**duplicative** [1] - 12:20
**during** [2] - 17:2, 22:2
**duty** [1] - 36:21

## E

**e-mail** [1] - 61:21
**E.K** [1] - 4:11
**Eagles** [1] - 25:3
**easier** [3] - 10:25, 33:9, 48:14
**easily** [2] - 48:10, 50:10
**Eastern** [2] - 59:6, 60:18
**EASTERN** [1] - 1:2
**EDELSTEIN** [1] - 7:2
**Edelstein** [1] - 12:8
**effect** [12] - 19:13, 19:14, 26:6, 31:18, 37:20, 38:4, 46:18, 47:1, 52:6, 63:14, 64:6, 67:7
**effective** [2] - 31:21, 32:10
**efficiency** [2] - 19:19, 59:7
**efficient** [6] - 19:14, 28:22, 31:18, 31:20, 32:10, 37:22
**effort** [3] - 13:20, 22:5, 40:10
**efforts** [1] - 16:13
**Eight** [7] - 5:20, 10:17, 46:20, 54:8, 55:8, 61:7, 61:18
**Eighty** [7] - 5:20, 10:17, 46:20, 54:8, 55:8, 61:7, 61:18
**either** [7] - 26:16, 32:19, 36:12, 37:14, 38:7, 38:11, 47:16
**elements** [2] - 51:10, 51:11
**Eliades** [2] - 10:6, 11:23
**ELIADES** [32] - 5:7, 10:5, 41:17, 41:20, 41:22, 42:17, 42:22, 44:5, 44:8, 44:14, 45:5, 45:9, 45:13, 45:15, 46:15, 47:6, 47:13, 48:25, 49:2, 49:10, 49:16, 51:16, 51:22, 52:1, 52:21, 53:5, 53:12, 53:15, 53:23, 67:4, 67:7, 67:19
**eliminate** [1] - 34:10
**EMILY** [1] - 4:14
**emily** [1] - 9:6
**emotional** [2] - 36:19, 59:19

**employees** [1] - 16:25
**employment** [1] - 8:14
**end** [4] - 9:23, 32:22, 60:10, 62:22
**enforce** [1] - 31:23
**engage** [3] - 13:21, 14:5, 39:8
**enormity** [1] - 21:20
**entered** [2] - 28:1, 61:19
**entire** [2] - 47:10, 51:1
**entirety** [1] - 50:4
**entities** [6] - 5:12, 11:23, 41:23, 41:24, 43:9, 51:3
**entitled** [4] - 41:5, 42:7, 44:15, 70:4
**ephemeral** [1] - 15:22
**equal** [1] - 60:9
**equally** [2] - 52:13
**equitable** [4] - 12:25, 13:5, 51:14, 56:4
**equivalent** [1] - 18:2
**error** [1] - 55:4
**ESQUIRE** [19] - 4:14, 4:15, 4:18, 4:22, 5:2, 5:3, 5:7, 5:11, 5:14, 5:15, 5:18, 5:22, 6:3, 6:6, 6:10, 6:13, 6:18, 6:22, 7:3
**essentially** [1] - 20:24
**establish** [2] - 44:11, 49:20
**estate** [18] - 26:4, 26:6, 26:24, 27:16, 31:19, 31:22, 32:4, 33:2, 34:1, 34:5, 34:10, 38:2, 38:4, 39:19, 42:14, 46:18, 47:18, 52:7
**estates** [2] - 48:7, 67:9
**et** [12] - 1:7, 1:13, 1:20, 2:6, 2:12, 2:19, 3:6, 3:14, 3:21, 4:5, 15:20, 57:25
**eve** [1] - 15:20
**event** [2] - 30:7, 41:2
**eventually** [1] - 55:2
**evidence** [4] - 14:3, 45:21, 49:21, 52:4
**EWING** [1] - 5:18
**Ewing** [3] - 10:17, 45:9, 54:7
**exactly** [4] - 32:1,

**42:17, 43:22, 44:19
**exceed** [1] - 27:3
**except** [2] - 31:24, 43:24
**exception** [2] - 38:15, 53:20
**excess** [2] - 27:11, 64:12
**excitement** [1] - 25:2
**exclusive** [1] - 46:4
**exercise** [4] - 44:10, 44:23, 51:21, 56:4
**exercised** [3] - 43:9, 43:10, 43:16
**existence** [2] - 23:1, 38:6
**existing** [1] - 67:17
**exorbitant** [1] - 40:2
**expended** [1] - 17:23
**experience** [1] - 8:6
**explain** [3] - 19:3, 31:10, 31:13
**explained** [2] - 10:20, 60:17
**explanation** [1] - 15:17
**exploitation** [2] - 13:15, 20:15
**exploited** [1] - 64:21
**expose** [1] - 64:20
**expressed** [1] - 28:13
**extension** [1] - 53:1
**extensive** [1] - 30:17
**extensively** [1] - 51:8
**extent** [3] - 19:23, 48:2, 67:25
**extra** [1] - 8:9
**extraordinary** [1] - 53:19
**extremely** [2] - 46:22, 58:8

## F

**face** [1] - 47:2
**facetious** [1] - 15:16
**facilitate** [1] - 32:13
**facility** [2] - 48:9, 48:21
**fact** [8] - 32:14, 36:11, 36:24, 44:17, 47:25, 48:17, 59:15, 61:19
**factor** [7] - 19:6, 19:8, 31:19, 34:12, 37:6, 38:4, 40:7, 52:8, 53:5
**factors** [11] - 19:13,

30:1, 30:24, 31:7,
31:9, 31:12, 37:7,
40:6, 51:25, 52:2,
52:4
  **facts** [3] - 18:4,
19:11, 52:14
  **factual** [1] - 22:15
  **factually** [1] - 66:19
  **fails** [1] - 51:6
  **fair** [1] - 68:21
  **fairly** [2] - 47:6,
58:11
  **Fairness** [1] - 50:25
  **faith** [8] - 13:24,
14:7, 14:11, 14:22,
29:2, 29:4, 41:10,
68:10
  **fall** [2] - 53:18, 56:19
  **falling** [1] - 62:8
  **falls** [1] - 20:8
  **familiar** [3] - 17:12,
22:15, 55:11
  **family** [1] - 57:24
  **far** [5] - 16:18, 17:3,
17:19, 18:22, 53:9
  **fashion** [1] - 9:3
  **favor** [13] - 19:4,
31:9, 31:12, 31:20,
33:22, 33:23, 34:13,
38:13, 52:4, 52:8,
52:11, 53:6, 64:15
  **favorite** [1] - 56:23
  **favors** [2] - 28:15,
53:17
  **features** [1] - 58:6
  **Federal** [19] - 13:17,
15:23, 19:20, 20:1,
21:7, 32:17, 33:18,
34:22, 37:15, 42:24,
45:19, 52:8, 52:12,
53:21, 60:21, 64:25,
66:10, 66:21, 67:7
  **federal** [3] - 17:8,
20:1, 21:13
  **FELDMAN** [1] - 7:8
  **Feldman** [3] - 9:13,
10:25, 70:9
  **fence** [1] - 25:2
  **few** [2] - 23:11, 59:5
  **fight** [1] - 65:7
  **figure** [2] - 21:13,
33:20
  **file** [13] - 22:1, 30:2,
30:10, 30:11, 30:13,
43:9, 55:2, 57:10,
57:11, 64:1, 68:11,
69:1
  **filed** [50] - 8:25,
13:10, 13:19, 14:12,
14:15, 14:16, 16:3,

16:8, 16:11, 16:12,
27:19, 29:1, 29:4,
29:15, 29:16, 29:20,
30:3, 30:12, 30:15,
31:6, 37:8, 37:10,
41:23, 43:16, 44:21,
44:25, 45:16, 48:22,
50:17, 54:14, 54:16,
54:24, 55:1, 55:6,
55:9, 55:10, 55:24,
56:20, 61:11, 61:12,
61:14, 61:20, 61:22,
61:25, 62:4,
63:12, 66:20
  **filing** [14] - 13:18,
20:17, 30:22, 39:3,
39:6, 39:18, 40:16,
41:10, 44:1, 55:15,
55:19, 61:13, 68:10,
68:19
  **filings** [1] - 21:8
  **finally** [1] - 60:18
  **fine** [3] - 9:10, 35:5,
51:23
  **fingers** [1] - 31:15
  **finish** [1] - 8:7
  **first** [13] - 9:1, 9:9,
9:10, 14:13, 16:1,
19:13, 20:12, 25:6,
31:18, 44:4, 50:2,
50:10, 60:7
  **five** [7] - 27:2, 27:3,
28:25, 29:15, 39:12,
57:17, 59:8
  **flesh** [1] - 26:20
  **Floor** [3] - 4:22, 5:8,
5:19
  **focus** [2] - 51:13,
62:21
  **focusing** [1] - 17:5
  **fogged** [1] - 41:20
  **folks** [3] - 24:20,
53:8, 62:21
  **follow** [2] - 9:4,
38:18
  **following** [2] - 10:20,
34:15
  **football** [1] - 25:4
  **footnotes** [1] - 69:3
  **FOR** [2] - 1:2, 4:12
  **foregoing** [1] - 70:3
  **FOREMAN** [3] - 5:14,
10:9, 58:22
  **Foreman** [2] - 10:10,
58:22
  **forever** [1] - 39:15
  **form** [1] - 14:17
  **former** [2] - 16:25,
25:3, 36:3
  **forth** [1] - 19:8

  **forum** [11] - 13:21,
14:5, 15:4, 16:17,
29:5, 32:18, 33:19,
34:14, 41:11, 42:14,
64:3
  **forums** [3] - 15:18,
34:10, 37:12
  **forward** [1] - 19:3
  **four** [12] - 6:14,
25:23, 33:14, 42:1,
42:3, 42:9, 43:8,
43:16, 43:18, 45:17,
49:5, 49:23
  **Frank** [6] - 27:24,
28:6, 35:15, 36:3,
36:4, 60:13
  **Frank's** [1] - 36:1
  **frankly** [3] - 40:18,
52:8, 58:10
  **fraud** [2] - 8:10,
24:24
  **freedom** [1] - 47:16
  **frequently** [1] -
48:14
  **Friday** [3] - 27:19,
28:1, 29:20
  **front** [1] - 8:3
  **frustrated** [1] - 12:14
  **full** [3] - 8:14, 9:10,
23:15
  **fully** [1] - 59:4
  **fundamentally** [2] -
64:24, 65:5

## G

  **gamesmanship** [1] -
14:23
  **Gander** [1] - 57:8
  **gander** [1] - 57:9
  **Gates** [1] - 10:6
  **GATES** [1] - 5:7
  **gateway** [1] - 45:24
  **gearing** [1] - 41:7
  **GENE** [1] - 4:11
  **girls** [1] - 20:15
  **given** [1] - 32:14
  **glasses** [1] - 41:20
  **global** [2] - 27:22,
67:23
  **GOGGIN** [1] - 5:14
  **good-faith** [1] -
41:10
  **goodness** [1] - 48:25
  **goose** [1] - 57:9
  **Goosey** [1] - 57:8
  **grant** [1] - 51:18
  **granted** [2] - 27:21,
68:13

  **great** [1] - 24:5
  **greater** [1] - 48:9
  **greatly** [1] - 27:3
  **greene** [1] - 62:17
  **grew** [1] - 57:6
  **grilled** [1] - 17:6
  **grounds** [1] - 51:14
  **Group** [3] - 6:20,
10:7, 12:3
  **guess** [6] - 12:12,
14:19, 26:20, 33:24,
41:2, 52:25
  **guessing** [2] - 12:18
  **guests** [1] - 36:22
  **guided** [1] - 19:6
  **guys** [2] - 32:20,
35:22

## H

  **habit** [1] - 68:20
  **HAFER** [1] - 6:21
  **Hafer** [1] - 12:5
  **half** [1] - 29:24
  **halt** [3] - 13:20,
13:21, 16:13
  **hand** [4] - 27:7,
49:15, 54:1, 62:3
  **handle** [2] - 22:2,
52:20
  **handled** [2] - 41:9,
53:7
  **handling** [3] - 26:23,
47:17, 58:11
  **hands** [2] - 34:3,
57:2
  **hanging** [1] - 10:14
  **happy** [4] - 8:20,
31:17, 51:10, 52:22
  **hard** [5] - 18:2,
31:11, 47:4, 47:11,
53:11
  **harm** [1] - 33:25
  **Harry** [2] - 11:9,
60:24
  **HARRY** [1] - 6:3
  **headings** [1] - 61:24
  **hear** [9] - 9:1, 12:12,
19:21, 22:24, 23:21,
24:2, 24:6, 24:7,
53:24
  **heard** [7] - 13:13,
16:5, 18:10, 19:18,
19:20, 63:20, 64:9
  **hearing** [4] - 28:14,
32:8, 60:2, 63:3
  **HEARING** [1] - 1:12
  **heavier** [1] - 25:16
  **heavily** [1] - 31:19

  **hEINOLD** [1] - 23:25
  **HEINOLD** [5] - 4:22,
9:20, 61:6, 61:10,
62:10
  **Heinold** [1] - 9:21
  **held** [2] - 38:16,
65:17
  **Heller** [1] - 11:22,
61:16, 61:22, 62:4
  **HELLER** [2] - 5:11,
11:21
  **hello** [2] - 8:2, 9:23
  **Henry** [1] - 57:7
  **herself** [1] - 30:4
  **hiding** [1] - 12:11
  **high** [4] - 40:24,
64:11, 64:12
  **hinder** [1] - 37:22
  **hired** [1] - 27:14
  **hold** [1] - 23:14
  **holding** [3] - 8:23,
20:13, 69:18
  **holiday** [1] - 57:25
  **Honor** [146] - 9:6,
9:16, 9:20, 10:5, 10:9,
10:13, 11:2, 11:9,
11:15, 11:18, 11:21,
12:1, 12:4, 12:7,
12:23, 13:4, 13:8,
14:3, 14:9, 14:25,
15:2, 15:9, 15:14,
15:24, 16:9, 17:11,
17:16, 18:6, 18:23,
19:4, 19:12, 20:5,
21:1, 21:5, 21:15,
22:4, 22:9, 22:20,
22:23, 23:9, 23:11,
23:18, 23:25, 24:3,
24:9, 25:7, 25:18,
25:22, 26:2, 26:10,
26:14, 26:21, 27:4,
27:8, 27:12, 27:18,
27:19, 28:5, 28:12,
28:20, 29:1, 29:3,
29:15, 29:18, 29:23,
30:14, 30:23, 30:24,
31:14, 32:2, 32:7,
32:11, 33:3, 33:13,
33:19, 34:6, 34:21,
35:5, 35:23, 36:7,
36:16, 36:21, 37:1,
37:2, 37:18, 38:2,
38:6, 38:12, 38:14,
38:20, 39:5, 39:11,
40:19, 41:7, 41:17,
41:22, 42:3, 43:20,
45:17, 46:6, 49:2,
49:16, 50:10, 50:23,
51:6, 51:7, 51:11,
52:21, 54:2, 54:6,

55:20, 57:12, 57:16,
57:19, 58:1, 58:4,
58:18, 58:23, 59:6,
59:9, 59:25, 60:18,
60:24, 61:6, 61:10,
61:25, 62:10, 62:25,
63:2, 63:7, 63:11,
63:17, 64:8, 64:16,
65:8, 65:22, 66:6,
66:9, 66:18, 66:23,
67:4, 67:21, 67:25,
68:8, 68:9, 69:22
**Honor's** [3] - 28:23,
67:9, 68:2
**HONORABLE** [1] -
4:11
**Honorable** [2] - 27:9,
59:23
**hope** [1] - 69:19
**hopefully** [1] - 40:15
**hopes** [1] - 28:16
**hoping** [1] - 12:18
**horse** [1] - 47:9
**Hospitality** [4] -
5:24, 6:15, 11:8,
11:19
**hotel** [13] - 17:2,
18:19, 20:20, 20:23,
25:25, 27:5, 27:14,
29:8, 29:23, 30:17,
31:3, 40:3
**Hotel** [5] - 6:20, 10:7,
10:8, 12:3, 17:4
**hotels** [10] - 13:16,
17:5, 18:15, 18:18,
18:20, 18:21, 42:5,
60:4, 63:23, 64:21
**Hotels** [2] - 10:7,
11:22
**hour** [1] - 61:23
**hours** [2] - 16:8,
17:23
**House** [1] - 6:23
**house** [1] - 30:7
**huge** [1] - 31:2
**HUGHES** [2] - 4:18,
9:16
**Hughes** [1] - 9:17
**Human** [1] - 63:13
**human** [2] - 59:20,
69:3
**hurdle** [3] - 47:7,
47:14, 49:19

**I**

**idea** [2] - 17:8, 53:9
**ideal** [1] - 41:6
**identical** [2] - 44:25,

49:25
**identified** [1] - 11:4
**imagine** [2] - 35:2,
49:12
**immediately** [1] -
61:23
**impact** [9] - 19:16,
26:11, 26:23, 27:15,
32:3, 38:1, 40:3, 43:4,
68:4
**impacts** [1] - 47:17
**implication** [1] -
49:15
**importance** [1] -
20:9
**important** [3] - 18:8,
32:9, 48:21
**imported** [1] - 17:7
**improperly** [1] - 50:3
**IN** [1] - 1:1
**in-house** [1] - 30:7
**inadvertent** [1] -
8:20
**inapplicable** [1] -
50:23
**inarguably** [1] -
47:20
**Inc** [12] - 5:9, 6:4,
6:23, 10:7, 10:8,
10:11, 11:11, 12:6,
25:20, 58:24, 60:25
**inch** [1] - 69:4
**includes** [1] - 69:5
**including** [1] - 60:9
**inconsistent** [2] -
48:4, 48:16
**incorporating** [1] -
62:5
**indeed** [1] - 59:16
**indemnification** [4] -
42:7, 43:3, 46:23,
47:20
**Independence** [1] -
7:3
**independent** [1] -
27:5
**indicated** [1] - 68:9
**Indicating** [1] - 24:18
**indisputably** [1] -
26:25
**individually** [1] -
9:24
**infliction** [2] - 36:18,
59:18
**information** [2] -
18:7, 36:6
**initial** [3] - 27:25,
28:8, 45:20
**injury** [5] - 19:17,
20:7, 44:18, 46:24,

63:3
**INN** [6] - 1:7, 1:13,
1:20, 2:6, 2:12, 4:5
**Inn** [18] - 5:5, 5:9,
8:16, 10:3, 10:8,
18:11, 18:13, 18:17,
25:20, 39:18, 50:11,
50:12, 50:13, 63:22
**innkeeper** [1] - 36:22
**Innkeeper** [1] - 52:17
**Inns** [6] - 6:4, 11:11,
17:1, 18:14, 18:15,
60:25
**insignificant** [1] -
40:7
**institution** [1] - 18:5
**institutional** [1] -
17:25
**insurance** [11] -
27:7, 27:10, 29:16,
29:25, 32:15, 35:12,
36:8, 40:2, 40:21,
65:24, 66:8
**insureds** [2] - 25:25
**insurers** [4] - 27:23,
35:13, 36:2, 60:11
**intention** [2] - 60:5,
60:8
**interacted** [1] - 12:17
**interest** [2] - 13:14,
60:15
**interesting** [3] -
25:4, 58:14, 69:20
**interfere** [1] - 31:25
**interrupt** [3] - 23:3,
23:14, 23:16
**intimately** [1] - 17:12
**invested** [1] - 22:6
**investment** [2] -
15:20, 16:18
**Investment** [2] - 7:5,
12:8
**invoking** [1] - 45:19
**involve** [2] - 13:15,
20:12
**involved** [3] - 49:11,
54:8, 58:9
**involving** [4] - 24:23,
58:7, 63:23, 67:11
**issue** [20] - 31:6,
33:23, 34:1, 36:17,
41:16, 49:15, 52:16,
52:19, 52:25, 54:11,
54:22, 54:24, 55:9,
56:17, 58:17, 59:17,
62:20, 64:23, 67:7,
67:19
**issues** [8] - 8:14,
19:23, 21:17, 37:11,
54:11, 58:8, 62:3,

62:6
**itself** [2] - 48:21,
65:3

**J**

**Jacqueline** [1] -
11:12
**JACQUELINE** [1] -
6:6
**James** [1] - 21:21
**james** [1] - 7:9
**January** [1] - 28:9
**Jevic** [1] - 50:19
**Jim** [1] - 30:5
**John** [2] - 6:14,
62:16
**join** [1] - 61:2
**joined** [1] - 54:9
**joint** [3] - 45:22,
49:25, 54:14
**Jones** [6] - 27:9,
35:18, 35:22, 35:25,
36:5, 36:11
**Jones'** [1] - 35:24
**judge** [5] - 17:21,
18:3, 21:13, 28:18,
29:14
**Judge** [43] - 14:16,
14:18, 16:1, 16:2,
17:17, 17:18, 17:19,
17:21, 18:24, 27:20,
27:24, 28:6, 28:9,
35:10, 35:15, 35:18,
35:22, 35:24, 35:25,
36:1, 36:3, 36:4, 36:5,
36:10, 41:20, 42:17,
43:7, 44:5, 45:5, 47:7,
48:25, 49:11, 51:16,
51:22, 53:5, 53:12,
53:23, 60:1, 60:4,
60:7, 60:13, 67:20,
68:6
**judges** [6] - 17:14,
17:22, 34:20, 37:24,
42:21, 58:10
**judgment** [4] - 31:24,
32:2, 63:22, 65:16
**JUDSON** [1] - 5:18
**jump** [1] - 54:3
**June** [2] - 16:1,
29:21
**jurisdiction** [18] -
20:2, 33:5, 37:4,
42:24, 45:19, 46:2,
46:4, 46:7, 46:10,
46:17, 46:21, 51:18,
52:9, 53:21, 54:22,
67:8, 67:19, 68:1

**jurisdictions** [2] -
31:4, 46:11
**jury** [14] - 8:6, 15:25,
16:8, 23:2, 23:6,
23:15, 24:18, 29:10,
30:19, 38:7, 44:16,
53:12, 60:20, 63:25
**justice** [1] - 55:19
**Justina** [1] - 10:1
**jUSTINA** [1] - 5:3

**K**

**K&L** [2] - 5:7, 10:6
**K.R** [15] - 1:10, 3:10,
4:16, 4:20, 6:11, 9:8,
9:18, 11:17, 12:24,
17:19, 41:24, 43:13,
43:19, 44:20, 49:24
**K.R.'s** [1] - 66:24
**KATHERINE** [1] -
6:22
**Katherine** [1] - 12:5
**Kathleen** [1] - 70:9
**kATHLEEN** [1] - 7:8
**keep** [4] - 9:24,
31:22, 52:9, 61:9
**keeping** [2] - 28:20,
34:13
**Kennedy** [1] - 6:14
**kept** [1] - 32:19
**key** [1] - 37:19
**kind** [7] - 26:13,
28:17, 33:4, 37:6,
52:18, 65:12, 67:17
**KLINE** [1] - 4:14
**Kline** [2] - 9:7, 11:3
**knocking** [1] - 52:18
**known** [1] - 18:21
**knows** [1] - 27:8

**L**

**L.P** [6] - 5:20, 10:18,
46:20, 54:8, 55:8,
61:18
**L.P.'s** [1] - 61:7
**lack** [1] - 65:24
**lacks** [1] - 56:6
**Lancaster** [1] - 53:10
**landlord** [1] - 20:23
**landowners** [1] -
20:14
**lapsed** [1] - 56:17
**large** [3] - 38:1, 64:5,
69:3
**largest** [2] - 18:19,
22:1

**last** [5] - 27:19, 38:9, 56:20, 57:2, 66:18
**late** [2] - 53:25, 57:2
**law** [25] - 9:4, 19:24, 19:25, 20:2, 20:4, 20:6, 20:13, 36:15, 36:20, 36:21, 36:23, 37:3, 37:5, 38:2, 38:15, 46:8, 52:11, 52:13, 54:19, 54:21, 56:5, 59:17, 63:8, 63:12, 63:14
**LAW** [1] - 62:19
**Law** [1] - 63:13
**laws** [1] - 59:20
**lawsuit** [9] - 10:12, 17:8, 42:4, 59:1, 59:8, 59:11, 60:3, 60:4
**lawsuits** [6] - 39:24, 39:25, 40:1, 41:23, 59:8, 66:11
**lawyer** [1] - 41:9
**lawyers** [1] - 58:10
**lead** [1] - 21:21
**least** [10] - 14:7, 15:7, 39:19, 42:15, 49:5, 52:2, 57:1, 64:24, 67:22, 69:19
**leave** [2] - 10:24, 62:23
**leaves** [1] - 67:12
**LEE** [1] - 5:3
**left** [2] - 22:24, 65:25
**legal** [3] - 14:7, 22:2, 58:13
**legitimate** [3] - 30:18, 30:22, 40:22
**letter** [1] - 29:21
**level** [2] - 53:2, 53:3
**liabilities** [5] - 26:23, 47:15, 47:21, 48:1, 48:5
**liability** [9] - 34:2, 40:11, 40:13, 42:11, 47:22, 47:23, 52:17, 53:4, 64:19
**liable** [1] - 47:25
**Liberty** [1] - 4:23
**liens** [1] - 39:22
**life** [1] - 47:10
**lift** [1] - 28:11
**light** [6] - 18:8, 30:21, 51:17, 51:18, 58:6, 60:2
**lighthearted** [1] - 58:12
**lightly** [2] - 14:10, 29:2
**likely** [1] - 28:9
**limine** [3] - 14:17,

16:3, 59:12
**limitation** [1] - 26:19
**limitations** [1] - 56:13
**limited** [1] - 37:20
**limits** [3] - 27:12, 29:19, 39:11
**line** [3] - 58:21, 60:7, 69:6
**Line** [1] - 18:16
**liquidate** [3] - 33:6, 40:17, 41:1
**list** [2] - 9:11, 19:1
**listen** [1] - 8:20
**literally** [1] - 30:6
**litigated** [3] - 13:12, 16:10, 16:20
**litigation** [8] - 13:21, 16:14, 17:2, 21:20, 27:8, 35:12, 38:3, 50:5
**litigations** [7] - 43:18, 43:21, 44:21, 49:5, 67:8, 67:14, 68:1
**LLC** [9] - 1:7, 1:13, 1:20, 2:6, 2:12, 4:5, 10:7, 25:20, 25:22
**LLP** [7] - 4:18, 5:2, 5:7, 5:10, 5:18, 6:21, 9:17
**located** [2] - 18:16
**Locust** [1] - 4:25
**Logan** [1] - 5:3
**look** [2] - 40:9, 53:25
**looking** [11] - 9:11, 15:17, 32:16, 37:8, 40:17, 40:23, 40:25, 41:3, 52:1
**looks** [1] - 8:13
**loose** [1] - 26:16
**low** [3] - 47:7, 47:14, 49:19
**lower** [1] - 29:22
**LTD** [1] - 6:2

## M

**M.B** [29] - 1:4, 4:16, 4:20, 5:16, 9:7, 9:17, 10:11, 12:23, 13:20, 14:15, 15:25, 16:9, 17:4, 17:16, 18:8, 18:11, 27:11, 29:9, 41:25, 42:2, 43:14, 59:1, 59:10, 60:3, 60:9, 60:13, 63:11, 63:15, 66:24
**machine** [1] - 7:11

**MAGOLIS** [1] - 7:2
**Mahoney** [3] - 11:10, 60:24
**MAHONEY** [5] - 6:2, 6:3, 11:9, 11:10, 60:24
**mail** [1] - 61:21
**main** [3] - 22:21, 37:18, 53:16
**major** [1] - 57:24
**Mall** [1] - 7:3
**Management** [5] - 7:5, 10:4, 10:8, 12:9, 25:21
**manager** [1] - 25:24
**managers** [1] - 16:25
**mandatory** [1] - 60:12
**manifest** [1] - 34:8
**manipulate** [1] - 64:2
**manipulation** [1] - 15:2
**March** [1] - 29:14
**margins** [1] - 69:4
**Margolis** [1] - 12:8
**Marion** [4] - 9:25, 25:7, 25:19, 59:25
**MARION** [40] - 5:2, 9:25, 25:7, 25:10, 25:13, 25:16, 25:18, 26:10, 26:14, 26:17, 26:20, 28:5, 28:12, 28:20, 31:14, 31:17, 32:1, 32:25, 33:3, 33:9, 33:13, 34:6, 34:21, 34:25, 35:4, 35:10, 35:17, 35:20, 36:7, 36:12, 36:16, 37:1, 38:24, 39:3, 39:5, 39:21, 40:1, 40:14, 41:14, 68:8
**Market** [12] - 4:19, 4:22, 5:11, 5:15, 5:19, 5:23, 6:3, 6:7, 6:10, 6:19, 7:9, 34:19
**Marks** [1] - 9:6
**MARKS** [39] - 4:14, 9:6, 12:23, 13:4, 13:8, 14:2, 14:9, 14:25, 15:2, 15:9, 15:14, 15:24, 17:11, 17:16, 18:6, 20:5, 20:12, 21:1, 21:5, 21:11, 21:15, 23:4, 23:9, 23:11, 23:18, 24:9, 62:25, 63:2, 63:7, 63:11, 64:8, 64:16, 65:8, 65:14, 65:22, 66:6, 66:15, 66:18, 69:22

**marks** [10] - 9:15, 11:4, 24:2, 24:4, 29:9, 30:3, 31:8, 33:15, 62:24, 68:9
**MARSHALL** [1] - 5:14
**Marshall** [2] - 10:10, 58:22
**MARTIN** [2] - 5:22, 11:6
**Martin** [1] - 11:6
**masks** [1] - 10:21
**masseur** [1] - 20:22
**masseuse** [1] - 20:22
**mastery** [1] - 18:3
**matter** [13] - 12:3, 12:6, 19:21, 23:19, 44:25, 50:3, 50:23, 51:19, 54:22, 59:6, 60:13, 60:14, 70:5
**matters** [12] - 12:9, 17:19, 17:21, 18:25, 21:7, 42:25, 48:10, 50:21, 58:11, 59:24, 63:3, 68:2
**Matthew** [2] - 10:16, 54:6
**MATTHEW** [1] - 5:18
**McCormick** [1] - 11:7
**mCCORMICK** [1] - 5:22
**mean** [27] - 15:16, 17:9, 20:8, 20:24, 21:15, 32:17, 33:13, 33:15, 33:21, 37:13, 40:2, 40:14, 41:10, 43:25, 47:3, 51:12, 51:14, 51:23, 54:3, 56:25, 64:11, 66:3, 67:18, 68:23, 68:24, 69:7
**meant** [1] - 63:3
**mechanism** [1] - 44:17
**media** [2] - 30:15, 30:19
**mediate** [1] - 67:14
**mediation** [14] - 27:22, 27:24, 28:6, 28:8, 28:16, 35:11, 35:15, 35:25, 39:9, 60:12, 67:10, 67:23, 67:24, 68:3
**mediator** [1] - 27:24
**Meghan** [1] - 12:7
**MEGHAN** [1] - 7:3
**MELANIE** [1] - 5:14
**Melanie** [2] - 10:9,

58:22
**memory** [1] - 17:25
**mention** [1] - 27:18
**mentioned** [9] - 16:12, 19:25, 22:5, 22:24, 30:3, 30:5, 59:10, 59:25, 61:24
**met** [1] - 52:3
**might** [10] - 15:19, 23:10, 25:15, 28:16, 30:10, 36:5, 42:13, 42:14, 64:12, 69:9
**militate** [1] - 52:4
**mill** [1] - 20:7
**million** [5] - 27:12, 29:19, 29:22, 29:24, 39:11
**mind** [3] - 9:22, 23:18, 24:21
**minute** [2] - 39:1, 64:25
**minutes** [1] - 23:12
**misfilings** [2] - 62:14, 62:15
**missed** [1] - 8:19
**mistakes** [1] - 56:19
**misunderstand** [1] - 14:18
**mixed** [1] - 35:6
**mom** [2] - 27:5, 31:3
**money** [2] - 65:1, 65:7
**MONGELUZZI** [1] - 4:21
**Mongeluzzi** [1] - 9:21
**months** [2] - 22:12, 39:6
**morning** [1] - 10:13
**mortgage** [1] - 39:19
**most** [9] - 19:6, 28:21, 29:6, 31:20, 32:10, 45:2, 45:15, 46:13, 46:14
**motion** [22] - 8:15, 14:15, 14:16, 14:17, 16:15, 21:25, 27:21, 30:10, 30:13, 30:17, 38:21, 45:1, 55:1, 55:3, 55:6, 55:10, 56:20, 56:21, 62:1, 68:19
**MOTION** [1] - 4:12
**motions** [9] - 8:25, 16:3, 21:18, 22:13, 30:3, 42:1, 44:21, 45:17, 59:12
**Motor** [9] - 5:5, 6:4, 10:3, 11:11, 17:1, 18:14, 18:15, 25:20,

60:25
**motor** [1] - 20:7
**move** [4] - 14:20, 19:3, 36:14, 53:25
**moved** [1] - 59:14
**moving** [1] - 37:3
**MR** [108] - 9:16, 9:20, 9:25, 10:5, 10:13, 10:16, 11:2, 11:9, 11:15, 11:18, 11:21, 23:25, 25:7, 25:10, 25:13, 25:16, 25:18, 26:10, 26:14, 26:17, 26:20, 28:5, 28:12, 28:20, 31:14, 31:17, 32:1, 32:25, 33:3, 33:9, 33:13, 34:6, 34:21, 34:25, 35:4, 35:10, 35:17, 35:20, 36:7, 36:12, 36:16, 37:1, 38:24, 39:3, 39:5, 39:21, 40:1, 40:14, 41:14, 41:17, 41:20, 41:22, 42:17, 42:22, 44:5, 44:8, 44:14, 45:5, 45:9, 45:13, 45:15, 46:15, 47:6, 47:13, 48:25, 49:2, 49:10, 49:16, 51:16, 51:22, 52:1, 52:21, 53:5, 53:12, 53:15, 53:23, 54:2, 54:6, 54:14, 54:18, 55:17, 55:20, 55:22, 55:25, 56:2, 56:5, 56:9, 56:11, 56:14, 56:25, 57:4, 57:12, 57:14, 57:16, 57:19, 57:23, 58:1, 58:4, 58:18, 59:1, 59:3, 60:24, 61:6, 61:10, 62:10, 67:4, 67:7, 67:19
**MS** [46] - 9:6, 10:9, 11:6, 11:12, 12:1, 12:4, 12:7, 12:23, 13:4, 13:8, 14:2, 14:9, 14:25, 15:2, 15:9, 15:14, 15:24, 17:11, 17:16, 18:6, 20:5, 20:12, 21:1, 21:5, 21:11, 21:15, 23:4, 23:9, 23:11, 23:18, 24:9, 35:23, 58:22, 62:25, 63:2, 63:7, 63:11, 64:8, 64:16, 65:8, 65:14, 65:22, 66:6, 66:15, 66:18, 69:22
**multi** [1] - 28:8

**multi-day** [1] - 28:8
**multiple** [3] - 30:20, 42:4, 56:9
**multiplicity** [1] - 34:10
**must** [2] - 55:24, 69:5

## N

**NADEEM** [1] - 4:15
**Nadeem** [1] - 11:2
**nail** [1] - 69:9
**name** [1] - 8:16
**names** [1] - 9:14
**narrow** [1] - 58:17
**Nathan** [1] - 11:21
**NATHAN** [1] - 5:11
**natural** [2] - 23:5, 23:7
**nature** [1] - 52:10
**nearing** [1] - 16:21
**nearly** [2] - 16:24, 33:15
**necessarily** [2] - 48:14, 53:3
**need** [6] - 14:10, 23:19, 24:11, 42:10, 57:3, 57:13
**needs** [2] - 51:2, 62:22
**negative** [4] - 30:16, 30:19, 30:21, 47:16
**negligence** [5] - 20:13, 36:18, 59:18, 59:23, 63:12
**negligent** [2] - 36:18, 59:18
**negligible** [1] - 27:6
**negotiations** [1] - 68:18
**neutral** [1] - 37:6
**never** [2] - 8:10, 63:3
**New** [1] - 17:18
**new** [10] - 20:6, 36:20, 52:18, 52:19, 52:23, 53:2, 53:3, 59:19
**Newark** [2] - 5:8, 5:8
**news** [1] - 30:20
**next** [9] - 10:22, 11:1, 19:23, 22:20, 23:1, 27:25, 29:11, 37:7, 38:6
**nice** [1] - 15:12
**night** [3] - 29:20, 56:20, 57:2
**nightmare** [5] - 34:18, 35:3, 35:4, 42:18, 42:20

**NJ** [1] - 5:8
**nobody's** [1] - 55:14
**non** [1] - 49:3
**nondebtor** [16] - 25:21, 43:1, 43:18, 44:9, 44:22, 45:16, 45:23, 47:19, 47:24, 49:4, 49:17, 50:1, 50:16, 51:9, 67:15, 67:21
**nondebtor-related** [1] - 25:21
**nondebtors** [2] - 10:3, 33:25
**none** [4] - 38:10, 44:14, 49:22, 60:9
**normal** [1] - 69:3
**North** [3] - 17:1, 18:14, 18:15
**NORTH** [1] - 6:2
**Northampton** [1] - 53:10
**Northeast** [1] - 27:6
**notch** [1] - 52:18
**note** [2] - 8:17, 42:1
**noted** [2] - 47:18, 52:12
**nothing** [1] - 36:6
**notice** [4] - 27:18, 54:14, 61:12, 61:13
**notices** [3] - 43:17, 50:11, 50:16
**notified** [2] - 35:25, 61:22
**notion** [2] - 15:22, 65:19
**novel** [1] - 63:8
**November** [2] - 28:4, 28:5
**now's** [1] - 68:15
**Number** [1] - 8:16
**number** [5] - 20:20, 39:14, 46:20, 64:10, 68:21
**numerous** [1] - 22:15
**nunc** [2] - 56:23, 62:1

## O

**o'clock** [1] - 69:13
**O'CONNOR** [1] - 6:6
**O'Connor** [1] - 11:13
**objection** [1] - 45:18
**objective** [1] - 64:20
**obviously** [4] - 27:1, 28:23, 33:3, 55:16
**occur** [1] - 64:23

**occurs** [2] - 67:24
**October** [2] - 28:1, 69:12
**OF** [1] - 1:2
**offended** [1] - 20:22
**office** [1] - 61:16
**Official** [2] - 7:8, 70:9
**old** [1] - 18:12
**ON** [1] - 4:12
**once** [5] - 48:22, 49:18, 51:20, 56:6, 56:16
**One** [2] - 4:23, 5:8
**one** [42] - 5:3, 12:16, 12:19, 12:20, 18:3, 19:12, 22:1, 22:17, 25:3, 27:2, 27:21, 29:12, 29:15, 30:1, 32:7, 32:19, 32:22, 33:19, 34:14, 37:1, 37:7, 37:19, 38:6, 39:12, 40:23, 42:9, 44:1, 44:2, 45:4, 47:11, 48:3, 48:15, 56:10, 57:6, 58:20, 60:6, 66:18, 67:4, 69:1, 69:2, 69:4
**one-inch** [1] - 69:4
**one-sided** [1] - 69:2
**ongoing** [1] - 35:13
**open** [1] - 67:12
**opened** [1] - 8:1
**operate** [2] - 29:8, 65:3
**operating** [2] - 18:17, 40:4
**operators** [1] - 20:14
**opponent** [1] - 62:12
**opponents** [1] - 23:21
**opportunism** [1] - 44:3
**opportunity** [13] - 30:8, 34:22, 41:3, 44:3, 44:5, 44:6, 44:9, 44:11, 57:1, 59:5, 63:22, 68:22, 68:25
**opposed** [6] - 9:23, 12:20, 15:21, 17:25, 18:4, 53:20
**opposing** [1] - 69:8
**opposition** [2] - 30:11, 34:8
**oppositions** [1] - 45:16
**options** [4] - 26:23, 47:16, 48:1, 48:6
**oral** [1] - 8:14
**order** [4] - 8:21, 28:1, 67:12, 67:16

**ordered** [5] - 27:20, 35:11, 39:8, 60:11, 67:10
**orderly** [1] - 29:6
**orders** [1] - 27:20
**organization** [1] - 31:2
**original** [1] - 46:3
**otherwise** [2] - 53:21, 63:4
**outcome** [8] - 13:14, 26:5, 26:22, 38:3, 46:18, 47:15, 47:18, 64:20
**outside** [1] - 37:4
**overemphasize** [1] - 45:11
**overview** [1] - 43:7
**owners** [1] - 40:3

## P

**P.C** [2] - 5:22, 6:13
**PA** [17] - 4:9, 4:16, 4:19, 4:23, 5:4, 5:12, 5:16, 5:20, 5:23, 6:4, 6:7, 6:11, 6:15, 6:19, 6:23, 7:4, 7:10
**Pacor** [2] - 46:11, 46:16
**pages** [1] - 69:2, 69:5, 69:7
**paid** [1] - 66:7
**pandemic** [1] - 16:23
**panoply** [1] - 23:15
**papers** [2] - 29:18, 68:23
**part** [5] - 13:25, 18:18, 21:3, 57:5, 63:9
**partial** [1] - 68:3
**partially** [2] - 12:18, 62:5
**participate** [4] - 27:23, 35:14, 60:12, 67:23
**participation** [1] - 36:1
**particular** [7] - 12:16, 17:1, 18:7, 22:17, 33:23, 52:16, 58:6
**particularly** [2] - 8:23, 32:13
**parties** [33] - 16:3, 16:4, 19:7, 19:10, 20:16, 25:8, 25:21, 27:22, 28:7, 29:13, 35:13, 38:10, 43:1,

43:12, 43:14, 43:18, 43:20, 44:14, 44:22, 45:16, 45:23, 49:4, 49:20, 50:1, 50:6, 50:16, 60:5, 60:16, 62:3, 67:11, 67:14, 67:17, 67:21

**partner** [2] - 21:22, 30:5

**parts** [1] - 34:11

**party** [7] - 20:22, 45:19, 45:25, 51:5, 54:9, 54:24, 55:1

**party's** [1] - 47:19

**passed** [1] - 56:22

**past** [1] - 53:2

**Patel** [4] - 5:5, 10:4, 25:22, 25:24

**path** [2] - 40:20, 46:10

**Paxson** [1] - 9:17

**PAXSON** [1] - 4:18

**PC** [2] - 4:14, 4:21

**peers** [2] - 60:20, 63:25

**pendency** [2] - 17:2, 35:12

**pending** [10] - 22:11, 22:16, 27:2, 27:9, 29:7, 33:11, 37:9, 39:12, 43:20, 46:1

**Penn** [1] - 6:14

**Pennsylvania** [7] - 19:25, 36:21, 37:4, 37:5, 59:20, 60:19, 63:13

**PENNSYLVANIA** [1] - 1:2

**people** [5] - 58:8, 58:9, 64:15, 67:16, 68:21

**per** [1] - 13:1

**perhaps** [1] - 41:5

**period** [3] - 56:16, 61:15, 62:22

**permissive** [5] - 13:1, 13:3, 44:23, 49:20, 52:4

**permitting** [1] - 60:6

**person** [1] - 49:10

**personal** [6] - 19:17, 20:7, 20:21, 44:18, 46:23, 63:3

**Peter** [1] - 9:16

**PETER** [1] - 4:18

**philadelphia** [1] - 5:23

**PHILADELPHIA** [1] - 4:9

**Philadelphia** [36] -

4:16, 4:19, 4:23, 5:4, 5:12, 5:16, 5:20, 6:4, 6:7, 6:11, 6:15, 6:19, 7:4, 7:10, 13:13, 13:16, 15:4, 17:22, 18:9, 18:15, 18:21, 22:6, 27:6, 31:5, 37:9, 37:14, 37:15, 53:7, 53:11, 60:19, 63:18, 63:21, 63:23, 63:24

**phrase** [1] - 42:18

**pick** [1] - 51:2

**picks** [1] - 57:19

**piece** [1] - 36:6

**Pike** [1] - 6:22

**PIPER** [1] - 5:10

**Piper** [1] - 11:22

**place** [4] - 18:22, 28:9, 44:4, 64:2

**Place** [1] - 4:23

**Plaintiff** [11] - 1:5, 1:11, 1:18, 2:4, 2:10, 2:17, 3:4, 3:11, 3:18, 4:3, 4:24

**plaintiff** [16] - 9:21, 15:7, 24:1, 30:23, 42:9, 44:25, 50:13, 52:11, 52:15, 53:18, 55:5, 56:20, 59:20, 60:20, 66:20

**plaintiffs** [30] - 8:25, 9:1, 9:7, 11:3, 12:13, 12:23, 13:12, 15:3, 15:9, 16:17, 18:10, 18:12, 23:24, 27:1, 30:14, 37:25, 39:10, 42:3, 43:22, 44:15, 44:20, 49:22, 49:24, 50:2, 50:7, 50:19, 52:3, 58:8, 63:19, 64:2

**Plaintiffs** [2] - 4:16, 4:20

**plaintiffs'** [12] - 9:8, 19:24, 20:6, 23:23, 29:17, 29:21, 30:9, 48:19, 59:17, 65:14, 66:11

**plan** [1] - 31:23

**planning** [2] - 8:22, 54:4

**playbook** [1] - 64:1

**player** [1] - 25:4

**Pleas** [12] - 15:5, 17:22, 18:5, 18:9, 22:6, 22:15, 31:5, 37:10, 39:9, 43:15, 53:13, 63:19

**plus** [1] - 22:2

**podium** [2] - 25:10,

25:14

**point** [16] - 14:23, 14:24, 18:1, 23:8, 24:22, 29:19, 43:19, 48:19, 51:24, 54:4, 54:16, 62:11, 63:7, 65:8, 66:18, 67:5

**pointed** [1] - 46:6

**points** [2] - 59:3, 59:5

**poised** [1] - 60:14

**poisoned** [1] - 30:19

**policies** [2] - 26:1, 27:7

**policy** [6] - 27:12, 29:19, 38:16, 39:11, 64:14, 64:17

**pool** [1] - 40:21

**poorly** [1] - 16:8

**pop** [4] - 23:21, 27:5, 31:3, 67:2

**portion** [1] - 20:20

**pose** [2] - 34:15, 55:11

**posed** [1] - 8:14

**posing** [2] - 53:4, 66:2

**position** [1] - 44:15

**positively** [1] - 47:16

**possibility** [1] - 67:13

**POST** [1] - 6:13

**Post** [1] - 11:19

**postpone** [1] - 14:20

**postponed** [1] - 16:23

**posture** [1] - 43:22

**potential** [5] - 13:24, 46:10, 47:19, 48:4, 60:6

**potentially** [1] - 43:3

**power** [3] - 56:15, 56:18, 68:2

**practice** [1] - 57:7

**PRATTER** [1] - 4:11

**precedent** [1] - 38:7

**precise** [1] - 69:12

**predominance** [1] - 36:15

**predominate** [1] - 19:24

**predominates** [1] - 36:24

**prejudice** [7] - 15:18, 15:21, 38:9, 53:17, 62:2, 62:7

**prejudiced** [4] - 15:6, 15:7, 15:10, 16:4, 65:4

**preliminary** [2] - 23:6, 28:7

**preponderance** [3] - 45:21, 49:21, 52:3

**present** [2] - 37:13, 49:24

**presents** [1] - 66:9

**presiding** [2] - 17:20, 18:25

**presumably** [2] - 8:21, 12:17

**pretenses** [1] - 63:17

**pretty** [1] - 51:8

**previously** [2] - 50:4, 55:1

**PriceWaterhouse** [1] - 46:8

**primary** [2] - 12:19, 27:11

**principle** [1] - 57:15

**principles** [4] - 37:3, 55:12, 56:4, 58:14

**Priore** [1] - 11:7

**PRIORE** [1] - 5:22

**priority** [1] - 60:10

**pro** [2] - 56:23, 62:1

**problem** [2] - 10:23, 15:13

**problems** [3] - 58:3, 58:5, 69:14

**procedural** [1] - 56:16

**proceed** [2] - 9:5, 42:25

**proceeding** [5] - 26:3, 29:4, 40:19, 43:10, 49:8

**proceedings** [9] - 22:21, 32:5, 32:13, 37:18, 46:4, 53:16, 64:18, 66:14, 70:4

**process** [1] - 38:18

**produced** [1] - 7:11

**profound** [1] - 38:3

**Promislo** [1] - 11:12

**PROMISLO** [2] - 6:6, 11:12

**prompted** [1] - 39:24

**prompting** [1] - 29:17

**pronouncement** [1] - 46:9

**proper** [3] - 29:1, 44:12, 45:21

**properly** [3] - 29:3, 49:18, 50:21

**proposition** [1] - 50:20

**protection** [2] - 30:2, 65:12

**protocol** [2] - 10:20, 24:6

**provide** [3] - 18:6, 26:1, 28:21

**provided** [1] - 33:4

**provides** [4] - 44:17, 45:24, 46:16, 51:1

**PRUDENTE** [2] - 6:22, 12:4

**Prudente** [1] - 12:5

**publicity** [2] - 30:16, 30:20

**purpose** [2] - 34:8, 38:17

**purposes** [3] - 14:13, 28:24, 29:5

**pursuant** [3] - 12:24, 45:23, 50:24

**pursuing** [1] - 40:20

**pushing** [1] - 53:1

**put** [7] - 8:12, 11:24, 28:13, 36:10, 51:23, 61:1, 65:6

## Q

**questions** [3] - 24:3, 24:7, 68:22

**quick** [1] - 31:15

**quickly** [1] - 33:17

**Quinlan** [3] - 21:21, 21:25, 30:5

**quite** [6] - 16:10, 20:10, 32:17, 34:2, 35:7, 39:12

**quotation** [2] - 62:13, 62:17

**quote** [2] - 22:1, 62:17

## R

**raised** [3] - 55:9, 62:7, 69:8

**Ramara** [2] - 6:23, 12:6

**rather** [4] - 29:5, 36:17, 50:5

**reached** [1] - 8:7

**read** [1] - 69:3

**ready** [5] - 15:20, 24:13, 24:14, 24:15, 32:20

**real** [2] - 30:18, 39:19

**realized** [1] - 56:21

**really** [19] - 13:3, 13:25, 14:1, 18:2, 23:14, 27:4, 30:21, 32:15, 36:20, 37:22, 38:10, 38:14, 40:8,

41:11, 51:13, 58:16, 68:23, 69:7, 69:14

**reason** [1] - 26:15
**reasons** [1] - 38:20
**reassigned** [2] - 16:2, 17:21
**recap** [1] - 43:7
**recently** [2] - 18:24, 27:20
**recess** [1] - 24:25
**recognize** [1] - 58:13
**recommend** [1] - 36:4
**record** [6] - 8:17, 11:24, 59:15, 61:1, 61:17, 70:4
**records** [1] - 8:17
**Reed** [1] - 57:7
**refer** [4] - 8:16, 19:9, 25:22, 68:2
**reference** [1] - 21:19
**referenced** [1] - 22:9
**referral** [1] - 68:4
**regard** [2] - 15:25, 17:4
**regarding** [1] - 49:25
**reign** [1] - 26:16
**rejoined** [1] - 43:21
**related** [30] - 10:2, 19:2, 25:8, 25:21, 26:3, 26:5, 26:9, 26:16, 26:19, 26:24, 26:25, 27:17, 31:22, 34:23, 43:12, 43:14, 46:5, 46:7, 46:10, 46:16, 46:17, 46:21, 47:5, 49:3, 49:6, 49:17, 55:16, 67:11
**relatedness** [3] - 22:21, 37:17, 53:15
**relating** [1] - 37:11
**relationship** [1] - 42:15
**relatively** [3] - 36:20, 48:10, 58:12
**relied** [1] - 34:9
**relies** [1] - 30:23
**rely** [1] - 24:4
**remain** [4] - 38:21, 41:4, 60:3, 60:21
**remaining** [1] - 43:15
**remains** [1] - 60:15
**REMAND** [1] - 4:12
**remand** [36] - 8:15, 8:25, 12:13, 12:24, 12:25, 13:5, 19:4, 19:5, 19:10, 19:13, 19:15, 30:25, 33:23, 33:24, 33:25, 34:5, 37:20, 38:5, 41:16,

42:1, 44:22, 45:17, 45:18, 49:20, 50:9, 51:7, 51:13, 52:5, 53:19, 55:2, 55:3, 55:6, 56:7, 56:16, 66:24, 68:19
**remanded** [5] - 13:9, 22:19, 50:8, 65:20, 66:22
**remander** [1] - 18:22
**remanding** [4] - 19:5, 31:9, 31:20, 60:13
**remedies** [1] - 53:20
**remember** [2] - 57:7, 62:13
**remind** [2] - 62:17, 68:9
**reminiscent** [2] - 20:25, 21:1
**remoteness** [3] - 22:21, 37:17, 53:16
**removal** [21] - 22:12, 28:25, 29:3, 31:12, 33:4, 33:24, 34:4, 35:8, 38:11, 38:13, 43:17, 44:11, 45:20, 45:22, 50:11, 50:17, 50:22, 50:25, 54:14, 55:7, 61:12
**removals** [3] - 44:21, 49:25, 54:20
**remove** [4] - 38:18, 45:25, 51:5, 68:12
**removed** [21] - 8:24, 17:9, 26:2, 31:3, 38:10, 38:12, 43:11, 43:13, 43:19, 49:18, 50:3, 50:4, 50:12, 50:21, 50:24, 51:2, 51:3, 54:25, 55:8, 59:6, 66:20
**removing** [3] - 43:17, 44:14, 45:16
**reorganize** [2] - 29:8, 40:16, 40:18, 41:3, 41:12
**repeat** [1] - 68:24
**repeatedly** [1] - 60:5
**repetition** [1] - 8:23
**replacement** [1] - 21:20
**reported** [1] - 28:15
**Reporter** [2] - 7:8, 70:9
**represent** [6] - 11:19, 24:1, 35:23, 58:23, 59:10, 61:18
**represented** [1] - 61:15

**representing** [1] - 48:23
**request** [1] - 16:7
**requesting** [1] - 21:24
**requires** [1] - 55:19
**reset** [1] - 17:9
**resist** [1] - 47:11
**resolution** [3] - 28:17, 32:12, 65:24
**resolve** [2] - 29:7, 60:14
**resolved** [1] - 32:15
**resolving** [1] - 17:23
**Resorts** [2] - 10:7, 11:22
**resources** [1] - 22:5
**respect** [6] - 19:12, 32:8, 32:5, 42:1, 42:2, 49:23
**respectfully** [1] - 56:25
**respond** [3] - 15:24, 57:1, 61:6
**responded** [2] - 62:5, 62:6
**response** [1] - 55:9
**responses** [2] - 16:4, 62:4
**rest** [1] - 44:3
**result** [4] - 13:4, 13:5, 65:23, 66:21
**results** [1] - 48:4
**retain** [1] - 68:1
**retained** [1] - 42:24
**retired** [1] - 36:3
**retroactively** [2] - 56:21, 62:1
**return** [1] - 13:5
**returned** [1] - 9:2
**rights** [6] - 26:22, 43:5, 47:15, 48:1, 48:5, 60:9
**risk** [2] - 40:24, 49:7
**Ritz** [2] - 6:20, 12:3
**Robins** [1] - 17:18
**Rome** [4] - 10:1, 21:22, 21:23, 25:19
**ROME** [1] - 5:2
**RONON** [1] - 6:9
**Ronon** [1] - 11:16
**room** [1] - 24:16
**ROOSEVELT** [6] - 1:7, 1:13, 1:20, 2:6, 2:12, 4:5
**Roosevelt** [43] - 5:5, 5:24, 6:15, 8:16, 10:2, 10:3, 11:7, 11:20, 13:18, 14:4, 14:14, 16:7, 16:13, 16:21,

17:4, 18:11, 18:13, 18:14, 18:18, 19:2, 20:17, 21:6, 21:11, 21:16, 25:20, 25:23, 27:6, 39:18, 50:11, 50:12, 50:13, 55:6, 61:11, 63:18, 63:22, 63:24, 64:17, 65:25, 66:6, 66:16
**root** [1] - 58:15
**Rose** [4] - 5:24, 6:15, 11:8, 11:19
**routine** [1] - 23:20
**Roxbury** [1] - 56:14
**RPR** [2] - 7:8, 70:9
**rule** [3] - 38:15, 53:21, 54:21, 57:8, 59:12
**Rule** [1] - 57:8
**ruled** [1] - 28:12
**rules** [3] - 57:6, 69:1
**ruling** [2] - 22:13
**rulings** [3] - 43:4, 48:3, 59:13
**run** [3] - 20:7, 31:10, 57:24
**run-of-the-mill** [1] - 20:7
**running** [2] - 65:20, 65:21
**runs** [1] - 56:6

## S

**sacrosanct** [1] - 57:6
**sALTZ** [1] - 4:21
**Saltz** [1] - 9:21
**Saltzburg** [1] - 12:2
**SALTZBURG** [1] - 6:17
**Sandora** [1] - 12:8
**SANDORA** [2] - 7:3, 12:7
**SASSO** [2] - 6:10, 11:15
**Sasso** [1] - 11:15
**satisfied** [3] - 10:22, 47:1, 49:22
**satisfies** [1] - 47:14
**satisfy** [2] - 50:8, 50:9
**SAUL** [1] - 5:18
**Saul** [3] - 10:17, 45:9, 54:7
**saw** [1] - 27:19
**scheduled** [2] - 15:25, 29:11
**Schell** [1] - 11:19
**SCHELL** [1] - 6:13

**scoot** [1] - 64:13
**Scout** [3] - 22:14, 22:19, 66:19
**Scouts** [4] - 19:9, 22:9, 31:1
**seats** [2] - 8:2, 10:14
**second** [4] - 23:3, 43:6, 44:12, 50:18
**Section** [1] - 38:17
**section** [1] - 34:9
**secured** [4] - 32:3
**securities** [2] - 8:10, 24:24
**security** [1] - 27:13
**Security** [2] - 10:11, 58:23
**see** [5] - 35:7, 36:3, 39:23, 42:22, 51:24
**seeing** [1] - 32:17
**seek** [2] - 12:24, 27:1
**seeking** [4] - 13:8, 42:4, 49:20, 62:1
**seem** [1] - 39:16
**selection** [3] - 15:25, 16:9, 29:10
**selling** [1] - 20:15
**sense** [2] - 9:8, 36:4
**sent** [3] - 29:21, 61:20, 64:1
**separate** [5] - 41:9, 42:21, 43:17, 44:21, 61:9
**separately** [1] - 43:11
**SEPTEMBER** [1] - 4:10
**September** [1] - 61:14
**serious** [10] - 39:17, 49:3, 49:16, 58:7, 58:8, 58:11, 58:13, 58:14, 58:16, 69:14
**serve** [1] - 12:21
**session** [1] - 61:1
**set** [3] - 8:14, 19:8, 52:14
**setting** [1] - 65:1
**settled** [2] - 36:21, 52:13
**settlement** [7] - 29:18, 29:22, 39:8, 40:2, 40:6, 64:5, 64:7
**settlements** [1] - 64:15
**seven** [8] - 19:6, 19:7, 31:7, 57:16, 57:17, 69:2, 69:5, 69:7
**seven-factor** [1] - 19:6

several [2] - 22:13, 42:5
sex [7] - 18:11, 18:13, 18:21, 20:15, 21:2, 52:17, 63:15
sexual [2] - 13:15, 20:14
sexually [1] - 64:21
shall [1] - 46:3
shed [1] - 60:2
Shelley [1] - 17:18
shield [6] - 40:11, 40:12, 40:13, 55:12, 55:13, 64:19
shifts [1] - 49:19
shocks [1] - 39:14
shopping [4] - 13:22, 14:5, 29:5, 41:11
short [1] - 67:4
shorthand [1] - 7:11
shortly [1] - 30:8
shown [1] - 39:20
side [1] - 25:1
sided [1] - 69:2
sign [1] - 9:12
sign-in [1] - 9:12
signature [1] - 69:6
significant [1] - 32:3
significantly [1] - 48:6

similar [3] - 54:24, 55:5, 66:19
simply [5] - 14:3, 19:21, 36:4, 59:4, 60:7
single [3] - 18:1, 42:4, 48:9
sit [2] - 23:15, 63:22
situation [5] - 31:1, 33:5, 42:22, 44:19, 66:9
six [1] - 22:12
size [1] - 22:1
skipped [1] - 12:11
slam [1] - 21:9
slip [1] - 20:8
smacks [2] - 13:23, 15:21
Smith [4] - 10:16, 54:7, 61:17, 61:25
SMITH [28] - 5:18, 10:13, 10:16, 54:2, 54:6, 54:14, 54:18, 55:17, 55:20, 55:22, 55:25, 56:2, 56:5, 56:9, 56:11, 56:14, 56:25, 57:4, 57:12, 57:14, 57:16, 57:19, 57:23, 58:1, 58:4, 58:18, 59:1, 59:3

soft [1] - 30:11
sold [4] - 17:2, 18:11, 18:13, 18:17
sometimes [1] - 58:11
somewhat [2] - 16:23, 69:19
somewhere [2] - 21:10, 26:18
soon [1] - 40:23
sorry [4] - 13:7, 29:2, 35:17, 57:18
sort [5] - 17:24, 18:3, 40:21, 48:21, 51:15
sorts [1] - 43:2
sound [4] - 14:6, 52:23, 58:1, 59:18
sounds [3] - 15:16, 23:7, 58:2
sources [1] - 30:21
spa [2] - 20:21, 20:23
spaced [1] - 69:2
speaking [3] - 8:13, 42:9, 58:5
specific [1] - 24:3
specifically [5] - 46:22, 47:23, 51:5, 54:9, 63:10
Specter [2] - 9:7, 11:3
SPECTER [1] - 4:14
speed [1] - 36:5
speedier [1] - 32:12
spends [1] - 47:9
SPITZ [2] - 6:13, 11:18
Spitz [1] - 11:19
spookiness [1] - 48:16
spots [1] - 24:21
Spring [1] - 6:23
squabble [1] - 62:23
Square [3] - 5:3, 5:19, 6:18
stages [2] - 28:25, 37:24
stamped [1] - 61:21
standard [1] - 51:16
standpoint [1] - 14:8
started [6] - 10:19, 16:12, 29:12, 29:13, 59:13, 59:15
starting [1] - 39:17
starts [1] - 17:9
state [10] - 12:24, 19:24, 20:4, 36:15, 36:23, 37:2, 37:12, 50:11, 52:13, 63:8
State [36] - 9:2, 13:6, 13:9, 15:10, 15:22,

16:19, 17:11, 21:8, 21:16, 22:10, 22:11, 22:13, 28:25, 32:19, 33:14, 33:18, 36:25, 37:14, 43:1, 43:4, 43:23, 44:22, 48:12, 49:8, 52:12, 52:20, 59:9, 59:12, 65:1, 65:3, 65:6, 65:20, 66:10, 66:20, 66:23, 66:24
statements [1] - 67:21
STATES [1] - 1:1
status [1] - 32:2
statute [9] - 50:22, 51:1, 51:4, 55:24, 56:12, 59:19, 59:21, 63:9
statutes [1] - 60:16
statutory [3] - 43:10, 43:16, 44:6, 51:17, 51:18, 56:16, 68:13
stay [10] - 8:4, 19:1, 25:11, 28:11, 40:14, 40:15, 65:12, 66:3, 66:4, 66:13
stayed [3] - 60:3, 60:15, 66:15
staying [2] - 40:4, 53:6
Stella [1] - 16:2
step [1] - 40:8
steps [1] - 68:11
STEVENS [1] - 6:9
Stevens [1] - 11:16
stick [2] - 24:6, 40:12
still [5] - 32:22, 37:4, 40:4, 51:20, 54:1
stop [3] - 14:5, 14:14, 14:22
stopped [1] - 21:23
stopping [1] - 14:13
story [1] - 62:22
Stradley [1] - 11:16
STRADLEY [1] - 6:9
straight [1] - 47:2
straightforward [1] - 36:18
street [2] - 32:24, 34:20
Street [12] - 4:15, 4:19, 4:22, 5:11, 5:15, 5:19, 5:23, 6:3, 6:7, 6:10, 6:19, 7:9
Streets [1] - 5:4
strict [1] - 54:21
strident [1] - 56:8
strongly [4] - 28:15, 32:9, 38:5, 41:6

subject [3] - 50:16, 50:22, 54:22
sublets [1] - 20:20
submit [2] - 49:22, 69:2
submitted [2] - 28:2, 67:21
substantial [1] - 27:1
substantive [1] - 49:12
sues [1] - 20:22
suggest [3] - 52:19, 57:17, 63:4
suggested [1] - 30:9
Suite [6] - 5:11, 5:15, 5:23, 6:3, 6:7, 6:10
suite [1] - 7:4
super [2] - 58:7, 58:13
supervising [1] - 17:21
supplement [3] - 68:23, 68:24
suppose [4] - 12:14, 26:10, 33:24, 34:2
surprise [1] - 55:14
sword [4] - 40:11, 55:12, 55:13, 62:9
system [1] - 15:3

T

task [1] - 21:20
ten [6] - 24:23, 34:18, 35:3, 42:20, 48:12, 57:14
ten-count [1] - 24:23
terms [5] - 15:18, 24:11, 33:22, 48:20, 69:15
test [6] - 19:7, 19:8, 34:16, 47:1, 47:3, 50:9
testimony [2] - 16:5, 16:7
tests [1] - 47:10
THE [157] - 1:1, 1:2, 4:11, 8:2, 9:10, 9:19, 9:22, 10:15, 10:19, 11:5, 11:25, 12:10, 13:2, 13:7, 13:23, 14:6, 14:19, 15:1, 15:6, 15:12, 15:16, 17:7, 17:14, 17:24, 20:3, 20:11, 20:19, 21:3, 21:9, 21:13, 23:3, 23:5, 23:10, 23:13, 23:20, 24:5, 24:10, 24:13, 24:14,

24:15, 24:17, 24:19, 24:20, 25:1, 25:9, 25:12, 25:15, 25:17, 26:8, 26:13, 26:15, 26:18, 28:4, 28:11, 28:18, 31:10, 31:15, 31:23, 32:12, 33:1, 33:8, 33:12, 33:20, 34:15, 34:24, 35:2, 35:6, 35:15, 35:18, 35:22, 36:2, 36:10, 36:14, 36:23, 38:23, 38:25, 39:4, 39:13, 39:22, 40:9, 41:13, 41:15, 41:19, 41:21, 42:12, 42:20, 43:24, 44:7, 44:13, 45:3, 45:7, 45:11, 45:14, 46:13, 47:2, 47:8, 48:8, 49:1, 49:7, 49:14, 51:12, 51:20, 51:23, 52:15, 52:25, 53:8, 53:14, 53:22, 53:24, 54:3, 54:13, 54:16, 55:11, 55:18, 55:21, 55:23, 56:1, 56:3, 56:8, 56:10, 56:12, 56:23, 57:3, 57:5, 57:13, 57:15, 57:18, 57:21, 57:24, 58:2, 58:5, 58:19, 58:25, 59:2, 60:23, 61:4, 61:8, 62:8, 62:11, 62:19, 62:20, 63:1, 63:5, 63:9, 64:4, 64:9, 64:22, 65:11, 65:18, 65:23, 66:13, 66:17, 67:1, 67:6, 67:16, 68:7, 68:15
themselves [3] - 38:12, 65:13, 66:2
theoretical [1] - 66:2
theories [1] - 20:13
theory [2] - 20:24, 34:16
thereabouts [1] - 39:10
therefore [1] - 50:3
they've [3] - 8:7, 32:4, 53:9
Third [6] - 46:9, 46:11, 47:14, 50:20, 52:11, 56:15
third [2] - 20:15, 54:9
third-party [1] - 54:9
THOMAS [1] - 6:21
Thomas [2] - 12:5
tHOMAS [2] - 5:15, 6:21
thoroughly [1] - 24:2

**three** [3] - 13:16, 18:20, 29:24
**thrill** [1] - 8:9
**throws** [1] - 64:5
**tight** [1] - 26:16
**time-stamped** [1] - 61:21
**timeliness** [1] - 62:7
**timely** [5] - 29:1, 29:3, 43:17, 56:21, 62:2
**timesheets** [1] - 8:12
**timing** [8] - 15:19, 24:12, 39:2, 41:5, 55:13, 57:8, 68:19, 69:15
**Title** [3] - 24:23, 46:5
**today** [3] - 8:6, 32:8, 65:16
**together** [1] - 28:7
**Tom** [1] - 10:10
**tomorrow** [2] - 32:21, 39:17
**took** [1] - 17:5
**tort** [6] - 20:21, 28:2, 33:6, 37:23, 52:23, 60:7
**tote** [1] - 31:11
**toting** [1] - 31:15
**toured** [1] - 16:4
**Tower** [1] - 6:18
**tracked** [1] - 16:25
**trafficked** [1] - 63:15
**trafficking** [6] - 18:21, 21:2, 36:19, 42:5, 52:17, 59:20
**Trafficking** [1] - 63:13
**Transcript** [1] - 7:11
**transcript** [1] - 70:3
**transfer** [2] - 30:14, 30:18
**translucent** [1] - 46:13
**transpired** [1] - 17:13
**trial** [40] - 13:19, 13:20, 14:5, 14:13, 14:14, 14:15, 14:20, 15:20, 16:1, 16:5, 16:11, 16:12, 16:16, 16:20, 17:18, 21:18, 21:23, 22:17, 23:2, 29:9, 29:12, 30:4, 30:8, 30:10, 30:13, 33:16, 33:17, 38:7, 39:7, 40:7, 40:23, 40:25, 41:7, 44:16, 53:13, 59:11, 59:13, 59:15

**trials** [1] - 44:18
**trick** [1] - 57:5
**tried** [9] - 14:14, 14:19, 18:9, 18:24, 21:7, 22:25, 33:7, 33:10, 55:2
**trier** [1] - 47:25
**true** [5] - 32:1, 34:25, 35:1, 48:17, 64:11
**trust** [1] - 40:22
**try** [8] - 30:4, 32:20, 41:3, 41:12, 45:7, 45:12, 60:2, 60:14
**trying** [1] - 14:4, 28:7, 33:20
**Tsai** [1] - 16:2
**Tuesday** [6] - 57:21, 57:22, 58:17, 68:18, 69:11, 69:12
**tunc** [2] - 56:24, 62:1
**turn** [1] - 25:15
**twice** [1] - 14:20
**two** [8] - 15:18, 17:5, 17:6, 32:21, 39:1, 43:7, 49:25, 54:25
**type** [3] - 51:19, 65:15, 69:2
**types** [1] - 20:9

## U

**U.S** [1] - 7:9
**U.S.C** [8] - 12:25, 13:1, 34:7, 43:11, 44:17, 45:23, 50:24, 51:4
**UFVS** [3] - 5:5, 10:3, 25:21
**ultimately** [1] - 30:2
**umbrella** [2] - 26:19, 56:19
**uncomfortable** [1] - 8:5
**uncouple** [1] - 42:23
**undeniable** [1] - 48:9
**under** [22] - 19:24, 25:25, 26:8, 26:19, 28:3, 41:5, 43:11, 46:2, 46:4, 50:8, 50:25, 51:4, 54:20, 56:19, 57:10, 59:20, 59:21, 61:11, 61:24, 63:13, 63:17, 68:25
**undercut** [1] - 38:17
**underpinning** [1] - 62:12
**understood** [1] - 62:10
**undisputed** [1] -

61:10
**unfortunately** [1] - 32:8
**unhappy** [1] - 23:13
**unintended** [1] - 21:9
**unique** [3] - 12:15, 54:11, 59:22
**UNITED** [1] - 1:1
**unknowable** [1] - 32:15
**unless** [2] - 24:3, 54:21
**unmistakable** [1] - 13:24
**unsecured** [1] - 39:23
**unsettled** [2] - 20:3, 52:10
**unspeakable** [1] - 58:16
**unstated** [1] - 13:23
**untimeliness** [2] - 54:12, 61:7
**untimely** [1] - 55:4, 55:10
**unusual** [1] - 28:18
**up** [29] - 8:3, 8:23, 10:14, 17:24, 18:19, 23:14, 23:21, 25:2, 31:11, 31:15, 32:22, 36:5, 41:7, 41:19, 41:20, 47:11, 52:18, 54:1, 54:5, 54:24, 56:17, 57:6, 58:20, 65:25, 65:6, 65:20, 65:21, 67:2, 69:18
**useful** [1] - 36:6
**usual** [2] - 23:20, 24:6

## V

**vacating** [1] - 24:21
**VALENTINI** [1] - 6:2
**valid** [1] - 53:21
**value** [2] - 27:3, 29:23
**various** [5] - 8:17, 31:3, 42:7, 42:10, 58:9
**vehicle** [1] - 20:8
**venue** [5] - 14:17, 15:4, 16:15, 30:14, 30:18
**verdict** [8] - 8:8, 8:9, 8:24, 27:2, 27:15, 32:22, 40:24, 65:16
**verdicts** [1] - 48:16

**verge** [1] - 16:11
**verified** [1] - 21:25
**version** [1] - 61:21
**versus** [1] - 50:19
**vested** [1] - 13:14
**via** [1] - 7:11
**victims** [1] - 60:9
**videotaped** [1] - 16:6
**view** [4] - 28:21, 31:22, 34:12, 56:8
**viewed** [1] - 51:18
**virtually** [1] - 40:11
**vocal** [1] - 9:13
**void** [4] - 44:22, 50:3, 50:18, 51:6
**voluntarily** [1] - 38:10
**vs** [10] - 1:6, 1:12, 1:19, 2:5, 2:11, 2:18, 3:5, 3:12, 3:19, 4:4

## W

**WAGNER** [1] - 5:15
**Wagner** [1] - 10:10
**wait** [2] - 23:15, 58:20
**wants** [2] - 53:24, 68:15
**WARNER** [1] - 5:14
**wash** [1] - 37:2
**watching** [1] - 8:9
**water** [1] - 40:5
**ways** [1] - 33:17
**wedding** [1] - 57:25
**weeks** [1] - 32:22
**weigh** [2] - 31:9, 34:12
**weighs** [5] - 31:19, 33:22, 33:23, 52:8, 53:6
**well-known** [1] - 18:21
**well-settled** [1] - 36:21
**West** [2] - 5:19, 6:18
**wherewithal** [1] - 66:1
**whoever's** [1] - 8:3
**willing** [1] - 15:19
**win** [1] - 37:25
**window** [3] - 54:18, 54:19, 56:6
**wish** [1] - 9:1
**withdrew** [1] - 21:22
**witness** [1] - 24:16
**women** [1] - 13:15
**word** [1] - 45:12
**works** [2] - 9:2,

25:12
**world** [3] - 10:15, 18:20, 65:4
**Worldwide** [3] - 5:9, 10:6, 10:8
**WORLDWIDE** [4] - 2:19, 3:6, 3:13, 3:20
**worst** [1] - 34:18
**worth** [1] - 29:24
**wow** [1] - 55:14
**writing** [1] - 57:1
**written** [1] - 29:17
**Wyndham** [30] - 5:9, 5:12, 10:6, 10:7, 11:22, 11:23, 18:18, 18:19, 41:18, 41:22, 41:24, 43:8, 45:1, 45:15, 45:22, 49:17, 49:21, 50:1, 50:21, 51:3, 52:2, 54:15, 55:8, 61:3, 61:15, 67:14, 67:20, 67:22
**WYNDHAM** [4] - 2:19, 3:6, 3:13, 3:20
**Wyndham's** [1] - 54:10

## Y

**Yagna** [3] - 5:5, 10:4, 25:22
**year** [2] - 22:2, 29:14
**year-plus** [1] - 22:2
**years** [6] - 13:12, 16:20, 18:12, 22:7, 22:17, 39:6
**yesterday** [1] - 55:9
**yikes** [3] - 39:16, 39:17
**YOUNG** [1] - 6:9
**Young** [1] - 11:16
**young** [1] - 13:15
**yourself** [1] - 69:8

## §

**§** [2] - 34:7, 50:24
**§§** [1] - 45:23