IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.B., | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROOSEVELT INN LLC *et al.*, | : | No. 21-2984 |
| *Defendants* | : | |

| | | |
|---|---|---|
| K.R., | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROOSEVELT INN LLC *et al.*, | : | |
| *Defendants* | : | No. 21-3218 |

| | | |
|---|---|---|
| C.A., | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROOSEVELT INN LLC *et al.*, | : | |
| *Defendants* | : | No. 21-3222 |

| | | |
|---|---|---|
| B.H., | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROOSEVELT INN LLC *et al.*, | : | |
| *Defendants* | : | No. 21-3225 |

| | | |
|---|---|---|
| A.H., | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROOSEVELT INN LLC *et al.*, | : | |
| *Defendants* | : | No. 21-3277 |

| | | |
|---|---|---|
| C.A., | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WYNDHAM WORLDWIDE | : | |
| CORPORATION *et al.*, | : | |
| Defendants | : | No. 21-3392 |

| | | |
|---|---|---|
| B.H., | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WYNDHAM WORLDWIDE | : | |
| CORPORATION *et al.*, | : | |
| Defendants | : | No. 21-3396 |

| | | |
|---|---|---|
| K.R., | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WYNDHAM WORLDWIDE | : | |
| CORPORATION *et al.*, | ` : | |
| Defendants | : | No. 21-3401 |

| | | |
|---|---|---|
| A.H., | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WYNDHAM WORLDWIDE | : | |
| CORPORATION *et al.*, | : | |
| Defendants | : | No. 21-3430 |

| | | |
|---|---|---|
| A.H., | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROOSEVELT INN LLC *et al.*, | : | |
| Defendants | : | No. 21-3914 |

**MEMORANDUM**

PRATTER, J.                                                    OCTOBER *27*, 2021

Federal courts often resolve issues of state law, whether from necessity or convenience. But sometimes necessary and proper respect for state courts demands a more hands-off approach.

Five young women, trafficked for sex at three Philadelphia hotels, sued the hotels in state court. On the eve of the first trial, one of the hotels declared bankruptcy. That put a pause on the trial and let the hotels remove the suits to federal court. The young women have now moved to remand. Because these important state-tort claims should be resolved in state court, the Court grants their motions.

**BACKGROUND**

M.B., C.A., B.H., K.R., and A.H. claim that, as teenagers, they were sold for sex at three north Philadelphia hotels. M.B. was 14, C.A. 16, B.H. 17, K.R. 16, and A.H. 17. All five were trafficked at the Roosevelt Inn. C.A., B.H., and K.R. were also trafficked at the Days Inn on Roosevelt Boulevard, and C.A. and B.H. at the North American Motor Inn.

The hotels insist that they did not know about the prostitution. The young women counter that the hotels *should* have known. They point to suspicious circumstances: The young women had no luggage. C.A.'s Compl. ¶ 64, Doc. No. 1-4, Civ. Action No. 21-3392. Traffickers paid for the rooms in cash and kept up "Do Not Disturb" signs. *Id.* ¶¶ 60–61. In lobbies and hallways, the traffickers "visibly treated" the young women "in an aggressive manner." *Id.* ¶ 58. Men came in and out of rooms, which "contained used condoms and condom wrappers." *Id.* ¶¶ 55, 62–63.

Each young woman sued the hotels' owners, managers, and security guards in separate suits in the Philadelphia County Court of Common Pleas. The defendants filed an array of cross-claims and joined additional defendants in the cases. M.B., the first to sue, was about to go to trial this past July. The day before jury selection was to begin, two of the defendants, Roosevelt Inn

3

LLC and Roosevelt Motor Inn, Inc., filed for bankruptcy. That put an automatic stay on all of the suits. 11 U.S.C. § 362(a).

Shortly after, the debtors, plus UFVS Management Company and Yagna Patel, the Roosevelt Inn's manager, removed the claims against them to this Court. 28 U.S.C. § 1452(a). The remaining defendants followed, separately removing the claims against them.

In total, the defendants filed ten separate notices of removal, creating ten separate cases. In each, the young women moved for this Court to abstain from hearing the claims and to remand them to the Court of Common Pleas. To unravel this "procedural entanglement[ ]," the Court consolidated all ten cases for pretrial purposes. *In re Diet Drugs*, 282 F.3d 220, 232 (3d Cir. 2002).

## DISCUSSION

If a party to a state suit files for bankruptcy, it or its co-parties can remove the case to the federal district court where the bankruptcy case is pending. 28 U.S.C. § 1452(a). This is so even if the federal court would not otherwise have jurisdiction over the claims. The court can then choose to keep those claims or remand them "on any equitable ground." § 1452(b). This decision to remand or not "is not reviewable by appeal." *Id.*; *accord Allied Signal Recovery Tr. v. Allied Signal, Inc.*, 298 F.3d 263, 268 (3d Cir. 2002).

The defendants properly removed these state-tort claims to this Court. The debtors filed for bankruptcy in this district. So this Court has non-exclusive jurisdiction over all claims "related to" that bankruptcy suit. 28 U.S.C. § 1334(b). That is, this Court can hear any claim that "could conceivably have [some] effect on the estate being administered in bankruptcy." *In re W.R. Grace & Co.*, 900 F.3d 126, 139 (3d Cir. 2018). Because verdicts for the young women would give them a claim on the debtors' assets, their claims count as "related to" the debtor's bankruptcy

proceeding. *Id.* Thus, this Court has jurisdiction over the claims. But that does not mean that these claims should stay here in federal court.

## I.    The defendants properly removed the claims against them

In each case, the defendants removed the claims against them in two or three separate notices of removal. For example, in C.A.'s case, the parties affiliated with the Roosevelt Inn filed one notice of removal, and the parties affiliated with the other two hotels, the Days Inn on Roosevelt Boulevard and the North American Motor Inn, filed another. The young women's counsel fault them for this, requesting that the Court void the subsequent notices of removal because the second set of defendants "cannot remove a civil action that has already been removed." C.A.'s Mot. Remand ¶ 1, Doc. No. 8, No. 21-3392.

In general, "the entire lawsuit is removable or not …, not merely claims against particular defendants." *Brown v. Jevic*, 575 F.3d 322, 329 (3d Cir. 2009). That is because the general removal statute provides for removal of "any civil *action*." 28 U.S.C. § 1441(a) (emphasis added). In comparison, the bankruptcy removal statute permits removal of "any *claim* or cause of action in a civil action." 28 U.S.C. § 1452(a) (emphasis added). Thus, the other defendants did not err in separately removing the claims against them.

## II.    A.H. did not miss the deadline for remand

From removal, a party has 30 days to request a remand. 28 U.S.C. § 1447(c); *see Things Remembered v. Petrarca*, 516 U.S. 124, 128–29 (1995). Some of the defendants complain that one young woman, A.H., missed that deadline. In A.H.'s case, three sets of defendants filed separate notices of removal, creating three separate federal cases. The first case was against the Roosevelt defendants, and the second against various Wyndham entities and Eighty-Eight, L.P. A.H. filed a timely motion to remand the second case, but filed it on the docket of the first case. Recognizing

this, A.H. requests that the Court perfect her motion to remand *nunc pro tunc* and retroactively deem it as timely filed in the second case.

This Court can assign an earlier filing date "as justice may require." *Mitchell v. Overman*, 103 U.S. 62, 65 (1880). A.H. has good cause to request this equitable relief: faced with several related cases, she filed her motion on time but accidentally in the wrong case. *Id.* And Wyndham and Eighty-Eight L.P. have not been prejudiced by her mistake. *Id.* They had ample notice of her motion. Eighty-Eight's counsel had entered appearances in the related case. Doc. No. 35-5, Civ. Action No. 21-2984. Plus, A.H.'s counsel separately emailed the parties copies of the motion. Doc. No. 35-6, Civ. Action No. 21-2984. Later, Wyndham's counsel alerted A.H. that the motion had been filed on the wrong docket and asked her to refile it on the correct one so they could respond. Doc. No. 35-7, Civ. Action No. 21-2984. Deeming A.H.'s order timely filed in the correct case simply "reflect[s] the reality of what has already occurred"—both the defendants and this Court had timely notice that A.H. sought to remand those claims. *Roman Catholic Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01 (2020).

Despite this, Wyndham and Eighty-Eight assert that the Court cannot exercise its equitable powers here. By their reasoning, the removal statute's time bar is absolute, because the motion "*must* be made within 30 days." 28 U.S.C. § 1447(c) (emphasis). True, district courts typically do "not have the power to remand" if a party first moves to remand "once the 30-day statutory period lapse[s]." *Roxbury Condo. Ass'n, Inc. v. Anthony S. Cupo Agency*, 316 F.3d 224, 227 (3d Cir. 2003). Yet Congress does not legislate on a blank slate. Behind every statute lie equitable doctrines. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). Absent clear congressional intent to the contrary, courts do not assume that a statute overrides those equitable doctrines. *Id.* Nothing in the removal statute suggests that its time bar stands firm against all

equitable exceptions. To the contrary, the bar "may be equitably tolled" or subject to other "equitable concerns." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 211 (3d Cir. 2014) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005)). Because such equitable concerns arise here, the Court deems A.H.'s motion to remand timely filed.

### III.    The equities favor abstention and remand

The Court can abstain from hearing these claims if doing so would be "in the interest of justice" or "comity." 28 U.S.C. § 1334(c)(1). If the Court finds that it should abstain, then it "consider[s] whether there is reason for the suit to proceed in state court"—that is, whether the Court should remand the claims to the Court of Common Pleas. *Stoe v. Flaherty*, 436 F.3d 209, 215 (3d Cir. 2006). The Court can remand the young women's claims "on any equitable ground." 28 U.S.C. § 1452(b). In other words, the Court must decide if remand "is reasonable, fair, or appropriate." *Allied Signal*, 298 F.3d at 268 (quoting *Things Remembered*, 516 U.S. at 133 (Ginsburg, J., concurring)). For both remand and abstention, courts in this circuit consider certain factors:

- Do the parties have a right to a jury trial?

- Do issues of state law dominate the case?

- How difficult or unsettled are those state law issues?

- Does comity dictate deference to the state court?

- How related is the proceeding to the bankruptcy case?

- How would the remand affect the efficient administration of the bankruptcy estate?

- How much did removal prejudice the non-removing parties?

- Did the removing parties act in bad faith?

*Dieterly v. Boy Scouts of Am.*, No. 20-cv-902, 2020 WL 3447766, at \*3–4 (E.D. Pa. June 24, 2020);
*Kleiner v. Rite Aid Corp.*, 604 B.R. 1, 9 (E.D. Pa. 2019).

In this case, most of these factors favor abstention and remand.

*i. Right to a jury trial.* In both this Court and the Court of Common Pleas, the young women
would have juries to hear their claims. So this factor is neutral.

*ii. Predominance of state law.* State law issues do not just dominate these cases; they *are*
the cases. The young women sue for negligence, intentional and negligent infliction of emotional
distress, and negligent hiring, training, and supervision—all state torts. Despite this, the defendants
insist this factor leans their way, for state tort claims "can readily be addressed by a federal court."
Roosevelt's Opp'n 10, Doc. No. 17, Civil Action No. 21-2984. Perhaps so, but that is not what the
factor asks.

Unwilling to concede this factor, the defendants encourage the Court to throw it out
altogether. Though bankruptcy courts can resolve issues involving the estate's administration, they
cannot hear tort claims that bear on the estate's assets. 28 U.S.C. § 157(b)(1). For those tort claims,
"[t]he district court shall order that [they] shall be tried in the district court in which the bankruptcy
case is pending," or, if the court so chooses, "the district court in the district in which the claim
arose." *Id.* § 157(b)(5). In other words, the district court gets to pick the federal venue for tort
claims related to a bankruptcy proceeding. To the defendants, this provision reflects "clear
Congressional intent … that personal injury claims impacting a debtor be tried in the federal
district court," even if state law claims predominate. Roosevelt's Opp'n 11. The Court does not
agree. This federal venue provision dictates venue once a claim is properly in federal court. It has
nothing to say about whether that claim should be in federal court. To read the venue provision
otherwise would create a direct conflict with the remand provision, which expressly permits

district courts to remand *any* "claim or cause of action" removed because of the bankruptcy. 28 U.S.C. § 1452; *see La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 370 ("[P]rovisions of a statute should be read so as not to create a conflict.").

    *iii. Difficulty of state law.* Liability of innkeepers for their guests traces back to common law. *Appeal of Wellsboro Hotel Co.*, 7 A.2d 334, 335 & n.3 (Pa. 1939); *Sneider v. Geiss*, 1 Yeates 34, 35 (Pa. 1791). Though most actors have "no duty to control the acts of a third party," hotels do, and must take "reasonable precaution against harmful third party conduct that might be reasonably anticipated." *Rabutino v. Freedom State Realty Co., Inc.*, 809 A.2d 933, 938–39 (Pa. Super. Ct. 2002). That means that hotels must be on the lookout for criminal acts and "protect" visitors from them. *Id.* at 939 (quoting Restatement (Second) of Torts § 344). Though these legal principles are well established, their application to the facts at hand is not. These cases are "some of the first" seeking to hold hotels responsible for sex trafficking of minors. Hr'g Tr. 20:12–16. Indeed, the defendants have not identified any prior cases with similar facts and legal issues. "[N]o matter how seasoned the judgment of [this] district court may be," its decision on this novel application of law to the facts "cannot escape being a forecast rather than a determination" of what the Pennsylvania courts would do. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499 (1941). Thus, this factor tilts towards abstention and remand.

    *iv. Comity and federalism.* For the most part, "state courts decide state law issues." *Allied Signal*, 298 F.3d at 269. Of course, federal courts can and do hear state claims, but in limited circumstances, where the state claims accompany federal claims or where the state claims are between citizens of different states. 28 U.S.C. §§ 1332, 1367. But for the pending bankruptcy, this Court would not have jurisdiction over these claims. The parties are not completely diverse. There

are no federal questions at issue. Thus, the state court's interest in resolving these claims is much stronger than this Court's.

Plus, the Court of Common Pleas has already sunk significant "judicial resources" into adjudicating these claims. *In re D'Angelo*, 491 B.R. 395, 407 (E.D. Pa. 2013). M.B.'s case had been in the Court of Common Pleas for four years, the others for one or two. True, as the defendants point out, the Philadelphia County Court of Common Pleas, unlike federal courts, does not assign a case to a single judge prior to trial. Though no one judge is "intimately familiar with the facts and legal issues" of these cases, the Court of Common Pleas *as a whole* has invested substantial time and energy into them. Roosevelt's Opp'n 5. This Court will respect that institutional investment. *Cf. Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (refusing to remand to state court where the "lawsuit had been in [federal court] for more than two years, the trial date was less than a month away, the parties had already filed more than 300 pleadings, most of the parties had already prepared extensive discovery disclosures in accordance with the Federal Rules of Civil Procedure, and summary judgment motions on behalf of many of the remaining defendants were pending").[1]

Fighting this, the defendants point out that this Court is also located in Philadelphia. Though the state and federal courthouses are a mere seven blocks apart, the two courts certainly are not the same. They administer the laws of two separate sovereigns, with separate judges that follow separate rules. Geography does not change that.

---

[1] Indeed, the Pennsylvania courts *continue* to expend judicial resources. Three weeks ago, the Pennsylvania Superior Court issued an opinion in A.H.'s case, ruling that an insurer for some of the defendants could intervene. *A.H. v. Roosevelt Inn, LLC*, No. 1797 EDA 2020, 2021 WL 4635823 (Table) (Pa. Super. Oct. 7, 2021). None of the parties appear to have told the Superior Court that the case had been removed after the Court heard oral argument. *See* Docket, *A.H. v. Roosevelt Inn, LLC*, No. 1797 EDA 2020 (Pa. Super. Ct.).

In sum, Pennsylvania has a strong interest in applying its law to its citizens in its courts, particularly because these cases have been pending in its courts for quite some time. *Rose v. Lundy*, 455 U.S. 509, 518 (1982). Thus, this factor leans heavily in favor of abstention and remand.

*v. Relatedness.* To be sure, these tort claims are "related to" the bankruptcy proceedings. 28 U.S.C. § 1334(b). Jury verdicts for the young women would "have a direct and substantial impact on the size of [the debtors'] asset pool available for distribution to creditors." *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1235 n.10 (3d Cir. 1994). But relation comes in degrees. These tort claims are, at most, *peripherally* related to the bankruptcy proceeding. The tort claims "are not based upon any substantive right provided in the Bankruptcy Code." *In re Grace Cmty.*, 262 B.R. 625, 630–31 (Bankr. E.D. Pa. 2001). Instead, they "exist independent of the bankruptcy case." *Id.* Jurors could still find the defendants negligent, no matter how little money the debtors have to pay out. Because these tort claims "are remote to the issues truly at stake in [the] bankruptcy proceeding," this factor tilts towards abstention and remand. *In re Raymark Indus., Inc.*, 238 B.R. 295, 299 (Bankr. E.D. Pa. 1999).

*vi. Efficient administration.* The defendants insist that resolving the tort claims separate from the bankruptcy suit would hurt the efficient administration of the bankruptcy estate. The debtors own "the Roosevelt Inn and the property on which [it] is located," and nothing else. Roosevelt's Opp'n 10. Their insurers have denied coverage. If the young women win their cases, the debtors will be out of money. Thus, the debtors reason, the tort claims must be resolved in the same court as the bankruptcy suit. Otherwise, a jury verdict in one young woman's favor would make her a secured creditor, leaving the others unsecured. Or the juries might hold the defendants jointly and severally liable, making it difficult for the estate to separate out the debtors' liabilities.

Yet these same problems would arise if the claims stayed in this Court. By statute, the Bankruptcy Court cannot hear these tort claims. 28 U.S.C. § 157(b)(5). Either this Court or the Court of Common Pleas must resolve them. And it makes no difference to the estate whether a state or federal jury decides the claims. Either way, the young women would have to obtain a judgment in a separate court and then go to the bankruptcy court "to enforce or collect" that judgment. *In re Raymark Indus., Inc.*, 238 B.R. at 299. In other words, no harm will come to the estate "if this dispute is decided in state court and the [estate's] plan is later modified to reflect the outcome." *In re Kessler*, 430 B.R. 155, 168 (Bankr. M.D. Pa. 2010).

Raising a different concern, the non-debtor defendants assert that they are at risk for "inconsistent results" should the claims against them proceed to trial while the claims against the debtors are stayed. Hr'g Tr. 48:4. Though that argument might bear on the Bankruptcy Court's decision to lift the automatic stay as to the debtors, it has no bearing on this Court's decision to remand all of the claims to state court. No matter the court, the non-debtors will face the threat of inconsistent results unless and until the stay is lifted.

Because the debtors have not articulated how remand would hurt the administration of the estate, this factor is neutral.

***vii. Prejudice.*** Permitting these claims to stay in federal court would cause "prejudice to the involuntarily removed parties." *Dieterly*, 2020 WL 3447766, at *4. Removal forced the young women to "restart[ ] the litigation process in a federal court." *In re Best*, 417 B.R. 259, 273 (Bankr. E.D. Pa. 2009). M.B. was on the eve of having her claims heard by a jury. Now, she has no trial date in sight. Though not as far along in their cases, the others have likewise been delayed in discovery and motions practice. This factor too tilts towards abstention and remand.

*viii. Bad faith.* From the young women's perspective, the defendants have successfully shopped for a new forum. Two weeks before M.B.'s trial, the Roosevelt defendants asked to either move the trial "outside of Philadelphia County" or empanel a jury of "citizens residing outside Philadelphia County," claiming that pretrial publicity had poisoned Philadelphia residents against them. Motion for Change of Venue at 2, *M.B. v. Roosevelt Inn LLC*, No. 2017-712 (Pa. Ct. C.P. June 2, 2021). The Court of Common Pleas denied the request. Order, *M.B.* (Pa. Ct. C.P. June 15, 2021). The next day, the debtors filed for bankruptcy. Suggestion of Bankruptcy, *M.B.* (Pa. Ct. C.P. June 16, 2021). That permitted the debtors to remove the claims to this Court, guaranteeing them a jury pool from eight counties outside of Philadelphia. Seeing the "statutory opportunity," the other defendants followed suit. Hr'g Tr. 44:6. Certainly, this timing at least suggests that the defendants might be "seeking a better result by shopping around." *In re D'Angelo*, 491 B.R. at 406 (internal quotation marks omitted); *see In re Drauschak*, 481 B.R. 330, 347 (Bankr. E.D. Pa. 2012) (remanding where plaintiff had filed for bankruptcy and removed his claims "just before a scheduled civil contempt hearing [against him] was to take place" in state court).

The debtors vehemently deny such "manipulative tactics." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). Instead, the debtors insist, they "reluctantly filed" for bankruptcy "in good faith." Roosevelt's Opp'n at 13. Five days before trial, M.B. tendered a settlement demand of $24 million. Because that demand "vastly exceeded" their assets, and their insurers contested coverage, the debtors felt they had "little choice but to seek bankruptcy protection." *Id.* at 2. Yet the Bankruptcy Code is a shield from financial ruin, not from decisions on the merits. *See* Roosevelt's Supp. Opp'n at 3, Doc. No. 43, Civil Action No. 21-2984 ("[T]he Debtors could not risk a jury verdict that would have resulted in a judgment in favor of M.B.").

Though perhaps "nothing more than astute lawyering," the defendants' actions can also be read as an "attempt to manipulate the rules for immediate tactical advantage." *In re Diet Drugs*, 282 F.3d at 232. Under the circumstances, this factor too leans in favor of abstention and remand.

\* \* \* \* \*

Together, the factors weigh heavily in favor of abstention and remand. These state tort issues, unrelated to the core bankruptcy issues and of important local concern, should be sent back to the state court where significant time and money has already been spent adjudicating them. Plus, the defendants should not "receiv[e] a windfall merely by reason of the happenstance of bankruptcy." *Butner v. United States*, 440 U.S. 48, 55 (1979) (internal quotation marks omitted).

In a last effort, the defendants point to public policy and judicial economy. To hear them tell it, the Bankruptcy Code *always* favors centralized federal resolution, never remand or abstention. Yet Congress provided for permissive abstention "in the interest of comity with State courts or respect for State law," and for remand "on *any* equitable ground." 28 U.S.C. § 1334(c)(1); 28 U.S.C. § 1452(b) (emphasis added). Congress provided these outlets for good reason. State courts do not lose interest in their law and their cases "simply because an interested party is involved in a bankruptcy proceeding." *Butner*, 440 U.S. at 55. Though the Code decides how to discharge a debtor's obligations, state law still decides the substance of those obligations. *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000). And state "courts are best situated to hear the [state law] claims of its citizens." *Kleiner*, 604 B.R. at 9.

CONCLUSION

For these reasons, the Court grants the motions to remand to the Court of Common Pleas.

These Philadelphia cases will be resolved in Philadelphia's courts.  An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE